*16*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 3 0 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FRANCISCO SANCHEZ | § | |
| | § | |
| *Plaintiff* | § | |
| | § | |
| V. | § | |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION; | § | |
| ADVOCARE INTERNATIONAL, LLC; | § | |
| BAYER CORPORATION; | § | |
| BLOCK DRUG COMPANY, INC.; | § | |
| BRISTOL MYERS SQUIBB COMPANY; | § | CIVIL ACTION NO. B-02-066 |
| CHATTEM, INC.; | § | |
| GLAXOSMITHKLINE, PLC; | § | |
| NOVARTIS CONSUMER HEALTH, INC.; | § | |
| NOVARTIS PHARMACEUTICALS CORPORATION; | § | |
| SMITHKLINE BEECHAM CONSUMER | § | |
| HEALTHCARE, L.P.; | § | |
| SMITHKLINE BEECHAM CORPORATION; | § | |
| WHITEHALL-ROBINS HEALTHCARE; and | § | |
| CIRCLE K STORES, INC. d/b/a CIRCLE K | § | |
| (sued individually and as successor-in-interest to | § | |
| COASTAL MART, INC. and MAVERICK | § | |
| MARKET, INC.), | § | |
| | § | |
| *Defendants* | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION FOR TEMPORARY STAY OF PROCEEDINGS
## <u>SUBJECT TO PLAINTIFFS' MOTION TO REMAND</u>

TO THE HONORABLE JUDGE OF SAID COURT:

FRANCISCO SANCHEZ, Plaintiff, files this Response to Defendant's Motion for

Temporary Stay of Proceedings subject to Plaintiffs' Motion to Remand which Plaintiff

will file with this Court within the time required under 28 U.S.C. § 1447(c) (1994), and in

support thereof, would respectfully show this Court as follows:

## I. Introduction and Background

On February 20, 2002, Plaintiffs filed suit in Texas State court for personal injuries sustained by the ingestion of certain drugs containing phenylpropanolamine ("PPA"). Plaintiffs suffered severe and debilitating permanent injuries as a result of exposure to PPA through the ingestion of certain products designed, formulated, marketed, manufactured, distributed and/or sold by Defendants. On April 5, 2002, this case was removed to this Court pursuant to 28 U.S.C. § 1332 (1993) allegedly based on the complete diversity of citizenship between the Plaintiffs and Defendants. Defendant has filed a Motion for Temporary Stay of Proceedings ("Motion") in which it asks the Court stay all pretrial proceedings, including ruling on an anticipated motion for remand to be filed by the Plaintiffs, until the Judicial Panel on Multidistrict Litigation issues a final ruling related to transfer of this case to MDL-1407. Plaintiffs will file a motion for remand ("Motion for Remand") in this case within the time required under 28 U.S.C. § 1447(c). For the reasons set forth below, Plaintiffs ask the Court to deny Defendant's Motion and to rule on Plaintiff's Motion for Remand when it is filed.

## II. Argument and Authorities

This Court unquestionably has not only the power, but also the duty, to decide Plaintiff's Motion for Remand. In its Motion for Remand, Plaintiffs anticipate challenging the existence of any basis for federal subject matter jurisdiction in this case and fundamental flaws in Defendant's removal procedure, both arguments of which compel remand. In these circumstances, the Court must ascertain its jurisdiction first, for "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514,

19 L. Ed. 264 (1868); *see also* 28 U.S.C. § 1447(c) ("If any time before final judgment [in a removed case] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[s]ubject matter delineations must be policed by the courts on their own initiative even at the highest level."); *Copling v. The Container Store*, 174 F.3d 590, 594 (5th Cir. 1999) ("[A] district court must inquire into its jurisdiction, even if the parties have not questioned it.").

The Judicial Panel on Multidistrict Litigation itself has made clear that district courts may rule on motions for remand, and other pretrial motions, any time before a case is formally transferred to an existing MDL proceeding. Panel Rule 1.5 states that "[t]he pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel . . . does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court." Similarly, the Manual for Complex Litigation explicitly provides that "[m]atters such as motions to dismiss or to remand, raising issues unique to the particular case, may be resolved before the panel acts on the motion to transfer." DAVID F. HERR, MANUAL FOR COMPLEX LITIGATION § 31.131 (3d ed. 2001); *see also Tortola Restaurants, L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188-89 (N.D. Cal. 1997) (relying on *Villarreal infra* and *Spitzfaden infra*, denying defendants' motion to stay and granting plaintiff's motion for remand); *Villarreal v. Chrysler Corp.*, No. C-95-4414, 1996 WL 116832, at *1 (N. D. Cal. Mar. 12, 1996) ("a stay is improper. Judicial economy will be best served by addressing the remand issue [as it] will facilitate litigation in the appropriate forum.") (attached as **Exhibit A**); *Spitzfaden v. Dow Corning*

*Corp.*, No. 95-2578, 1995 WL 662663, at *4n.1 (E.D. La. Nov. 8, 1995) (attached as **Exhibit B**).

Very recently, on March 7, 2002, in a PPA case removed to the United States District Court for the Eastern District of Louisiana, the court addressed the very issue raised in Defendant's Motion. *Bardales v. Whitehall-Robbins Health Care*, No. 01-3487 (E.D. La. Mar. 7, 2002) (attached as **Exhibit C**). In *Bardales*, defendants removed the case based on diversity jurisdiction alleging that the local defendant had been fraudulently joined. *Id.* at 2. The MDL Panel issued a conditional transfer order. *Id.* Plaintiffs filed a motion for remand. *Id.* at 1. Defendants filed a motion to stay arguing that the court should decline to rule on plaintiff's motion for remand until the MDL panel rendered a decision on whether the case should be transferred the PPA MDL court. *Id.* at 3. In denying defendant's motion to stay, the court concluded that "judicial economy is best served in this case by resolving the jurisdictional issue immediately. If federal jurisdiction does not exist, this case should be remanded without the need for further federal proceedings." *Id.* The court then granted plaintiff's motion to remand concluding that the defendants had not met their burden regarding their allegations related to fraudulent joinder and that there was a reasonable possibility that plaintiffs could recover under the applicable state statute. *Id.* at 6.

Furthermore, the United States District Court for the Eastern District of Texas has held that a federal district court must examine its jurisdiction, and may remand a case, even after conditional MDL transfer orders have been entered. In *Faulk v. Owens-Corning Fiberglas Corp.*, 48 F. Supp. 2d 653 (E.D. Tex. 1999), the MDL panel had entered a conditional transfer order prior to the court's ruling on plaintiffs' motion for

remand. Nevertheless, Judge Heartfield considered the motion and granted it, holding squarely that "[i]f this Court lacks subject matter jurisdiction, then it *must* remand this case to the state court from whence it came . . . this case no more belongs in federal court than it does at Multi-District Litigation." *Id.* at 659 (footnotes omitted). The same result was obtained in *Dollar v. General Motors Corp.*, 814 F. Supp. 538 (E.D. Tex. 1993) (removal based on allegations of fraudulent joinder of non-diverse defendants), in which the court granted the plaintiff's motion for remand, and denied the defendant's motion for stay pending MDL consolidation as moot. *See also State of Rio de Janeiro v. Philip Morris, Inc.*, 239 F.3d 714 (5th Cir. 2001) (dismissing appeal of order of remand entered after MDL conditional transfer order was issued).

Other courts concur. For example, the Chief Judge of the Southern District of West Virginia denied a motion for stay pending MDL transfer, and granted a motion for remand, holding that "[t]his Court cannot, however, stay proceedings in an action over which it lacks jurisdiction. Removal statutes must be strictly construed against removal." *Lloyd v. Cabell Huntington Hosp., Inc.*, 58 F. Supp. 2d 694, 696, (S.D.W. Va. 1999); *see also Bartley v. Borden, Inc.*, Nos. 96-145, 96-157, 96-205, 1996 WL 68482, at *1 (E.D. La. Feb. 13, 1996) (attached as **Exhibit D**). As the United States District Court for the Southern District of New York put it, "[t]he district court is not a legal way station, nor subject matter jurisdiction something that can be invoked solely to assist the transfer of a case from court to court." *Wall v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 92 Civ. 0387 (WK), 1992 WL 77625, at *2 (S.D.N.Y., Mar. 26, 1992) (attached as **Exhibit E**). Indeed, in *Rutt v. Prudential Ins. Co.*, No. Civ. A. 96-3658, 1996 WL 278819 (E.D. Pa. May 23, 1996) (attached as **Exhibit F**), despite defendant's having filed a motion for

stay pending MDL transfer, the court stated that "'federal courts are courts of limited jurisdiction, and as such, are under a continuing duty to satisfy themselves of their jurisdiction . . .'" and that "we have a statutory duty to inquire into our jurisdiction of cases removed from state court . . ." *Id.* at *2 (quoting *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993). The court then ordered remand of the case even before plaintiff had filed a motion for remand. *Id.* at *2.

In an article on practice before the MDL panel, Judge Nangle, the Chairman of the Judicial Panel on Multidistrict Litigation, stressed that motions for remand are entirely appropriate for decision in the originating court:

> It should be stressed that during the pendency of any Section 1407 transfer matter before the panel, whether pursuant to a transfer motion in a new docket, a transfer motion with respect to a tag-along action, or a motion to vacate a conditional transfer order, the authority of the court in which the action is currently pending remains unaffected. The court's pretrial jurisdiction remains unlimited unless and until a final transfer order becomes effective.
>
> Notwithstanding this jurisdictional point, in practice parties sometimes seek, and courts sometimes grant, stays of proceedings in action in which eventual Section 1407 transfer is anticipated. There may be legitimate reasons for such an approach. For example, a court may wish to defer to the transferee court on a pivotal issue that is likely to be present in other centralized actions; a court may wish to avoid dueling discovery activities and wait until a single transferee court can devise its own schedule accommodating the interests of all a docket's parties and witnesses; or a court, simply in the process of prioritizing its own heavy caseload, may not wish to expend significant energies in developing a familiarity with issues involved in an action likely soon to be assigned to another court.
>
> The flip side of this stay situation arises when the panel is asked to deny or delay transfer because of the pendency of matters in the originating court that may be

> dispositive of or otherwise relevant to the question of Section 1407 transfer. These situations, ranging from motions to dismiss, jurisdictional questions, motions to remand to state court, motions to transfer under Section 1404, just as examples, often are indeed appropriate for resolution in the originating court.

Hon. John F. Nangle, *From the Horse's Mouth: The Workings of the Judicial Panel on Multidistrict Litigation*, 66 DEF. COUNS. J. 341, 342-43 (1999) (attached as **Exhibit G**).

The MDL Panel has made it clear that "transferor" courts in this litigation, as in any litigation, are free to rule on motions for remand. The issues related to this removal/remand are unique concerning the particular claims asserted by the Plaintiffs under Texas law and the proper joinder of specific Texas defendants in this case. Therefore, this Court should decide the issue of remand before the panel acts on the motion to transfer. DAVID F. HERR, MANUAL FOR COMPLEX LITIGATION § 31.131. Since there is no basis for federal subject matter jurisdiction in this case, and there may be a defect in removal procedure which compels remand in any event, Plaintiffs respectfully submit that the Court can and should rule on the motion for remand.

### III. Prayer

For the reasons set forth above, Plaintiffs pray that the Court deny Defendant's Motion for Stay.

Respectfully submitted,
**WATERS & KRAUS, LLP**

PETER A. KRAUS
State Bar No. 11712980
CHARLES S. SIEGEL
State Bar No. 18341875
Federal Bar No. 15736
DAVID C. GREENSTONE
State Bar No. 24007271

KIRK L. PITTARD
State Bar No. 24010313
Federal Bar No. 27165

3219 McKinney Ave., Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 357-7252 Fax

ATTORNEYS IN CHARGE FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded via U.S. Mail to all counsel of record on this the _____ day of April, 2002.

KIRK L. PITTARD

Brynley James
Fulbright & Jaworski
300 Convent St., Ste. 2200
San Antonio, TX 78205

Mark Van Cleave
Baker Law Firm
12600 Feather Wood, Ste. 225
Houston, Texas 77034

Kenneth Ferguson
Clark, Thomas & Winters
300 West Sixth St./ Ste. 1500
P.O. Box 1148
Austin, TX

Mitchell Chaney
Rodriguez Colvin & Chaney LLP
P.O. Box 2155
Brownsville, TX 78522

Frank Doyle
Hanen Alexander Johnson & Spalding
910 Travis St./ Suite 1700
Houston, TX 77002

Margaret Brenner
Hays McConn Rice & Pickering
400 Two Allen Center
1200 Smith St.
Houston, TX 77002

Alejandro Acosta
Delgado, Acosta, Braden & Jones:
221 North Kansas, Ste. 2000
El Paso, TX 79901

Daniel Sheehan
Daniel Sheehan & Associates
2200 Ross Ave.
Ste. 3060
Dallas, TX 75201

David Dukes
Nelson, Mullins, Riley & Scarborough
Keenan Building, 3rd Floor
1330 Lady St./ PO Box 11070(29211)
Columbia, SC 29211

Michael Robbins & Steven Lee
Doyle, Restrepo, Harvin & Robbins:
600 Travis
Suite 4700
Houston, TX 77002

Alan Vickery
Sedgwick Detert Moran & Arnold
1717 Main St.
Suite 5400
Dallas, TX 75201

Jeff Otto
Thompson Coe Cousins & Irons
701 Brazos/ Suite 1500
Austin, TX 78701

1996 WL 116832
(Cite as: 1996 WL 116832 (N.D.Cal.))

Page 2

▷
Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Susan VILLARREAL and Brad Bergantz et al.,
Plaintiffs,
v.
CHRYSLER CORPORATION, Defendant.

