26

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FRANCISCO SANCHEZ | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION; ADVOCARE | § | |
| INTERNATIONAL, LLC, BAYER | § | |
| CORPORATION; BLOCK DRUG | § | |
| COMPANY, INC.; BRISTOL MYERS | § | |
| SQUIBB COMPANY; CHATTEM, INC. | § | |
| GLAXOSMITHKLINE, PLC; | § | CIVIL ACTION NO. B-02-066 |
| NOVARTIS CONSUMER HEALTH, | § | |
| INC.; NOVARTIS PHARMACEUTICALS | § | |
| CORPORATION; SMITHKLINE | § | |
| BEECHAM CONSUMER HEALTHCARE, | § | |
| L.P.; SMITHKLINE BEECHAM | § | |
| CORPORATION; WHITEHALL-ROBINS | § | |
| HEALTHCARE; and CIRCLE K STORES, | § | |
| INC. d/b/a CIRCLE K (sued individually | § | |
| and as successor-in-interest to COASTAL | § | |
| MART, INC. and MAVERICK MARKET, | § | |
| INC.) | § | |
| | § | |
| Defendants | § | |

## RESPONSE TO PLAINTIFF'S MOTION TO REMAND

COME NOW Defendants, Novartis Consumer Health, Inc. and Novartis Pharmaceuticals Corporation ("Novartis"), and file this Response to Plaintiff's Motion to Remand. In support thereof, Novartis respectfully shows as follows:

## I. INTRODUCTION

The lawsuit before this Court is one of many products liability cases against manufacturers of products containing Phenylpropanolamine ("PPA"). The PPA cases pending in

federal court have been transferred or are being transferred to Multidistrict Litigation ("MDL") proceedings in the Western District of Washington. Because of the transfer of federal PPA cases to the ongoing MDL, Novartis filed a motion to temporarily stay the proceedings before this Court. The stay would allow the MDL court to resolve all common pretrial issues in the PPA cases – including ruling on motions to remand, such as the one filed by Francisco Sanchez, the Plaintiff in this case.

This Court only needs to reach the issues presented in Plaintiff's Motion to Remand if it denies the Motion to Stay filed by Novartis. Novartis removed this case based on diversity jurisdiction. The Plaintiff is a Texas citizen, and all of the defendants are non-Texas corporations except one manufacturer, Advocare International, Inc. ("Advocare"), and one retailer, Circle K Stores, Inc. ("Circle K"). However, Plaintiff's Petition and additional submissions fail to establish any specific connection between Plaintiff and Advocare. Indeed, Plaintiff fails to allege or to come forth with any facts showing that he took Advocare's product. As such, Advocare has been fraudulently joined. In addition, Plaintiff cannot show that there is a reasonable basis to predict that he can recover against Circle K. Because Advocare and Circle K were fraudulently joined to defeat diversity jurisdiction, their citizenship should be disregarded, and the Plaintiff's Motion to Remand should be denied.

## II. FACTUAL BACKGROUND

Plaintiff, Francisco Sanchez ("Sanchez"), originally filed this lawsuit in Texas state court seeking to recover damages resulting from his alleged exposure to PPA "through ingestion of the PPA containing products." Petition, page 6. Sanchez sued numerous companies that allegedly manufactured products that contained PPA. However, Sanchez's Petition fails to identify the manufacturer of the PPA product, or even the name of the particular product, that he

allegedly ingested. Sanchez does not dispute that all of the manufacturing defendants, except for Advocare, are citizens of states other than Texas. Sanchez also sued Circle K, which Sanchez's Motion to Remand characterizes as a "retailer defendant." Circle K is a non-diverse defendant.

Sanchez alleges that the defendants, collectively, are liable for strict products liability, negligence, gross negligence, breach of implied warranties, negligent misrepresentation, breach of the duty to warn, and civil conspiracy.

Novartis removed Sanchez's state court action to this Court on the basis of diversity jurisdiction. Sanchez has filed a Motion to Remand and has submitted an affidavit in support of his Motion. Because the non-diverse defendants, Circle K and Advocare, were fraudulently joined, their citizenship should be disregarded and this case should remain in federal court.

### III. LAW AND ARGUMENT

**A.      The MDL Court Should Rule on the Motion to Remand.**

On April 12, 2002, Novartis filed a motion for a temporary stay of the proceedings in this Court until the Judicial Panel on Multidistrict Litigation acted on Novartis' notice that this case be transferred to the Western District of Washington for inclusion in the docket in *In re Phenylpropanolamine ("PPA") Products Liability Litigation,* MDL Docket No. 1407, 173 F. Supp.2d 1377 (J.P.M.L. 2001). Following the creation of the MDL Docket in August 2001, more than 400 pending PPA actions have been or are in the process of being transferred to the Honorable Barbara J. Rothstein of the Western District of Washington. Indeed, at least fifteen cases pending in Texas federal district courts have been transferred to the MDL.

On May 17, 2002, the Judicial Panel on Multidistrict Litigation issued a conditional transfer order (CTO-16), transferring Sanchez's case to Judge Rothstein for inclusion in the PPA multidistrict litigation. A copy of the conditional transfer order is attached as Exhibit A. The transfer order will become final on June 4, 2002 if no party objects to the transfer.[1] Because this case may be transferred shortly and because Judge Rothstein can and has been ruling on pending motions to remand, Novartis requests that this Court stay these proceedings until the final transfer order is issued.

As explained in Defendant's Memorandum in Support of its Motion for Stay, a stay of this case will conserve valuable judicial resources and avoid the possibility of inconsistent rulings on the core issue of whether federal jurisdiction exists over cases such as the one pending before this Court. "The *general rule* is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [Judicial Panel] has transferred the case . . . " *Jackson v. Johnson & Johnson, Inc.*, No. 01-2113, slip op. at 11 (W.D. Tenn. Apr. 3, 2001). Permitting Judge Rothstein to decide the remand motions pending in numerous PPA cases promotes efficiency and uniformity -- two goals of the MDL proceeding. Indeed, Judge Rothstein is expeditiously deciding motions to remand filed in PPA cases in federal courts around the country.