No. C-95-4414 FMS.

March 12, 1996.

ORDER GRANTING MOTION TO REMAND TO
STATE COURT

FERN M. SMITH, District Judge.

ISSUES

*1 Defendant Chrysler Corporation's ("defendant")
motion for a stay of proceedings requires the Court to
decide whether to stay the putative class action
brought by plaintiffs Susan Villarreal and Brad
Bergantz ("plaintiffs") because defendant petitioned
the Judicial Panel on Multidistrict Litigation
("Panel") to transfer this and other related class
actions to the Eastern District of Michigan.

If the Court declines to stay the action, plaintiffs'
motion requires the Court to determine whether
defendant has failed to establish that the amount in
controversy for every class member exceeds the
$50,000 federal jurisdictional requirement so that the
action should be removed. [FN1] Specifically, the
Court must determine whether plaintiffs have a
common and undivided interest in the alleged
punitive damage award so that plaintiffs' claim can be
aggregated for jurisdictional purposes.

Alternatively, if defendant proves that the claim of
the named representatives exceed the jurisdictional
requirement, the Court must decide whether to
exercise supplemental jurisdiction over the claims of
the putative class members whose claims fall below
the jurisdictional requirement.

BACKGROUND

Plaintiffs filed a class action in Santa Clara County
Superior Court on behalf of all persons and entities
residing in California who own at least one, but less

than fifty, Chrysler vehicles equipped with the
Bendix 10 Anti-Lock Brake System ("ABS").
Plaintiffs allege five causes of action stemming from
the allegedly defective ABS and claims for: (1)
breach of warranty under California Civil Code
section 1790 et seq.; (2) unfair and fraudulent
business practices under California Business and
Professions Code section 17200 et seq.; (3) fraud and
deceit under California Civil Code section 1710; and
(4) negligent misrepresentation under California Civil
Code section 1710. Plaintiffs seek compensatory and
punitive damages as well as equitable relief.

Defendant removed the action to federal court on the
basis of diversity jurisdiction. Subsequently,
defendant petitioned the Panel to transfer this and
related ABS cases to the Eastern District of
Michigan. Plaintiffs then filed this motion to remand,
contending that the claimed damages are not in
excess of the $50,000 jurisdictional requirement.
Plaintiffs also seek costs and attorneys' fees as a
result of the removal.

DISCUSSION
I. Legal Standard For Stay

A court has the inherent power to stay proceedings.
Landis v. North Am. Co., 299 U.S. 248, 254 (1936).
Petitions for consolidation and transfer pending
before the Panel, however, do "not affect ... pretrial
proceedings in the district court in which the action is
pending and does not in any way limit the pretrial
jurisdiction of that court." Panel Rule 18, 147 F.R.D.
589, 601 (1993).

Defendant requests a stay on the basis that this and
two other putative class actions will be consolidated
and transferred to the Eastern District of Michigan by
the Panel pursuant to 28 U.S.C. § 1407. Consistent
with the directives of the Panel, a stay is improper.
Judicial economy will best be served by addressing
the remand issue because a determination on this
issue will facilitate litigation in the appropriate
forum. The appropriate forum, moreover, is a
threshold issue to class certification and defendant's
petition to the Panel does not affect scheduled pretrial
proceedings.

*2 For the foregoing reasons, defendant's request for
a stay of the action is DENIED. Accordingly, the
Court will address the merits of plaintiffs' motion to
remand.

II. Removal and Remand

A. Legal Standard for Remand



PLAINTIFF'S
EXHIBIT
tabbies
A

1996 WL 116832                                                                                          Page 3
(Cite as: 1996 WL 116832 (N.D.Cal.))

In a removal action, a district court is required to remand a case to state court if, at any time before final judgment, the court determines that it lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). Where the jurisdiction of the court is challenged, the party invoking federal jurisdiction bears the burden of demonstrating that its jurisdictional allegations are supported by competent proof. *Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988).* The removal statute is strictly construed against removal jurisdiction. *Id.*

Where the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000. *Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992)* (citing *McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).* Moreover, where state law prohibits pleading a specific amount of damages, the burden is on the defendant to present underlying facts in support of its contention that the amount in controversy exceeds $50,000. *Id.* Conclusory allegations that the damages are in excess of $50,000 do not satisfy defendant's burden. *Id.*

The preponderance of the evidence standard applies to the case at bar because defendant seeks federal jurisdiction over the action, and California pleading laws prohibit plaintiffs from setting forth a specific amount of punitive damages in their complaint. [FN2] *See* Cal. Civ. Code § 3294(e) (Deering 1996) ("No claim for exemplary damages shall state an amount or amounts.").

B. Amount in Controversy

In the class action context, the defendant must prove that each plaintiff and every class member has an amount in controversy in excess of $50,000. *Snyder v. Harris, 394 U.S. 332, 338 (1969); Zahn v. International Paper, 414 U.S. 291, 300 (1973)* ("[A]ny plaintiff without jurisdictional amount must be dismissed from the case, even though others allege jurisdictionally sufficient claims.").

As a general rule, the "separate and distinct" claims of class action plaintiffs cannot be aggregated to reach the $50,000 jurisdictional requirement. *Snyder, 394 U.S. at 336-37.* Aggregation is permissible, however, when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335. Thus, an "integrated" claim of class action plaintiffs may be aggregated to determine the jurisdictional

requirement. *Id.*

  1. Aggregation: Common and Undivided Interest

Aggregation of damages so as to meet the jurisdictional requirement is prohibited in diversity-based class actions. *See Zahn, 414 U.S. at 300.* Defendant, therefore, argues that punitive damage claims are "integrated" and thus aggregation is permissible.

*3 Under Ninth Circuit law, claims constitute a common and undivided interest only if plaintiffs hold their rights in a group status. *Eagle v. American Tel. and Tel. Co., 769 F.2d 541, 546 (9th Cir. 1969); Potrero Hill Community Action Com. v. Housing Authority, 410 F.2d 974, 978 (9th Cir. 1969).* Class members may not aggregate their claims to satisfy the amount in controversy requirement unless the claims are "joint and common." *United States v. Southern Pacific Trans. Co., 543 F.2d 676, 683 (9th Cir. 1976).* Common questions of law and fact are not sufficient in determining whether the jurisdictional requirement is satisfied. *Id.*

  2. Punitive Damages

In determining the amount in controversy, a court must consider not only actual pecuniary damages, but also potential punitive damages. *Bell v. Preferred Life Assur. Soc. of Montgomery, 320 U.S. 238, 240 (1943).* The Ninth Circuit, however, has not directly addressed whether a punitive damages claim constitutes a "common and undivided interest," thereby allowing aggregation in determining the amount in controversy. *See Borgeson v. Archer Daniels Midland Co. et. al, 1995 WL 743800 (C.D. Cal. 1995).*

Consistent with *Southern Pacific* , several district courts have held that a class action plaintiffs' claim for punitive damages cannot be aggregated as a common and undivided interest. See, e.g., *Harris v. Chase Manhattan Bank, N.A.,* 1992 U.S. Dist. LEXIS 19986, No. C-92-1483 JPV (N.D. Cal. 1992); *Kasky v. Perrier Group of Am.,* 1991 U.S. Dist. LEXIS 21177, No. C-91-0489-R(M) (S.D. Cal. 1991); *Smiley v. Citibank (South Dakota), N.A., 863 F. Supp. 1156, 1162-64 (C.D. Cal. 1993).*

Plaintiffs' complaint expressly states that the claimed damages do not exceed $50,000, yet defendant contends that punitive damages may be aggregated as a "common and undivided interest" of the plaintiffs. [FN3] *See* Complaint at ¶ 9. The Court finds the *Harris, Kasky,* and *Smiley* decisions persuasive and

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

concludes that plaintiffs assert separate and distinct rights respecting the allegedly defective ABS. [FN4] Each plaintiff's claim is derived from the allegedly defective ABS component in an individual vehicle; therefore, aggregation is not warranted.

### B. Supplemental Jurisdiction

Defendants alternatively contend that if Villarreal and Bergantz as the named representatives satisfy the jurisdictional requirement, the claims of other class members can be brought in federal court based on supplemental jurisdiction. *See* 28 U.S.C. § 1367.

The named plaintiffs seek attorneys' fees pursuant to California Civil Code section 1780. Cal. Civ. Code § 1780 (Deering 1996). Defendant contends that the award of attorneys' fees pushes the amount in controversy over the jurisdictional threshold for the named representatives. Under Ninth Circuit law, however, attorneys' fees must be pro rated to each class member rather than attributed to the named plaintiff only. *Goldberg v. CPC Int'l Inc.*, 678 F.2d 1365, 1367 (9th Cir.), *cert. denied*, 459 U.S. 945 (1982).

*4 Although the amount of attorneys' fees in class actions can be significant, it is too speculative to conclude that each plaintiff's attorney will recover fees in excess of $50,000. Further, unlike an action for personal injuries which may have a high potential for punitive damages, plaintiffs here are seeking only compensatory damages for the cost of the replacement of the brakes, diminution in value for the cars, and injunctive relief. The ABS is one component of the car which has a total value of $20,000, and thus defendant has not demonstrated that the claims are likely to be in excess of $50,000. Defendant, therefore, has not sustained its burden of demonstrating that the potential recovery of the named representatives, including attorneys' fees, satisfies the $50,000 threshold.

Because the complaint does not plead damages in excess of $50,000 for the named representatives, the Court need not address whether to exercise supplemental jurisdiction. The jurisdictional requirement is not met.

### III. Attorneys' Fees

Plaintiffs seek costs and fees associated with defendant's removal pursuant to 28 U.S.C. § 1447(c). A court has discretion to impose sanctions. *Moore v. Kaiser Foundation Hosps.*, 765 F. Supp. 1464, 1466 (N.D. Cal. 1991). Generally, removal must be

unjustifiable prior to such imposition. *Samura v. Kaiser Foundation Health Plan, Inc.*, 715 F. Supp. 970, 972 (N.D. Cal. 1989).

Here, defendant's removal does not warrant an imposition of attorneys' fees. The issue of whether punitive damages constitute a common and undivided interest is not entirely clear, and defendant had some authority for its assertions. A legitimate question of the existence of federal subject matter jurisdiction was presented. [FN5] Accordingly, the Court declines to award costs and fees.

### CONCLUSION

For the reasons set forth above, the Court GRANTS plaintiffs' request to remand this action to the Santa Clara County Superior Court but DENIES plaintiffs' request for costs and attorneys' fees. As this action has been remanded to state court, defendant's motion to dismiss noticed for March 29, 1996, is hereby withdrawn.

The Clerk of the Court shall close the file.

SO ORDERED.

> FN1. For the purposes of determining jurisdiction, the Court will assume the suit has been certified as a class action. *City of Inglewood v. City of Los Angeles*, 451 F.2d 948, 951 (9th Cir. 1971).

> FN2. In contrast to the preponderance of the evidence standard, a court applies the "legal certainty" test when the plaintiff seeks to confer federal jurisdiction over the action by alleging damages in excess of $50,000. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).
> Both plaintiffs and defendant incorrectly rely on the "legal certainty" standard. The cases applying this standard are inapposite to the case at bar. *See United States v. Southern Pacific Trans. Co.*, 543 F.2d 676, 682 (9th Cir. 1976) (class action plaintiffs' motion for summary judgment shifted burden to plaintiffs to show it did not appear to a legal certainty that claims were for less than jurisdictional requirement).

> FN3. Defendant does not seek an aggregation of damages on the basis of

1996 WL 116832                                                                    Page 5
(Cite as: 1996 WL 116832 (N.D.Cal.))

plaintiffs' potential equitable relief. Even assuming such an argument were raised, the Ninth Circuit has held that "'the ban on aggregation [applies] with equal force to ... equitable as well as ... monetary relief.'" *Snow v. Ford, 561 F.2d 787, 790 (9th Cir. 1977)* (quoting *Barton Chem. Corp. v. Avis Rent a Car Sys., Inc., 402 F. Supp. 1195 (N.D. Ill. 1975)*).

FN4. Defendant's reliance on *Allen v. R & H Oil & Gas Co., 63 F.3d 1326 (5th Cir. 1995),* for the proposition that punitive damages constitute a common and undivided interest, is unpersuasive. The *Allen* Court's holding "specifically reflects a result under the Mississippi law of punitive damages and is not to be construed as a comment on any similar case that might arise under the law of any other state." *Allen, 70 F.3d 26 (5th Cir. 1995)* (per curiam). Accordingly, the Court must consider whether punitive damages awards constitute a "common and undivided interest" under California law.