If this Court stays this proceeding, it need not decide Sanchez's Motion to Remand at this time. In the event that this Court decides to consider the Motion to Remand, Novartis requests that this Court deny the Motion for the reasons that follow.

---

[1] As the MDL panel has held in connection with this MDL proceeding, the pendency of a remand motion is not a basis to deny transfer. *See* Exhibit B.

**B.    Sanchez's Motion to Remand Should be Denied Because Circle K and Advocare Were Fraudulently Joined.**

The doctrine of fraudulent joinder prevents plaintiffs from defeating federal diversity jurisdiction simply by naming non-diverse defendants. Under this doctrine, a federal court must disregard the citizenship of those defendants against whom "there is no reasonable basis for predicting that plaintiffs might establish liability . . . ." *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 393 (5th Cir. 2000); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). The question before the Court is whether there is *a reasonable basis* to predict that Sanchez might establish liability against the non-diverse defendants, Advocare and Circle K. "As with a summary judgment motion, in determining diversity the mere assertion of 'metaphysical doubt as to the material facts' is insufficient to create an issue if there is no basis for those facts." *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993).

**1.    Advocare, a Non-Diverse Manufacturer, was Fraudulently Joined.**

      **a.    Sanchez Has Failed to Allege a Connection Between Him and Advocare.**

Sanchez does not allege that he took a drug manufactured by Advocare. Indeed, his Petition only mentions Advocare specifically in the listing of parties.[2] Similarly, Sanchez's affidavit contains no allegations or specific facts about Advocare. Sanchez states only that he took Alka Seltzer Plus. He does not allege that he took any other PPA products or that Advocare manufactured Alka Seltzer Plus. To the contrary, Sanchez's Motion to Remand admits that Advocare only manufactured a product called "Metabolic Nutrition System Gold." *See* Motion to Remand at 16 and Motion to Remand, Exhibit W at 810.

---

[2]    Although Sanchez generally alleges that Advocare manufactured and distributed PPA products, Sanchez's Petition does not contain particular facts concerning the particular products manufactured by Advocare.

Because Sanchez fails to allege or to provide evidence showing that he took a product manufactured by Advocare, Sanchez cannot recover against Advocare under the legal theories included in his Petition.[3] "[A] fundamental principle of products liability law is that the plaintiff must prove that the defendant supplied the product that caused the injury." *Negben v. Minnesota Mining & Mfg. Co.*, 898 S.W.2d 363, 366 (Tex. App. — San Antonio 1995, writ denied); *see also Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989) (holding that under products liability law, "the plaintiff must prove that the defendant supplied the product.") Sanchez does not allege that he used any Advocare products. As such, Sanchez does not establish that Advocare supplied the product that caused his alleged injury, and he cannot recover against Advocare under Texas products liability law.

Moreover, because Sanchez does not specifically allege that he purchased PPA products manufactured by Advocare, Sanchez fails to establish a connection between Sanchez and the acts of Advocare. The failure to allege such a connection is fatal to Sanchez's attempt to sue Advocare in order to destroy diversity jurisdiction.

In *In re Rezulin Products Liability Litigation*, the court held that the failure to allege a connection between the plaintiff and specific defendants resulted in improper joinder of those defendants. 133 F. Supp.2d 272, 291 (S.D.N.Y. 2001). In *Rezulin*, the plaintiffs sought recovery for personal injuries allegedly caused by the use of diabetes medication. The plaintiffs sued the manufacturer as well as pharmacies, physicians, and sales representatives. The defendants argued that the pharmacies were improperly joined to defeat diversity. In one of the cases before the court, the plaintiffs combined allegations against the pharmacies with

---

[3] Indeed, Sanchez's Petition wholly fails to identify the particular product that he allegedly ingested or the manufacturer of that product.

allegations against the manufacturers, asserting causes of action against "the defendants" generally. *Id.* However the plaintiffs:

> . . . do not connect themselves to any alleged acts of the pharmacy defendants. Under any of theories proffered in *Armstrong*, the complaint must allege that the defendant pharmacies sold or supplied Rezulin *to plaintiffs*. Without drawing that connection, plaintiffs have no way of showing that the pharmacy defendants' acts proximately caused the alleged injuries. Accordingly, the *Armstrong* plaintiffs improperly joined the pharmacies as defendants.

*Id.* Similarly, in this case, Sanchez fails to draw any connection between himself and Advocare.

Other courts have applied this same reasoning in holding that a plaintiff's failure to allege that a defendant pharmacy sold a product to the plaintiff results in fraudulent joinder of that pharmacy defendant. In *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp.2d 546 (E.D. Ky. 2001), the plaintiffs brought a products liability action against diverse drug manufacturers and non-diverse pharmacies. The court denied remand, holding that the plaintiff's complaint suffered from a fatal flaw: "the omission of any averment to the effect that defendant pharmacies sold or supplied OxyContin *to plaintiffs*." *Id.* at 549. "Absent such an allegation, of course, plaintiffs' complaint does not link plaintiffs' alleged injuries with the action (or inaction) of defendant pharmacies." *Id. See also LeBlanc v. Chevron, U.S.A., Inc.*, 715 F. Supp. 735, 737 (E.D. La. 1989) (denying remand because, in part, plaintiff failed to allege any facts in his pleadings and because plaintiff pleaded only legal conclusions "which, even if true, do not connect [the non-diverse defendant] to the plaintiff").

Similarly, Sanchez does not establish a connection with Advocare because he fails to allege that he took a product manufactured by Advocare. As such, there is not a reasonable basis to predict that Sanchez could recover against Advocare. *See Miller v. Home Depot, U.S.A., Inc.*, ___ F. Supp.2d ___, No. 2:01CV0859, 2001 WL 1844232 at *2 (W.D. La. Dec. 7, 2001)

(denying remand because, in part, the plaintiffs did not purchase a product manufactured by the non-diverse defendant).