FN5. The Court notes, however, that defendant has unsuccessfully raised the same arguments regarding the aggregation of punitive damages in prior cases. The state of the law on this issue is becoming clearer and may be a factor for awarding fees in any subsequent removals by defendant.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Date of Printing: APR 19,2002

KEYCITE

CITATION:  ▷ **Villarreal v. Chrysler Corp., 1996 WL 116832 (N.D.Cal., Mar 12, 1996) (NO. C-95-4414 FMS)**

**History**
**Direct History**

=>  1  **Villarreal v. Chrysler Corp., 1996 WL 116832 (N.D.Cal. Mar 12, 1996) (NO. C-95-4414 FMS)**

**Negative Indirect History**

*Distinguished by*
2  Rivers v. Walt Disney Co., 980 F.Supp. 1358, 72 Empl. Prac. Dec. P 45,091 (C.D.Cal. Aug 11, 1997) (NO. CV-97-1499-AAH(VAPX)) ★★

**Citing References**

**Positive Cases**
★★★ **Discussed**

▶  3  Gibson v. Chrysler Corp., 1999 WL 1049572, *8+ (N.D.Cal. May 28, 1999) (NO. C-99-1047 MHP, C-99-1048 MHP, C-99-1049 MHP)
★★ **Cited**
4  Haisch v. Allstate Ins. Co., 942 F.Supp. 1245, 1251 (D.Ariz. Oct 22, 1996) (NO. CIV-96-1647-PHX-ROS)
5  Smith v. Mail Boxes, Etc., --- F.Supp.2d ----, 2002 WL 433186, *2 (E.D.Cal. Mar 19, 2002) (NO. CIV.S-01-2271WBS/DAD)
6  Becraft v. Ethicon, Inc., 2000 WL 1721056, *6 (N.D.Cal. Nov 02, 2000) (NO. C00-1474CRB, C00-1496CRB, C00-1493CRB, C00-1495CRB)
**H**  7  Kanter v. Warner-Lambert Co., 52 F.Supp.2d 1126, 1131+ (N.D.Cal. Jun 09, 1999) (NO. C99-1154 FMS)
**H**  8  Gibson v. Chrysler Corp., 1998 WL 646659, *3 (N.D.Cal. Jul 20, 1998) (NO. C-98-1462 MHP)
9  Tortola Restaurants, L.P. v. Kimberly-Clark Corp., 987 F.Supp. 1186, 1189+, 1997-2 Trade Cases P 71,940, 71940+ (N.D.Cal. Aug 29, 1997) (NO. C-97-2327 SI)
10  Garbie v. Chrysler Corp., 8 F.Supp.2d 814, 820+ (N.D.Ill. Jun 18, 1998) (NO. 98 C 2280)
11  Meyers v. Bayer AG, 143 F.Supp.2d 1044, 1047, 2001-2 Trade Cases P 73,323, 73323 (E.D.Wis. May 18, 2001) (NO. 00-C-1582)

**Secondary Sources**
12  Wright & Miller: Federal Prac. & Proc. s 3866, ____ Jurisdiction And Power Of The Transferee Court (1986)
13  AGGREGATION OF PUNITIVE DAMAGES IN DIVERSITY CLASS ACTIONS: WILL THE REAL AMOUNT IN CONTROVERSY PLEASE STAND UP?, 30 Loy. L.A. L. Rev. 775, 799 (1997)

© Copyright West Group 2002

1995 WL 662663                                                        Page 2
(Cite as: 1995 WL 662663 (E.D.La.))

**C**
Only the Westlaw citation is currently available.


United States District Court, E.D. Louisiana

Marilyn SPITZFADEN, et al.
v.
DOW CORNING CORPORATION, et al.

Civ. A. No. 95-2578.

Nov. 8, 1995.

ORDER AND REASONS

*1 Before the Court is a Motion to Remand/Abstain [FN1] and a Motion to Sever Dow Corning filed by plaintiffs. Also before the Court is a Motion to Extend Time to Respond to Plaintiff's Motion to Remand/Abstain. [FN2] Having entertained oral argument and having reviewed the pleadings, the memoranda and the relevant law, the Court GRANTS the Motion to Remand/Abstain. The Court further GRANTS the Motion to Sever Dow Corning. [FN3]

I. BACKGROUND

Thousands of lawsuits [FN4] have been filed against Dow Corning (alternatively "the Debtor") who manufactured silicone gel breast implants and supplied raw silicone to other implant manufacturers. Dow Corning's shareholders, Dow Chemical Co. and Corning Inc. were named as defendants in many of these lawsuits, as were other companies which, like Dow Corning, manufactured silicone gel breast implants. These companies include Medical Engineering Corporation, Bristol-Myers Squibb Company, Baxter Healthcare Corporation, Baxter International, Inc., and Minnesota Mining and Manufacturing Company (collective, the "implant co-defendants").

The federal lawsuits were transferred to the Northern District of Alabama pursuant to an order issued by the Judicial Panel on Multidistrict Litigation. *See In re Silicone Gel Breast Implants Products Liability Litigation,* 793 F.Supp. 1098 (J.P.M.L1992); 28 U.S.C. § 1407.

The judge presiding over the centralized federal cases is the Honorable Sam C. Pointer, Jr. On September 11, 1994, Judge Pointer approved a proposed settlement reached by a plaintiffs' "steering committee" and the various defendants in the actions, including Dow Corning. Plaintiffs were free to choose whether they wished to be bound by the terms of the settlement. Those choosing not to participate in the settlement, opting instead to pursue their own actions on an individual basis are known as "opt-out claimants."

It appears, however, that the global settlement did not resolve the controversy and the future of that agreement, at this time, is in question. [FN5] First, the settlement is oversubscribed in that the claims being made against the established funds exceed the Defendants' funding commitments. Second, thousands of claimants have opted not to participate in the settlement, electing instead to pursue individual suits. As of May 1995, over 6,000 claimants had opted out of the global settlement and are pursuing individual actions.

On May 15, 1995, Dow Corning filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* This action automatically stayed the continuation of the implant lawsuits pending against Dow Corning, but extended no such protection to the implant co-defendants or the debtor's shareholders. *See* 11 U.S.C. § 362(a).

However, despite the Chapter 11 proceedings and the automatic stay provisions of 11 U.S.C. § 362, the breast implant litigations are still ongoing. Plaintiffs throughout the United States have filed notices of nonsuit against, dismissals of and motions to sever the Debtor in order to proceed to trial against Dow Chemical Co. and/or Corning, Inc. and the other implant co-defendants.

*2 The issues before the Court are: 1) whether it has jurisdiction over the instant suit pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 1452; and 2) if the Court does have jurisdiction, whether the Court should abstain from exercising its authority.

II. STANDARD OF REVIEW

Removal statutes are to be strictly construed, and any doubts concerning removal must be resolved against removal and in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets,* 61 S.Ct. 868 (1941). The Courts turns to the merits of the argument with this standard in mind.

III. ANALYSIS



PLAINTIFF'S
EXHIBIT
**B**

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1995 WL 662663                                                                            Page 3
(Cite as: 1995 WL 662663 (E.D.La.))

The jurisdiction of federal courts is grounded in and limited by statute. The instant suit was removed to district court pursuant to 28 U.S.C. § 1452 which provides for "removal of claims related to bankruptcy claims." Further, 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, the initial inquiry is whether the instant suit is "related to" Dow's bankruptcy.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 does not define "related" matters. The Fifth Circuit in Matter of Wood, 825 F.2d 90, 93 (5th Cir.1987) adopted the widely accepted Third Circuit test [FN6] for determining whether a proceeding is "related to" the bankruptcy case: "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id. at 93 (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984) (emphasis added)). The Fifth Circuit later more specifically stated, " '[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.' " In re Majestic Energy Corp. 835 F.2d 87, 90 (5th Cir.1988) (quoting Pacor, 743 F.2d at 994); see also Celotex Corp. v. Edwards, 514 U.S. 300, 115 S.Ct. 1493, 1498-1500 (1995).

This Court's examination of plaintiff's action and the jurisprudence leads to the conclusion that the instant matter is "related to" Dow Corning's bankruptcy case. Indeed, a recent Supreme Court decision suggests that even the mere potential for contribution may serve as the basis for related to jurisdiction. See Celotex, 115 S.Ct. 1493 (1995); but see In Re Dow Corning, 95-CV-72397-D (September 12, 1995, Judge Hood's Order). In the instant suit, plaintiffs claim that the defendants are jointly and severally liable for the alleged personal injuries. According to Wood, allegations of joint liability create a "related to" situation. [FN7] Since this court would have had original jurisdiction over this action as a related proceeding pursuant to 28 U.S.C. § 1334(b), this Court has removal jurisdiction under 28 U.S.C. § 1452.

The inquiry is not at an end, however, because § 1334(c)(2) requires a court to abstain if "an action could not have been commenced in a court of the United States absent jurisdiction under this section." Defendants contend that abstention under §

1334(c)(2) is inapplicable citing 11 U.S.C. § 101(5) for the proposition that this court has original jurisdiction against Dow Corning and supplemental jurisdiction, 28 U.S.C. § 1367, against the other co-defendants.

Defendants' contention of supplement jurisdiction is without merit. Title 11 U.S.C. § 101(5) simply defines "claim." That section does not provide a jurisdictional basis nor does it convert "related to" jurisdiction to "arising under" jurisdiction. As such, this Court must turn to § 1334(c)(2) and mandatory abstention.

The defendants further urge the inapplicability of mandatory abstention citing 28 U.S.C. § § 157(b)(4). Indeed, that provision provides that "non- core" proceedings are not "subject to the mandatory abstention provision of § 1334(c)(2)." Core proceedings are defined in 28 U.S.C. § 157(b)(2)(B). That section, in pertinent part, provides that "core proceedings include ... allowance or disallowance of claims ... but not the liquidation or estimation of contingent or unliquidated personal injury tory or wrongful death claims against the estate...." The instant personal injury claims insofar as they relate to the implant co-defendants are not against the estate. Therefore, § 157(b)(4) is inapplicable. Thus, as stated earlier, § 1334(c)(2) requires this Court to abstain from exercising its jurisdiction and, as such, the matter shall be remanded to the Civil District Court for the Parish of Orleans.

*3 Furthermore, even if this court were to agree with defendants' contention that mandatory abstention is inappropriate, "permissive abstention" weighs heavily in favor of remand. Under 28 U.S.C. § 1452(b), a Court may remand any claim or cause of action that has been removed "on any equitable ground." [FN8] Further, 28 U.S.C. § 1334(c)(1) authorizes permissive abstention. The equitable grounds that warrant abstention under 1334(c)(1) are similar to those that warrant remand under 28 U.S.C. § 1452(b).

A court considers several factors in deciding whether a case ought to be remanded, among which are: (1) duplication of judicial resources; (2) uneconomical use of judicial resources: (3) effect of remand on the administration of the bankruptcy estate; (4) cases involving questions of state law better addressed by a state court; (5) comity consideration; (6) prejudice to the involuntarily removed parties; (7) lessened possibility of inconsistent result; (8) expertise of the court where the action originated ... All of the factors listed support a decision to remand

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1995 WL 662663                                                                    Page 4
(Cite as: 1995 WL 662663 (E.D.La.))

pursuant to _section 1452(b)_ or decision to permissively abstain from adjudicating this action pursuant to _section 1334(c)(1)_. (citations omitted; emphasis added).

_Allen County Bank and Trust Co. v. Valvamatic International Corp._, 51 B.R. 578, 582 (Bankr.N.D.Ind.1985).

This Court concludes that numerous equitable grounds exist that compel the remand of this case. As the Court has previously noted, the claims in this case arise exclusively under Louisiana tort law so that the state court may be better able to respond to questions involving state law.   The Court also recognizes the expertise of the particular state court involved as well as comity considerations.

Finally, and most significantly, the Court is persuaded that remand is proper to prevent prejudice to the involuntarily removed parties.    While the automatic stay of 11 U.S.C. § 362 precludes further prosecution of the plaintiffs' suit against Dow Corning in state court, the plaintiffs' claims against all of the other defendants may certainly proceed there.   The automatic stay applies only to the debtor and not to the alleged co- tortfeasors. _GATX Aircraft Corp. v. M/V Courtney Leigh_, 768 F.2d 711, 716 (5th Cir.1985).    Thus, the fact that the automatic stay protects Dow Corning from further proceedings does not mean that all of the silicone gel breast implant litigation must grind to a halt.

All of the facts of the instant case support a decision to remand pursuant to  § 1452(b) or a decision to permissively abstain from adjudicating this action pursuant to § 1334(c)(1).   _See State Remand Order No. 1_, (Pointer, J. held that "equitable grounds exist under 28 U.S.C. § 1452(b) for remand ...").

Accordingly,

IT IS ORDERED that Plaintiffs' Motion to Remand/Abstain is GRANTED and this case is REMANDED to the Civil District Court for the Parish of Orleans, No. 92-2589.

*4 IT IS FURTHER ORDERED that Plaintiffs' Motion to Sever Dow Corning is GRANTED.