   **b.**  **Sanchez Cannot Show that Advocare's Alleged Actions Caused Him Harm.**

  As noted in the Motion to Remand, Sanchez's negligence, breach of warranty, negligent misrepresentation, breach of the duty to warn, and civil conspiracy claims require that the defendant's actions cause Sanchez harm. Causation is also an element of claims for strict liability and for breach of the implied warranty of fitness. *See Nebgen*, 898 S.W.2d at 366 ("An actionable tort, whether based on negligence or strict liability, includes the element of causation or cause in fact."); *Jack Roach-Bissonnet, Inc. v. Puskar*, 417 S.W.2d 262, 278 (Tex 1967) (on motion for rehearing) (noting that causation is an essential element of a breach of implied warranty of fitness claim and that because "there [was] no evidence to support a finding that the accident was caused by a defect existing at the time the automobile was delivered to the plaintiff, . . . this disposes of his asserted right to recover upon the theory of breach of an implied warranty of fitness"); *Stewart v. Transit Mix Concrete & Materials Co.*, 988 S.W.2d 252, 255 (Tex. App. – Texarkana 1998, pet. denied) (to recover for a breach of warranty of fitness claim based on a failure to warn, the plaintiff must show that the failure to warn was a cause of the plaintiff's injuries). Because Sanchez does not allege or provide evidence that he took an Advocare product, he cannot establish that an Advocare product caused him harm. Causation is an essential element of all of Sanchez's claims, and his failure to satisfy this element is fatal to his Motion to Remand.

  Sanchez cannot recover against Advocare under a conspiracy theory for an additional reason. Under Texas law, conspiracy liability cannot exist by itself – it must be

predicated on liability for an underlying tort. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968) ("[T]he gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself."). As explained above, Sanchez's submissions reveal no basis for predicting that Sanchez could recover from Advocare for an underlying tort. As a result, Sanchez cannot recover against Advocare for civil conspiracy. *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996) (holding that because the defendant did not manufacture or sell the product at issue, the defendant proved that it had no duty to the plaintiff, and the defendant "negated [the plaintiff's] civil conspiracy claim as a matter of law"); *see also Sanchez v. Liggett & Myers, Inc.* 187 F.3d 486, 491 (5th Cir. 1999) (holding that under Texas law, "[c]ivil conspiracy requires liability for an underlying substantive tort, and there is no such substantive liability for the non-manufacturer defendants").

Sanchez's failure to satisfy the causation element of all his claims precludes his recovery against Advocare and demonstrates that Advocare was fraudulently joined.

        **c.    Sanchez Cannot Rely on General Allegations Against "the Defendants" Collectively to Defeat Removal on the Basis that Advocare was Fraudulently Joined.**

Sanchez's Petition asserts numerous causes of action against the "defendants." For example, Sanchez claims that "all defendants are liable to Sanchez under the theory of strict products liability." Petition at 9. Sanchez also "asserts claims under theories of negligence and gross negligence against all defendants." *Id.* at 11. Indeed, Sanchez alleges that "all defendants" are liable under every one of the legal theories asserted in his Petition. Petition at 9, 11, 12, 13 & 14. However, as noted above, Sanchez does not allege that he took a product manufactured by Advocare.

Sanchez's conclusory allegations against all of the defendants cannot cure the fraudulent joinder of Advocare. "Plaintiffs may not rely upon generalized, conclusory allegations of fraud (or gross negligence or intentional tort) on a motion to remand because the pivotal question is whether plaintiffs have a possibility of recovering on the merits against the local defendant in state court . . . ." *Kimball v. Modern Woodman of Am.*, 939 F. Supp. 479, 482 (M.D. La. 1996). Moreover, a plaintiff's "[f]ailure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994); *see also Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) (upholding removal because plaintiff's "bold, unsupported" allegation could not prevent remand).

The Fifth Circuit has held that a plaintiff's general and unparticular allegations cannot defeat removal. In *Badon v. RJR Nabisco Inc.*, the plaintiff asserted that cigarette manufacturers and some non-diverse cigarette distributors engaged in a conspiracy to manipulate nicotine levels in cigarettes in order to cause addiction. 224 F.3d 382 (5th Cir. 2000). Like Sanchez, the *Badon* plaintiff alleged that "all" of the defendants participated in the conspiracy. Noting that the plaintiff had failed to allege that the non-diverse defendants engaged in any "particular or specific" activities, the Fifth Circuit upheld the district court's determination that the conspiracy claim asserted against the in-state defendants was fraudulent. *Id.* at 392-93 & 394. Similarly, Sanchez has not alleged that Advocare engaged in any particular acts creating liability. Sanchez's generic references to the acts of "the defendants" are simply not enough to defeat removal. *See also In Re Rezulin Prods. Liab. Litig.*, 133 F. Supp.2d 272, 291 (S.D.N.Y. 2001) (noting that the plaintiffs' allegations against the defendants generally would not prevent finding that particular non-diverse defendants were fraudulently joined).

In sum, because Sanchez fails to allege or to provide evidence that he took a product manufactured by Advocare, there is no reasonable possibility that Sanchez could recover against Advocare under the legal theories included in his Petition.

**2.      Circle K, a Non-Diverse Retailer, was Fraudulently Joined.**

     **a.      Sanchez's Petition Fails to Allege a Connection Between Sanchez and Circle K.**

In his Petition, Sanchez never alleges that he purchased a PPA product from Circle K. Indeed, like with Advocare, the Petition only mentions Circle K specifically in the listing of parties. Although Sanchez generally alleges that Circle K was "involved in" the sale and distribution of PPA products, Sanchez's Petition does not contain particular facts concerning the particular products, if any, that Circle K sold to Sanchez.

Because Sanchez's Petition fails to allege that Sanchez purchased a product from Circle K, there is no reasonable possibility that Sanchez can recover against Circle K under the legal theories included in his Petition. As discussed in section III(B)(1)(b), causation is an element of all of Sanchez's claims. Because Sanchez's Petition fails to allege that he purchased any product from Circle K, Sanchez cannot establish that Circle K's actions caused him harm. Similarly, for the reasons stated above, there is no reasonable basis to predict that Sanchez could recover against Circle K under a conspiracy theory because Sanchez's Petition fails to establish that Sanchez could recover against Circle K for an underlying tort.

As discussed in section III(B)(1)(a), Sanchez's failure to include specific allegations about his purchase of products from Circle K demonstrates that there is no connection between Sanchez and Circle K. As a result, Sanchez's fraudulent joinder of Circle K cannot defeat removal.