> FN1. At the outset, it must be noted that the defendants urge this Court to defer ruling in light of the impending hearing before the Judicial Panel on Multidistrict Litigation. This Court notes, however, that the

transferor court, the Eastern District of Louisiana in this case, retains exclusive jurisdiction until the § 1407 transfer becomes effective and, as such, motions to remand should be resolved before the panel acts on the motion to transfer.   _See_ Manual for Complex Litigation, Third, § 31.131.

> FN2. In light of this ruling, that motion has explicitly been DENIED.

> FN3. Dow Corning's ongoing bankruptcy and Judge Hood's September 12, 1995 Order, discussed _infra_, which states that "motions and proposed orders seeking to dismiss or sever the Debtor ... should by granted by that Court in accordance with this Court's opinion" convinces this Court that severance is warranted.

> FN4. The instant suit was filed on February 12, 1992 in the Civil District Court for the Parish of Orleans entitled _Spitzfaden, et al v. Dow Corning Corporation, Inc., et al_, No. 92-2589 and subsequently removed to this Court pursuant to 28 U.S.C. § 1452.

> FN5. This Court is aware that the instant plaintiffs are currently "opt-in" plaintiffs. Further, this Court understands that plaintiffs such as the instant ones will be given a second opportunity to opt-out in light of the demise of the global settlement.

> FN6. The _Pacor_ test has also been adopted with little or no variation by the First, Fourth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits.   _See In re G.S.F. Corp._, 938 F.2d 1467, 1475 (1st Cir.1991); _A.H. Robins Co. v. Piccinin_, 788 F.2d 994, 1002, n. 11 (4th Cir.), cert. denied, 479 U.S. 876 (1986); _Robinson v. Michigan Consol. Gas Co._, 918 F.2d 579, 583-84 (6th Cir.1990); _In re Dogpatch U.S.A., Inc._, 810 F.2d 782, 786 (8th Cir.1987); _In re Fietz_, 852 F.2d 455, 457 (9th Cir.1988); _In re Gardner_, 913 F.2d 1515, 1518 (10th Cir.1990); _In re Lemco Gypsum, Inc._, 910 F.2d 784, 788 (11th Cir.1990).

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1995 WL 662663                                                                    Page 5
(Cite as: 1995 WL 662663 (E.D.La.))

> FN7. Indeed, counsel for Dow Chemical
> admitted during oral argument that plaintiffs'
> complaint alleges joint liability and, as such,
> "related to" jurisdiction exists under *Wood.*
> Rather than distinguishing *Wood,* counsel
> instead urged this Court to defer the instant
> ruling.

> FN8. Obviously, before a court could base a
> decision on equitable grounds, it must
> possess jurisdiction over the matter initially
> because "the very act of considering
> equitable grounds subsumes within it a
> predicate finding of jurisdiction, since,
> without jurisdiction, there is no power to
> rule on the equities." *Hanna v. Philadelphia
> Asbestos Co., 743 F.2d 996, 1002 (3d
> Cir.1984).*

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Date of Printing: APR 19,2002

# KEYCITE

CITATION:     Spitfaden v. Dow Corning Corp., 1995 WL 662663 (E.D.La., Nov 08, 1995) (NO. CIV. A. 95-2578)

## History

=>     1    **Spitfaden v. Dow Corning Corp.**, 1995 WL 662663  (E.D.La. Nov 08, 1995) (NO. CIV. A. 95-2578)

## Citing References
### Positive Cases
#### ★★ Cited

2    Tortola Restaurants, L.P. v. Kimberly-Clark Corp., 987 F.Supp. 1186, 1189, 1997-2 Trade Cases  P 71,940, 71940 (N.D.Cal. Aug 29, 1997) (NO. C-97-2327 SI)

### Secondary Sources

3     Wright & Miller: Federal Prac. & Proc. s 3866, _____ Jurisdiction And Power Of The Transferee Court (1986)

4     'MILKING THE DOW': COMPENSATING THE VICTIMS OF SILICONE GEL BREAST IMPLANTS AT THE EXPENSE OF THE PARENT CORPORATION, 29 Rutgers L.J. 121, 153 (1997)

5     THE LONG AND WINDING ROAD FOR SPITZFADEN, LOUISIANA'S BREAST IMPLANT CLASS ACTION:AD ASTRA PER ASPERA, 74 Tul. L. Rev. 1941, 2003+ (2000)

© Copyright West Group 2002

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2002 MAR -6 P 4: 49
[signature]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDRES BARDALES, ET AL.    CIVIL ACTION

VERSUS    NO. 01-3467

WHITEHALL-ROBBINS HEALTH CARE, ET AL.    SECTION "B" (3)

## ORDER AND REASONS

Before the court are plaintiffs Andres and Alzyda Bardales' motion to remand (Document 9), defendants Chattem, Inc. and American Home Product Corp.'s motion to stay (Document 15), Chattem and American Home's motion to vacate order staying transfer of the case (Document 16), and American Home's and Deluxo Co.'s motion to dismiss (Documents 11 and 12). IT IS HEREBY ORDERED that plaintiffs' motion to remand is GRANTED.

**A. Factual background.**

The Bardaleses filed suit in the 24th Judicial District Court for the Parish of Jefferson on October 19, 2001. They alleged that Andres Bardales had sustained personal injuries as a result of his use of the over-the-counter medications Robitussin CF and Dexatrim, which contained the ingredient Phenylpropanolamine (PPA). The Bardaleses named as defendants Whitehall-Robbins

### BARDALES v. WHITEHALL-ROBBINS

Health Care, Chattem, Inc., and Thompson Medical Co., Inc., who allegedly distributed the medications. They also named Walgreen Louisiana Co., Inc., alleging that it "is in the business of distributing Robitussin CF and over-the-counter medications known as Dexatrim products used for weight loss." *See plaintiffs' Petition for Damages at* ¶ 10.

Plaintiffs' Petition alleges that defendants are liable to them under the Louisiana Products Liability Act (LPLA), in negligence, and as a result of their fraud and misrepresentation. They contend that defendants "knew or should have known" that PPA "could cause severe and life-threatening complications and side effects including but not limited to stroke, atrial arrhythmia, vasospasm, and severe elevation of blood pressure." *Id.* at ¶ 16. Plaintiffs further contend that defendants "failed to warn" them of the hazards of PPA, or "concealed [their] knowledge of these hazards" from them. *Id.* at ¶ 17. Plaintiffs specifically alleged a cause of action in redhibition against defendants under La. Civ. Code art. 2520 *et seq.*, claiming that defendants were liable for selling a product warranted as safe and effective when it was not reasonably fit for its intended use. *Id.* at ¶ 15. Plaintiffs prayed for punitive damages, compensatory damages, attorney's fees, and "such other relief as provided for in Louisiana civil code Article 2545 . . . ." *Id.* at prayer, ¶

**C.**

Defendants removed the suit, basing federal jurisdiction on diversity under 28 U.S.C. § 1332. Defendants averred that each of them with the exception of Walgreen is completely diverse in citizenship from the plaintiffs, and that Walgreen was fraudulently joined. Although a conditional transfer order has been issued by the Judicial Panel on Multidistrict Litigation (CTO-6), plaintiffs have opposed the transfer. On December 12, 2001, the court granted plaintiffs' motion to stay transfer of this case pending a hearing on their motion to remand, which was held

on January 16, 2002. Additionally, defendants have moved to stay any ruling on plaintiffs' remand motion pending the decision by the Panel on whether this matter should be transferred.

**B. Analysis.**

**1. Defendants' motion to stay.**

Defendants argue that the court should decline to rule on plaintiffs' remand motion until the Judicial Panel on Multidistrict Litigation renders a decision on whether this case should be transferred to the multidistrict litigation pending in the United States District Court for the Western District of Washington. The court finds that judicial economy is best served in this case by resolving the jurisdictional issue immediately. If federal jurisdiction does not exist, this case should be remanded without the need for further federal proceedings. Consequently, the court denies defendants' motion to stay.

**2. Plaintiffs' motion to remand.**

The general removal statute provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed. 28 U.S.C. § 1441(a). Defendants contend that this action falls within the scope of the diversity statute, which requires complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The parties do not dispute that the amount in controversy exceeds the jurisdictional minimum.[1] Plaintiffs' remand motion argues only that complete diversity does not exist because they named Walgreen as a defendant. Like plaintiffs, Walgreen is a citizen of Louisiana. Defendants argue

---

[1] Plaintiffs' Petition alleges that Andres Bardales sustained "severe, permanent, and disabling injuries to mind and body, including a hemorrhagic stroke. *See* Petition at ¶ 5. Plaintiffs have also requested punitive damages.

1

2

3

DATE OF ENTRY
MAR 2 7 2002



PLAINTIFF'S EXHIBIT
C
tabbies

that Walgreen has been fraudulently joined, and that its presence as a nominal defendant should not destroy diversity.

The test for fraudulent joinder is well established. The "burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). "To establish fraudulent joinder, the party crying fraud must show there is no reasonable probability of recovery against the joined party or that there has been outright fraud in the pleadings of jurisdictional facts." *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000), *cert. denied*, 532 U.S. 972, 121 S. Ct. 1603, 149 L.Ed.2d 470 (2001).

The Buckheres argue that they have a valid redhibition claim against Walgreen. Chapter III, Title 9 of the Louisiana Civil Code provides the purchaser of a product with a cause of action in redhibition. Article 2520 provides generally that "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale." The Civil Code provides different remedies depending on whether the seller knows of the defect. If the seller "knew not of the defect," he "is only bound to repair, remedy, or correct the defect," and if he cannot do so, he must "return the price to the buyer with interest from the time it was paid," and "reimburse him for the reasonable expenses occasioned by the sale . . . ." La. Civ. Code art. 2531. If the seller "knows that the thing he sells has a defect but omits to declare it," the seller "is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages

4

and reasonable attorney fees." *Id.* at 2545.

In this case, plaintiffs invoked La. Civ. Code art. 2545 in their Petition, and alleged that all defendants "knew or should have known" of the hazards of PPA, yet did not disclose them. Plaintiffs' Petition does not present any specific facts demonstrating that Walgreen knew of the dangers of PPA. In *Strickland v. Brown Morris Pharmacy*, No. 96-411, 1996 WL 537716 (E.D. La. Sept. 20, 1996), the court found that similar conclusory allegations about a pharmacy's knowledge of the dangers of Primatine Mist could not support a bad-faith redhibition claim against the pharmacy under La. Civ. Code art. 2545:

There are no facts asserted which would support a finding that Brown Morris [Pharmacy] either manufactured the product in question or knew or should have known that use of Primatine Mist by Ms. Strickland would cause the harm which occurred. Moreover, no facts have been averred which would go to show that Brown Morris knew or should have known that Primatine Mist was an unsafe product in its normal and intended use. All the plaintiff has done in her petition is make conclusory allegations and legal conclusions put forward as factual findings which do not go toward establishing a cause of action.

*Id.* at *2.

Plaintiffs have not adequately pleaded facts giving rise to a bad faith cause of action in redhibition under La. Civ. Code art. 2545. This issue before the court, then, is whether plaintiffs state a claim in redhibition against Walgreen as a good-faith seller. Under the clear terms of La. Civ. Code art. 2531, relief against a good-faith seller includes recovery of the price plaintiffs paid for Robitussin CF and Dexatrim with interest, plus any reasonable expenses occasioned by the sale. Thus, there is a reasonable possibility that plaintiffs may successfully prosecute a cause of action against Walgreen under state law, and Walgreen was not fraudulently joined. *See Kenty v. Boha Brothers Toyota*, No. 00-3101, 2000 WL 1809496, at *2 (E.D. La. Dec. 8, 2000) (denying remand because plaintiffs asserted a viable claim under La. Civ. Code art. 2531 against nondiverse

5

automobile seller), *Scott v. American Tobacco Co.*, 949 F. Supp. 340, 341-44 (E.D. La. 1996) (denying remand because plaintiffs asserted a viable claim under La. Civ. Code Art. 2531 against nondiverse distributors of cigarettes, who were not therefore fraudulently joined).

C.   Conclusion.

Judicial economy is best served in this case by resolving the jurisdictional issue immediately. Walgreen was fraudulently joined only if defendants demonstrate that plaintiffs have no reasonable possibility of recovering against it. The court finds that there is a reasonable possibility that plaintiffs can recover under La. Civ. Code art. 2531 against Walgreen as a good faith seller. Because Walgreen was not fraudulently joined, diversity jurisdiction is not present in this case.

New Orleans, Louisiana, this 6 day of March, 2002.

Mary Ann Vial Lemmon
United States District Judge

6

**C**

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Ernest BARTLEY, et al
v.
BORDEN, INC., et al.

Nos. Civ.A. 96-145, Civ.A. 96-157 to Civ.A. 96-205.

Feb. 13, 1996.

*RULING ON MOTION TO REMAND*

LIVAUDAIS, District Judge.