**b.  Under Texas Law, a Pharmacy is not Liable for Failure to Warn of the Risks of Medications.**

In an attempt to cure the legal deficiencies in his Petition, Sanchez has submitted an affidavit in which he states that he purchased Alka Seltzer Plus at a Circle K store and that he received no warning from Circle K indicating that the product could cause a stroke.  Under Texas law, however, a pharmacy is not liable for a failure to warn of the risks of medications.  In *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455 (Tex. App. – Austin 2000, pet. denied), the court held, as a matter of Texas law, that a pharmacist has no duty to warn customers of potential hazards or potential adverse reactions to prescription drugs.  *See also In re Rezulin*, 133 F. Supp.2d at 294 (holding that, under Texas law, a pharmacist is not liable under strict liability theories for a failure to warn of the risks of medications).

The reasoning of *Morgan,* a case involving prescription medication, also applies to cases involving over-the-counter medications.[4]  Indeed, *Morgan's* holding that pharmacists have no duty to warn of potential hazards of prescription products applies with equal, if not greater, force to over-the-counter drugs.  If a pharmacy does not have a duty to warn about alleged side effects of medications in prescriptions that they fill to order, then they certainly have no duty to warn about prepackaged over-the-counter medications available without a prescription.  As such, a retailer, such as Circle K, has no independent liability under Texas law.  Indeed, in ruling on remand motions in PPA cases involving Louisiana law, Judge Rothstein has held that the Louisiana rule that pharmacists have no duty to warn of potential side effects from prescription drugs applies to over-the-counter medications.  *See Johnson v. Bayer Corp.*, No. C01-2014R at 7-8 (W.D. Wash. 2001), attached as Exhibit C.  As stated by Judge Rothstein,

---

[4]    In his Petition, Sanchez generally alleges that he purchased "over-the-counter, non-prescription and/or prescription drugs containing PPA."  Petition at 6.  In his affidavit, Sanchez states, under oath, that he only took Alka Seltzer Plus the day that he suffered a stroke and that the medication was not prescribed.

"[t]he limitation on liability for pharmacies logically extends to over-the-counter medications, for which pharmacies have even less direct responsibility." *Id.* at 8.

### 3. Sanchez's Affidavit Cannot Defeat Removal.

As explained above, even considering the statements included in Sanchez's affidavit, Sanchez cannot recover against Circle K. However, Novartis respectfully requests that this Court decline to consider Sanchez's affidavit.

"Generally, the right of removal is determined by the pleadings as they stand when the petition for removal is filed." *Smith v. City of Picayune,* 795 F.2d 482, 485 (5th Cir. 1986). Although a court can examine summary judgment-type evidence when deciding whether a party has been fraudulently joined, such evidence, including affidavits, cannot be used to state a legal theory not alleged in the state court petition. *See Cavallini v. State Farm Mut. Auto. Ins. Co.,* 44 F.3d 256, 263 (5th Cir. 1995).

Cases interpreting the Fifth Circuit's holding that a court can pierce the pleadings to decide fraudulent joinder issues have noted that whether to pierce the pleadings is a matter of the district court's discretion. *See Wells' Dairy, Inc. v. American Indus. Refrigeration, Inc.,* 157 F. Supp.2d 1018, 1032 (N.D. Iowa 2001) ("'[P]iercing the pleadings,' even in the Fifth Circuit, is a matter of the district court's discretion."); *see also Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir. 1995) (noting that "a district court *may* look to evidence outside of the pleadings in determining a fraudulent joinder claim") (emphasis added).

Rather than suing only defendants who manufactured the product allegedly consumed by Sanchez, Sanchez sued numerous defendants and subjected these defendants to the expense of litigation. "While federal and many state courts have adopted liberal rules of notice

pleading, pleadings are not inconsequential documents." *In re Rezulin*, 133 F. Supp.2d at 284. Sanchez has employed a scattershot approach in this litigation, and his belated submission of an affidavit identifying only particular defendants should not defeat removal.

## IV. CONCLUSION

Because Sanchez fails to state a reasonable basis for predicting that he could recover against the non-diverse defendants, Advocare and Circle K, Sanchez's Motion to Remand should be denied.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

Mitchell C. Chaney
State Bar No. 04107500
Federal I.D. 1918
Teri L. Danish
State Bar No. 05375320
Federal I.D. No. 12862
1201 E. Van Buren
Brownsville, TX 78520
956-542-7441
956-541-2170 (facsimile)

Earl B. Austin
State Bar No. 01437300
Fed. I.D. No. 02899
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980
214-953-6542
214-953-6503 (facsimile)

Richard L. Josephson
State Bar No. 11031500
Fed. I.D. No. 04614
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
713-229-1460
713-229-1522 (facsimile)

Attorneys For Defendants Novartis
Consumer Health Inc. and Novartis
Pharmaceuticals Corporation

OF COUNSEL:

Michael D. Robbins
Andrew R. Harvin
Doyle Restrepo Harvin & Robbins LLP
600 Travis, Suite 4700
Houston, Texas 77002
713-228-5100
713-228-6138 (facsimile)

Randolph S. Sherman
Lori B. Leskin
Danielle E. Finck
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FRANCISCO SANCHEZ | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION; ADVOCARE | § | |
| INTERNATIONAL, LLC, BAYER | § | |
| CORPORATION; BLOCK DRUG | § | |
| COMPANY, INC.; BRISTOL MYERS | § | |
| SQUIBB COMPANY; CHATTEM, INC. | § | |
| GLAXOSMITHKLINE, PLC; | § | CIVIL ACTION NO. B-02-066 |
| NOVARTIS CONSUMER HEALTH, | § | |
| INC.; NOVARTIS PHARMACEUTICALS | § | |
| CORPORATION; SMITHKLINE | § | |
| BEECHAM CONSUMER HEALTHCARE, | § | |
| L.P.; SMITHKLINE BEECHAM | § | |
| CORPORATION; WHITEHALL-ROBINS | § | |
| HEALTHCARE; and CIRCLE K STORES, | § | |
| INC. d/b/a CIRCLE K (sued individually | § | |
| and as successor-in-interest to COASTAL | § | |
| MART, INC. and MAVERICK MARKET, | § | |
| INC.) | § | |
| | § | |
| Defendants | § | |

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

On this day, came for consideration Plaintiff's Motion to Remand. After considering this motion and all responses, this Court is of the opinion that this motion should be and hereby is DENIED.