*1 Plaintiffs [FN1] in the above actions, which have been consolidated, filed petitions in Civil District Court for the Parish of Orleans, seeking to recover for asbestos-related diseases they allegedly developed while exposed during their employment at Avondale Shipyards. Approximately 3000 individual plaintiffs initially filed suit in 1991 and these actions have been grouped into flights for trial. Fifty of these plaintiffs have been selected for trial and an amending petition was filed on December 20, 1995 on behalf of these 50 plaintiffs. Defendants Travelers Insurance Company, Highlands Insurance Company, American Motorists Insurance Company, Commercial Union Insurance Company, Certain Underwriters at Lloyd's London, Steve Kennedy, Albert Bossier, Peter Territo, and John Chantrey, hereinafter referred to collectively as "Avondale interests", filed a notice of removal and removed these actions to this court. Plaintiffs now seek remand. Also joining in the motion to remand is defendant Owens-Corning Fiberglas Corporation ("Owens-Corning").

The first issue to be addressed is whether the court has jurisdiction to consider the motions to remand, filed respectively by the plaintiffs on January 24, 1996 and by defendant Owens-Corning on January 26, 1996. On February 2, 1996, the Judicial Panel on Multidistrict Litigation issued a conditional transfer order in *Re Asbestos Products Liability Litigation,* Docket No. 875, transferring these actions to the Eastern District of Pennsylvania because they involve questions of fact which are common to the actions previously transferred. Approximately 56,000 civil actions have thus far been transferred to the Eastern District of Pennsylvania. The conditional transfer

order states that the order does not become effective until filed with the Clerk of the Eastern District of Pennsylvania, and that the transmittal of the order shall be stayed fifteen days from its entry, with the stay being continued if a party files an opposition to the transfer within the fifteen day period until further order of the MDL Panel.

Rule 18 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation provides that:

The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court. A transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective when the transfer or remand order is filed in the office of the clerk of the district court of the transferee court.

Thus, this Court has jurisdiction of these actions to consider the motions to remand during the fifteen day period.

The notice of removal recites that the basis of federal removal jurisdiction is that the injured workers were all covered by the federal Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901, *et seq.,* and that "[t]he pervasive and all-encompassing nature of the LHWCA, when viewed in relation to the instant dispute, gives rise to the doctrine of federal pre- emption and accordingly vests this Court with federal question jurisdiction under 28 U.S.C. § 1331." Diversity of citizenship is not available as a basis of subject matter jurisdiction.

*2 The plaintiffs' petitions do not state a claim for relief under the LHWCA. They seek damages in tort under Louisiana law from various manufacturers of asbestos-containing products, from co-employees who were safety personnel or supervisors at Avondale, and from their insurers. The Louisiana Workers Compensation Act allows ordinary tort claims against co-employees for negligent acts committed before October 1, 1976. The LHWCA immunizes co-employees from tort claims.

Plaintiffs' and manufacturer Owens-Corning seek remand primarily because there is no federal question jurisdiction. [FN2] Since the petitions do not state a claim for relief under any federal laws, the only possible basis for federal question jurisdiction is Avondale's assertion of a defense available to it under the LHWCA. A federal defense generally does not

PLAINTIFF'S
EXHIBIT
D

1996 WL 68482
(Cite as: 1996 WL 68482 (E.D.La.))

Page 3

provide a basis for removal of an action under the "well-pleaded complaint" rule, which is summarized in *Aaron v. National Union Fire Ins. Co. of Pittsburgh, 876 F.2d 1157 (5th Cir. 1989)*, as follows:

A defendant may remove a state court action to federal court only if the action could have originally been filed in the federal court. *Caterpillar v. Williams, 482 U.S. 386, 391-92, 107 S.Ct. 2425, 2429 (1987); 28 U.S.C. § 1441(a)*. Thus, where there is no diversity jurisdiction, a federal question must be present in order for removal to be proper. *Caterpillar, 107 S.Ct. at 2429*. The well-pleaded complaint rule places even further restrictions on a defendant's ability to remove a case from state court. The rule provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination, and if, on its face, such a complaint contains no issue of federal law, then there is no federal question jurisdiction. *Id.; Franchise Tax Board v. Laborers Vacation Trust, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846 (1983)*. The fact that a federal defense may be raised to the plaintiff's action--even if both sides concede that the only real question at issue is created by a federal defense--will not suffice to create federal question jurisdiction. *Id at 12, 103 S.Ct. at 2847; Power v. South Central United Food & Commercial Workers Unions, 719 F.2d 760, 764 (5th Cir. 1983)*. Thus, the general rule provides that a federal defense to a state law claim does not create removal jurisdiction.

There are exceptions to the well-pleaded complaint rule and the one at issue here is the complete preemption doctrine. First enunciated in *Avco Corp. v. Aero Lodge No. 735*, 290 U.S. 557, *88 S.Ct. 1235 (1968)*, this doctrine provides that if federal law so completely preempts state law, the plaintiff's complaint is recharacterized as stating a federal cause of action. In *Avco*, the Supreme Court examined the jurisdictional statement in the Labor Management Relations Act ("LMRA") and determined that an action under § 301 of the LMRA for violation of a collective bargaining agreement is controlled by federal substantive law even if filed in state court. *390 U.S. at 560, 88 S.Ct. at 1237*.

*3 The question whether this doctrine of complete federal pre-emption applies to other federal statutes was addressed in *Metropolitan Life Ins. Co. v. Taylor*, 418 U.S. 58, *107 S.Ct. 1542 (1987)*. The *Taylor* Court indicated reluctance to afford other federal statutes with the "extraordinary pre-emptive power" found in § 301 of the LMRA, but compared the federal law at issue before it, the Employee

Retirement Income Security Act of 1974 (ERISA), *29 U.S.C. § 1001 et seq*, with the LMRA. In reaching the conclusion that the complaint, which purported to only raise state law claims, was necessarily federal, the *Taylor* Court specifically noted that ERISA's civil enforcement provisions closely paralleled that of the LMRA, that the legislative history of the Act indicated Congressional intent to consider all ERISA actions, whether brought in state or federal courts, as arising under federal law, specifically comparing it to the LMRA, and that the civil enforcement scheme created a federal cause of action, similar to that of the LMRA. *481 U.S. 65-66, 107 S.Ct. at 1547-1548*. Thus, under *Taylor*, all complaints seeking redress for violation of employee welfare benefit plans state federal causes of action and are pre-empted by ERISA. [FN3]

In a concurrence, Justice Brennan warned that the *Taylor* holding is narrow, and specifically does not adopt a broad rule that "*any* defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction," but that removal jurisdiction is present only when "Congress has *clearly* manifested an intent to make causes of action ... *removable to federal court*." He suggested that in the absence of such a clear intent in other statutes, the wise course is remand. *481 U.S. 67-68, 107 S.Ct. at 1548*.

The Fifth Circuit addressed precisely the question before this Court in *Aaron v. National Union Fire Ins. Co. of Pittsburg, 876 F.2d 1157 (5th Cir. 1989)*. The *Aaron* court considered whether the LHWCA falls under the *Avco* exception to the well-pleaded complaint rule such that federal law completely pre-empts all claims filed by workers covered under the LHWCA for employment-related injuries. Aaron's survivors filed a wrongful death action in Louisiana state court against the manufacturer of equipment which fatally injured him, the stevedoring company which employed Aaron, and the harbor and terminal where he was employed for intentional and negligent actions they allege were the cause of his death occurring at work after being struck by a front-end loader. Aaron, as are the plaintiffs in these consolidated actions, was covered by the LHWCA, but the Aaron plaintiffs (as do the present plaintiffs) alleged that he had a right to elect a remedy in an area of concurrent state and federal jurisdiction. The removing defendants there (and here) argued that the LHWCA was the plaintiffs' exclusive remedy, and the district court agreed, denying remand.

*4 The Fifth Circuit carefully studied the question whether the LHWCA was a federal statute to which

the *Avco* complete pre-emption applied. The *Aaron* court examined the three factors relied upon by the Supreme Court in *Taylor* in reaching the decision that ERISA completely pre-empted all state law claims and afforded the right of removal. Those factors are:

    1. The statute must contain a civil enforcement provision that creates a federal cause of action;

    2. The statute must contain a specific jurisdictional grant; and

    3. The legislative history of the statute must indicate clear congressional intent to make the cause of action removable.

Applying these factors to the LHWCA, the *Aaron* court concluded that it did not completely pre-empt state law and does not provide removability when asserted as a defense. The decision observed that the LHWCA has no civil enforcement provision similar to § 301 of the LMRA, as it does not create a cause of action in either federal or state court, it contains no specific jurisdictional grant as is found in LMRA and ERISA, and the legislative history contains no clear indication of congressional intent to create removal jurisdiction. Thus, in accordance with its previous precedent in *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1183 (5th Cir. 1984), which held that an LHWCA defense could not form the basis of federal subject matter jurisdiction for removal, *Aaron* applied the well-pleaded complaint rule, found removal improper, and remanded the action. *Aaron* has never been overruled.

The Avondale interests acknowledge that the LHWCA does not meet the three factor *Aaron* test and that it has never been expressly overruled, but argues instead that *Aaron* was improperly decided and that it has been "abandoned" in favor of a single factor "manifest Congressional intent to pre-empt" test in the Fifth Circuit and that decisions from the United States Supreme Court have effectively eradicated it. After a careful and detailed consideration of the arguments espoused by the Avondale interests, the Court concludes that they are flawed and that *Aaron* is still binding precedent which compels the conclusion that the well-pleaded complaint rule applies, the LHWCA does not provide removability as "complete pre-emption" of state law, and that the actions must be remanded.

Several cases are cited by the Avondale interests as illustrative of the fact that the *Aaron* three factor test has been abandoned. None of the cases cited concern the LHWCA. Further, the short-hand used by the various courts in examining whether a federal statute affords "complete pre-emption" of state law such that the claim is removable despite a well-pleaded

complaint which alleges only state law causes of action may well be "manifest Congressional intent to pre-empt state law." This does not lead to the conclusion asserted by the Avondale interests that the three factors discussed in *Taylor* and *Aaron* are no longer valid considerations to determine whether there is a clearly manifested congressional intent to create such complete pre-emption. It can hardly be disputed that the, inclusion of a civil enforcement provision creating a federal cause of action, a specific jurisdictional grant, and legislative history indicating unambiguous congressional intent to make the action removable reflect this phrase intoned by the removing defendants, i.e., "manifest Congressional intent to pre-empt." Unfortunately for the removing defendants, the LHWCA does not fit in the box they are trying to place it in, as determined by *Aaron* over six years ago. Recent decisions do not shy away from this result. *See, e.g., Masters v. Swiftships Freeport, Inc.*, 867 F. Supp. 555, 557 (S.D. Tex. 1994).

\*5 Accordingly, for the above and foregoing reasons,

IT IS ORDERED that the motions of plaintiffs and defendant Owens-Corning Fiberglas Corp. to remand be and are hereby GRANTED.

### *ORDER*

Considering the record, the motion to remand, all memoranda submitted by the parties, and for the reasons this date assigned,

IT IS ORDERED that these consolidated Civil Actions be REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana.

    FN1. The individual plaintiffs whose suits were removed and whose civil actions are numbered 96-145, 96-157 through 96-205, are Ernest Bartley, Jr., Nicholas Bieber, Aristide Becnel, Jr., Kernan Brown, Rosemary Cannon and Zelma C. Ellsworth, as spouse, heirs and survivors of the deceased, John Cannon, Jr., James V. Carroll, Amos K. Collins, Anthony Contavaspire, Floyd Costley, Delmo Crow, Mary Decota, Glenn Howard Decota, Delores Threeton and William Decota, as spouse, heirs and survivors of the deceased, Willie Decota, Joseph Dicket, Houston B. Dominique, Garland A. Dufrene, Marion Dufrene, Ronald Dumas, Nolan Dyer, Stanley Eusea, Perry J. Gautier, Oscar B.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Goff, Sr., Joseph Granier, Oscar J. Granier, John P. Guillot, Jack Joseph Hebert, Melvin Hebert, Joseph E. Higdon, Ralph J. Hymel, Irvin Jackson, Edgar Johnson, Sr., Oliver J. Kraemer, Charles T. Kuhn, James S. Landeche, Jr., Melvin J. Lassere, Robert J. Letulle, Sr., Anne Powers, Toni Ann Moragas and Patricia Grishaw, as spouse, heirs and survivors of the deceased, John J. Livaccari, Lester A. Mahler, Tex J. Martinez, Alfred Maten, Jr., Wallace Earl McGill, Horace J. Porche, Charles "Jessie" Rodrigue, Leroy Joseph Rome, Ozie J. Rome, Royan Jeffery, Doris St. Juniors, Audrey Schlaudecker, Darlene A. Schlaudecker, Roy L. Schlaudecker, Donna L. Schlaudecker, Kay A. Schlaudecker, and Randy T. Schlaudecker, as spouse, heirs and survivors of the deceased, Roy L. Schlaudecker, Monroe Shelton, Kenneth J. Stieffel and Claude Walls.

FN2.  Non-removing defendant Owens-Corning Fiberglas Corp. also seeks remand because it did not join in the notice of removal and because removal was untimely. The Court's discussion of removal jurisdiction in this action pretermits further consideration of these issues.