SIGNED this ___ day of _____, 2002.

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

### DOCKET NO. 1407

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-16)

On August 28, 2001, the Panel transferred eight civil actions to the United States District Court for the Western District of Washington for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 461 additional actions have been transferred to the Western District of Washington. With the consent of that court, all such actions have been assigned to the Honorable Barbara Jacobs Rothstein.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Western District of Washington and assigned to Judge Rothstein.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Western District of Washington for the reasons stated in the order of August 28, 2001, 173 F.Supp.2d 1377, (J.P.M.L. 2001), and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Western District of Washington. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Michael J. Beck
Clerk of the Panel

# SCHEDULE CTO-16 - TAG ALONG CASES
## DOCKET NO. 1407
## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

DISTRICT  DIV. CIVIL ACTION#

CONNECTICUT
CT       3      02-628      Linda King-Corbin, et al. v. SmithKline Beecham Corp.

GEORGIA NORTHERN
GAN      1      02-833      Sylvia Smith, etc. v. Novartis, AG, et al.
GAN      1      02-882      Mary Williams v. The Delaco Co.

LOUISIANA EASTERN
LAE      2      02-957      Willie Small v. Chattem, Inc., et al.
LAE      2      02-998      Donald Harris v. Whitehall-Robins Healthcare, et al
LAE      2      02-1007     Betty Lacey v. Bayer Corp., et al.
LAE      2      02-1013     Earl Register v. Bayer Corp., et al.
LAE      2      02-1014     Clara L. Earl v. GlaxoSmithKline PLC, et al.
LAE      2      02-1015     Wesley Magee v. GlaxoSmithKline PLC, et al.
LAE      2      02-1039     Willie Trask v. Schering-Plough Corp.
LAE      2      02-1048     Yvonne Buckley v. Bayer Corp., et al.

LOUISIANA MIDDLE
LAM      3      02-323      Vicky McCurley v. GlaxoSmithKline, et al.
LAM      3      02-325      Donna Ford v. Whitehall-Robins Healtcare., et al.
LAM      3      02-329      Billy Colvin v. GlaxoSmithKline, Inc., et al.

LOUISIANA WESTERN
LAW      2      02-600      Lawrence Van Dyke v. Bayer Corp., et al.

NEW JERSEY
NJ       2      02-1388     Rosalyn Metzger, et al. v. The Delaco Co., et al.

NEW YORK SOUTHERN
NYS      1      02-884      Juan A. Gutierrez v. Bayer Corp.

PENNSYLVANIA WESTERN
PAW      2      02-377      Dana L. Hughes, et al. v. Perrigo Co.

SOUTH CAROLINA
SC       4      02-1103     Diane Gore, et al. v. SmithKline & Beecham, et al.

TEXAS SOUTHERN
TXS      1      02-66       Francisco Sanchez v. American Home Products Corp., et al.
TXS      2      02-141      Rogelio Resendez, et al. v. American Home Products Corp., et al.
TXS      2      02-146      Elvira Garcia, et al v. American Home Products Corp., et al.
TXS      4      02-1029     Debra Hilton-Caine, et al. v. Whitehall-Robins Healthcare, et al.
TXS      5      02-53       Juan R. Lopez, et al. v. American Home Products Corp., et al.
TXS      5      02-54       Rogelio Morales, et al. v. American Home Products Corp., et al.
TXS      7      02-139      Carlota Bernal, et al. v. American Home Products Corp., et al.

TEXAS WESTERN
TXW      3      02-137      Miguel Valverde, et al. v. American Home Products Corp., et al.
TXW      3 .    02-140      Evangelina Rubio, et al. v. American Home Products Corp., et al.

WISCONSIN WESTERN
WIW      3      02-78       Linda R. Grover v. SmithKline Beecham Consumer Healthcare, et al.

# EXHIBIT B

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 14 2002

FILED
CLERK'S OFFICE

*DOCKET NO. 1407*

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

*Kenneth Bevis, et al. v. GlaxoSmithKline Corp., et al.*, N.D. Alabama, C.A. No. 3:01-1294

*Phillip Wiggins, et al. v. American Home Products Corp., et al.*, N.D. Alabama, C.A. No. 3:01-2303

*Melissa Ann Kobar, etc. v. Novartis Corp., et al.*, D. Arizona, C.A. No. 2:01-156

*Dorothy U. Newell, et al. v. American Home Products Corp., et al.*, S.D. Mississippi, C.A. No. 2:01-198

*Gregory L. Davis, et al. v. American Home Products Corp., et al.*, S.D. Mississippi, C.A. No. 2:01-212

*Edna M. Barnett, et al. v. American Home Products Corp., et al.*, S.D. Mississippi, C.A. No. 4:01-169

*Bobby Robinson v. Bayer Corp., et al.*, S.D. Mississippi, C.A. No. 5:01-263

*Bridgette Pollard, etc. v. Bayer Corp., et al.*, S.D. Mississippi, C.A. No. 5:01-264

*Marjorie M. McQuirter v. Chattem, Inc., et al.*, S.D. Mississippi, C.A. No. 5:01-266

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ,* JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in nine Northern District of Alabama, District of Arizona and Southern District of Mississippi actions. These parties move the Panel to vacate its orders conditionally transferring their actions to the Western District of Washington for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Barbara Jacobs Rothstein. Various defendants in the actions support transfer.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Western District of Washington, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing centralization in this docket. The Panel held that the Western District of Washington was the proper Section 1407 forum for actions brought by persons allegedly injured by products containing Phenylpropanolamine – a substance which, until it recently became the subject of a public health

---

*Judge Selya took no part in the decision of this matter. Additionally, Judge Motz took no part in the decision of this matter with respect to the *Newell* and *Barnett* Southern District of Mississippi actions.

- 2 -

advisory issued by the Food and Drug Administration, was used as an ingredient in many nasal decongestants and weight control products. *See In re Phenylpropanolamine (PPA) Products Liability Litigation*, 173 F.Supp.2d 1377 (J.P.M.L. 2001).