FN3.  The Avondale interests contend that the *Aaron* case improperly failed to follow *Taylor,* but *Taylor* plainly analyzes the ERISA statute, comparing it to LMRA, using the three factors recognized by *Aaron* as indications of manifest congressional intent to pre-empt. *See, Taylor, 481 U.S. at 64-66, 107 S.Ct. at 1547* ("In the absence of explicit direction from Congress, this question would be a close one... Even with a provision ... that lies at the heart of a statute with the unique pre-emptive force of ERISA ..., however, we would be reluctant to find that extraordinary pre-emptive power, such as has been found with respect to § 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. But the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of § 301 of the LMRA .... The presumption that similar language in two labor law statutes has a similar meaning is

fully confirmed by the legislative history of ERISA's civil enforcement provisions.")

END OF DOCUMENT

Date of Printing: APR 19,2002

## KEYCITE

CITATION:    Bartley v. Borden, Inc., 1996 WL 68482 (E.D.La., Feb 13, 1996) (NO. CIV.A. 96-145, CIV.A. 96-159, CIV.A. 96-162, CIV.A. 96-157, CIV.A .96-160, CIV.A. 96-163, CIV.A. 96-158, CIV.A. 96-161, CIV.A. 96-164)

### History

=>    1    **Bartley v. Borden, Inc.,** 1996 WL 68482  (E.D.La. Feb 13, 1996) (NO. CIV.A. 96-145, CIV.A. 96-159, CIV.A. 96-162, CIV.A. 96-157, CIV.A .96-160, CIV.A. 96-163, CIV.A. 96-158, CIV.A. 96-161, CIV.A. 96-164)

### Citing References
### Secondary Sources

2    Wright & Miller: Federal Prac. & Proc. s 3866, ____ Jurisdiction And Power Of The Transferee Court (1986)

© Copyright West Group 2002

**C**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Mark WALL, M.D., et al., Plaintiffs,
v.
MERRILL LYNCH PIERCE FENNER & SMITH,
INC. et al., Defendants.

**No. 92 Civ. 0387 (WK).**

March 26, 1992.

Steven G. Storch, Janis Etinger, Beigel & Sandler, Ltd., New York City, for plaintiffs.

Howard Schiffman, R. Bruce Holcomb, Julie Reiley, Dickstein, Shapiro & Morin, New York City, for" Oxford" defendants.

Warren H. Colodner, Lord Day & Lord, Barrett Smith, New York City, for Merrill Lynch.

*MEMORANDUM AND ORDER*

WHITMAN KNAPP, District Judge.

*1 Defendants move to transfer this action, which they have recently removed from New York Supreme Court, to the District Court for the District of Maryland as provided by 28 U.S.C. § 1404(a). They assert that 28 U.S.C. § § 157(a) and 1334(b) give us jurisdiction over this matter, and thus the power to transfer, because the state court action is "related to" a bankruptcy proceeding in Maryland involving as debtors two (of five) limited partnerships set up and marketed by defendants. Plaintiffs move that we remand the action to the state court for lack of subject matter jurisdiction.

The facts, briefly, are as follows. Plaintiffs are 27 investors from around the country who invested five limited partnerships created and marketed by defendants. [FN1] Each of these limited partnerships, none of which are defendants in this action, have had financial difficulties: two have already been reorganized by a Maryland Bankruptcy Court; two are undergoing reorganization in that same court; and one reorganized without the benefit of court protection. *See* Lowe Aff. at ¶ 3. Plaintiffs brought suit in New York State court alleging that in selling the partnerships, and then later in obtaining

shareholder approval of the bankruptcy reorganization plans, defendants' acts with respect to plaintiffs were fraudulent, negligent, and constituted a breach of fiduciary duty. In so claiming plaintiffs alleged at paragraph 37 of their state court complaint that "since the [recklessly and knowingly false] projections formed the basis for the limited partners' approval of the plan of reorganization such plan is unenforceable by virtue of the fraud and deceit of defendants."

In essence, defendants' jurisdictional arguments hinge on the language in 28 U.S.C. § 157(a) limiting Bankruptcy Court jurisdiction to issues that are "related to" a bankruptcy and in 28 U.S.C. § 1334(b) giving the district courts "original but not exclusive jurisdiction of all civil proceedings ... related to cases under title 11." Because this action involves non-debtors, we would have jurisdiction only if plaintiffs' claims are "related to" and would affect the debtor or the debtor's estate. [FN2] "Generally, Bankruptcy Courts lack jurisdiction to adjudicate controversies which do not involve the debtor or property of the debtor, unless the court cannot perform its administrative duties without resolving the controversy. *In re S & S 31 Flavors* (Bkrtcy.S.D.N.Y.1990) 113 B.R. 157, 161; *In re Stein & Day* (Bkrtcy.E.D.N.Y.1990) 118 B.R. 202, 204.

Defendants make three basic claims in positing this relatedness. First, they argue that the state suit would affect the estates of the two non-party partnerships whose reorganization plans have been approved because the partnership agreements include an indemnification clause that would allegedly entitle defendants to seek assets from the debtor's estate if plaintiffs get a judgment. Second, plaintiffs released defendants "to the fullest extent permitted by law." Defendants seem to argue that the only way the state court could set the release aside is by declaring the plans "unenforceable," which would be a direct assault on the Bankruptcy Court's orders. And third, defendants portray plaintiffs' state court complaint as a collateral attack on the reorganization plans of the two non-party limited partnerships approved by the Maryland Bankruptcy Court because it alleges that plan is "unenforceable by virtue of the fraud and deceit of defendants."

*2 As an initial matter, we are intrigued and attracted by defendants' suggestion that Bankruptcy Judge Derby, who handled the reorganization in the Maryland Bankruptcy Court of the non-party limited partnerships, is the best person to decide the question of jurisdiction by dint of his obviously superior

PLAINTIFF'S
EXHIBIT
E

1992 WL 77625
(Cite as: 1992 WL 77625 (S.D.N.Y.))

familiarity with the parties and issues involved. However, such a suggestion merely begs the question of subject matter jurisdiction, for we cannot transfer a case to the judge best placed to determine whether there is in fact federal jurisdiction unless we assume that the jurisdiction exists so to do, or simply ignore the issue altogether. We are not inclined to follow either of these courses of action. The district court is not a legal way station, nor subject matter jurisdiction something that can be invoked soley to assist the transfer of a case from court to court. And, indeed, if we were so to put the cart before the horse, we would thereby also deny plaintiffs not only the forum of their choice but perhaps the possibility of a jury trial, all without ever having determined whether the action was indeed "related to" the Maryland bankruptcy so as to confer jurisdiction. [FN3]

Turning to defendants' substantive contentions that this action is "related to" the bankruptcy because it affects the estate, we reject defendants' indemnification clause argument as without substance, since that clause specifically excepts the fraud or fiduciary breach plaintiffs here allege.

Moreover, while plaintiffs apparently signed a document that released defendants "to the fullest extent permitted by law," we are confident that the state court can calculate that "extent." And, as plaintiffs observe, defendants are quite able to pose the release as an affirmative defense. If the state court finds that the release does not extend so far as to protect defendants from this complaint, then the obvious and sensible result is a money judgment against defendants, and not an inexplicable reaching out by the state court to declare the plans unenforceable. Such a judgment against the non-debtor defendants is in no conceivable way connected to bankruptcy plans reorganizing non-party debtors.

Finally, the mere fact that plaintiffs made the maladroit claim that the state court should declare unenforceable a Maryland Bankruptcy Court's reorganization plan cannot possibly in itself create federal question jurisdiction as a collateral attack on the Bankruptcy Court's orders. Again, we see no reason why a state court would have to declare a bankruptcy plan unenforceable in order to find that parties completely separate from the debtor had acted fraudulently, negligently, or breached their fiduciary duties. That plaintiffs could then take such a judgment to the Bankruptcy Court in hopes of upsetting the plan is irrelevant.

While a money judgment in New York against defendants would, if plaintiffs could collect on it,

make them poorer and thus possibly diminish their ability to run the reorganized partnerships (or carry out the reorganization of the two partnerships currently seeking bankruptcy protection), and thus have an indirect impact on the debtor, we cannot say that such an outcome is truly "related to" a bankruptcy. *See, e.g. In re Verrazano Holding Corp.* (Bkrtcy.E.D.N.Y.1988) 86 B.R. 755, 762 (recovery against non-debtors, even assuming an indemnification or contribution claim against the debtor, is not "related to" so as to create federal jurisdiction). Such reasoning would then require that we find subject matter jurisdiction over tort claims resulting from a local automobile crash, or even divorce actions, if the transfer of wealth from one litigant to another would somehow affect a debtor in bankruptcy. We are unwilling to go so far.

*3 Finding no subject matter jurisdiction, we remand the action to the state court.

SO ORDERED.

> FN1. The defendants consist of: Merrill Lynch, the selling agent of the partnerships; Reznick, Fedder & Silverman, the partnerships' accounting firm; and the so-called "Oxford" defendants, a group of approximately seven corporations, some of which own others, that are ultimately owned and controlled by defendants Leo Zickler and Leo Lippman, *see* Def. Exh. A, and allegedly also by defendants David Lewis and Donald Boardman.

> FN2. Defendants make the additional argument that plaintiffs' "attack" on the Bankruptcy Court's orders is a collateral attack against that court creating federal question jurisdiction under 28 U.S.C. § 1331. As discussed below, since the debtors affected by the Bankruptcy Court's orders are not parties to this action, and since a money judgment in state court against defendants would in no way require that court to invalidate a bankruptcy plan, we find this contention to be without merit.

> FN3. In this connection defendants acknowledged at the oral hearing that they could have sought an order from Bankruptcy Judge Derby enjoining plaintiffs' prosecuting this action in New York, but

that it was more convenient for them to remove the case to the district court and bring the instant motion. Needless to say, convenience is not sufficient to create jurisdiction. Defendants also argue on page two of their Supplemental Memorandum that: It has been specifically held that the proper procedure for a state court acion to reach a bankruptcy court where a related action is pending is ... to first remove the state case to the federal district court where the action was filed and then to transfer the case pursuant to 28 U.S.C. § § 1404 and 1404 to the district court where the related bankruptcy acion is pending.

This argument is problematic in several respects. The cases defendants cite to support this proposition do not apply to the facts before us--we have not determined whether subject matter jurisdiciton exists, yet jurisdiction in defendants' citations was either specifically determined or clear. *See Goldberg Holding Corp. v. NEP Productions, Inc.* (S.D.N.Y.1988) 93 B.R. 33, 33-34(transfer motion referred to Southern District Bankruptcy Judge to determine the issue of whether the case was "related to" a bankruptcy proceeding; holds only that 28 U.S.C. § 1404 and not § 1412 is applicable transfer statute); *Consolidated Lewis Investment Corp. v. First nat'l Bank of Jeffferson Parish, et al.* (E.D.La.1987) 74 B.R. 648, 651 (holding that removal and transfer (although under § 1412) is the "proper procedure when removing a state court action across federal district court lines" after finding basis for removal because action "related to" bankruptcy proceeding where plaintiff is debtor and one of defendants a creditor in bankruptcy, plaintiff claimed that defendants caused the bankruptcy, and plaintiff sought property of the estate as part of its remedy).

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Date of Printing: APR 19,2002

## KEYCITE

CITATION:    **Wall v. Merrill Lynch Pierce Fenner & Smith, Inc., 1992 WL 77625 (S.D.N.Y., Mar 26, 1992) (NO. 92 CIV. 0387 (WK))**

### History

=>    1    **Wall v. Merrill Lynch Pierce Fenner & Smith, Inc., 1992 WL 77625  (S.D.N.Y. Mar 26, 1992) (NO. 92 CIV. 0387 (WK))**

### Citing References
### Positive Cases
★★★ **Discussed**

▷    2    Weisman v. Southeast Hotel Properties Ltd. Partnership, 1992 WL 131080, *2+ (S.D.N.Y. Jun 01, 1992) (NO. 91 CIV. 6232 (MBM))

★★ **Cited**

3    Tortogs, Inc. v. Insurance Company of North America, 1993 WL 339269, *2 (S.D.N.Y. Sep 01, 1993) (NO. 93 CIV. 1739 (LMM))

**H**    4    In re Masterwear Corp., 241 B.R. 511, 516 (Bankr.S.D.N.Y. Nov 05, 1999) (NO. 97 B 47084 (SMB), 97 B 47087 (SMB), 97 B 47085 (SMB), 97 B 47088 (SMB), 97 B 47086 (SMB), 98-8724A)

© Copyright West Group 2002

1996 WL 278819                                                                                          Page 2
(Cite as: 1996 WL 278819 (E.D.Pa.))

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

United Richard W. RUTT, Plaintiff,
v.
PRUDENTIAL INSURANCE COMPANY OF
AMERICA and James G. Dickinson, Defendants.

No. CIV.A. 96-3658.

May 23, 1996.

Joseph F. Roda, Roda & Nast, Lancaster, PA.

John F. Smith, Reed Smith Shaw & McClay,
Philadelphia, PA.

MEMORANDUM

TROUTMAN.