Certain of the plaintiffs premise much of their opposition to transfer on the pendency in their actions of motions to remand to state court. They urge the Panel not to order transfer before the motions are resolved by the transferor court. We note, however, that remand and other motions can be presented to and decided by the transferee judge. *See, e.g., In re Ivy*, 901 F.2d 7 (2nd Cir. 1990); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F.Supp. 812, 813 (J.P.M.L. 1973).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these nine actions are transferred to the Western District of Washington and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 15 2002

FILED
CLERK'S OFFICE

## DOCKET NO. 1407

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

*Stephanie L. Horne v. American Home Products, et al.*, W.D. Kentucky, C.A. No. 3:01-631
*Alejandro Garcia, et al. v. SmithKline Beecham Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3424
*Wendell Phillips v. SmithKline Beecham Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3448
*Kenneth Peterson, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3467
*Doreen Martin v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3477
*Jeanette P. Favorite, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3478
*Paula J. Sumling, et al. v. Bayer Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3480
*Quincy Garrison, et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3484
*Wallace Craft, Sr., et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3490
*Mary Lee, et al. v. Whitehall-Robins Healthcare, et al.*, E.D. Louisiana, C.A. No. 2:01-3522
*Lydia Dyson v. American Home Products Corp., et al.*, E.D. Louisiana, C.A. No. 2:01-3548
*Denny Vick, etc. v. Novartis Corp., et al.*, S.D. Mississippi, C.A. No. 4:01-329
*Catherine Uwagboe v. Whitehall-Robins, et al.*, S.D. Mississippi, C.A. No. 5:01-339
*Freddie L. Alexander v. Bayer Consumer Care, et al.*, S.D. Mississippi, C.A. No. 5:01-346

## BEFORE WM. TERRELL HODGES, CHAIRMAN, JOHN F. KEENAN, MOREY L. SEAR, BRUCE M. SELYA,* JULIA SMITH GIBBONS, D. LOWELL JENSEN AND J. FREDERICK MOTZ, JUDGES OF THE PANEL

## TRANSFER ORDER

Before the Panel are motions brought, pursuant to Rule 7.4, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001), by plaintiffs in fourteen Western District of Kentucky, Eastern District of Louisiana or Southern District of Mississippi actions. These parties move the Panel to vacate its orders conditionally transferring their actions to the Western District of Washington for inclusion in the centralized pretrial proceedings occurring there in this docket before Judge Barbara Jacobs Rothstein. Various defendants in the actions support transfer.

On the basis of the papers filed and hearing session held, the Panel finds that these actions involve common questions of fact with actions in this litigation previously transferred to the Western District of Washington, and that transfer of the actions to that district for inclusion in the coordinated or consolidated pretrial proceedings occurring there will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The Panel is persuaded that transfer of the actions is appropriate for reasons expressed by the Panel in its original order directing

*Judge Selya took no part in the decision of this matter.

- 2 -

centralization in this docket. The Panel held that the Western District of Washington was the proper Section 1407 forum for actions brought by persons allegedly injured by products containing Phenylpropanolamine – a substance which, until it recently became the subject of a public health advisory issued by the Food and Drug Administration, was used as an ingredient in many nasal decongestants and weight control products. *See In re Phenylpropanolamine (PPA) Products Liability Litigation,* 173 F.Supp.2d 1377 (J.P.M.L. 2001).

Plaintiffs premise much of their opposition to transfer on their argument that federal jurisdiction is lacking in their actions. These parties urge the Panel not to order transfer before their motions are resolved by the transferor court. We note, however, that remand and other motions, if not resolved in the transferor court by the time of Section 1407 transfer, can be presented to and decided by the transferee judge. *See, e.g., In re Ivy,* 901 F.2d 7 (2nd Cir. 1990); *In re Prudential Insurance Company of America Sales Practices Litigation,* 170 F.Supp.2d 1346, 1347-48 (J.P.M.L. 2001).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, these fourteen actions are transferred to the Western District of Washington and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein for inclusion in the coordinated or consolidated pretrial proceedings occurring there in this docket.

FOR THE PANEL:

Wm. Terrell Hodges
Chairman

# EXHIBIT C

FILED ___ ENTERED
LODGED ___ RECEIVED

FEB 26 2002 ZG

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL JOHNSON,

    Plaintiff,

  v.

BAYER CORPORATION, et al.,

    Defendants.

NO. C01-2014R

ORDER DENYING
PLAINTIFF'S MOTION
FOR REMAND

THIS MATTER comes before the court on the motion of plaintiff Michael Johnson to remand the case to state court in Louisiana. Having reviewed the papers filed in support of and in opposition to this motion, the court rules as follows:

## I.  BACKGROUND

Plaintiff purchased the over-the-counter drugs Alka-Seltzer Plus Cold Medicine, Robitussin CF, and Dimetapp Cold & Cough from an unidentified Rite Aid drugstore in Caddo Parish, Louisiana. Plaintiff later consumed the medication. Sometime during the year 2000, plaintiff suffered a massive stroke. The medicines contained the ingredient Phenylpropanolamine ("PPA"). On August 24, 2001, plaintiff filed a complaint in Louisiana state court that links the PPA in the cold medicine with plaintiff's stroke.

ORDER
Page - 1 -





The complaint alleges several causes of action against manufacturers and distributors of products that contain PPA. The complaint also names K & B Louisiana Corporation ("K&B") as a defendant in two of the causes of action, breach of warranty in redhibition and negligence. K&B operates Rite Aid drugstores throughout Louisiana that sell over-the-counter medications containing PPA.

Defendants removed the complaint to federal court on the basis that plaintiff fraudulently joined K&B as a defendant. Plaintiff then moved to remand to state court. After the parties briefed the motion, the case was transferred to this court as part of a multi-district litigation.