*1 The above-captioned action, alleging common law claims for breach of contract, fraud, negligent misrepresentation, bad faith and claims for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, was commenced in the Lancaster County Court of Common Pleas in October, 1993.

Plaintiff alleges that defendant Prudential breached its contract with him by failing to provide insurance coverage in accordance with the promises allegedly made to him by defendant Dickinson, the Prudential agent with whom he dealt. In addition, plaintiff asserts claims against Prudential for fraud, negligent misrepresentation and bad faith conduct based upon Prudential's vicarious liability for the conduct of Dickinson, its agent, and also seeks to prove that Prudential is directly liable for such claims as a result of allegedly fraudulent and deceptive marketing practices through which Prudential encouraged its agents to sell additional and/or different, more expensive and less beneficial life insurance policies to Prudential insureds and prospective insureds.

On May 6, 1996, the state court entered an order permitting plaintiff to conduct discovery directed toward establishing such a "pattern and practice" of bad faith conduct in the marketing of insurance policies on the part of Prudential. One week later, on May 13, 1996, Prudential, joined by Dickinson, removed this action to the United States District Court for the Eastern District of Pennsylvania, simultaneously filed a motion with the Multidistrict Litigation Panel to transfer this action to the District of New Jersey, asserting that it contains factual questions in common with *In re: The Prudential Insurance Company of America Sales Practices Litigation,* Master Docket No. 95-4704; MDL No. 1061, and sought a stay of all proceedings in this Court pending a ruling by the Panel on the transfer motion.

Defendants contend that "the district courts of the United States," not specifically this Court, acquired jurisdiction over this action, and that it thereby became removable as a result of the aforementioned discovery order. Defendants assert that the Lancaster County court expanded the scope of the litigation via its discovery order and that it consequently became "so related" to the Multidistrict Litigation (MDL) matter pending in the District of New Jersey as to make it part of the same "case or controversy."

Thus, Prudential does not assert that this Court has original jurisdiction of this action under the general or specific federal question jurisdictional statutes, or under the diversity jurisdiction statute. Instead, Prudential asserts that federal subject matter jurisdiction is here conferred on the "district courts", in general, based upon the supplemental jurisdiction statute, 28 U.S.C. § 1367(a), which provides that,

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*2 Since there is no similar action pending in this Court, Prudential necessarily contends that our jurisdiction, as one of the "district courts", is derived from the original jurisdiction of the District of New Jersey and other district courts over similar cases which have already been transferred to the District of New Jersey for consolidated or coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. Indeed, just as Prudential does not suggest that this particular Court has original jurisdiction of this action, it does not seek to have plaintiff's claims adjudicated here. Rather, Prudential removed the action only as a first step in its plan to have this action joined to the MDL matter pending in the District of New Jersey, and

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

PLAINTIFF'S
EXHIBIT
F

1996 WL 278819                                                                          Page 3
(Cite as: 1996 WL 278819 (E.D.Pa.))

requests that this Court do nothing but stay the matter until, as Prudential expects, it is transferred by order of the Multidistrict Litigation Panel.

Presumably, Prudential further contends that its interpretation of supplemental jurisdiction is either sufficient to satisfy the jurisdictional requirements found in the removal statute, 28 U.S.C. § 1441, or that § 1367 supersedes § 1441, which provides in pertinent part as follows:

(a) Except as otherwise expressly provided by Act of Congress, any civil action of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district courts of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

Since Prudential's theory of subject matter jurisdiction is novel, to say the least, we conclude that it would be imprudent to stay consideration of that question pending a ruling by the Multidistrict Litigation Panel on defendant's motion for a transfer of this action to the District of New Jersey. Contrary to defendant's suggestion, the jurisdictional issue here involved does not appear to be one which is likely to recur in the context of the pending MDL cases and, therefore, we conclude that it is appropriate to make the required inquiry into our own subject matter jurisdiction before any other adjudication is made in this matter, and, indeed, before plaintiff files and Prudential responds to a motion to remand for want of subject matter jurisdiction, and/or any defect in removal procedure.    As noted in *Packard v. Provident National Bank*, 994 F.2d 1039, 1049 (3rd Cir.1993), "It is axiomatic that federal courts are courts of limited jurisdiction, and as such, are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any

case."    Moreover, we have a statutory duty to inquire into our jurisdiction of cases removed from state court pursuant to 28 U.S.C. § 1447(c), which provides that, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."    *See also, Liberty Mutual Insurance Company v. Ward Trucking Corp.*, 48 F.3d 742 (3rd Cir.1995).

*3 We begin with the premise that § 1441 alone governs removal of actions from state to federal court, and, by its explicit terms, provides that only civil actions of which the district courts have *original* jurisdiction may be removed.    Thus, Prudential's failure to assert any basis for this Court's original jurisdiction is sufficient in itself to remand the matter under § 1447(c) for failure to properly assert subject matter jurisdiction.    In its notice of removal, Prudential does not invoke any basis for original jurisdiction of the federal courts over this action. Rather, it notes that the District of New Jersey has original jurisdiction over the MDL matter, which purportedly involves claims properly in federal court pursuant to both the federal question and diversity jurisdiction statutes.    As noted, however, Prudential's only basis for federal subject matter jurisdiction of this action is its assertion that the original jurisdiction of the District of New Jersey confers supplemental jurisdiction of this action on, apparently, all district courts.

In the first instance, we note that supplemental jurisdiction, by its terms, is not original jurisdiction, and, therefore, cannot satisfy the jurisdictional prerequisite of § 1441(a).    As all the commentaries and caselaw construing § 1367 make clear, the supplemental jurisdiction statute was enacted to codify longstanding judicial doctrines of pendent and ancillary jurisdiction which, prior thereto, permitted federal courts to adjudicate certain claims lacking an independent, *i.e.*, original, basis for subject matter jurisdiction. *See, e.g., Lyon v. Whisman*, 45 F.3d 758 (3rd Cir.1995).

Second, even if, under some circumstances, supplemental jurisdiction pursuant to § 1367 might support removal of a closely related action to the district court in which the federal claim is pending, such circumstances cannot possibly exist with respect to this action.    Prudential here contends that this Court can exercise supplemental jurisdiction based upon the close relationship of this action to one pending not in this court, but in a different district. Despite the seemingly broad terms of § 1367 in referring to the supplemental jurisdiction of "the district courts", there is nothing in any case or

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

1996 WL 278819                                                                    Page 4
(Cite as: 1996 WL 278819 (E.D.Pa.))

commentary disclosed by the Court's research which supports Prudential's contention that an action may be removed to federal court, or that a district court may otherwise acquire subject matter jurisdiction of a claim not within its original jurisdiction by virtue of the pendency of a related action in another district court. To accept Prudential's argument in this action would effectively confer federal subject matter jurisdiction on any claim, without regard to either federal question, diversity, or another statutory basis for jurisdiction, if a district court, somewhere, has original jurisdiction of a similar claim.

In addition, we note that Prudential's attempt to use the Lancaster County court's discovery order and the pendency of the MDL action to support removal of this action is procedurally, as well as substantively, defective. Relevant precedent is quite clear with respect to the requirement that removal of an action must be based upon a pleading, *i.e.,* a document "of the type filed with a court", which provides adequate information from which the jurisdiction of the district court may be determined. *Foster v. Mutual Fire, Marine and Inland Insurance Co., 986 F.2d 48, 54 (3rd Cir.1993). See, also, Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 353 (3rd Cir.1995)* ("Under the well-pleaded complaint rule, a cause of action 'arise under' federal law and removal is proper, only if a federal question is presented on the face if the plaintiff's properly pleaded complaint.")

*4 Here, it is obvious that there is no pleading or other document from which federal subject matter jurisdiction may be determined. Prudential could not overcome such rule even if we were to credit its argument with respect to the propriety of invoking supplemental jurisdiction under the circumstances of this case. The state court's discovery order, which Prudential contends made this action removable, does not, on its face, support federal subject matter jurisdiction. Prudential, therefore, was required to argue that such order, in conjunction with a pending MDL matter not before this Court, combine to confer subject matter jurisdiction of this action. The need for such extrapolation provides another and independent basis for concluding that removal was improper for want of subject matter jurisdiction.

Our rejection of Prudential's contentions concerning the appropriate use of supplemental jurisdiction, as well as the procedural defect noted eliminate any possible basis for subject matter jurisdiction, and, hence, for proper removal of this action from the Lancaster county Court of Common Pleas. Consequently, we will forthwith remand this matter to that court. An appropriate order follows.

ORDER

And now, this day of May, 1996, upon review of the pleadings in the above- captioned action and upon consideration and interpretation of the law applicable to subject matter jurisdiction with respect to both original and supplemental jurisdiction, the Court concludes that jurisdiction over the subject matter of the above-captioned action is lacking, and, therefore, IT IS HEREBY ORDERED that this matter is REMANDED to the Court of Common Pleas of Lancaster County, Pennsylvania, pursuant to 28 U.S.C. § 1447(c).

END OF DOCUMENT

Date of Printing: APR 19,2002

## KEYCITE

CITATION:    **Rutt v. Prudential Ins. Co. of America, 1996 WL 278819 (E.D.Pa., May 23, 1996) (NO. CIV.A. 96-3658)**

### History

=>    1    **Rutt v. Prudential Ins. Co. of America, 1996 WL 278819  (E.D.Pa. May 23, 1996) (NO. CIV.A. 96-3658)**

### Citing References

No references were found within the scope of KeyCite's citing case coverage.

© Copyright West Group 2002

Defense Counsel Journal
July, 1999

**Feature**

**\*341 FROM THE HORSE'S MOUTH: THE WORKINGS OF THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

John F. Nangle [FNa1]

Copyright © 1999 by the International Association of Defense Counsel; John F.

Nangle

**Cases involving common questions of fact are assigned to one district court** for pretrial proceedings, but under Lexecon they can't be tried there

TODAY'S Judicial Panel on Multidistrict Litigation consists of seven district judges designated by the Chief Justice of the United States. The present panel members, no two of whom are permitted by the enabling statute, 28 U.S.C. § 1407, to be from the same circuit, are William B. Enright, Southern District of California; Clarence A. Brimmer, District of Wyoming; John F. Grady, Northern District of Illinois; Barefoot Sanders, Northern District of Texas; Louis C. Bechtle, Eastern District of Pennsylvania; and John F. Keenan, Southern District of New York. I have the honor to serve as chairman of the panel.

During the statistical reporting year ending September 30, 1998, the panel took action in 124 of the 1,256 multidistrict dockets that had been created under Section 1407 since the panel's inception in 1968. A total of 651 panel orders were filed.

**STATUTORY DUTIES**

The panel is charged with a number of statutory duties. First, under Section 1407, it has the responsibility of (1) identifying civil actions pending in different federal courts involving one or more common questions of fact, (2) determining, after briefing and hearings, whether any of those actions should be transferred to a single district for coordinated or consolidated pretrial proceedings, and (3) selecting, with the consent of the transferee district court, the judge or judges before whom the centralized pretrial proceedings should be conducted.

During the 1998 reporting year, the panel ordered centralization of 16,940 actions, consisting of 15,735 transferred actions and 859 actions originally filed in transferee districts. These centralized actions embrace both actions in new dockets and "tag-along" actions that were filed outside the transferee district and added to previously established dockets by subsequent Section 1407 transfer. A tag-along action, as defined in Rule 1.1 of the panel's Rules of Procedure, is a "civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407."

Tag-along actions that are originally filed in the transferee district are included in Section 1407 proceedings at the transferee court level and do not require action by the panel. The panel denied Section 1407 centralization in 283 actions during the 1998 reporting year, including both actions in new dockets and potential tagalong actions in previously established dockets.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

PLAINTIFF'S
EXHIBIT
G

28 U.S.C. § 2112(a) assigns one more task to the panel--that of designating the *342 court of appeals to hear appeals of federal agency rulings in certain instances in which petitions for review have been filed in more than one circuit. During 1998, the panel designated the appropriate circuit court for appeals of certain orders entered by the Environmental Protection Agency, the Federal Communications Commission, and the National Labor Relations Board.

## CLASSIFICATION OF DOCKETS

The panel classifies its dockets into several general areas:
. air and common disasters
. antitrust
. contract
. employment practices
. patent and trademark
. products liability
. securities law
. miscellaneous

A brief review of the activity during calendar year 1998 in some of the panel's more prominent litigations will serve to illustrate the range and complexity of the actions that come before it. The panel considered motions for transfer in new dockets involving (1) the August 1997 air crash near Agana, Guam; (2) antitrust conspiracies in the markets for oil, toys, compact discs, and various industrial products; (3) patent claims in the pharmaceutical and semiconductor industries and in the "Barney" children's character trademark; (4) tobacco products liability claims; (5) claims pertaining to the securities of Aetna Inc., Cityscape Financial Corp., Oxford Health Plans Inc., and Fine Host Corp.; and (6) miscellaneous claims relating to various life insurance companies' marketing practices, the Ford/Citibank cardholder rebate program, sweepstakes sponsored by American Family Publishers, and bankruptcy reaffirmation agreements. The panel also ordered transfer of tag-along actions in such major ongoing dockets as the asbestos and breast implant products liability litigations.