## II.  ANALYSIS

A plaintiff cannot defeat federal jurisdiction by fraudulently joining a non-diverse party against whom "there is no reasonable basis for predicting that plaintiffs might establish liability . . . ." Badon v. RJR Nabisco, Inc., 224 F.3d 382, 292 (5th Cir. 2000). The court determines jurisdiction based on the claims as stated at the time of removal; arguments about what future discovery may reveal cannot justify remand. See Cavallini v. State Farm Mut. Auto. Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995). The court must view the facts in the light most favorable to the plaintiff; however, the court may pierce the pleadings and consider "summary judgment-type evidence." Id. at 263.  A plaintiff also cannot defeat removal by relying on conclusory

ORDER
Page - 2 -

allegations that fail to state a cause of action.  See Jernigan
v. Ashland Oil, Inc., 989 F.2d 812 (5th Cir. 1993); Addition v.
Allstate Ins. Co., 58 F. Supp.2d 729, 733-34 (E.D. La. 1996).

Defendants allege that plaintiff fraudulently joined defen-
dant K&B, while plaintiff claims that he has a legitimate con-
tract cause of action against K&B for breach of warranty in
redhibition, under La. Civ. Code art. 2520 et seq., and a cause
of action against K&B in negligence.  Plaintiff does not argue
that any other causes of action in the complaint apply to K&B.

A.    Breach of Warranty in Redhibition

Under Louisiana law, a seller "warrants the buyer against
redhibitory defects, or vices, in the thing sold."  La. Civ. Code
art. 2520.  A redhibitory defect or vice involves a "physical
imperfection or deformity, a lacking of a necessary competent or
level of quality."  Scogin v. Smith, 612 So.2d 739, 741 (La. Ct.
App. 1992).  The buyer of a product with a redhibitory defect
must tender the product to the seller and seek rescission of the
sale.  La. Civ. Code art. 2520, 2530.  A good faith seller is
liable only for the cost of the product if it cannot repair the
item.  La. Civ. Code art. 2531.  The buyer can hold a bad faith
seller liable for consequential damages and attorney's fees as
well.  La. Civ. Code art. 2545.

1.    Failure to Plead Elements of Redhibition

It is unclear from the motion to remand whether plaintiff is
alleging a cause of action against K&B as a good faith seller
under La. Civ. Code art. 2531 or as a bad faith seller under

ORDER
Page - 3 -

1  article 2545.  While a portion of the memorandum argues that K&B

2  knew of the medications' alleged redhibitory effects, the same

3  brief distinguishes bad faith cases and focuses on K&B's poten-

4  tial status as a good faith seller.  Regardless, the complaint

5  does not include sufficient facts to support a claim against K&B

6  under either theory.

7        a.   Article 2531

8     First, the complaint never alleges liability under article

9  2531.  The only redhibition liability provision cited is article

10  2545, which applies to bad faith sellers who knew of the defect.

11  In the damages portion of the complaint, plaintiff again cites

12  article 2545 and fails to cite article 2531.  By its own terms,

13  the complaint does not allege a cause of action against K&B under

14  article 2531.

15     Second, the allegations of the complaint fail to provide

16  specific facts that would support a cause of action against K&B

17  under article 2531 even if plaintiff had invoked that provision.

18  As explained above, the court must assess the remand motion based

19  on the facts as stated in the complaint, and the court may pierce

20  the pleadings to assess conclusory allegations.  The complaint

21  does not allege that plaintiff sought rescission of the sale,

22  nor does it allege that plaintiff provided K&B with notice of

23  the alleged defect, nor does it provide details regarding where

24  and when plaintiff purchased the products.  Without such basic

25  details, plaintiff is making only conclusory allegations that

26  cannot support remand.  See Jernigan, 989 F.2d 812; Addition,

ORDER
Page - 4 -

58 F. Supp.2d at 733-34.

The complaint fails to allege that plaintiff sought rescission of the sale and return of the purchase price - a key element of redhibition. Cf. Mitchell v. Popiwchak, 677 So.2d 1050, 1054 (La. Ct. App. 1996) (request for purchase price satisfies tender requirement). Plaintiff argues that the complaint alleges rescission as a remedy, but there is no allegation that plaintiff sought rescission prior to filing the lawsuit as required.

In addition, notice and tender are prerequisites to bringing a redhibition claim. See Lindy Inv., LP v. Shakertown Corp., 209 F.3d 802, 805-06 (5th Cir. 2000). Plaintiff does not allege that K&B received notice of the defect, much less allege that plaintiff tendered the product to K&B. Finally, plaintiff fails to allege any details regarding the store that sold the medication. Cf. Long v. Bruns, 727 So.2d 664 (La. Ct. App. 1999) (complaint dismissed for failure to plead proper seller). By failing to allege many of the basic elements of a cause of action under section 2531, plaintiff has no reasonable possibility of holding K&B liable.

### b. Article 2545

Article 2545 applies to bad faith sellers who knew or should have know of the defect. La. Civ. Code art. 2545. Plaintiff alleges in the complaint that "all Defendants have actual knowledge" of the alleged defects. This statement lacks factual support, contradicts other portions of the complaint, and fails to warrant remand.

ORDER
Page - 5 -

1    As explained above, a plaintiff cannot defeat federal
2    jurisdiction by relying solely on conclusory allegations.
3    Plaintiff provides no factual support for the broad allegation
4    that the drugstore knew of potential dangers in the medications.
5    On remand, the parties may pierce the pleadings with additional
6    evidence to clarify such allegations.  Defendants have supplied
7    the court with requests for admission from K&B that refute
8    plaintiff's assertion.  K&B had no control over the pre-packaged,
9    sealed medications and had no knowledge of any potential dangers.
10   Def. Mem., Exhibit A.  Plaintiff has not countered with any
11   specific facts to support its broad allegation.

12       Moreover, plaintiff's own complaint acknowledges that K&B
13   had no knowledge of alleged defects.  For example, the complaint
14   alleges that the medication did not change from the time it left
15   the manufacturers to the time it reached the customer.  It also
16   alleges that the manufacturers had exclusive possession of
17   information about potential hazards.  In the negligence allega-
18   tions, the complaint accuses the manufacturers of knowing about
19   dangers but does not include K&B in those allegations.  These
20   statements contradict plaintiff's conclusory allegation that K&B
21   knew or should have known about a potentially redhibitory effect.
22   Plaintiff has failed to plead facts to state a cause of action
23   under article 2545 and has no reasonable probability of success
24   against K&B.