## HOW TRANSFERS OCCUR

Under Section 1407, transfer proceedings can be initiated by motion of a party or by the panel acting sua sponte. As a practical matter, most new dockets arise by motion rather than a panel order to show cause. The procedure with tag-along actions typically is the reverse. In that instance, when the panel learns of an action sharing questions of fact with previously centralized actions, the panel, after a review of the complaint and docket sheet, will issue an order conditionally transferring the action to the transferee district.

Under Rule 7.4 of the panel's Rules, the transmittal of the order to the clerk of the transferee district is stayed for 15 days to afford the parties to the action an opportunity to object to transfer. If no objection is received, then the order becomes final and transfer is effected with no further delay. If a party objects to transfer, the stay is continued, the objector may move to vacate the conditional transfer order, and the matter is then set for hearing by the panel.

The parties remain free, of course, to move for transfer of tag-along actions independently, and the panel most often continues to learn of the pendency of potential tag-alongs through notification by the parties. Indeed, Rule 7.5(e) of the panel's rules imposes an affirmative obligation on both parties to previously transferred actions and their counsel to promptly notify the panel of any potential tag-along actions in which that party is also named or in which that counsel appears. The simplicity of the conditional transfer order route, however, is that if no objections to transfer are raised, as is the case with the vast majority of tag-alongs, transfer can be effected on a basis more timely than that involved in a transfer motion.

It should be stressed that during the pendency of any Section 1407 transfer matter before the panel, whether pursuant to a transfer motion in a new docket, a transfer motion with respect to a tag-along action, or a motion to vacate a conditional transfer order, the authority of the court in which *343 the action is currently pending remains unaffected. That court's pretrial jurisdiction remains unlimited unless and until a final transfer order becomes

effective.

Notwithstanding this jurisdictional point, in practice parties sometimes seek, and courts sometimes grant, stays of proceedings in actions in which eventual Section 1407 transfer is anticipated. There may be legitimate reasons for such an approach. For examples, a court may wish to defer to the transferee court on a pivotal issue that is likely to be present in other centralized actions; a court may wish to avoid dueling discovery activities and wait until a single transferee court can devise its own schedule accommodating the interests of all a docket's parties and witnesses; or a court, simply in the process of prioritizing its own heavy caseload, may not wish to expend significant energies in developing a familiarity with issues involved in an action likely soon to be assigned to another court.

The flip side of this stay situation arises when the panel is asked to deny or delay transfer because of the pendency of matters in the originating court that may be dispositive of or otherwise relevant to the question of Section 1407 transfer. These situations, ranging from motions to dismiss, jurisdictional questions, motions to remand to state court, motions to transfer under Section 1404, just as examples, often are indeed appropriate for resolution in the originating court.

On occasion, the panel has been known to await their resolution before ruling on the Section 1407 question. More often, however, the panel takes the approach that a court wishing to address such matters has had adequate time to do so while the Section 1407 transfer question has been pending before the panel, and that failure to do so is an indication of the court's belief that the matter is more appropriate for resolution by the transferee court, which has full authority to rule on nearly all such matters.

In reaching a decision whether to order transfer of actions, the panel is guided by the statutory direction that transfer is in order when the panel determines that transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." The statutory standards contemplate a decision made in an environment in which counsel for all parties discharge their responsibilities as officers of the court by advising the panel of all facts and circumstances relevant to the questions of whether and where transfer should be effected in order to secure the just and expeditious resolution of all involved actions.

Aware of the real world, however, the panel realizes that some parties and counsel are not above attempting to use Section 1407 as a means of advancing particular strategic interests, and the panel has responded accordingly. For example, in selecting a transferee district, the panel does not consider the litigants' dissatisfaction with past or anticipated rulings of the transferee court. Nor does the panel consider the governing appellate law of the transferee district. And most emphatically, the panel does not sit in review of decisions of the transferee court. The panel views the conduct of pretrial proceedings to be within the province of the individual selected as transferee judge. It has neither the power nor the inclination to make any determinations regarding the actual conduct of the Section 1407 proceedings.

It should be noted, at least parenthetically, that under a 1976 amendment to Section 1407, the panel is authorized to order transfer for trial, as well as pretrial, of any action brought under Section 4C of the Clayton Act, the parens patriae provision. Following hearings in November 1998 at which the panel was presented with its first request for transfer under this provision, it ordered transfer for trial as well as pretrial in a docket involving antitrust claims in the market for disposable contact lenses.

## REMANDS

Apart from any actions transferred for trial under the limited parens patriae provision, *344 however, it is another duty of the panel to remand any still pending actions transferred under Section 1407 to their originating transferor districts at or before the conclusion of pretrial proceedings in the transferee district. During the 1998 reporting year, the panel ordered remand of 1,171 actions and denied remand, in the absence of a suggestion for remand from the transferee judge, of 74 actions.

In considering the question of remand, the panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings. Thus, the practice has been for a transferee court, at the latest by

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

the end of pretrial, to issue an order, notice or letter suggesting to the panel that it is of the view that a still pending action, or separable claim, cross-claim, counterclaim or third- party claim is ripe for remand to the MDL transferor court.

The transferee court may precede such a suggestion by ordering the parties to show cause why it should not so proceed. The panel, on receiving this suggestion, will issue a conditional remand order, allowing any party the opportunity to voice its objections to remand. The transferee judge's notice of suggestion of remand to the panel is obviously an indication that the judge perceives his or her role under Section 1407 to have ended, so it should come as no surprise that any objector would bear a strong burden of persuasion. A similar burden awaits any party advocating remand before the panel, absent a suggestion of remand from the transferee judge.

The number of remanded actions as a proportion of transferred actions might seem small, but the above figures are misleading. For example, during the 1998 reporting year, another 16,940 previously transferred actions were terminated in the transferee district during the pendency of pretrial proceedings, usually pursuant to a settlement, motion to dismiss, or summary judgment motion.

## LEXECON AND SELF-ASSIGNMENT

Historically a significant number of actions not settled or otherwise dismissed in their transferee districts during their pretrial stages remained in the transferee districts for trial. This was because, until the U.S. Supreme Court ruled otherwise in Lexecon v. Milberg Weiss Bershad Hynes & Lerach, [FN1] an accepted procedure in multidistrict practice had been for transferee judges to order transfer for trial, pursuant to 28 U.S.C. § § 1404 or 1406, of cases previously transferred to them for pretrial under Section 1407.

In Lexecon, the Court held that a district court that conducted pretrial proceedings pursuant to Section 1407 had no authority to invoke Section 1404(a) to assign a transferred case to itself for trial, because such self- transfer would thwart the panel's capacity to obey the "unconditional" command of Section 1407(a) to remand, at the end of pretrial, each action transferred by the panel that has not been terminated in the transferee district. Footnote 4 of Justice Souter's opinion for the Court in Lexecon implies that MDL transferee judges may not use Section 1404(a) to transfer to any district at all, such as a third district or back to the Section 1407 transferor district. By analogy and inference, an MDL transferee judge likewise now may not transfer under Section 1406.

The facts giving rise to Lexecon were not typical of MDL litigations. The MDL docket in which the case arose was centralized in the District of Arizona and involved claims related to the failure of Lincoln Savings & Loan Association. The Lexecon case itself, however, was not brought against any of the array of defendants connected with the financial institution's downfall but against the class plaintiffs' counsel in the MDL docket. They were sued by consultants who (1) did *345 a lot of corporate defense work, (2) had also been sued in the MDL docket, (3) failed to obtain dismissal of those claims through the course of multidistrict proceedings and a four-month trial, and (4) entered, as jury deliberations were about to begin, a $700,000 "resolution" (scrupulously constructed so as not to be deemed a "settlement") of the claims against them.

The consultants then went back to their home forum in the Northern District of Illinois and filed Lexecon, alleging that the class plaintiffs' counsel had defamed them and had sued them in the Lincoln Savings MDL in an effort to ruin their effectiveness in future commercial litigation. The panel transferred the case to Arizona under Section 1407, the Arizona judge transferred it to himself for trial under Section 1404, and the consultants fought the Section 1404 transfer all the way to the Supreme Court, where their position prevailed.

## IN THE WAKE OF LEXECON

The so-called practice of "self-transfer" has been engaged in for many, many years, without any question from counsel for plaintiffs or defendants. Indeed, the Lexecon plaintiffs themselves had voiced no objection to the Arizona court's Section 1404 transfer of the Lincoln Savings case in chief for trial. Except for the highly unusual circumstances forming the background of Lexecon, I feel certain that no one would have questioned this practice. However, I certainly do not have any disagreement with the Supreme Court decision itself.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

Now that Lexecon has foreclosed self-transfer as a means of enabling complex cases transferred under Section 1407 to be tried by the judge most familiar with the underlying parties, counsel and issues, the question is what should be done to move into the void created by it. A number of judges and lawyers have asked how the MDL transferee judge might still resolve MDL actions through trial, while remaining faithful to the Lexecon limitations.

At least four alternatives have been offered for consideration:

. The transferee court could try a bellwether case in an action originally filed in the transferee district, the result of which may promote settlement in transferred actions.

. If the plaintiff is willing to have the transferee court try an action transferred under Section 1407, the plaintiff could dismiss the action and refile the action in the transferee district, provided venue lies there. The defendant's agreement to this option may be needed if the refiling can be accomplished only in conjunction with a tolling of the statute of limitations or a wavier of venue.

. The Section 1407 transferor court, as Justice Souter observed in Section IIC of the Lexecon opinion, could transfer the action back to the transferee court under Section 1404 after the panel has remanded the action to the transferor court under Section 1407. The transferee court might facilitate such a transfer by recommending it in its suggestion of remand to the panel.

. The transferee judge could seek an intercircuit or intracircuit assignment pursuant to 28 U.S.C. § § 292 or 294 and follow an action remanded to its originating transferor district in order to preside over the trial of the action in that district.

The panel also has received a number of communications from transferee judges and practitioners suggesting that legislation be sought amending Section 1407 to permit transferee judges to order self-transfer of MDL cases.

The following steps have been taken. First, the panel has proposed such an amendment to the Judicial Conference. Second, two Judicial Conference committees--the Committee on Court Administration and Case Management and the Committee on Federal-State Jurisdiction--have considered our proposal. Third, in September 1998, the Judicial Conference unanimously adopted the recommendation of the Federal-State Jurisdiction Committee and agreed to support "legislation that *346 would amend the multidistrict transfer provision, 28 U.S.C. § 1407, to provide that a district court conducting pretrial proceedings pursuant to that section could assign a transferred case for trial proceedings to itself or another district court in the interest of justice and for the convenience of parties and witnesses."

The merits of this proposed legislation were articulated clearly in the committee's report to the Judicial Conference:
There are strong policy reasons for authorizing a transferee court to transfer a group of factually and legally related, consolidated cases to itself for trial purposes. Typically, following the Judicial Panel's transfer of these cases to the transferee judge, the transferee judge manages and handles these cases for many months, sometimes years. During that period, the transferee judge gains a solid understanding of both the facts and the legal issues involved.
The historical data indicate that the overwhelming majority of cases consolidated and transferred by the Judicial Panel to transferee judges settle or are adjudicated on pretrial motion. But those that are not resolved prior to trial should arguably be tried before the judge with the greater understanding of the case, typically the transferee judge, not the transferor judge. Moreover, since the transferee judge frequently holds several pending cases (not just one), there may be efficiencies in trying these related cases together in one suit. The common issues of law and fact among the consolidated cases, which at the outset made pretrial transfer by the Judicial Panel appropriate, may also make appropriate consolidated trial.
Finally, the transferee judge's ability to facilitate a global settlement of the consolidated cases is probably somewhat greater if he or she is empowered to try the consolidated cases if it becomes necessary. As suggested above, most of the cases transferred by the Judicial Panel since its creation have been settled or resolved on a pretrial basis. The context in which those settlements have arisen is one that the Lexecon decision has ended--one in which the transferee court has been empowered to transfer cases for trial to itself. If that context is changed and the self-transfer authority is eliminated, the transferee judge's ability to settle cases may be somewhat reduced. The empirical significance of this observation is hard to measure, but the principle that a settlement judge has greater power to

facilitate settlement if, later on, he or she might also serve as the trial judge, seems right.

It is submitted that the panel's proposed amendment to Section 1407 is sound and will promote efficient and fair adjudication. Like any proposal in the field of litigation, there probably will be some type of opposition from some special interest group. My experience as chairman of the Judicial Panel on Multidistrict Litigation over a period of years, however, is that counsel for both plaintiffs and defendants have agreed for the most part with the practice of self-transfer in the handling of MDL dockets. I urge support for this proposal.

[FNa1]. John F. Nangle, a senior judge of the U.S. District Court for the Eastern District of Missouri, has been chairman of the Judicial Panel on Multidistrict Litigation since 1990. He received a B.S. from the University of Missouri in 1943 and a J.D. from Washington University in 1948. He was an active practitioner in the metropolitan St. Louis area until his appointment to the federal bench in 1973.

[FN1]. 118 S.Ct. 956 (1998).

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works