25       2.   Plaintiff's Claims are De Minimis
26       Remanding this case also would prove inequitable.  The only

ORDER
Page - 6 -

1  relief from K&B to which plaintiff would be entitled, if the
2  complaint properly pleaded the elements of a cause of action
3  under article 2531, would be the purchase price of the medica-
4  tion.  Such a tenuous cause of action based on de minimis recov-
5  ery should not defeat federal jurisdiction.  As the court in a
6  class action involving other over-the-counter drugs sold by good
7  faith Louisiana pharmacies stated, such claims are "improper at
8  best and fraudulent at worst."  In re Diet Drugs, 1998 WL 254976,
9  at 4 (E.D. Pa. 1998).  The court denied a motion to remand
10 because the plaintiff had fraudulently joined the pharmacies.
11 Id.  Similarly, the alleged cause of action against K&B would
12 accomplish minimal recovery, if any.

13        3.   No Cause of Action in Redhibition Exists Against
                Pharmacies for Sale of Medication
14
15        Louisiana law prohibits liability against a pharmacy or
16 drugstore that sells allegedly defective or dangerous medication.
17 In re Rezulin Prod. Liab. Litig., 133 F. Supp.2d 272, 289
18 (S.D.N.Y. 2001) (describing law of Louisiana and similar rule in
19 several other states).  Pharmacists have no duty to warn of
20 potential side effects from prescription drugs nor a duty to
21 inspect the medication.  See Gassen v. East Jefferson Gen. Hosp.,
22 628 So.2d 256, 259 (La. 1993).  The duty is limited to properly
23 filling a prescription and warning of overdoses.  See Guillory v.
24 Doctor X, 679 So.2d 1004, 1010 (La. Ct. App. 1996).

25        Louisiana courts recently have confirmed that this limit on
26 liability for prescriptions applies to contract theories as well

ORDER
Page - 7 -

1  as tort causes of action. They have held that plaintiffs cannot
2  sue pharmacists for redhibition or breach of warranty. See
3  McKinney v. Warner Lambert, No. 01-1103 (E.D. La. May 15, 2001);
4  Williams v. Warner-Lambert Co., No. 01-0690 (W.D. La. July 27,
5  2001). For example, the Williams court denied remand and stated
6  that plaintiff had no possibility of recovery, because the
7  pharmacy submitted an affidavit confirming that the pharmacy had
8  no knowledge of the prescription's potential side effects.
9  Williams, No. 01-0690 (W.D. La. July 27, 2001). These decisions
10 are consistent with the uniform rule described above that a
11 pharmacy has no duty to warn.
12      The limitation on liability for pharmacies logically extends
13 to over-the-counter medications, for which pharmacies have even
14 less direct responsibility. For example, the court in Strickland
15 v. Brown Morris Pharmacy, 1996 WL 537736 (E.D. La. 1996), denied
16 remand in a suit against a pharmacy for the sale of Primatine
17 Mist, a non-prescription medication. The court cited La. Civ.
18 Code art. 2545, the redhibition statute regarding bad faith
19 sellers, and held that the plaintiff had no cause of action
20 against a pharmacy that sold the product in good faith. See also
21 Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 715 (La. Ct. App.
22 1992) (upholding dismissal of redhibition claim against good
23 faith pharmacist who sold nonprescription aspirin); see also In
24 re Diet Drugs, 1998 WL 254976 (E.D. Pa. 1998) (denying remand
25 motion and finding fraudulent joinder of Louisiana pharmacies
26 accused of breach of warranty for good faith sales of nonpre-

ORDER
Page - 8 -

1  scription diet drugs).  Just as in these cases, K&B had no
2  knowledge of potential dangers in the nonprescription medications
3  it sold, and plaintiff cannot pursue a cause of action against
4  the pharmacy.
5       Plaintiff argues that the over-the-counter cases sounded in
6  tort or alleged knowledge by the pharmacists.  However, as
7  explained above, Louisiana courts have applied the limitation on
8  liability to contract claims in the prescription drug context.
9  The reasoning applies with even greater force for nonprescription
10  medication sold by innocent pharmacists, because the pharmacist
11  does not even have a duty to measure a nonprescription drug or
12  warn of possible overdose.  As a result, plaintiff's cause of
13  action against K&B has no reasonable probability of success
14  whether couched as tort or redhibition.

15  B.  Negligence
16       Plaintiff argues remand is necessary because the complaint
17  states a claim for negligence against K&B.  To the contrary, as
18  explained above, K&B's status as a pharmacy prevents plaintiff
19  from alleging a tort cause of action based on defective medica-
20  tion.  Even if K&B were not a pharmacist, plaintiff's complaint
21

22       [1]Plaintiff also relies on Badon v. RJR Nabisco, Inc., 236
23  F.3d 282 (5th Cir. 2000), in which the court granted remand in a
     redhibition lawsuit that joined Louisiana pharmacies.  Badon
24  provides little guidance, however, because it involved the
     distribution of cigarettes rather than medication - prescription
25  or otherwise.  The liability limitations for pharmacies selling
     medications never became an issue.  As described above, courts
26  since Badon have continued to limit the liability of pharmacies.

ORDER
Page - 9 -

still would fail.  Any non-manufacturer seller of a product is liable in tort "only if he knew or should have known that the product sold was defective and failed to declare it."  Lebleu v. Homelite Div. of Textron, Inc., 509 So.2d 563, 565 (La. Ct. App. 1987).  No cause of action can exist against K&B as a good faith seller.

Plaintiff points to language in the complaint that alleges "all" the defendants knew or should of known of the dangers from PPA.  However, in the negligence section of the complaint, plaintiff alleges only that the manufacturer defendants had knowledge.  Plaintiff separately alleges that K&B was negligent only because it "failed to exercise reasonable care."  Moreover, K&B's responses to requests for admission refute plaintiff's broad, unsupported assertion that K&B knew of dangers.  Plaintiff has not alleged facts supporting its allegation that K&B knew or should have known of the dangers and cannot bring a cause of action in negligence against K&B.

III.  CONCLUSION

The court DENIES the plaintiff's motion to remand the case to the state courts of Louisiana.

DATED at Seattle, Washington this 26th day of February, 2002.

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

ORDER
Page - 10 -