27

United States District Court
Southern District of Texas
FILED

MAY 2 3 2002

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **FRANCISCO SANCHEZ** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN HOME PRODUCTS CORPORATION; ADVOCARE INTERNATIONAL, LLC BAYER CORPORATION; BLOCK DRUG COMPANY, INC.; BRISTOL MYERS SQUIBB COMPANY; CHATTEM, INC.; GLAXOSMITHKLINE, PLC; NOVARTIS CONSUMER HEALTH, INC.; NOVARTIS PHARMACEUTICALS CORPORATION; SMITHKLINE BEECHAM CONSUMER HEALTHCARE, L.P.; SMITHKLINE BEECHAM CORPORATION; WHITEHALL-ROBINS HEALTHCARE; and CIRCLE K STORES, INC. d/b/a CIRCLE K (sued individually and as successor-in-interest to COASTAL MART, INC. and MAVERICK MARKET, INC.)** | § | **CIVIL ACTION NO. B-02-066**<br><br>**JURY DEMANDED** |

**DEFENDANT CHATTEM, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

## I. Introduction

Plaintiff, Francisco Sanchez (hereinafter "Plaintiff"), filed this action in the District Court of Cameron County, Texas on February 20, 2002. This action arises from a products liability claim involving phenylpropanolamine (hereinafter "PPA"), a substance formerly found in various nasal decongestants and weight loss products. It is one of multiple actions filed on behalf of individual plaintiffs against some or all of these same Defendants in a number of states throughout the United States. It is one of several such actions filed in Texas by Plaintiff's

counsel, all containing verbatim identical factual allegations, claims for relief and alleged damages.[1]

On August 28, 2001, the Judicial Panel on Multidistrict Litigation (the "Panel") issued an order pursuant to 28 U.S.C. § 1407 consolidating actions involving PPA in the Western District of Washington (hereinafter "MDL") before Hon. Barbara Jacobs Rothstein. See In re Phenylpropanolamine (PPA) Prod. Liab. Litig., 173 F. Supp.2d 1377, 1380 (J.P.M.L. 2001). The Panel found that the actions involved "common questions of fact, and that centralization under Section 1407 in the Western District of Washington [would] serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." Id. at 1379.

The Panel also noted in its decision that several other cases would be treated as potential "tag along" actions. Id. at 1378, n.1. A tag along action is a "civil action pending in the district court involving common questions of fact with actions previously transferred under Section 1407." R.P.J.P.M.L. Rule 1.1. Following the creation of the MDL Docket in August 2001, more than 400 pending PPA actions have been or are in the process of being transferred to Judge Rothstein. This case has been conditionally transferred pursuant to conditional transfer order 16.[2]

Plaintiff in this action sues multiple foreign corporations alleged to have been or to be manufacturers of various unidentified PPA containing products. Specifically, Plaintiff sues the following alleged foreign manufacturer Defendants:

---

1 Compare, e.g., Plaintiff's Original Petition in this action with the Original Petitions in *Antonia Olivas and spouse Manuel Olivas v. American Home Products Corporation, et al.*, filed in the District Court of El Paso County, Texas No. 2002-009; *Evangelina Rubio and spouse Julio Rubio v. American Home Products Corporation, et al.*, filed in the District Court of El Paso County, Texas No. 2002-930; and *Juan R. Lopez and spouse Antonia Lopez v. American Home Products Corporation, et.al.*,filed in the District Court of Webb County, Texas. No. 2002CVT000147D2. (Copies attached hereto as Collective Exhibit A).

2 Defendant Novartis Consumer Health, Inc. has previously filed a Motion to Stay requesting that this Court stay any action in this case, including ruling on Plaintiff's Motion to Remand, pending transfer of the case to the MDL proceedings in the Western District of Washington. As further set out in that Motion, Defendant Chattem respectfully submits that this Court should permit the MDL proceedings to decide Plaintiff's Motion to Remand.

1.    American Home Products Corporation, a Delaware Corporation with its principal place of business in New Jersey. (Plaintiff's Original Petition, ¶3)

2.    Bayer Corporation, an Indiana corporation with its principal place of business in Pennsylvania. (Plaintiff's Original Petition, ¶5)

3.    Block Drug Company, Inc., a New Jersey corporation with its principal place of business in New Jersey. (Plaintiff's Original Petition, ¶6)

4.    Bristol-Myers Squibb Company, a Delaware corporation. (Plaintiff's Original Petition, ¶7).

5.    Chattem, Inc. a Tennessee corporation with its principal place of business in Tennessee. (Plaintiff's Original Petition, ¶8).

6.    GlaxoSmith Kline PLC, a foreign corporation with its United States principal place of business in Philadelphia, Pennsylvania. (Plaintiff's Original Petition, ¶9).

7.    Novartis Consumer Health, Inc., a Delaware corporation with its principal place of business in New Jersey. (Plaintiff's Original Petition, ¶10).

8.    Novartis Pharmaceuticals Corporation, a Delaware corporation with its principal place of business in New Jersey. (Plaintiff's Original Petition, ¶11).

9.    SmithKline Beecham Consumer Healthcare, L.P., a limited partnership in Delaware with its principal place of business in Pennsylvania. (Plaintiff's Original Petition, ¶12).

10.    SmithKline Beecham Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania. (Plaintiff's Original Petition, ¶13).

11.    Whitehall-Robins Healthcare, a division of American Home Products Corporation. (Plaintiff's Original Petition, ¶14).

Plaintiff additionally sues the following Texas corporation alleged to have been or to be a retail seller of unidentified PPA containing products:

Circle K. Stores, Inc. d/b/a Circle K, a Texas corporation (Plaintiff's Original Petition, ¶15).

Finally, Plaintiff sues the following Texas headquartered corporation which Plaintiff alleges also was or is a manufacturer of unidentified PPA containing products:

Advocare International, LLC ("Advocare"), incorporated in the State of Delaware with its corporate headquarters and principal place of business in Carrollton, Dallas County, Texas. (Plaintiff's Original Petition, ¶4)

As in each of the other Texas cases filed by Plaintiff's counsel, Plaintiff's factual allegations here are generally and vaguely pled. Plaintiff fails to identify the particular PPA containing product which was ingested by Plaintiff and which allegedly caused his injury. Plaintiff fails to identify the date when any PPA product was ingested by Plaintiff.[3] Plaintiff fails to identify his injury or the date of his injury. And critically, Plaintiff fails to identify which Defendant manufactured the unidentified PPA containing product alleged to have caused Plaintiff's injury.

Instead, Plaintiff merely alleges as follows:

> . . . Plaintiff suffered severe and debilitating permanent injures [sic] as a result of exposure to phenylpropanolamine (hereinafter referred to PPA) through ingestion of PPA containing products designed, formulated, marketed, manufactured, distributed, and/or sold by defendants.
>
> . . .
>
> Plaintiff has purchased certain over-the-counter, non-prescription and/or prescription drugs containing PPA. Plaintiff and his family have purchased and/or ingested within all relevant times PPA products.
>
> . . .
>
> Plaintiff purchased and/or ingested the aforementioned drugs containing PPA in this county. Plaintiff suffered severe and debilitating permanent injuries in this county as a consequence of

3 In fact, Plaintiff fails to identify any PPA containing product ingested by Plaintiff.

> his exposure to PPA through ingestion of the PPA containing products, designed, formulated, marketed, manufactured, distributed and/or sold by defendants.

(Plaintiff's Original Petition, ¶¶2, 23, 25).

Plaintiff asserts against all Defendants identical claims for strict liability, negligence and gross negligence, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, negligent misrepresentation, breach of a continuing duty to warn, civil conspiracy and malice. Plaintiff seeks from all Defendants an unspecified amount of compensatory and punitive damages. (Plaintiff's Original Petition, ¶74 and ad damnum).

Defendant Novartis Consumer Health, Inc., with the consent of all other properly joined Defendants, timely removed this action pursuant to 28 U.S.C. § 1441(b) by Notice of Removal filed on or about April 5, 2002. Defendants premise their removal upon this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332, there being diversity of citizenship and the amount in controversy being in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. Defendants assert in the Notice of Removal that the Texas Defendants, Advocare and Circle K, were fraudulently joined such that their citizenship should be disregarded for purposes of determining the presence of diversity. Specifically, Defendants contend that as a matter of law there is no reasonable basis upon which Plaintiff can establish a cause of action against Advocare or Circle K. As such, their joinder was fraudulent and their citizenship must be disregarded. Absent these Texas Defendants, complete diversity exists and this Court has subject matter jurisdiction. (See Notice of Removal, ¶¶21-23).

The Court has before it now Plaintiff's Motion to Remand. According to Plaintiff, the joinder of Texas Defendants Advocare and Circle K was not fraudulent. However, Plaintiff's manner of pleading in this case clearly suggests the contrary.

Plaintiff's utilization of a Petition which omits basic, critical facts and which recites the identical general and vague allegations found in petitions filed in a host of other suits brought by

Plaintiff's counsel on behalf of other plaintiffs in this and other jurisdictions in Texas evinces a calculated effort to evade diversity jurisdiction and removal. By omitting any allegation as to the specific product at issue, the manufacturer of that product, the seller of and date of sale of that product, the injury allegedly suffered by Plaintiff or the date of that injury, Plaintiff has attempted to play a veritable shell game with Defendants and with this Court. Plaintiff has attempted to prevent this Court from properly exercising jurisdiction.[4] The Court should not condone such practice by rewarding Plaintiff with a remand of this case to state court. The Plaintiff's Motion to Remand therefore should be denied.

## II. Argument

### A. Introduction

This Court has subject matter jurisdiction over this matter and therefore removal was proper. The sole Texas Defendants, Advocare and Circle K, were fraudulently joined such that their citizenship is not to be considered by the Court in determining whether there exists diversity of citizenship. Absent these fraudulently joined Defendants, there is complete diversity of citizenship between Plaintiff and the remaining Defendants, none of which is a citizen of Texas.

Further, while not specifically stated in the Petition, it is facially apparent therefrom that the amount of damages claimed is in excess of Seventy-Five Thousand Dollars ($75,000.00). The amount in controversy required for federal diversity jurisdiction thus exists.

### B. The Sole Texas Defendants Were Fraudulently Joined Such That There Is Complete Diversity of Citizenship Between Plaintiff and the Remaining Defendants.

#### 1. The Court should take into account Texas Defendants Advocare's and Circle K's fraudulent joinder in addressing Plaintiff's Motion to Remand.

---

4 That this was Plaintiff's intent in pleading vaguely is further evidenced by his sudden ability to state critical facts, once the case has been removed and he seeks to have it remanded. Only in Plaintiff's Motion To Remand and his recently filed Affidavit are Defendants advised for the first time of the specific product Plaintiff alleges to have consumed, the date on which he purchased and allegedly consumed it and the nature and date of his alleged injury. (Plaintiff's Motion to Remand, p.1 § I and Exhibit A). Such alleged facts clearly could and should have been pled in the Original Petition.

There is in this Circuit a longstanding policy that "jurisdictional rules may not be used to perpetuate a fraud or ill-practice upon the court by either improperly creating or destroying diversity jurisdiction." *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985). Here, Plaintiff's intentionally vague Original Petition fails to state basic and essential facts, and is in clear violation of this policy. It is also in violation of the spirit and intent of the federal removal statutes. For example, the legislative history of the 1949 amendment to 28 U.S.C. § 1446(b) governing the time for removal "reflects a clear concern for ensuring that a defendant 'know [] what the suit is about' before triggering the removal clock." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 204 (2d Cir. 2001) (citation omitted). Plaintiff's pleading is designed to prevent Defendants from timely determining which product is at issue and which Defendant is even potentially liable, and to thereby thwart Defendants' right to timely remove and this Court's proper exercise of subject matter jurisdiction.

To prevent just such conduct by Plaintiff and to further the policy against misuse of jurisdictional rules, the Courts of this Circuit have adopted the judicially created doctrine of fraudulent joinder. Under the doctrine of fraudulent joinder, "[i]f a defendant to a lawsuit has been fraudulently joined to destroy diversity jurisdiction, the court **must** disregard his presence when determining diversity jurisdiction under 28 U.S.C. § 1332." *Jackson v. Wilson*, 4 F. Supp.2d 671, 672 (E.D. Tex. 1998) (emphasis added); *French v. State Farm Ins. Co.*, 156 F.R.D. 159, 161 (S.D. Tex. 1994). Where a court determines that a non-diverse defendant has been fraudulently joined, the case is deemed properly removed and the court may assert diversity jurisdiction. See *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 323-324 (5th Cir. 2001).

In the case at bar, on the basis of Plaintiff's Original Petition, Texas Defendants Advocare and Circle K were fraudulently joined.

**2.      There is no reasonable basis for predicting that Plaintiff can establish liability on the part of the sole Texas Defendants.**

Fraudulent joinder is properly found to have occurred where either 1) there has been fraud in the recitation of the jurisdictional facts; **or**, 2) there is an absence of any possibility that Plaintiff can establish a claim against the non-diverse Defendant. *Heritage Bank*, 250 F.3d at 323. In the instant case, no such possibility exists.

To escape a finding of fraudulent joinder, the "possibility" of establishing a claim against the non-diverse defendants must be found to be more than "hypothetical," or "theoretical". "Plaintiffs cannot avoid a finding of fraudulent joinder by asserting a mere hypothetical possibility of a cause of action against the non-diverse defendants." *Oxford v. Williams Companies, Inc.*, 137 F. Supp.2d 756, 762 (E.D. Tex. 2001). Plaintiff's assertion of a "mere theoretical possibility of recovery under local law - no matter how remote or fanciful" does not suffice to preclude removal. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000). Rather, there must be found to exist a "reasonable probability of recovering against the joined party." *Delgado v. Shell Oil Co.*, 231 F.3d 165, 179 (5th Cir. 2000). "Stated differently, [the Court] must determine whether there is any **reasonable basis** for predicting that [Plaintiffs] might be able to establish [the non-diverse Defendant's] liability on the pleaded claims in state court." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (emphasis added); See also *Badon*, 236 F.3d at 286 n.4; *Delaney v. Viking Freight, Inc.*, 41 F. Supp.2d 672, 674 (E.D. Tex. 1999). In the absence of such a reasonable basis, joinder is fraudulent and removal proper.

Here, there is no reasonable basis upon which this Court may properly predict that Plaintiff can establish a claim against Texas Defendants Advocare or Circle K. Here, Plaintiff's attempted obfuscation by means of general, vague pleading results in a complete failure to establish a reasonable probability of recovering against Advocare or Circle K.

While Texas adheres to the rule of notice pleading, this rule fails to save Plaintiff from a finding of fraudulent joinder and proper removal in the face of his vaguely pled Original Petition. Where in addition to diverse defendants, a plaintiff names a non-diverse defendant but then alleges no actionable facts specific to that non-diverse defendant, instead simply referring to conduct by "Defendants," and where the conduct is attributable to other of the diverse

defendants, the Petition fails to provide a reasonable basis for predicting liability on the part of the non-diverse defendant. See *Griggs*, 181 F.3d at 699.

In the instant case, Plaintiff has failed to plead facts establishing any connection between the Texas Defendants, Advocare and Circle K, and Plaintiff. Plaintiff therefore cannot establish a reasonable probability of recovering against these Defendants and these Defendants were therefore fraudulently joined. *See, e.g., Adams v. Warner-Lambert Co.*, 2001 U.S. Dist. Lexis 19343, No. 3:01-CV-1980-M (N.D. Tex. November 27, 2001) (copy attached as Exhibit B) ("In ruling on Plaintiffs' Motion, the Court did not consider the citizenship of Defendant H.E.B. Grocery ("H.E.B."), as the Court found that Plaintiffs did not allege in their state court petition that any Plaintiff had purchased Rezulin from an H.E.B. pharmacy, rendering its citizenship irrelevant to the analysis.")

As a general rule, "[r]egardless of the theory upon which liability is predicated, in order to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must be proof that the defendant being sued is the entity that actually produced, manufactured, sold, or was in some way responsible for the product." *In Re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp.2d 593, 618-619 (S.D. N.Y. 2001); *see also Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp.2d 546, 549-550 (E.D. Ky. 2000) (Holding that plaintiffs' failure to plead that the non-diverse pharmacies sold or supplied plaintiffs with the product at issue was fatal and that the non-diverse pharmacies were improperly jointed.)

Texas adheres to this general rule. As the Supreme Court of Texas has stated, "[u]nder traditional products liability law, the plaintiff must prove the defendant supplied the product that caused the injury." *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996); *see also In Re Fibreboard Corp.*, 893 F.2d 706, 711 (5th Cir. 1990) (quoting *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 77 (Tex. 1989)); *Muniz v. Ransomes America Corp.*, 921 F. Supp. 438, 442 (S.D. Tex. 1995), aff'd, 81 F.3d 154 (5th Cir. 1996). Further, "[i]t is not enough that the seller merely introduced products of similar design and manufacture into the stream of commerce." *Barajas*, 927 S.W.2d at 614.

By definition, this action, and each of Plaintiff's theories of recovery, is a products liability action. Tex. Civ. Prac. & Rem. Code § 82.001(2). This general rule requiring the pleading and proof of facts establishing that the subject product was supplied by the named defendant thus applies with respect to each of Plaintiff's substantive theories of recovery in this case. *See In Re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 175 F. Supp.2d at 618-619. Even Plaintiff's own Motion To Remand recognizes that under his theories of strict liability, negligence, breach of implied warranties, negligent misrepresentation and breach of duty to warn there must be alleged and proved a connection between the named Defendant, the product and the Plaintiff's injury. (*See* Plaintiff's Motion to Remand at 6-11).

With respect to strict liability, the Texas Supreme Court reiterated in *Barajas* that where the named defendant did not supply the product that caused injury to the plaintiff, that defendant cannot be liable. 927 S.W.2d at 616. Similarly, with respect to breach of warranty, under Texas law a plaintiff must plead and prove that the alleged unfit product caused his injury. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989). A product not purchased or used by the plaintiff cannot be the cause of his injury and the manufacturer or seller of that product therefore cannot be liable. In fact, Texas law goes so far as to provide that only actual sellers may be liable for breach of warranty. "Even where a party has promoted a product, and made promises regarding that product, if the party is not the actual seller a claim for breach of warranty will not lie." *Allgood v. R. J. Reynolds Tobacco Co.*, 80 F.3d 168, 170-171 (5th Cir. 1996); *Perez v. Brown & Williamson Tobacco Corp.*, 967 F. Supp. 920, 929 (S.D. Tex. 1997).

Likewise, with respect to negligence and breach of duty to warn, Plaintiff must plead and prove a connection to the particular Defendant in order to establish the required elements of duty, breach of duty and causation. Where a defendant did not manufacture or sell the product which allegedly caused a plaintiff's injury, that defendant cannot be liable under a negligence theory. *Barajas*, 927 S.W.2d at 615-616. Similarly, "[a] manufacturer generally does not have a duty to warn or instruct about another manufacturer's products, even though a third party might use those products in connection with the manufacturer's own product." *Id.* at 614.

Finally, with respect to negligent misrepresentation, Plaintiff must plead and prove that a Defendant made a specific, identified misrepresentation to the Plaintiff upon which the Plaintiff relied to his injury. It is not sufficient to allege that all defendants misrepresented to the public the risk of a general class of products, type of product or commonly produced product. Such conclusory allegations "are insufficient to meet the required nexus between the plaintiffs and the defendants' alleged misrepresentations." *In Re Rezulin Prods. Liab. Litig.*, 133 F. Supp.2d 272, 285-286 (S.D. N.Y. 2001).

In this case, by intentionally pleading in such a vague manner, Plaintiff has failed to allege any connection between the Texas Defendants, Advocare or Circle K, and himself, his alleged injury or the product at issue. Absent such a connection, Plaintiff, as a matter of law, cannot establish a reasonable probability of recovering against these Defendants under any of his substantive theories.

In an effort to avoid this inevitable conclusion, Plaintiff attempts to plead a claim for civil conspiracy. However, as to non-diverse Defendants, Advocare and Circle K, Plaintiff also has no reasonable probability of recovery under this theory.

In the first instance, "[c]ivil conspiracy requires liability for an underlying substantive tort." *Sanchez v. Ligett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (*citing Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)). In addition, "[b]ecause negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *Barajas*, 927 S.W.2d at 617. The Supreme Court of Texas has therefore held that a finding that the parties "'intended to accomplish an unlawful or negligent purpose or to accomplish a lawful purpose by unlawful or negligent means' would not support liability [for civil conspiracy]." *Juhl*, 936 S.W.2d at 644 (quoting *Triplex Communications, Inc. v. Riley*, 933 S.W.2d 716, 720 (Tex. 1995)).[5]

---

5 At least one Texas appellate court has indicated that this same rule applies to a strict liability claim. *See Michel v. Rocket Engineering,* 45 S.W.3d 658, 671, n.5 (Tex. App.-Fort

Here, Plaintiff fails to plead a connection between the non-diverse Defendants and the product alleged to have caused his injury. He has therefore adequately pled no underlying tort as against these Defendants. Plaintiff's various theories of recovery sound in negligence or otherwise lack the element of intentional wrongdoing required to constitute the underlying intentional tort for purposes of a civil conspiracy claim. Plaintiff has, then, not pled a viable claim of civil conspiracy against these Texas Defendants.

**3. Plaintiff's Affidavit does not provide a reasonable basis for predicting liability on the part of Advocare or Circle K.**

While Plaintiff has now filed an Affidavit in an effort to overcome the deficiencies of his intentionally vague Original Petition, the Court need not and, in light of Plaintiff's conduct, should not consider the Affidavit. Although a court can examine summary judgment-type evidence when deciding whether a party has been fraudulently joined, such evidence, including affidavits, cannot be used to state a legal theory not alleged in the state court petition. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995).

Cases interpreting the Fifth Circuit's holding that a court can pierce the pleadings to decide fraudulent joinder issues have noted that whether to pierce the pleadings is a matter of the district court's discretion. *See Wells' Dairy, Inc. v. American Indus. Refrigeration, Inc.*, 157 F. Supp. 2d 1018, 1032 (N.D. Iowa 2001) ("'[P]iercing the pleadings,' even in the Fifth Circuit, is a matter of the district court's discretion."); *see also Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (noting that "a district court *may* look to evidence outside of the pleadings in determining a fraudulent joinder claim") (emphasis added).

Here, rather than pleading basic facts identifying the product allegedly taken and allegedly causing Plaintiff's injury and thereby limiting his claims to only Defendants who manufactured or sold or supplied that product, Plaintiff sued numerous Defendants and subjected these Defendants to the expense of litigation. His belated submission of an Affidavit identifying

---

Worth 2001) (It "would logically follow that civil conspiracy . . . cannot be based on manufacture or sale of a product under a theory of strict liability.").

only particular Defendants should not defeat removal. The Court should hold Plaintiff to the allegations of his Original Petition.

However, even were the Court to consider Plaintiff's recently filed Affidavit, it fails to establish a reasonable probability of recovery against Advocare or Circle K.

As to Advocare, Plaintiff's Affidavit adds nothing. In fact, it establishes that Plaintiff ingested a product not manufactured, sold or supplied by Advocare. (*See* Plaintiff's Motion to Remand at 1,16 and Exhibit A, ¶3). Plaintiff's Affidavit therefore fails to demonstrate the requisite connection between Advocare, the product, the Plaintiff or the Plaintiff's injury.

Plaintiff's Affidavit does suggest that he purchased the product alleged to have caused his injury from Circle K and received no warning. (Plaintiff's Motion to Remand, Exhibit A, ¶¶4,6). This too, though, avails Plaintiff of nothing. Under Texas law, a pharmacy has no liability for failure to warn of the risks posed by prescription medications. *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.2d 455 (Tex. App. - Austin 2000, pet. denied). This same holding should apply with respect to manufacturer compounded and packaged over-the-counter drugs such as that allegedly taken by Plaintiff. As Judge Rothstein has explained in ruling on motions to remand in PPA cases involving Louisiana law: "The limitation on liability for pharmacies logically extends to over-the-counter medications, for which pharmacies have even less direct responsibility" *See Johnson v. Bayer Corp.*, No. C01-2014R at 7-8 (W.D. Wash. 2001) (copy attached as Exhibit C). This result is even more compelling where, as here, the over-the-counter medication may be sold in a non-pharmacy setting.

Absent a duty to warn, Plaintiff cannot make out a claim of independent liability on the part of Circle K.

**C.    The Amount in Controversy Exceeds Seventy-five Thousand Dollars ($75,000.00).**

Plaintiff sues for compensatory damages for personal injury including damages for lost earnings and future earning capacity; past and future hospital and medical expenses; and, past, present and future physical pain and suffering, mental anguish, physical impairment and physical

disfigurement; and, for punitive damages. Plaintiff, though, has not specified an amount of damages in his Original Petition. In such a case, where the Petition fails to allege a specific amount of damages, defendants who are invoking federal court jurisdiction by removal simply must establish the jurisdictional amount by a preponderance of the evidence. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Maley v. Design Benefits Plan, Inc.*, 125 F. Supp.2d 197, 198-199 (E.D. Tex. 2000). Defendants may meet this burden by demonstrating that it is "facially apparent" from the Petition that a plaintiff's claims are likely in excess of Seventy-Five Thousand Dollars ($75,000.00). *Id.* Once defendants make this initial threshold showing, the burden shifts to the plaintiff to prove to a legal certainty that the recovery will not exceed the jurisdictional amount. *Century Assets Corp. v. Solow*, 88 F. Supp. 2d 659, 663 (E.D. Tex. 2000).

"Numerous cases make it clear that a petition can facially state a claim over the jurisdictional amount when there are no numbers in the petition at all." *Solow*, 88 F. Supp. 2d at 661. The Court should look at the nature of the causes of action asserted and the surrounding context and should consider claims for both actual and exemplary damages. Claims for exemplary damages alleging willful, wanton or intentional conduct "buttress a finding of the requisite amount in controversy when combined with the nature of the causes of action and the factual context surrounding the case." *Maley*, 125 F. Supp. 2d at 199.

Here, Plaintiff alleges "severe and debilitating permanent injuries" as the result of ingestion of PPA containing products. Plaintiff alleges gross negligence, civil conspiracy and intentional wrongful conduct and/or malice. Plaintiff seeks actual and exemplary damages. Considering the nature of the causes of action, the alleged surrounding facts, and the claim for exemplary damages, Defendants have met their initial burden of demonstrating by a preponderance of the evidence the requisite jurisdictional amount. Said amount is facially apparent from the Original Petition.

## III. Conclusion

Defendants properly removed this case.  There exists complete diversity of citizenship between Plaintiff and the properly joined Defendants, none of which are citizens of Texas.  The sole Texas Defendants, Advocare and Circle K, were fraudulently joined and their citizenship therefore should not be considered in determining the propriety of removal.  In the absence of these fraudulently joined Defendants, there is complete diversity.

The Plaintiff made a conscious decision to file a vaguely pled Original Petition in an effort to evade removal and the exercise of federal court jurisdiction.  In doing so, Plaintiff took a calculated risk.  He now should not be heard to complain and should not be rewarded for attempting to conceal critical facts which he could and should have pled from the outset.  Instead, Plaintiff should be bound by his Original Petition for purposes of determining the propriety of removal.

Accordingly, the Court should find that it has subject matter jurisdiction, that this case was properly removed and that Plaintiff's motion to remand is not well-taken and should be denied.

Respectfully submitted,

**HAYS, McCONN, RICE & PICKERING**

By: Margaret T. Brenner (w/perm.)
Margaret T. Brenner
Federal I.D. No. 9044
State Bar No. 02958050
ATTORNEY-IN-CHARGE FOR DEFENDANT CHATTEM, INC.

OF COUNSEL:

HAYS, McCONN, RICE & PICKERING, P.C.
400 Two Allen Center
1200 Smith Street
Houston, Texas 77002
Telephone: (713) 654-1111
Facsimile: (713) 655-9212

HOLE & ALVAREZ, L.L.P.
Micaela Alvarez
State Bar No. 01127900
Water Tower Center
612 West Nolana, Suite 370
McAllen, Texas 78504
Telephone: (956) 631-2891
Facsimile: (956) 631-2415

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been duly sent by U. S. mail, certified mail return receipt requested, hand delivery, or by telecopy, on this 23rd day of May, 2002 to the following counsel of record:

Mr. David C. Greenstone,
WATERS & KRAUS, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204

All other known counsel of record

Margaret T. Brenner

IN THE COU... EL PASO COUNTY, TEXAS ...R 5

FILED
EDIE RUBALCABA
2002 JAN -2 AM 10:56
EL PASO COUNTY, TEXAS
BY ____ DEPUTY

NO. 2002-009

| | | |
|---|---|---|
| ANTONIA OLIVAS and spouse MANUEL OLIVAS *Plaintiffs* | § | IN THE DISTRICT COURT OF |
| v. | § | |
| AMERICAN HOME PRODUCTS CORPORATION; WHITEHALL-ROBINS HEALTHCARE; BAYER CORPORATION; BLOCK DRUG COMPANY, INC.; CHATTEM, INC.; GLAXOSMITHKLINE, PLC; SMITHKLINE BEECHAM CORPORATION; SMITHKLINE BEECHAM CONSUMER HEALTHCARE, L.P.; NOVARTIS PHARMACEUTICALS CORPORATION; NOVARTIS CONSUMER HEALTH, INC.; BRISTOL MYERS SQUIBB COMPANY; H.E.B., INC; WALMART STORES, INC. d/b/a WALMART STORE; CIRCLE K STORES, INC. d/b/a CIRCLE K SAFEWAY, INC d/b/a RANDALLS FOOD MARKET; THE KROGER CO. d/b/a KROGERS; ECKERD CORPORATION d/b/a ECKERD DRUGS; and WALGREEN CO. d/b/a WALGREENS *Defendants* | § | EL PASO COUNTY, TEXAS<br><br>____ JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND SERVED WITH DISCOVERY**

COME NOW, Plaintiffs Antonia Olivas and Manuel Olivas and file this their Original Petition, complaining of American Home Products Corporation, Whitehall-Robins Healthcare, a division of American Home Products Corporation, Bayer Corporation, Block Drug Company, Inc., Chattem, Inc., Glaxo SmithKline, PLC, SmithKline Beecham Corporation, SmithKline Beecham Consumer Healthcare, L.P., Novartis Pharmaceuticals Corporation, and Novartis Consumer Health, Inc., Bristol Myers Squibb Company, and H.E.B., Inc., Walmart Stores, Inc. d/b/a Walmart Store, Circle K Stores, Inc. d/b/a Circle K, Safeway, Inc. d/b/a Randalls Food Market, the Kroger Co. d/b/a Krogers, Eckerd Corporation d/b/a Eckerd Drugs, and Walgreen Co. d/b/a Walgreens (collectively "Defendants") and for cause of action would show the Court as follows:

**A. Discovery Control Plan**

1. Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiff respectfully requests that discovery be conducted pursuant to Level 3, and that a discovery control plan be entered to govern discovery in this case.

**B. Parties**

2. Plaintiffs Antonia Olivas and Manuel Olivas are Texas residents. Plaintiffs reside at 3218 Pera, El Paso, Texas 79905. Plaintiff suffered severe and debilitating permanent injures as a result of exposure to phenylpropanolamine (hereinafter referred to PPA) through ingestion of PPA containing products designed, formulated, marketed, manufactured, distributed, and/or sold by defendants.

3. Defendant American Home Products Corporation (hereinafter referred to as AHP) is a Delaware corporation with its principal place of business in New Jersey. American Home Products Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, AHP was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to Robitussin®, Advil®, and Dimetapp®.

4. Defendant Whitehall-Robins Healthcare, is a division of American Home Products Corporation (hereinafter referred to as Whitehall). Whitehall-Robins Healthcare is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, Whitehall was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to Robitussin®, Advil®, and Dimetapp®.

5. Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania. Defendant Bayer Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, C.T. Corporation Systems, 350 North St. Paul St., Dallas County, Texas 75201. At all relevant times herein, Bayer Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States including but not limited to Alka-Seltzer Plus® cold, allergy, and sinus product line.

6. Defendant Block Drug Company, Inc., (hereinafter referred to as Block) is a New Jersey corporation with its principal place of business in New Jersey. Defendant Block Drug Company, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice Hall Corporation, 800 Brazos, Austin, Texas 78701. At all relevant times herein, Block was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to BC® cold, allergy, and sinus powder line.

7. Defendant Chattem, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Defendant Chattem, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Hugh F. Sharber, 1000 Volunteer Bldg., 832 Georgia Ave., Chattanooga, TN 37409. At all relevant times herein, Chattem, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and sold, its products containing PPA in this state and throughout the United States, including but not limited to Dexatrim®.

8. Defendant GlaxoSmithKline PLC (hereinafter referred to as Glaxo) is a foreign corporation with its United States principal place of business in Philadelphia, Pennsylvania. On December 27, 2000, a merger became effective between Glaxo Wellcome and SmithKline Beecham Corporation, also a defendant herein, creating GlaxoSmithKline PLC. Defendant GlaxoSmithKline PLC may be served by servings its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. The defendant does business in the State of Texas and at all relevant times hereto marketed, promoted, warranted and sold, its products containing phenylpropanolamine (hereinafter referred to as PPA) in this state and throughout the United States, including but not limited to Contac®.

9. Defendant SmithKline Beecham Corporation (hereinafter referred to as SmithKline Corp.) is a Pennsylvania corporation with its principal place of business in Pennsylvania. This defendant may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein SmithKline Corp. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted,

warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to Contac®.

10. Defendant SmithKline Beecham Consumer Healthcare, L.P. (hereinafter referred to as SmithKline Consumer) is a limited partnership in Delaware with its principal place of business in Pennsylvania. Defendant SmithKline Beecham Consumer Healthcare, L.P. may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein, SmithKline Consumer was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to Contac®.

11. Defendant Novartis Pharmaceuticals Corporation (hereinafter referred to as Novartis Pharmaceuticals), is a Delaware corporation with its principal place of business in New Jersey. Novartis Pharmaceuticals Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Corporation Service Company, 800 Brazos, Austin, Texas 77801. At all relevant times herein, Novartis Pharmaceuticals Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to Tavist-D® and Triaminic®.

12. Defendant Novartis Consumer Health, Inc. (hereinafter referred to Novartis Consumer), is a Delaware corporation with its principal place of business in New Jersey. Defendant McNeil Consumer has not designated or maintained a registered agent for service of process in the State of Texas. This Defendant may be served by serving its Delaware registered agent, Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808. At all relevant times herein, Novartis Consumer Healthcare, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States, including but not limited to Tavist-D® and Triaminic®.

13. Defendant Bristol Myers Squibb Company is an Delaware. Defendant Bristol Myers Squibb Company is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, C.T. Corporation Systems, 350 North St. Paul St., Dallas, County, Texas 75201. At all

relevant times herein, Bristol Myers Squibb Company was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States including but not limited to Comtrex®.

14. Defendant H.E.B., Inc. (hereinafter referred to H.E.B.) is a Texas corporation who may be served with process by serving its registered agent, Dean Deckard, 646 South Main Avenue, San Antonio, Texas 78204. Defendant H.E.B. was involved in the sale and distribution of the subject PPA product(s).

15. Defendant WalMart Stores, Inc. d/b/a WalMart Store (hereinafter referred to WalMart) is a Delaware corporation authorized to do business in the State of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Companies, 800 Brazos, San Antonio, TX 78701. Defendant WalMart was involved in the sale and distribution of the subject PPA product(s).

16. Defendant Circle K Stores, Inc. d/b/a Circle K (hereinafter referred to Circle K) is a Texas corporation who may be served with process by serving its registered agent, C.T. Corporation System, 350 North St. Paul, Dallas, Texas 75201. Defendant Circle K was involved in the sale and distribution of the subject PPA product(s).

17. Defendant Safeway, Inc. d/b/a Randalls Food Market, (hereinafter referred to Randalls) is a Delaware corporation qualified to do business in the State of Texas and may be served with process by serving its Texas registered agent, United States Corp. Company, 800 Brazos, Austin, Travis County, Texas 78701. Defendant Randalls was involved in the sale and distribution of the subject PPA product(s).

18. Defendant The Kroger Co. d/b/a Krogers, (hereinafter referred to as Kroger) is an Ohio corporation who is qualified to do business in the State of Texas and may be served with process by serving its Texas registered agent, C.T. Corp System, 1021 Main St., Suite 1150, Houston, Harris County, Texas 77002. Defendant Krogers was involved in the sale and distribution of the subject PPA product(s).

19. Defendant Eckerd Corporation d/b/a Eckerd Drugs (hereinafter referred to as Eckerd) is a Delaware corporation who is qualified to do business in the State of Texas and may be served with process by serving its Texas registered agent, C.T. Corp. System, 350 North St. Paul, Dallas, Dallas County, Texas 75201. Defendant Eckerd was involved in the sale and distribution of the subject PPA product(s).

20. Defendant Walgreen Co. d/b/a Walgreens (hereinafter referred to as Walgreens) is a Illinois corporation who is qualified to do business in the State of Texas and may be served with process by serving its Texas registered

agent Prentice Hall Corp., 800 Brazos, Austin, Travis County, Texas 78701. Defendant Walgreens was involved in the sale and distribution of the subject PPA product(s).

## C. Jurisdiction and Venue

21. Jurisdiction in this Court exists because the tort and breach of warranty claims and causes of action presented herein occurred in the State of Texas. Jurisdiction is also proper in this state because plaintiff asserts only state law causes of action under Texas state law and expressly declines any assertion of federal claims, claims under any federal laws or statutes, claims involving any federal question, or claims involving any interpretation of any federal law or statute. Jurisdiction is also proper in this Court because one or more of the defendants are residents and citizens of the State of Texas.

22. Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this county. Therefore, venue properly lies in this county.

## D. Long Arm Jurisdiction and Service

23. As to out of state defendants, personal jurisdiction is founded upon section Tex. Civ. Prac. and Rem. Code §17.041 *et seq*., the Long Arm Statute.

24. The out of state defendants herein, as factually specified in this Petition, committed torts in whole or in part in the State of Texas and breached warranties of fitness and merchantability within this state. Additionally, or alternatively, plaintiff's causes of action arose out of defendants' contacts with this state and they are subject to specific personal jurisdiction. Additionally, or alternatively, their business contacts with this state are so continuous and systematic as to subject them to the general jurisdiction of this Honorable Court.

25. Service upon such out of state defendants is made by delivery of process to the defendant's officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

## E. Factual Allegations

26. At all relevant times hereto, defendants were designers, manufacturers, marketers, advertisers, distributors, merchants, and sellers of non-prescription, over-the-counter pharmaceutical products, which contained Phenylpropanolamine (PPA) as an active ingredient.

27. At all times pertinent to these causes of action, defendants acted by and through their agents and/or employees who were acting within the course, scope and authority, apparent or actual, of such agency and/or employment. Where it is alleged that defendants committed any act and/or omission or engaged in any conduct, it is

meant that the defendants committed such act and/or omission or engaged in such conduct by and through their agents and/or employees, and that at the time of such act, omission or conduct, it occurred with the full authorization or ratification of the respective defendants and/or occurred in the normal and routine course and scope of the agency or employment of such agent or employee of defendants.

28. Plaintiff has purchased certain over-the-counter, non-prescription drugs containing PPA. Plaintiff and her family have purchased and/or ingested within all relevant times PPA products.

29. Based upon defendants' promotions, marketing, advertisements, and other representations, plaintiff purchased PPA products believing they were safe for her and her family members to ingest. However, unbeknownst to plaintiff, defendants' PPA products identified herein were not safe as designed, manufactured, marketed, and distributed in that the products contained PPA as an active ingredient and failed to warn of the dangers associated with the ingestion of PPA.

30. Plaintiff purchased and/or ingested the aforementioned over-the-counter, non-prescription drugs containing PPA in this county. Plaintiff suffered severe and debilitating permanent injuries in this county as a consequence of her exposure to PPA through ingestion of the PPA containing products, designed, formulated, marketed, manufactured, distributed and/or sold by defendants.

31. The Non-Prescription Drug Manufacturers Association (hereinafter referred to a NDMA) and the industry of which the PPA defendants were part, reviewed medical and scientific literature regarding products containing active ingredients such as PPA and participated in discussions concerning the safety of PPA products, such as those manufactured, sold, and distributed by the defendants and the industry.

32. The PPA defendants and other members of the NDMA, directly or indirectly, participated in the funding of purported studies on the safety of PPA, when they knew or should have known of the inaccuracies and inadequacies of said studies.

33. Pharmaceutical companies and retailers of over-the-counter drugs, such as Retailer Defendant, have a professional and ethical duty to inform and warn the public, especially those purchasing their products, of known adverse and dangerous side effects associated with their products or active ingredients in their products.

34. Life threatening adverse effects related to PPA leading to hospitalization and/or death have been well documented and known to pharmaceutical companies, including the Retailer Defendants, for decades. These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as

FDA) warning/sentinel events systems, showing a large number of such events related to PPA. Several life threatening PPA injuries have been reported in Clin-Alert and other medical reports.

35. The Retailer Defendants marketed PPA products as safe and effective. However, defendants did not perform adequate testing of these PPA products to ensure their safety. In fact, many reports indicated the active ingredient PPA was not safe.

36. The defendants' PPA products are intended by the defendants to function as over-the-counter cold, flu, sinus, allergy and/or diet tablets, capsules, and liquid products and were designed, manufactured, marketed, advertised, distributed, and sold by defendants as such. However, the PPA products were not sufficiently or properly tested prior to being marketed to the public or at any time while being marketed to the public. Testing of the effects of the PPA products on the central nervous system or cardiovascular system were not performed over a reasonable period of time during the distribution and sale of the PPA products to the public. Nevertheless, defendants represented the PPA products to be pharmaceutically tested and safe for consumption.

37. The defendants, who are retailers or sellers of the PPA products consumed by the plaintiff, negligently failed to inform their customers of the risk associated with these products and breached implied warranties of fitness and merchantability in the sale of these inherently dangerous products.

38. Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA, from plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA, and thereby have breached both implied and express warranties.

39. Many consumers who have suffered adverse side effects from ingesting defendants' PPA products, may not know or realize they suffer from such side effects[1]. Nonspecific symptomology from myocardial injury or undefined neurologic changes may be detected and diagnosed only through medical examination and/or diagnostic testing or studies. To assist physicians in evaluation, diagnosis and treatment, they need to be armed with specific knowledge of the harmful effects of PPA and the fact that the patient has taken PPA. The failure to properly inform

[1] Defendants were aware of the significant under reporting of adverse events associated with OTC drugs in spontaneous safety surveillance systems such as that at the FDA regarding PPA and hemorrhagic strokes. The FDA has estimated that as few as 1% of all PPA-associated adverse events have been reported. Utilizing that learned estimate, the 44 FDA adverse reports between 1969 and 2000 which arose from cases of hemorrhagic stroke associated with PPA use would translate into 4400 such cases over the years in question.

the public of the dangers and potential adverse health effect of PPA, even after withdrawal of PPA products from the market, by both the manufacturer and retailers was both negligent and grossly negligent. Such a disclosure was necessary for the unsuspecting public to identify potential health problems related to PPA and to seek proper medical treatment.

40. The causal relationship of plaintiff's injury to the products containing PPA was inherently undiscoverable by the plaintiff until he was warned of the dangers by the defendants. Consequently the Discovery Rule should apply to toll the statute of limitations until plaintiff knew or through reasonable care and diligence should have known of their claims against defendants. Plaintiff filed suit within two years of the date Plaintiff knew or should have known of the claims against defendants. Therefore, plaintiff's suit was timely filed within the time period provided by the applicable statute of limitations.

41. Furthermore, defendants fraudulently concealed their wrongful conduct and the dangerous propensities of products containing PPA from the plaintiff and the public at large. Therefore, the applicable statute of limitations should be tolled during the period of such concealment, which has continually existed in the past up until the present.

**F. First Claim for Relief**
**Strict Products Liability**

42. Plaintiff incorporates by reference all factual allegations made herein, as if set out word for word in this paragraph.

43. Plaintiff claims that all defendants are liable to plaintiff under the theory of strict products liability.

44. All defendants were engaged in the business of manufacturing, designing, testing, marketing, distributing, and/or selling the subject products containing PPA and/or their incorporated component ingredients.

45. The subject products reached plaintiff without substantial change.

46. The subject products were "defective" and "unreasonably dangerous" when the products entered into the stream of commerce and received by the plaintiff in one or more of the following respects:

A. The subject products contained one or more manufacturing defects, in that they contained a dangerous chemical constituent known as PPA;

B. The subject products were not reasonably safe as designed, taking into account that the foreseeable risks involved in their use at the time the products left the possession of all defendants outweighed the utility of products or therapeutic benefits;

C. The subject products are not reasonably safe due to inadequate or defective warnings or instructions at the time the product left the possession of defendants. Specifically, although the defendants were well aware that PPA could potentially cause both hemorrhagic and certain types of ischemic strokes as well as coronary events and kidney failure, no warnings of such adverse health conditions were included on the packaging of these products. Likewise, the warnings of other contraindications or the need to consult a physician before taking, are so minimal as to be misleading.

D. The defendants are liable because at the time the products left the control of the defendants, the products were defective because they failed to contain adequate warnings or instructions, or, in the alternative, the products were defective because they were designed in a defective manner, or, in the alternative the products breached an expressed warranty or failed to conform to other expressed factual representations upon which the plaintiff justify relied in electing to use the products. The subject products were in a defective condition which rendered the products unreasonably dangerous to the plaintiff, and the defective and unreasonably dangerous conditions of the products proximately caused the damages for which plaintiff seeks recovery herein. The plaintiff's damages were not caused by an inherit characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community. Moreover, the defendants' products were defective because they failed to contain adequate warnings or instructions and the defendants knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which plaintiff's seek recovery and a reasonable competent plaintiff would not realize their dangerous condition. Additionally, defendants' products' warnings or instructions were not of a nature of what a reasonable

prudent person in the same or similar circumstances would have provided with respect to the danger and there were not warnings or instructions which communicated sufficient information on the dangers and safe use of the product taking into account the characteristic of, and the ordinary knowledge common to an ordinary consumer who purchases the product, such as your plaintiff. Additionally, defendants' products were defective because of their design and the defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care, should have known about the danger that caused the damages for which plaintiff seeks recovery. Defendants' products failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm to plaintiff without impairing the utility, usefulness, practicality, or desirability of the product to plaintiff.

**G. Second Claim for Relief**
**Negligence, Gross Negligence**

47. Plaintiff incorporates by reference all factual allegations made herein, as if set out word for word in this paragraph.

48. Plaintiff asserts claims under theories of negligence and gross negligence against all defendants.

49. All defendants had a duty to exercise reasonable care in the designing, manufacturing, marketing, selling, testing, and/or distributing of the subject products containing PPA prior to placing these products into the stream of commerce.

50. All defendants failed to exercise ordinary care in the designing, manufacturing, marketing, selling, testing, and/or distributing the subject products into interstate commerce.

51. All defendants knew or should have known that the subject products created an unreasonable risk of bodily harm or death.

52. All defendants were negligent, grossly negligent, and breached duties owed to plaintiff with respect to the subject products in the one or more of the following respects:

A. Failed to use due care in designing and manufacturing the products so as to avoid the use of PPA in such products;

    B. Failed to accompany the products with adequate warnings and instructions regarding the adverse side effects associated with the use of the products containing PPA;

C. Failed to conduct adequate testing;

D. Failed to conduct adequate post-marketing surveillance to determine the safety of the products;

E. Failed to warn plaintiff after the sale of the products containing PPA that the use of such products could result in stroke, heart attack, cardiac arrhythmia, kidney failure or even death;

F. Were otherwise careless or negligent.

53. The negligence and, gross negligence of all defendants was a proximate cause of plaintiff's harm and economic loss that they have suffered and will continue to suffer as previously described.

54. All defendants are jointly and severally liable to plaintiff for all damages claimed.

**H. Third Claim for Relief**
**Implied Warranty of Merchantability**

55. Plaintiff incorporates by reference all allegations made herein, as if set out word for word in this paragraph.

56. All defendants breached the implied warranty of merchantability because the products sold were not fit for the ordinary purposes for which such goods are used. See UCC §2.314

57. Defendants breached the implied warranty of merchantability in failing to adequately label the containers or packages containing the PPA products so as to adequately warn of the dangerous propensities of such products. See UCC §2.314. Further, PPA products sold by the defendants failed to conform to the promises or affirmations of facts made on the container or label as to the safety of use of such non-prescription drug products.

58. Such breaches of the implied warranties of merchantability were a direct and proximate cause of damages and harm to the plaintiff as alleged herein.

**I. Fourth Claim for Relief**
**Implied Warranty of Fitness for Particular Purpose**

59. Plaintiff incorporates by reference all allegations made herein, as if set out word for word in this paragraph.

60. As further cause of action, all defendants, at the time of sale, had reason to know of the particular use of these products. The plaintiff who purchased these non-prescription PPA products was relying on the sellers' skill or judgment to select and furnish suitable and safe products.

61. The defendants breached these implied warranties by providing unsafe products containing PPA and such breaches of the implied warranty of fitness for intended purposes was a proximate cause of plaintiff's injuries as alleged herein.

**J. Fifth Claim for Relief**
**Negligent Misrepresentation**

62. Plaintiff incorporates by reference all factual allegations made herein, as if set out word for word in this paragraph.

63. Plaintiff brings this cause of action for negligent misrepresentation against all defendants.

64. All defendants individually and through their agents, representatives, and/or employees, negligently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentations or omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such representations or omissions without exercising reasonable care to ascertain the accuracy of these representations.

65. The above misrepresentations or omissions were made to the public and plaintiff. Plaintiff justifiably relied on defendants' misrepresentations or omissions; Defendants' misrepresentations were the proximate cause of plaintiff's damages.

**K. Sixth Claim for Relief**
**Breach of Continuing Duty to Warn**

66. Plaintiff incorporates by reference all factual allegations made herein, as if set out word for word in this paragraph.

67. All defendants are liable to plaintiff for breaching their continuing duty to warn plaintiff of adverse health effects and complications associated with the products containing PPA.

68. Each defendant was involved in the manufacturing, designing, testing, marketing, distributing, and/or selling of the subject products. Accordingly, each defendant was involved in creating the risks associated with the products.

69. Each defendant knew, should have known, or should have discovered risks associated with the subject products that were the result of their design, testing, and/or manufacturing.

70. Each defendant had a continuing duty to warn plaintiff. Each defendant breached this duty.

71. Defendants' breach of this duty was a proximate cause of plaintiff's injuries as set forth below.

72. Accordingly, all defendants are jointly and severally liable for plaintiff's damages including punitive damages.

**L. Seventh Claim for Relief**
**Civil Conspiracy**

73. All of the allegations contained herein are re-alleged in this paragraph.

74. Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Plaintiff's injuries, diseases, illnesses, and/or deaths by allowing Plaintiff to use harmful and dangerous products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Defendants' products.

75. Plaintiffs reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their products.

76. As a direct and proximate result of Plaintiff's reliance on Defendants' false and fraudulent representations, omissions and concealments, Plaintiff sustained damages including injuries, illnesses, disabilities, and/or death and has been deprived of the opportunity of informed free choice in connection with the use of Defendants' products.

**M. Eighth claim for relief**
**Malice**

77. All of the allegations contained herein are realleged in this paragraph.

78. The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of

gross negligence, intentional wrongful conduct and/or malice resulting in damages and injuries to the Decedent. Defendants' conduct was specifically intended by Defendants to cause substantial injury to Decedent, or was carried out by Defendants with a flagrant disregard for the rights of others and with actual awareness on the part of Defendant that the conduct would, in reasonable probability, result in human deaths and/or great bodily harm. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to the Decedent and should be held liable in punitive and exemplary damages to Plaintiff.

## N. Damages

79. As a result of the defective and unreasonably dangerous nature of the products containing PPA as designed, manufactured, tested, distributed, marketed, sold, and/or supplied by all defendants, and the negligence, carelessness, other wrongdoing, and action(s) of all defendants described herein, plaintiff has suffered, sustained, and incurred and will continue to suffer, sustain, and incur the following injuries and damages, among others:

A. Plaintiffs have sustained economic loss, including loss of time and earnings and impairment of earning capacity, in the past;

B. In reasonable medical probability, plaintiffs will sustain loss of time and earnings and/or impairment of earning capacity in the future;

C. Plaintiffs have required reasonable and necessary hospital and medical care and have incurred hospital and medical expenses in the past;

D. In reasonable medical probability, plaintiffs will be required to obtain hospital and medical services and will as a result thereof incur reasonable and necessary hospital and medical expenses in the future;

E. Plaintiffs have endured physical pain and suffering in the past;

F. In reasonable medical probability, plaintiffs will suffer physical pain and suffering in the future;

G. Plaintiffs have sustained mental anguish in the past;

H. In reasonable medical probability, plaintiffs will incur mental anguish damages in the future;

I. Plaintiffs have suffered from physical impairment in the past;

J.      In reasonable medical probability, plaintiffs will sustain physical impairment in the future;

K.      Plaintiffs have suffered from physical disfigurement in the past;

L.      In reasonable medical probability, plaintiffs will suffer physical disfigurement in the future; and

M.      Plaintiffs have suffered loss of household services and a loss of capacity to perform household services in the past, and will sustain, in reasonable probability, a loss of household services and a loss of capacity to perform household services in the future.

N.      Plaintiffs have suffered loss of consortium in the past and will sustain, in reasonable probability, loss of consortium in the future.

O.      Exemplary and/or punitive damages.

P.      any and all other recoverable personal injury, survival and/or wrongful death damages to which Plaintiffs may be entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs file this, their Petition against the Defendants and demand judgment against Defendants, jointly and severally, for compensatory damages and exemplary damages in excess of the minimum jurisdictional limits of the Court to compensate plaintiff for all of her injuries and damages, both past and present, and pre-judgment and post-judgment interest, together with all costs of this proceeding and for the relief to which plaintiffs are entitled.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,
WATERS & KRAUS, L.L.P.

NELDA TALAMANTES
State Bar No. 24033252
RON C. EDDINS
State Bar No. 24000926
DAVID C. GREENSTONE
State Bar No. 24007271
C. ANDREW WATERS
State Bar. No. 20911450
PETER A. KRAUS
State Bar No. 11712980
3219 McKinney Ave.
Suite 3000
Dallas, Texas 75204
214/357-6244 (Telephone)
214/357-7252 (Facsimile)

ATTORNEYS FOR PLAINTIFF

FILED
EDIE RUBALCABA
DISTRICT CLERK
2002 MAR -5 AM 10: 08
EL PASO COUNTY, TEXAS
BY ________ DEPUTY

NO. 2002-930

| | | |
|---|---|---|
| EVANGELINA RUBIO and spouse JULIO RUBIO, | § | IN THE DISTRICT COURT OF |
| *Plaintiffs* | § | |
| v. | § | |
| AMERICAN HOME PRODUCTS CORPORATION; ADVOCARE INTERNATIONAL, LLC; BAYER CORPORATION; BLOCK DRUG COMPANY, INC.; BRISTOL-MYERS SQUIBB COMPANY; CHATTEM, INC.; GLAXOSMITHKLINE, PLC; NOVARTIS CONSUMER HEALTH, INC.; NOVARTIS PHARMACEUTICALS CORPORATION; SMITHKLINE BEECHAM CONSUMER HEALTHCARE, L.P.; SMITHKLINE BEECHAM CORPORATION; WHITEHALL-ROBINS HEALTHCARE; FURR'S SUPERMARKETS, INC.; WALGREEN CO. d/b/a WALGREENS; WALMART STORES, INC. d/b/a WALMART STORE; | § | EL PASO COUNTY, TEXAS |
| *Defendants* | § | ____ JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND SERVED WITH DISCOVERY**

COME NOW, Plaintiffs Evangelina Rubio and Julio Rubio and file this their Original Petition, complaining of American Home Products Corporation, Advocare International, LLC, Bayer Corporation, Block Drug Company, Inc., Bristol Myers Squibb Company, Chattem, Inc., GlaxoSmithKline, PLC, Novartis Consumer Health, Inc., Novartis Pharmaceuticals Corporation, SmithKline Beecham Consumer Healthcare, L.P., SmithKline Beecham Corporation, and Whitehall-Robins Healthcare, a division of American Home Products Corporation (collectively "PPA Defendants") and Furr's Supermarkets, Inc., Walgreen Co. d/b/a Walgreens, and Walmart Stores, Inc. d/b/a Walmart Store (collectively "Retailer Defendants") and for cause of action would show the Court as follows:

A. Discovery Control Plan

1. Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiffs respectfully request that discovery be conducted pursuant to Level 3, and that a discovery control plan be entered to govern discovery in this case.

B. Parties

2. Plaintiffs are Texas residents, who reside at 204 Papaya, El Paso, Texas 79915. Plaintiff suffered severe and debilitating permanent injures as a result of exposure to phenylpropanolamine (hereinafter referred to PPA) through ingestion of PPA containing products designed, formulated, marketed, manufactured, distributed, and/or sold by defendants.

3. Defendant American Home Products Corporation (hereinafter referred to as AHP) is a Delaware corporation with its principal place of business in New Jersey. American Home Products Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, AHP was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

4. Defendant Advocare International, LLC (hereinafter referred to as Advocare) is incorporated in the State of Delaware with its corporate headquarters and principal place of business in Carrollton, Dallas County, Texas. Advocare International, LLC is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Advocare was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

5. Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania. Defendant Bayer Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bayer Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times

hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

6. Defendant Block Drug Company, Inc., (hereinafter referred to as Block) is a New Jersey corporation with its principal place of business in New Jersey. Defendant Block Drug Company, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice Hall Corporation, 800 Brazos, Austin, Bexar County, Texas 78701. At all relevant times herein, Block was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

7. Defendant Bristol-Myers Squibb Company is a Delaware corporation. Defendant Bristol Myers Squibb Company is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bristol Myers Squibb Company was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

8. Defendant Chattem, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Defendant Chattem, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Hugh F. Sharber, 1000 Volunteer Bldg., 832 Georgia Ave., Chattanooga, TN 37409. At all relevant times herein, Chattem, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and sold, its products containing PPA in this state and throughout the United States.

9. Defendant GlaxoSmithKline PLC (hereinafter referred to as Glaxo) is a foreign corporation with its United States principal place of business in Philadelphia, Pennsylvania. On December 27, 2000, a merger became effective between Glaxo Wellcome and SmithKline Beecham Corporation, also a defendant herein, creating GlaxoSmithKline PLC. Defendant GlaxoSmithKline PLC may be served by servings its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. The defendant does business in the State of Texas and at all relevant times hereto marketed, promoted, warranted and sold, its products containing PPA in this state and throughout the United States.

10. Defendant **Novartis Consumer Health, Inc.** (hereinafter referred to Novartis Consumer), is a Delaware corporation with its principal place of business in New Jersey. Defendant Novartis Consumer has not designated or maintained a registered agent for service of process in the State of Texas. This Defendant may be served by serving its Delaware registered agent, Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808. At all relevant times herein, Novartis Consumer Health, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

11. Defendant **Novartis Pharmaceuticals Corporation** (hereinafter referred to as Novartis Pharmaceuticals), is a Delaware corporation with its principal place of business in New Jersey. Novartis Pharmaceuticals Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Corporation Service Company, 800 Brazos, Austin, Bexar County, Texas 77801. At all relevant times herein, Novartis Pharmaceuticals Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

12. Defendant **SmithKline Beecham Consumer Healthcare, L.P.** (hereinafter referred to as SmithKline Consumer) is a limited partnership in Delaware with its principal place of business in Pennsylvania. Defendant SmithKline Beecham Consumer Healthcare, L.P. may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein, SmithKline Consumer was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

13. Defendant **SmithKline Beecham Corporation** (hereinafter referred to as SmithKline Corp.) is a Pennsylvania corporation with its principal place of business in Pennsylvania. This defendant may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein SmithKline Corp. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

14. Defendant Whitehall-Robins Healthcare, is a division of American Home Products Corporation (hereinafter referred to as Whitehall). Whitehall-Robins Healthcare is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, Whitehall was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

15. Defendant Furr's Supermarkets, Inc. (hereinafter referred to as Furr's) is a Delaware corporation who is qualified to do business in the State of Texas and may be served with process by serving its Texas registered agent, Larry Schoenbrun, 3000 Thanksgiving Tower, Dallas, Dallas County, Texas 75201. Defendant Furr's was involved in the sale and distribution of the subject PPA product(s).

16. Defendant Walgreen Co. d/b/a Walgreens (hereinafter referred to as Walgreens) is an Illinois corporation who is qualified to do business in the State of Texas and may be served with process by serving its Texas registered agent Prentice Hall Corp., 800 Brazos, Austin, Travis County, Texas 78701. Defendant Walgreens was involved in the sale and distribution of the subject PPA product(s).

17. Defendant WalMart Stores, Inc. d/b/a WalMart Store (hereinafter referred to WalMart) is a Delaware corporation authorized to do business in the State of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Companies, 800 Brazos, San Antonio, Bexar County, Texas 78701. Defendant WalMart was involved in the sale and distribution of the subject PPA product(s).

## C. Jurisdiction and Venue

18. Jurisdiction in this Court exists because the tort and breach of warranty claims and causes of action presented herein occurred in the State of Texas. Jurisdiction is also proper in this state because Plaintiffs assert only state law causes of action under Texas state law and expressly declines any assertion of federal claims, claims under any federal laws or statutes, claims involving any federal question, or claims involving any interpretation of any federal law or statute. Jurisdiction is also proper in this Court because one or more of the defendants are residents and citizens of the State of Texas.

19. Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this county. [illegible]

D. Long Arm Jurisdiction and Service

20. As to out of state defendants, personal jurisdiction is founded upon section Tex. Civ. Prac. and Rem. Code §17.041 *et seq.*, the Long Arm Statute.

21. The out of state defendants herein, as factually specified in this Petition, committed torts in whole or in part in the State of Texas and breached warranties of fitness and merchantability within this state. Additionally, or alternatively, Plaintiffs' causes of action arose out of defendants' contacts with this state and they are subject to specific personal jurisdiction. Additionally, or alternatively, their business contacts with this state are so continuous and systematic as to subject them to the general jurisdiction of this Honorable Court.

22. Service upon such out of state defendants is made by delivery of process to the defendant's officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

E. Factual Allegations

23. At all relevant times hereto, defendants were designers, manufacturers, marketers, advertisers, distributors, merchants, and sellers of non-prescription, over-the-counter pharmaceutical products, and/or prescription pharmaceutical products which contained Phenylpropanolamine (PPA) as an active ingredient.

24. At all times pertinent to these causes of action, defendants acted by and through their agents and/or employees who were acting within the course, scope and authority, apparent or actual, of such agency and/or employment. Where it is alleged that defendants committed any act and/or omission or engaged in any conduct, it is meant that the defendants committed such act and/or omission or engaged in such conduct by and through their agents and/or employees, and that at the time of such act, omission or conduct, it occurred with the full authorization or ratification of the respective defendants and/or occurred in the normal and routine course and scope of the agency or employment of such agent or employee of defendants.

25. Plaintiffs have purchased certain over-the-counter, non-prescription and/or prescription drugs containing PPA. Plaintiff and her family have purchased and/or ingested within all relevant times PPA products.

26. Based upon defendants' promotions, marketing, advertisements, and other representations, Plaintiff purchased PPA products believing they were safe for her and her family members to ingest. However, unbeknownst to Plaintiff, defendants' PPA products identified herein were not safe as designed, manufactured, marketed, and distributed in that the products contained PPA as an active ingredient and failed to warn of the dangers associated with the ingestion of PPA.

27.     Plaintiff purchased and/or ingested the aforementioned drugs containing PPA in this county.  Plaintiff suffered severe and debilitating permanent injuries in this county as a consequence of her exposure to PPA through ingestion of the PPA containing products, designed, formulated, marketed, manufactured, distributed and/or sold by defendants.

28.     The Non-Prescription Drug Manufacturers Association (hereinafter referred to a NDMA) and the industry of which the PPA defendants were part, reviewed medical and scientific literature regarding products containing active ingredients such as PPA and participated in discussions concerning the safety of PPA products, such as those manufactured, sold, and distributed by the defendants and the industry.

29.     _ The PPA defendants and other members of the NDMA, directly or indirectly, participated in the funding of purported studies on the safety of PPA, when they knew or should have known of the inaccuracies and inadequacies of said studies.

30.     Pharmaceutical companies and retailers of over-the-counter drugs, such as Retailer Defendants, have a professional and ethical duty to inform and warn the public, especially those purchasing their products, of known adverse and dangerous side effects associated with their products or active ingredients in their products.

31.     Life threatening adverse effects related to PPA leading to hospitalization and/or death have been well documented and known to pharmaceutical companies, including the Retailer Defendants, for decades.  These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA.  Several life threatening PPA injuries have been reported in Clin-Alert and other medical reports.

32.     The Retailer Defendants marketed PPA products as safe and effective.  However, defendants did not perform adequate testing of these PPA products to ensure their safety.  In fact, many reports indicated the active ingredient PPA was not safe.

33.     The defendants' PPA products are intended by the defendants to function as over-the-counter cold, flu, sinus, allergy and/or diet tablets, capsules, and liquid products and were designed, manufactured, marketed, advertised, distributed, and sold by defendants as such.  However, the PPA products were not sufficiently or properly tested prior to being marketed to the public or at any time while being marketed to the public.  Testing of the effects of the PPA products on the central nervous system or cardiovascular system were not performed over a

reasonable period of time during the distribution and sale of the PPA products to the public. Nevertheless, defendants represented the PPA products to be pharmaceutically tested and safe for consumption.

34. The defendants, who are retailers or sellers of the PPA products consumed by the Plaintiff, negligently failed to inform their customers of the risk associated with these products and breached implied warranties of fitness and merchantability in the sale of these inherently dangerous products.

35. Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA, from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA, and thereby have breached both implied and express warranties.

36. Many consumers who have suffered adverse side effects from ingesting defendants' PPA products, may not know or realize they suffer from such side effects[1]. Nonspecific symptomology from myocardial injury or undefined neurologic changes may be detected and diagnosed only through medical examination and/or diagnostic testing or studies. To assist physicians in evaluation, diagnosis and treatment, they need to be armed with specific knowledge of the harmful effects of PPA and the fact that the patient has taken PPA. The failure to properly inform the public of the dangers and potential adverse health effect of PPA, even after withdrawal of PPA products from the market, by both the manufacturer and retailers was both negligent and grossly negligent. Such a disclosure was necessary for the unsuspecting public to identify potential health problems related to PPA and to seek proper medical treatment.

37. The causal relationship of Plaintiff's injury to the products containing PPA was inherently undiscoverable by the Plaintiff until she was warned of the dangers by the defendants. Consequently the Discovery Rule should apply to toll the statute of limitations until Plaintiffs knew or through reasonable care and diligence should have known of their claims against defendants. Plaintiffs filed suit within two years of the date Plaintiff knew or should have known of the claims against defendants. Therefore, Plaintiffs' suit was timely filed within the time period provided by the applicable statute of limitations.

[1] Defendants were aware of the significant under reporting of adverse events associated with OTC drugs in spontaneous safety surveillance systems such as that at the FDA regarding PPA and hemorrhagic strokes. The FDA has estimated that as few as 1% of all PPA-associated adverse events have been reported. Utilizing that learned estimate, the 44 FDA adverse reports between 1969 and 2000 which arose from cases of hemorrhagic stroke associated with PPA use would translate into 4400 such cases over the years in question.

38. Furthermore, defendants fraudulently concealed their wrongful conduct and the dangerous propensities of products containing PPA from the Plaintiff and the public at large. Therefore, the applicable statute of limitations should be tolled during the period of such concealment, which has continually existed in the past up until the present.

**F. First Claim for Relief**
**Strict Products Liability**

39. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

40. Plaintiffs claim that all defendants are liable to Plaintiffs under the theory of strict products liability.

41. All defendants were engaged in the business of manufacturing, designing, testing, marketing, distributing, and/or selling the subject products containing PPA and/or their incorporated component ingredients.

42. The subject products reached Plaintiff without substantial change.

43. The subject products were "defective" and "unreasonably dangerous" when the products entered into the stream of commerce and received by the Plaintiff in one or more of the following respects:

A. The subject products contained one or more manufacturing defects, in that they contained a dangerous chemical constituent known as PPA;

B. The subject products were not reasonably safe as designed, taking into account that the foreseeable risks involved in their use at the time the products left the possession of all defendants outweighed the utility of products or therapeutic benefits;

C. The subject products are not reasonably safe due to inadequate or defective warnings or instructions at the time the product left the possession of defendants. Specifically, although the defendants were well aware that PPA could potentially cause both hemorrhagic and certain types of ischemic strokes as well as coronary events and kidney failure, no warnings of such adverse health conditions were included on the packaging of these products. Likewise, the warnings of other contraindications or the need to consult a physician before taking, are so minimal as to be misleading; and

D. The defendants are liable because at the time the products left the control of the defendants, the products were defective because they failed to contain adequate warnings or instructions, or, in the alternative, the products were defective because they were designed in a defective manner, or, in the alternative the products breached an expressed warranty or failed to conform to other expressed factual representations upon which the Plaintiff justify relied in electing to use the products. The subject products were in a defective condition, which rendered the products unreasonably dangerous to the Plaintiff, and the defective and unreasonably dangerous conditions of the products proximately caused the damages for which Plaintiffs seek recovery herein. The Plaintiff's damages were not caused by an inherit characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community. Moreover, the defendants' products were defective because they failed to contain adequate warnings or instructions and the defendants knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which Plaintiffs' seek recovery and a reasonable competent Plaintiff would not realize their dangerous condition. Additionally, defendants' products' warnings or instructions were not of a nature of what a reasonable prudent person in the same or similar circumstances would have provided with respect to the danger and there were not warnings or instructions which communicated sufficient information on the dangers and safe use of the product taking into account the characteristic of, and the ordinary knowledge common to an ordinary consumer who purchases the product, such as your Plaintiff. Additionally, defendants' products were defective because of their design and the defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care, should have known about the danger that caused the damages for which Plaintiffs seek recovery. Defendants' products failed to function as expected and there existed a feasible design alternative that would



have to a reasonable probability prevented the harm to Plaintiff without impairing the utility, usefulness, practicality, or desirability of the product to Plaintiff.

**G. Second Claim for Relief**
**Negligence, Gross Negligence**

44. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

45. Plaintiffs assert claims under theories of negligence and gross negligence against all defendants.

46. All defendants had a duty to exercise reasonable care in the designing, manufacturing, marketing, selling, testing, and/or distributing of the subject products containing PPA prior to placing these products into the stream of commerce.

47. All defendants failed to exercise ordinary care in the designing, manufacturing, marketing, selling, testing, and/or distributing the subject products into interstate commerce.

48. All defendants knew or should have known that the subject products created an unreasonable risk of bodily harm or death.

49. All defendants were negligent, grossly negligent, and breached duties owed to Plaintiff with respect to the subject products in the one or more of the following respects:

A. Failed to use due care in designing and manufacturing the products so as to avoid the use of PPA in such products;

B. Failed to accompany the products with adequate warnings and instructions regarding the adverse side effects associated with the use of the products containing PPA;

C. Failed to conduct adequate testing;

D. Failed to conduct adequate post-marketing surveillance to determine the safety of the products;

E. Failed to warn Plaintiff after the sale of the products containing PPA that the use of such products could result in stroke, heart attack, cardiac arrhythmia, kidney failure or even death;

F. As to the retailer defendants, failed to remove the products from their shelves after they

knew or should have known of the adverse side effects of PPA; and

G. Were otherwise careless or negligent.

50. The negligence and, gross negligence of all defendants was a proximate cause of Plaintiff's harm and economic loss that Plaintiffs have suffered and will continue to suffer as previously described.

51. All defendants are jointly and severally liable to Plaintiffs for all damages claimed.

## H. Third Claim for Relief
## Implied Warranty of Merchantability

52. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

53. All defendants breached the implied warranty of merchantability because the products sold were not fit for the ordinary purposes for which such goods are used. See UCC §2.314

54. Defendants breached the implied warranty of merchantability in failing to adequately label the containers or packages containing the PPA products so as to adequately warn of the dangerous propensities of such products. See UCC §2.314. Further, PPA products sold by the defendants failed to conform to the promises or affirmations of facts made on the container or label as to the safety of use of such PPA products.

55. Such breaches of the implied warranties of merchantability were a direct and proximate cause of damages and harm to the Plaintiff as alleged herein.

## I. Fourth Claim for Relief
## Implied Warranty of Fitness for Particular Purpose

56. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

57. As further cause of action, all defendants, at the time of sale, had reason to know of the particular use of these products. The Plaintiff who purchased these PPA products was relying on the sellers' skill or judgment to select and furnish suitable and safe products.

58. The defendants breached these implied warranties by providing unsafe products containing PPA and such breaches of the implied warranty of fitness for intended purposes was a proximate cause of Plaintiff's injuries as alleged herein.

J. Fifth Claim for Relief
Negligent Misrepresentation

59. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

60. Plaintiffs bring this cause of action for negligent misrepresentation against all defendants.

61. All defendants individually and through their agents, representatives, and/or employees, negligently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentations or omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such representations or omissions without exercising reasonable care to ascertain the accuracy of these representations.

62. The above misrepresentations or omissions were made to the public and Plaintiffs. Plaintiffs justifiably relied on defendants' misrepresentations or omissions; Defendants' misrepresentations were the proximate cause of Plaintiff's damages.

K. Sixth Claim for Relief
Breach of Continuing Duty to Warn

63. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

64. All defendants are liable to Plaintiff for breaching their continuing duty to warn Plaintiffs of adverse health effects and complications associated with the products containing PPA.

65. Each defendant was involved in the manufacturing, designing, testing, marketing, distributing, and/or selling of the subject products. Accordingly, each defendant was involved in creating the risks associated with the products.

66. Each defendant knew, should have known, or should have discovered risks associated with the subject products that were the result of their design, testing, and/or manufacturing.

67. Each defendant had a continuing duty to warn Plaintiffs. Each defendant breached this duty.

68. Defendants' breach of this duty was a proximate cause of Plaintiff's injuries as set forth below.

69. Accordingly, all defendants are jointly and severally liable for Plaintiffs' damages including punitive damages.

**L. Seventh Claim for Relief**
**Civil Conspiracy**

70. All of the allegations contained herein are re-alleged in this paragraph.

71. Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Plaintiff's injuries, disabilities, and/or illnesses by allowing Plaintiff to use harmful and dangerous products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Defendants' products.

72. Plaintiffs reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their products.

73. As a direct and proximate result of Plaintiff's reliance on Defendants' false and fraudulent representations, omissions and concealments, Plaintiff sustained damages including injuries, disabilities, and/or illnesses and has been deprived of the opportunity of informed free choice in connection with the use of Defendants' products.

**M. Eighth claim for relief**
**Malice**

74. All of the allegations contained herein are realleged in this paragraph.

75. The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of gross negligence, intentional wrongful conduct and/or malice resulting in damages and injuries to the Plaintiff. Defendants' conduct was specifically intended by Defendants to cause substantial injury to the Plaintiff, or was carried out by Defendants with a flagrant disregard for the rights of others and with actual awareness on the part of Defendants that the conduct would, in reasonable probability, result in human deaths and/or great bodily harm. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to the Plaintiff and should be held liable in punitive and exemplary damages to the Plaintiffs.

N. Damages

76. As a result of the defective and unreasonably dangerous nature of the products containing PPA as designed, manufactured, tested, distributed, marketed, sold, and/or supplied by all defendants, and the negligence, carelessness, other wrongdoing, and action(s) of all defendants described herein, Plaintiffs have suffered, sustained, and incurred and will continue to suffer, sustain, and incur the following injuries and damages, among others:

A. Plaintiffs have sustained economic loss, including loss of time and earnings and impairment of earning capacity, in the past;

B. In reasonable medical probability, Plaintiffs will sustain loss of time and earnings and/or impairment of earning capacity in the future;

C. Plaintiffs have required reasonable and necessary hospital and medical care and have incurred hospital and medical expenses in the past;

D. In reasonable medical probability, Plaintiffs will be required to obtain hospital and medical services and will as a result thereof incur reasonable and necessary hospital and medical expenses in the future;

E. Plaintiffs have endured physical pain and suffering in the past;

F. In reasonable medical probability, Plaintiffs will suffer physical pain and suffering in the future;

G. Plaintiffs have sustained mental anguish in the past;

H. In reasonable medical probability, Plaintiffs will incur mental anguish damages in the future;

I. Plaintiffs have suffered from physical impairment in the past;

J. In reasonable medical probability, Plaintiffs will sustain physical impairment in the future;

K. Plaintiffs have suffered from physical disfigurement in the past;

L. In reasonable medical probability, Plaintiffs will suffer physical disfigurement in the future;

M. Plaintiffs have suffered loss of household services and a loss of capacity to perform

household services in the past, and will sustain, in reasonable probability, a loss of household services and a loss of capacity to perform household services in the future.

N. Plaintiffs have suffered loss of consortium in the past and will sustain, in reasonable probability, loss of consortium in the future;

O. Exemplary and/or punitive damages; and

P. Any and all other recoverable personal injury, survival and/or wrongful death damages to which Plaintiffs may be entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs file this, their Petition against the Defendants and demand judgment against Defendants, jointly and severally, for compensatory damages and exemplary damages in excess of the minimum jurisdictional limits of the Court to compensate Plaintiff for all of her injuries and damages, both past and present, and pre-judgment and post-judgment interest, together with all costs of this proceeding and for the relief to which Plaintiffs are entitled.

**JURY DEMAND**

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,

WATERS & KRAUS, L.L.P.

DAVID C. GREENSTONE
State Bar No. 24007271
NELDA TALAMANTES
State Bar No. 24033252
PETER A. KRAUS
State Bar No. 11712980

3219 McKinney Avenue
Suite 3000
Dallas, Texas 75204
214/357-6244 (Telephone)
214/357-7252 (Facsimile)

ATTORNEYS FOR PLAINTIFFS

3- 5-02;11:16AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 2/ 17

Received 03/04/2002 15:51 in 05:10 on line [7] for ... 03/04/2002 16:03 * Pg 2/17
03/04/2002 15:50 FAX 612 474 1129 CLARK THOMAS WINTERS 002

SENT TO CLIENTS: 3/5/02

MANUEL GUTIERREZ CLERK OF THE DISTRICT COURT 02 FEB -4 AM 10:15 FILED WEBB COUNTY, TX BY ___ DEPUTY

NO. 2002-CVD-000147-D2

| | | |
|---|---|---|
| JUAN R. LOPEZ and spouse ANTONIA LOPEZ, *Plaintiffs* | § | IN THE DISTRICT COURT OF |
| v. | § | |
| AMERICAN HOME PRODUCTS CORPORATION; ADVOCARE INTERNATIONAL, LLC; BAYER CORPORATION; BLOCK DRUG COMPANY, INC.; BRISTOL MYERS SQUIBB COMPANY; CHATTEM, INC.; GLAXOSMITHKLINE, PLC; NOVARTIS CONSUMER HEALTH, INC.; NOVARTIS PHARMACEUTICALS CORPORATION; SMITHKLINE BEECHAM CONSUMER HEALTHCARE, L.P.; SMITHKLINE BEECHAM CORPORATION; WHITEHALL-ROBINS HEALTHCARE; and H.E.B., INC. | § | WEBB COUNTY, TEXAS |
| *Defendants* | § | 111th JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND SERVED WITH DISCOVERY**

COMES NOW, Plaintiffs JUAN R. LOPEZ and ANTONIA LOPEZ and file this their Original Petition, complaining of American Home Products Corporation, Advocare International, LLC, Bayer Corporation, Block Drug Company, Inc., Bristol Myers Squibb Company, Chattem, Inc., GlaxoSmithKline, PLC, Novartis Consumer Health, Inc., Novartis Pharmaceuticals Corporation, SmithKline Beecham Consumer Healthcare, L.P., SmithKline Beecham Corporation, and Whitehall-Robins Healthcare, a division of American Home Products Corporation (collectively "PPA Defendants") and H.E.B., Inc., ("Retailer Defendant") and for cause of action would show the Court as follows:

**A. Discovery Control Plan**

1. Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiffs respectfully request that discovery be conducted pursuant to Level 3, and that a discovery control plan be entered to govern discovery in this case.

**B. Parties**

2. Plaintiffs are state residents, who reside at 2920 San Luis, Laredo, Texas 78042. Plaintiff suffered severe and debilitating permanent injures as a result of exposure to phenylpropanolamine (hereinafter referred to PPA)

002 16:05 03/04/02

received 3/22/2



through ingestion of PPA containing products designed, formulated, marketed, manufactured, distributed, and/or sold by defendants.

3. Defendant American Home Products Corporation (hereinafter referred to as AHP) is a Delaware corporation with its principal place of business in New Jersey. American Home Products Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, AHP was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

4. Defendant Advocare International, LLC (hereinafter referred to as Advocare) is a Delaware corporation with its corporate headquarters and principal place of business in Carrollton, Dallas County, Texas. Advocare International, LLC is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Advocare was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

5. Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania. Defendant Bayer Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bayer Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

6. Defendant Block Drug Company, Inc., (hereinafter referred to as Block) is a New Jersey corporation with its principal place of business in New Jersey. Defendant Block Drug Company, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice Hall Corporation, 800 Brazos, Austin, Bexar County, Texas 78701. At all relevant times herein, Block was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at

all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

7. Defendant Bristol Myers Squibb Company is a Delaware corporation. Defendant Bristol Myers Squibb Company is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bristol Myers Squibb Company was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

8. Defendant Chattem, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Defendant Chattem, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Hugh R. Shamber, 1000 Volunteer Bldg., 832 Georgia Ave., Chattanooga, TN 37402. At all relevant times herein, Chattem, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and sold, its products containing PPA in this state and throughout the United States.

9. Defendant GlaxoSmithKline PLC (hereinafter referred to as GSK) is a foreign corporation with its United States principal place of business in Philadelphia, Pennsylvania. On December 27, 2000, a merger became effective between Glaxo Wellcome and SmithKline Beecham Corporation, also a defendant herein, creating GlaxoSmithKline PLC. Defendant GlaxoSmithKline PLC may be served by servings its Pennsylvania registered agent Robert F. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. The defendant does business in the State of Texas and at all relevant times hereto marketed, promoted, warranted and sold, its products containing phenylpropanolamine (hereinafter referred to as PPA) in this state and throughout the United States.

10. Defendant Novartis Consumer Health, Inc. (hereinafter referred to Novartis Consumer), is a Delaware corporation with its principal place of business in New Jersey. Defendant Novartis Consumer has not designated or maintained a registered agent for service of process in the State of Texas. This Defendant may be served by serving its Delaware registered agent, Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808. At all relevant times herein, Novartis Consumer Health, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

3- 5-02;11:15AM:FULBRIGHT & JAWORSKI 1001 210 270 7205 # 5/ 17

Received 03/04/2002 15:51 in 05:10 on line [7] for KU0054 Printed 03/04/2002 16:03 * Pg 5/17
03/04/2002 15:51 FAX 512 474 1129 CLARK THOMAS & WINTERS 005

11. Defendant Novartis Pharmaceuticals Corporation (hereinafter referred to as Novartis Pharmaceuticals), is a Delaware corporation with its principal place of business in New Jersey. Novartis Pharmaceuticals Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Corporation Service Company, 800 Brazos, Austin, Bexar County, Texas 77801. At all relevant times herein, Novartis Pharmaceuticals Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

12. Defendant SmithKline Beecham Consumer Healthcare, L.P. (hereinafter referred to as SmithKline Consumer) is a limited partnership in Delaware with its principal place of business in Pennsylvania. Defendant SmithKline Beecham Consumer Healthcare, L.P. may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein, SmithKline Consumer was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

13. Defendant SmithKline Beecham Corporation (hereinafter referred to as SmithKline Corp.) is a Pennsylvania corporation with its principal place of business in Pennsylvania. This defendant may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein SmithKline Corp. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

14. Defendant Whitehall-Robins Healthcare, is a division of American Home Products Corporation (hereinafter referred to as Whitehall). Whitehall-Robins Healthcare is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, Whitehall was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

5- 3-02;11:15AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 5/ 1

Received 03/04/2002 15:51 in 05:18 on line [7] for KA0094 Printed 03/04/2002 16:03 * Pg 6/17
03/04/2002 10:51 FAX 512 474 1129 CLARK THOMAS & WINTERS 006

15. ✓ Defendant H.E.B., Inc. (hereinafter referred to H.E.B.) is a Texas corporation who may be served with process by serving its registered agent, Dan Dunbard, 646 South Main Avenue, San Antonio, Bexar County, Texas 78204. Defendant H.E.B. was involved in the sale and distribution of the subject PPA product(s).

C. Jurisdiction and Venue

16. Jurisdiction in this Court exists because the tort and breach of warranty claims and causes of action presented herein occurred in the State of Texas. Jurisdiction is also proper in this state because Plaintiffs assert only state law causes of action under Texas state law and expressly declines any assertion of federal claims, claims under any federal laws or statutes, claims involving any federal question, or claims involving any interpretation of any federal law or statute. Jurisdiction is also proper in this Court because one or more of the defendants are residents and citizens of the State of Texas.

17. Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this county. Therefore, venue properly lies in this county.

D. Long Arm Jurisdiction and Service

18. As to out of state defendants, personal jurisdiction is founded upon section Tex. Civ. Prac. and Rem. Code §17.041 *et seq.*, the Long Arm Statute.

19. The out of state defendants herein, as factually specified in this Petition, committed torts in whole or in part in the State of Texas and breached warranties of fitness and merchantability within this state. Additionally, or alternatively, Plaintiffs' causes of action arose out of defendants' contacts with this state and they are subject to specific personal jurisdiction. Additionally, or alternatively, their business contacts with this state are so continuous and systematic as to subject them to the general jurisdiction of this Honorable Court.

20. Service upon each out of state defendants is made by delivery of process to the defendant's officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

E. Factual Allegations

21. At all relevant times hereto, defendants were designers, manufacturers, marketers, advertisers, distributors, wholesale, and sellers of non-prescription, over-the-counter pharmaceutical products, which contained Phenylpropanolamine (PPA) as an active ingredient.

22. At all times pertinent to these causes of action, defendants acted by and through their agents and/or employees who were acting within the course, scope and authority, apparent or actual, of such agency and/or

employment. Where it is alleged that defendants committed any act and/or omission or engaged in any conduct, it is meant that the defendants committed such act and/or omission or engaged in such conduct by and through their agents and/or employees, and that at the time of such act, omission or conduct, it occurred with the full authorization or ratification of the respective defendants and/or occurred in the normal and routine course and scope of the agency or employment of such agent or employee of defendants.

23. Plaintiffs have purchased certain over-the-counter, non-prescription drugs containing PPA. Plaintiff and his family have purchased and/or ingested within all relevant times PPA products.

24. Based upon defendants' promotions, marketing, advertisements, and other representations, Plaintiff purchased PPA products believing they were safe for him and his family members to ingest. However, unbeknownst to Plaintiff, defendants' PPA products identified herein were not safe as designed, manufactured, marketed, and distributed in that the products contained PPA as an active ingredient and failed to warn of the dangers associated with the ingestion of PPA.

25. Plaintiff purchased and/or ingested the aforementioned over-the-counter, non-prescription drugs containing PPA in this county. Plaintiff suffered severe and debilitating permanent injuries in this county as a consequence of his exposure to PPA through ingestion of the PPA containing products, designed, formulated, marketed, manufactured, distributed and/or sold by defendants.

26. The Non-Prescription Drug Manufacturers Association (hereinafter referred to as NDMA) and the industry of which the PPA defendants were part, reviewed medical and scientific literature regarding products containing active ingredients such as PPA and participated in discussions concerning the safety of PPA products, such as those manufactured, sold, and distributed by the defendants and the industry.

27. The PPA defendants and other members of the NDMA, directly or indirectly, participated in the funding of purported studies on the safety of PPA, when they knew or should have known of the inaccuracies and inadequacies of said studies.

28. Pharmaceutical companies and retailers of over-the-counter drugs, such as Retailer Defendants, have a professional and ethical duty to inform and warn the public, especially those purchasing their products, of known adverse and dangerous side effects associated with their products or active ingredients in their products.

29. Life threatening adverse effects related to PPA leading to hospitalization and/or death have been well documented and known to pharmaceutical companies, including the Retailer Defendants, for decades. These life

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 8/ 17

Received 03/04/2002 15:51 in 05:10 on line [7] for KU0804 Printed 03/04/2002 14:08 * Pg 8/17
03/04/2002 18:52 FAX 512 474 1129 CLARK THOMAS & WINTERS 008

threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA. Several life threatening PPA injuries have been reported in Clin-Alert and other medical reports.

30. The Retailer Defendants marketed PPA products as safe and effective. However, defendants did not perform adequate testing of these PPA products to ensure their safety. In fact, many reports indicated the active ingredient PPA was not safe.

31. The defendants' PPA products are intended by the defendants to function as over-the-counter cold, flu, sinus, allergy and/or diet tablets, capsules, and liquid products and were designed, manufactured, marketed, advertised, distributed, and sold by defendants as such. However, the PPA products were not sufficiently or properly tested prior to being marketed to the public or at any time while being marketed to the public. Testing of the effects of the PPA products on the central nervous system or cardiovascular system were not performed over a reasonable period of time during the distribution and sale of the PPA products to the public. Nevertheless, defendants represented the PPA products to be pharmaceutically tested and safe for consumption.

32. The defendants, who are retailers or sellers of the PPA products consumed by the Plaintiff, negligently failed to inform their customers of the risk associated with these products and breached implied warranties of fitness and merchantability in the sale of these inherently dangerous products.

33. Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA, from Plaintiff's product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA, and thereby have breached both implied and express warranties.

34. Many consumers who have suffered adverse side effects from ingesting defendants' PPA products, may not know or realize they suffer from such side effects[1]. Nonspecific symptomology from myocardial injury or undefined neurologic changes may be detected and diagnosed only through medical examination and/or diagnostic testing or studies. To assist physicians in evaluation, diagnosis and treatment, they need to be armed with specific

[1] Defendants were aware of the significant under reporting of adverse events associated with OTC drugs in spontaneous safety surveillance systems such as that at the FDA regarding PPA and hemorrhagic strokes. The FDA has estimated that as few as 1% of all PPA-associated adverse events have been reported. Utilizing that learned estimate, the 44 FDA adverse reports between 1969 and 2000 which arose from cases of hemorrhagic stroke associated with PPA use would translate into 4400 such cases over the years in question.

knowledge of the harmful effects of PPA and the fact that the patient has taken PPA. The failure to properly inform the public of the dangers and potential adverse health effect of PPA, even after withdrawal of PPA products from the market, by both the manufacturer and retailers was both negligent and grossly negligent. Such a disclosure was necessary for the unsuspecting public to identify potential health problems related to PPA and to seek proper medical treatment.

35. The causal relationship of Plaintiff's injury to the products containing PPA was inherently undiscoverable by the Plaintiff until he was warned of the dangers by the defendants. Consequently the Discovery Rule should apply to toll the statute of limitations until Plaintiffs knew or through reasonable care and diligence should have known of their claims against defendants. Plaintiffs filed suit within two years of the date Plaintiff knew or should have known of the claims against defendants. Therefore, Plaintiffs' suit was timely filed within the time period provided by the applicable statute of limitations.

36. Furthermore, defendants fraudulently concealed their wrongful conduct and the dangerous propensities of products containing PPA from the Plaintiff and the public at large. Therefore, the applicable statute of limitations should be tolled during the period of such concealment, which has continually existed in the past up until the present.

**E. First Claim for Relief**
**Strict Products Liability**

37. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

38. Plaintiffs claim that all defendants are liable to Plaintiffs under the theory of strict products liability.

39. All defendants were engaged in the business of manufacturing, designing, testing, marketing, distributing, and/or selling the subject products containing PPA and/or their incorporated component ingredients.

40. The subject products reached Plaintiff without substantial change.

41. The subject products were "defective" and "unreasonably dangerous" when the products entered into the stream of commerce and received by the Plaintiff in one or more of the following respects:

A. The subject products contained one or more manufacturing defects, in that they contained a dangerous chemical constituent known as PPA;

B. The subject products were not reasonably safe as designed, taking into account that the foreseeable risks involved in their use at the time the products left the possession of all defendants outweighed the utility of products or therapeutic benefits.

C. The subject products are not reasonably safe due to inadequate or defective warnings or instructions at the time the products left the possession of defendants. Specifically, although the defendants were well aware that PPA could potentially cause both hemorrhagic and certain types of ischemic strokes as well as coronary events and kidney failure, no warnings of such adverse health conditions were included on the packaging of these products. Likewise, the warnings of other contraindications or the need to consult a physician before taking, are so minimal as to be misleading; and

D. The defendants are liable because at the time the products left the control of the defendants, the products were defective because they failed to contain adequate warnings or instructions, or, in the alternative, the products were defective because they were designed in a defective manner, or, in the alternative the products breached an expressed warranty or failed to conform to other expressed factual representations upon which the Plaintiff justify relied in electing to use the products. The subject products were in a defective condition, which rendered the products unreasonably dangerous to the Plaintiff, and the defective and unreasonably dangerous conditions of the products proximately caused the damages for which Plaintiffs seek recovery herein. The Plaintiff's damages were not caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community. Moreover, the defendants' products were defective because they failed to contain adequate warnings or instructions and the defendants knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which Plaintiffs' seek recovery and a reasonable competent Plaintiff would not realize their dangerous condition. Additionally, defendants' products' warnings or instructions were not of a nature of what a reasonable

prudent person in the same or similar circumstances would have provided with respect to the danger and there were not warnings or instructions which communicated sufficient information on the dangers and safe use of the product taking into account the characteristic of, and the ordinary knowledge common to an ordinary consumer who purchases the product, such as your Plaintiff. Additionally, defendants' products were defective because of their design and the defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care, should have known about the danger that caused the damages for which Plaintiffs seek recovery. Defendants' products failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm to Plaintiff without impairing the utility, usefulness, practicality, or desirability of the product to Plaintiff.

**G. Second Claim for Relief**
**Negligence, Gross Negligence**

42. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

43. Plaintiffs assert claims under theories of negligence and gross negligence against all defendants.

44. All defendants had a duty to exercise reasonable care in the designing, manufacturing, marketing, selling, testing, and/or distributing of the subject products containing PPA prior to placing these products into the stream of commerce.

45. All defendants failed to exercise ordinary care in the designing, manufacturing, marketing, selling, testing, and/or distributing the subject products into interstate commerce.

46. All defendants knew or should have known that the subject products created an unreasonable risk of bodily harm or death.

47. All defendants were negligent, grossly negligent, and breached duties owed to Plaintiff with respect to the subject products in one or more of the following respects:

A. Failed to use due care in designing and manufacturing the products so as to avoid the use of PPA in such products;

B. Failed to accompany the products with adequate warnings and instructions regarding the adverse side effects associated with the use of the products containing PPA;

C. Failed to conduct adequate testing;

D. Failed to conduct adequate post-marketing surveillance to determine the safety of the products;

E. Failed to warn Plaintiff after the sale of the products containing PPA that the use of such products could result in stroke, heart attack, cardiac arrhythmia, kidney failure or even death;

F. As to the retailer defendants, failed to remove the products from their shelves after they knew or should have known of the adverse side effects of PPA; and

G. Were otherwise careless or negligent.

48. The negligence and gross negligence of all defendants was a proximate cause of Plaintiff's harm and economic loss that Plaintiffs have suffered and will continue to suffer as previously described.

49. All defendants are jointly and severally liable to Plaintiffs for all damages claimed.

**H. Third Claim for Relief**
**Implied Warranty of Merchantability**

50. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

51. All defendants breached the implied warranty of merchantability because the products sold were not fit for the ordinary purposes for which such goods are used. See UCC §2.314

52. Defendants breached the implied warranty of merchantability in failing to adequately label the containers or packages containing the PPA products so as to adequately warn of the dangerous propensities of such products. See UCC §2.314. Further, PPA products sold by the defendants failed to conform to the promises or affirmations of fact made on the container or label as to the safety of use of such non-prescription drug products.

53. Such breaches of the implied warranties of merchantability were a direct and proximate cause of damages and harm to the Plaintiff as alleged herein.

**I. Fourth Claim for Relief**
**Implied Warranty of Fitness for Particular Purpose**

54. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

55. As further cause of action, all defendants, at the time of sale, had reason to know of the particular use of these products. The Plaintiff who purchased these non-prescription PPA products was relying on the sellers' skill or judgment to select and furnish suitable and safe products.

56. The defendants breached these implied warranties by providing unsafe products containing PPA and such breaches of the implied warranty of fitness for intended purposes was a proximate cause of Plaintiff's injuries as alleged herein.

**J. Fifth Claim for Relief**
**Negligent Misrepresentation**

57. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

58. Plaintiffs bring this cause of action for negligent misrepresentation against all defendants.

59. All defendants individually and through their agents, representatives, and/or employees, negligently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentations or omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such representations or omissions without exercising reasonable care to ascertain the accuracy of these representations.

60. The above misrepresentations or omissions were made to the public and Plaintiffs. Plaintiffs justifiably relied on defendants' misrepresentations or omissions; Defendants' misrepresentations were the proximate cause of Plaintiff's damages.

**K. Sixth Claim for Relief**
**Breach of Continuing Duty to Warn**

61. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

62. All defendants are liable to Plaintiff for breaching their continuing duty to warn Plaintiffs of adverse health effects and complications associated with the products containing PPA.

3- 5-02;11:16AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 14/
Received 03/04/2002 15:51 in 03:10 on line [?] for [?] Printed 03/04/2002 16:03 * Pg 14/17
03/04/2002 13:54 FAX 812 474 1129 CLARK THOMAS & WINTERS 014

63. Each defendant was involved in the manufacturing, designing, testing, marketing, distributing, and/or selling of the subject products. Accordingly, each defendant was involved in creating the risks associated with the products.

64. Each defendant knew, should have known, or should have discovered risks associated with the subject products that were the result of their design, testing, and/or manufacturing.

65. Each defendant had a continuing duty to warn Plaintiffs. Each defendant breached this duty.

66. Defendants' breach of this duty was a proximate cause of Plaintiff's injuries as set forth below.

67. Accordingly, all defendants are jointly and severally liable for Plaintiffs' damages including punitive damages.

**L. Seventh Claim for Relief**
**Civil Conspiracy**

68. All of the allegations contained herein are re-alleged in this paragraph.

69. Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Plaintiff's injuries, disabilities, and/or illnesses by allowing Plaintiff to use harmful and dangerous products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Defendants' products.

70. Plaintiffs reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their products.

71. As a direct and proximate result of Plaintiff's reliance on Defendants' false and fraudulent representations, omissions and concealments, Plaintiff sustained damages including injuries, disabilities, and/or illnesses and has been deprived of the opportunity of informed free choice in connection with the use of Defendants' products.

**M. Eighth claim for relief**
**Malice**

72. All of the allegations contained herein are realleged in this paragraph.

73. The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of

gross negligence, [illegible]

Defendants' conduct was specifically intended by Defendants to cause substantial injury to the Plaintiff, or was carried out by Defendants with a flagrant disregard for the rights of others and with actual awareness on the part of Defendants that the conduct would, in reasonable probability, result in human deaths and/or great bodily harm. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to the Plaintiff and should be held liable in punitive and exemplary damages to the Plaintiffs.

## X. Damages

74. As a result of the defective and unreasonably dangerous nature of the products containing PPA as designed, manufactured, tested, distributed, marketed, sold, and/or supplied by all defendants, and the negligence, carelessness, other wrongdoing, and action(s) of all defendants described herein, Plaintiffs have suffered, sustained, and incurred and will continue to suffer, sustain, and incur the following injuries and damages, among others:

A. Plaintiffs have sustained economic loss, including loss of time and earnings and impairment of earning capacity, in the past;

B. In reasonable medical probability, Plaintiffs will sustain loss of time and earnings and/or impairment of earning capacity in the future;

C. Plaintiffs have required reasonable and necessary hospital and medical care and have incurred hospital and medical expenses in the past;

D. In reasonable medical probability, Plaintiffs will be required to obtain hospital and medical services and will as a result thereof incur reasonable and necessary hospital and medical expenses in the future;

E. Plaintiffs have endured physical pain and suffering in the past;

F. In reasonable medical probability, Plaintiffs will suffer physical pain and suffering in the future;

G. Plaintiffs have sustained mental anguish in the past;

H. In reasonable medical probability, Plaintiffs will incur mental anguish damages in the future;

I. Plaintiffs have suffered from physical impairment in the past;

3-5-02;11:16AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 2/ 17

Received 03/04/2002 15:51 In 05:10 on line [7] for ... Printed 03/04/2002 16:03 * Pg 2/17
03/04/2002 15:00 FAX 212 474 1120 CLARK THOMAS ... 002

SENT TO CLIENTS: 3/5/02

FILED 02 FEB -4 AM 10:15

NO. 2002-CVF-000147-D2

JUAN R. LOPEZ and spouse ANTONIA LOPEZ,

*Plaintiffs*

v.

AMERICAN HOME PRODUCTS CORPORATION;
ADVOCARE INTERNATIONAL, LLC;
BAYER CORPORATION;
BLOCK DRUG COMPANY, INC.;
BRISTOL MYERS SQUIBB COMPANY;
CHATTEM, INC.;
GLAXOSMITHKLINE, PLC;
NOVARTIS CONSUMER HEALTH, INC.;
NOVARTIS PHARMACEUTICALS CORPORATION;
SMITHKLINE BEECHAM CONSUMER HEALTHCARE, L.P.;
SMITHKLINE BEECHAM CORPORATION;
WHITEHALL-ROBINS HEALTHCARE; and
H.E.B., INC.

*Defendants*

IN THE DISTRICT COURT OF

WEBB COUNTY, TEXAS

111th JUDICIAL DISTRICT

**PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND SERVED WITH DISCOVERY**

COMES NOW, Plaintiffs JUAN R. LOPEZ and ANTONIA LOPEZ and file this their Original Petition, complaining of American Home Products Corporation, Advocare International, LLC, Bayer Corporation, Block Drug Company, Inc., Bristol Myers Squibb Company, Chattem, Inc., GlaxoSmithKline, PLC, Novartis Consumer Health, Inc., Novartis Pharmaceuticals Corporation, SmithKline Beecham Consumer Healthcare, L.P., SmithKline Beecham Corporation, and Whitehall-Robins Healthcare, a division of American Home Products Corporation (collectively "PPA Defendants") and H.E.B., Inc., ("Retailer Defendant") and for cause of action would show the Court as follows:

**A. Discovery Control Plan**

1. Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiffs respectfully request that discovery be conducted pursuant to Level 3, and that a discovery control plan be entered to govern discovery in this case.

**B. Parties**

2. Plaintiffs are state residents, who reside at 2920 San Luis, Laredo, Texas 78043. Plaintiff suffered severe and debilitating permanent injuries as a result of exposure to phenylpropanolamine (hereinafter referred to PPA)

through ingestion of PPA containing products designed, formulated, marketed, manufactured, distributed, and/or sold by defendants.

3. Defendant American Home Products Corporation (hereinafter referred to as AHP) is a Delaware corporation with its principal place of business in New Jersey. American Home Products Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, AHP was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

4. Defendant Advocare International, LLC (hereinafter referred to as Advocare) is a Delaware corporation with its corporate headquarters and principal place of business in Carrollton, Dallas County, Texas. Advocare International, LLC is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Advocare was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

5. Defendant Bayer Corporation is an Indiana corporation with its principal place of business in Pennsylvania. Defendant Bayer Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bayer Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times herein marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

6. Defendant Block Drug Company, Inc., (hereinafter referred to as Block) is a New Jersey corporation with its principal place of business in New Jersey. Defendant Block Drug Company, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice Hall Corporation, 800 Brazos, Austin, Bexar County, Texas 78701. At all relevant times herein, Block was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at

all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

7. Defendant Bristol Myers Squibb Company is a Delaware corporation. Defendant Bristol Myers Squibb Company is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bristol Myers Squibb Company was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

8. Defendant Chattem, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Defendant Chattem, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Hugh F. Sharber, 1000 Volunteer Bldg., 832 Georgia Ave., Chattanooga, TN 37402. At all relevant times herein, Chattem, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and sold, its products containing PPA in this state and throughout the United States.

9. Defendant GlaxoSmithKline PLC (hereinafter referred to as Glaxo) is a foreign corporation with its United States principal place of business in Philadelphia, Pennsylvania. On December 27, 2000, a merger became effective between Glaxo Wellcome and SmithKline Beecham Corporation, also a defendant herein, creating GlaxoSmithKline PLC. Defendant GlaxoSmithKline PLC may be served by serving its Pennsylvania registered agent Robert F. Bamman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. The defendant does business in the State of Texas and at all relevant times hereto marketed, promoted, warranted and sold, its products containing phenylpropanolamine (hereinafter referred to as PPA) in this state and throughout the United States.

10. Defendant Novartis Consumer Health, Inc. (hereinafter referred to Novartis Consumer), is a Delaware corporation with its principal place of business in New Jersey. Defendant Novartis Consumer has not designated or maintained a registered agent for service of process in the State of Texas. This Defendant may be served by serving its Delaware registered agent, Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808. At all relevant times herein, Novartis Consumer Health, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

11. Defendant Novartis Pharmaceuticals Corporation (hereinafter referred to as Novartis Pharmaceuticals), is a Delaware corporation with its principal place of business in New Jersey. Novartis Pharmaceuticals Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Corporation Service Company, 800 Brazos, Austin, Bexar County, Texas 77801. At all relevant times herein, Novartis Pharmaceuticals Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

12. Defendant SmithKline Beecham Consumer Healthcare, L.P. (hereinafter referred to as SmithKline Consumer) is a limited partnership in Delaware with its principal place of business in Pennsylvania. Defendant SmithKline Beecham Consumer Healthcare, L.P. may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein, SmithKline Consumer was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

13. Defendant SmithKline Beecham Corporation (hereinafter referred to as SmithKline Corp.) is a Pennsylvania corporation with its principal place of business in Pennsylvania. This defendant may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein SmithKline Corp. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

14. Defendant Whitehall-Robins Healthcare, is a division of American Home Products Corporation (hereinafter referred to as Whitehall). Whitehall-Robins Healthcare is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, Whitehall was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

15. Defendant H.E.B., Inc. (hereinafter referred to H.E.B.) is a Texas corporation who may be served with process by serving its registered agent, Dean Deckard, 646 South Main Avenue, San Antonio, Bexar County, Texas 78204. Defendant H.E.B. was involved in the sale and distribution of the subject PPA product(s).

C. Jurisdiction and Venue

16. Jurisdiction in this Court exists because the tort and breach of warranty claims and causes of action presented herein occurred in the State of Texas. Jurisdiction is also proper in this state because Plaintiffs assert only state law causes of action under Texas state law and expressly disclaims any assertion of federal claims, claims under any federal laws or statutes, claims involving any federal question, or claims involving any interpretation of any federal law or statute. Jurisdiction is also proper in this Court because one or more of the defendants are residents and citizens of the State of Texas.

17. Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this county. Therefore, venue properly lies in this county.

D. Long Arm Jurisdiction and Service

18. As to out of state defendants, personal jurisdiction is founded upon section Tex. Civ. Prac. and Rem. Code §17.041 et seq., the Long Arm Statute.

19. The out of state defendants herein, as factually specified in this Petition, committed torts in whole or in part in the State of Texas and breached warranties of fitness and merchantability within this state. Additionally, or alternatively, Plaintiffs' causes of action arose out of defendants' contacts with this state and they are subject to specific personal jurisdiction. Additionally, or alternatively, their business contacts with this state are so continuous and systematic as to subject them to the general jurisdiction of this Honorable Court.

20. Service upon such out of state defendants is made by delivery of process to the defendant's officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

E. Factual Allegations

21. At all relevant times herein, defendants were designers, manufacturers, marketers, advertisers, distributors, merchants, and sellers of non-prescription, over-the-counter pharmaceutical products, which contained Phenylpropanolamine (PPA) as an active ingredient.

22. At all times pertinent to these causes of action, defendants acted by and through their agents and/or employees who were acting within the course, scope and authority, apparent or actual, of such agency and/or

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 7/ 17
Received 03/04/2002 15:51 in 05:10 on line [7] for KH0894 Printed 03/04/2002 16:03 * Pg 7/17
03/04/2002 15:52 FAX 512 474 1129 CLARK THOMAS & WINTERS 007

employment. Where it is alleged that defendants committed any act and/or omission or engaged in any conduct, it is meant that the defendants committed such act and/or omission or engaged in such conduct by and through their agents and/or employees, and that at the time of such act, omission or conduct, it occurred with the full authorization or ratification of the respective defendants and/or occurred in the normal and routine course and scope of the agency or employment of such agent or employee of defendants.

23. Plaintiffs have purchased certain over-the-counter, non-prescription drugs containing PPA. Plaintiff and his family have purchased and/or ingested within all relevant times PPA products.

24. Based upon defendants' promotions, marketing, advertisements, and other representations, Plaintiff purchased PPA products believing they were safe for him and his family members to ingest. However, unbeknownst to Plaintiff, defendants' PPA products identified herein were not safe as designed, manufactured, marketed, and distributed in that the products contained PPA as an active ingredient and failed to warn of the dangers associated with the ingestion of PPA.

25. Plaintiff purchased and/or ingested the aforementioned over-the-counter, non-prescription drugs containing PPA in this county. Plaintiff suffered severe and debilitating permanent injuries in this county as a consequence of his exposure to PPA through ingestion of the PPA containing products, designed, formulated, marketed, manufactured, distributed and/or sold by defendants.

26. The Non-Prescription Drug Manufacturers Association (hereinafter referred to a NDMA) and the industry of which the PPA defendants were part, reviewed medical and scientific literature regarding products containing active ingredients such as PPA and participated in discussions concerning the safety of PPA products, such as those manufactured, sold, and distributed by the defendants and the industry.

27. The PPA defendants and other members of the NDMA, directly or indirectly, participated in the funding of purported studies on the safety of PPA, when they knew or should have known of the inaccuracies and inadequacies of said studies.

28. Pharmaceutical companies and retailers of over-the-counter drugs, such as Retailer Defendants, have a professional and ethical duty to inform and warn the public, especially those purchasing their products, of known adverse and dangerous side effects associated with their products or active ingredients in their products.

29. Life threatening adverse effects related to PPA leading to hospitalization and/or death have been well documented and known to pharmaceutical companies, including the Retailer Defendants, for decades. These life

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 8/ 17

Received 03/04/2002 15:51 in 05:10 on line [7] for KU0894 Printed 03/04/2002 16:03 * Pg 8/17
03/04/2002 15:52 FAX 312 474 1129 CLARK THOMAS & WINTERS 008

threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA. Several life threatening PPA injuries have been reported in Clin-Alert and other medical reports.

30. The Retailer Defendants marketed PPA products as safe and effective. However, defendants did not perform adequate testing of these PPA products to ensure their safety. In fact, many reports indicated the active ingredient PPA was not safe.

31. The defendants' PPA products are intended by the defendants to function as over-the-counter cold, flu, sinus, allergy and/or diet tablets, capsules, and liquid products and were designed, manufactured, marketed, advertised, distributed, and sold by defendants as such. However, the PPA products were not sufficiently or properly tested prior to being marketed to the public or at any time while being marketed to the public. Testing of the effects of the PPA products on the central nervous system or cardiovascular system were not performed over a reasonable period of time during the distribution and sale of the PPA products to the public. Nevertheless, defendants represented the PPA products to be pharmaceutically tested and safe for consumption.

32. The defendants, who are retailers or sellers of the PPA products consumed by the Plaintiff, negligently failed to inform their customers of the risk associated with these products and breached implied warranties of fitness and merchantability in the sale of these inherently dangerous products.

33. Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA, from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA, and thereby have breached both implied and express warranties.

34. Many consumers who have suffered adverse side effects from ingesting defendants' PPA products, may not know or realize they suffer from such side effects[1]. Nonspecific symptomology from myocardial injury or undefined neurologic changes may be detected and diagnosed only through medical examination and/or diagnostic testing or studies. To assist physicians in evaluation, diagnosis and treatment, they need to be armed with specific

[1] Defendants were aware of the significant under reporting of adverse events associated with OTC drugs in spontaneous safety surveillance systems such as that at the FDA regarding PPA and hemorrhagic strokes. The FDA has estimated that as few as 1% of all PPA-associated adverse events have been reported. Utilizing that learned estimate, the 44 FDA adverse reports between 1969 and 2000 which arose from cases of hemorrhagic stroke associated with PPA use would translate into 4400 such cases over the years in question.

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 9/ 17

Received 03/04/2002 15:51 in 03:10 on line [7] for KWD0894 Printed 03/04/2002 16:03 * Pg 7/17
03/04/2002 16:02 FAX 512 474 1129 CLARK THOMAS & WINTERS 009

knowledge of the harmful effects of PPA and the fact that the patient has taken PPA. The failure to properly inform the public of the dangers and potential adverse health effect of PPA, even after withdrawal of PPA products from the market, by both the manufacturer and retailers was both negligent and grossly negligent. Such a disclosure was necessary for the unsuspecting public to identify potential health problems related to PPA and to seek proper medical treatment.

35. The causal relationship of Plaintiff's injury to the products containing PPA was inherently undiscoverable by the Plaintiff until he was warned of the dangers by the defendants. Consequently the Discovery Rule should apply to toll the statute of limitations until Plaintiffs knew or through reasonable care and diligence should have known of their claims against defendants. Plaintiffs filed suit within two years of the date Plaintiff knew or should have known of the claims against defendants. Therefore, Plaintiffs' suit was timely filed within the time period provided by the applicable statute of limitations.

36. Furthermore, defendants fraudulently concealed their wrongful conduct and the dangerous propensities of products containing PPA from the Plaintiff and the public at large. Therefore, the applicable statute of limitations should be tolled during the period of such concealment, which has continually existed in the past up until the present.

**E. First Claim for Relief**
**Strict Products Liability**

37. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

38. Plaintiffs claim that all defendants are liable to Plaintiffs under the theory of strict products liability.

39. All defendants were engaged in the business of manufacturing, designing, testing, marketing, distributing, and/or selling the subject products containing PPA and/or their incorporated component ingredients.

40. The subject products reached Plaintiff without substantial change.

41. The subject products were "defective" and "unreasonably dangerous" when the products entered into the stream of commerce and received by the Plaintiff in one or more of the following respects:

A. The subject products contained one or more manufacturing defects, in that they contained a dangerous chemical constituent known as PPA;

B. The subject products were not reasonably safe as designed, taking into account that the foreseeable risks involved in their use at the time the products left the possession of all defendants outweighed the utility of products or therapeutic benefits;

C. The subject products are not reasonably safe due to inadequate or defective warnings or instructions at the time the product left the possession of defendants. Specifically, although the defendants were well aware that PPA could potentially cause both hemorrhagic and certain types of ischemic strokes as well as coronary events and kidney failure, no warnings of such adverse health conditions were included on the packaging of these products. Likewise, the warnings of other contraindications or the need to consult a physician before taking, are so minimal as to be misleading; and

D. The defendants are liable because at the time the products left the control of the defendants, the products were defective because they failed to contain adequate warnings or instructions, or, in the alternative, the products were defective because they were designed in a defective manner, or, in the alternative the products breached an expressed warranty or failed to conform to other expressed factual representations upon which the Plaintiff justly relied in electing to use the products. The subject products were in a defective condition, which rendered the products unreasonably dangerous to the Plaintiff, and the defective and unreasonably dangerous conditions of the products proximately caused the damages for which Plaintiffs seek recovery herein. The Plaintiff's damages were not caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community. Moreover, the defendants' products were defective because they failed to contain adequate warnings or instructions and the defendants knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which Plaintiffs' seek recovery and a reasonable competent Plaintiff would not realize their dangerous condition. Additionally, defendants' products' warnings or instructions were not of a nature of what a reasonable

prudent person in the same or similar circumstances would have provided with respect to the danger and there were not warnings or instructions which communicated sufficient information on the dangers and safe use of the product taking into account the characteristic of, and the ordinary knowledge common to an ordinary consumer who purchases the product, such as your Plaintiff. Additionally, defendants' products were defective because of their design and the defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care, should have known about the danger that caused the damages for which Plaintiffs seek recovery. Defendants' products failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm to Plaintiff without impairing the utility, usefulness, practicality, or desirability of the product to Plaintiff.

C. Second Claim for Relief
Negligence, Gross Negligence

42. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

43. Plaintiffs assert claims under theories of negligence and gross negligence against all defendants.

44. All defendants had a duty to exercise reasonable care in the designing, manufacturing, marketing, selling, testing, and/or distributing of the subject products containing PPA prior to placing these products into the stream of commerce.

45. All defendants failed to exercise ordinary care in the designing, manufacturing, marketing, selling, testing, and/or distributing the subject products into interstate commerce.

46. All defendants knew or should have known that the subject products created an unreasonable risk of bodily harm or death.

47. All defendants were negligent, grossly negligent, and breached duties owed to Plaintiff with respect to the subject products in the one or more of the following respects:

A. Failed to use due care in designing and manufacturing the products so as to avoid the use of PPA in such products;

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 12/ 17
Received 03/06/2002 15:51 in 05:10 on line [7] for KM0896 Printed 03/06/2002 16:03 * Pg 12/17
03/04/2002 10:03 FAX 512 474 1129 CLARK THOMAS & WINTERS 012

B. Failed to accompany the products with adequate warnings and instructions regarding the adverse side effects associated with the use of the products containing PPA;

C. Failed to conduct adequate testing;

D. Failed to conduct adequate post-marketing surveillance to determine the safety of the products;

E. Failed to warn Plaintiff after the sale of the products containing PPA that the use of such products could result in stroke, heart attack, cardiac arrhythmia, kidney failure or even death;

F. As to the retailer defendants, failed to remove the products from their shelves after they knew or should have known of the adverse side effects of PPA; and

G. Were otherwise careless or negligent.

48. The negligence and, gross negligence of all defendants was a proximate cause of Plaintiff's harm and economic loss that Plaintiffs have suffered and will continue to suffer as previously described.

49. All defendants are jointly and severally liable to Plaintiffs for all damages claimed.

**H. Third Claim for Relief**
**Implied Warranty of Merchantability**

50. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

51. All defendants breached the implied warranty of merchantability because the products sold were not fit for the ordinary purposes for which such goods are used. See UCC §2.314

52. Defendants breached the implied warranty of merchantability in failing to adequately label the containers or packages containing the PPA products so as to adequately warn of the dangerous propensities of such products. See UCC §2.314. Further, PPA products sold by the defendants failed to conform to the promises or affirmations of facts made on the container or label as to the safety of use of such non-prescription drug products.

53. Such breaches of the implied warranties of merchantability were a direct and proximate cause of damages and harm to the Plaintiff as alleged herein.

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 13/ 17

Received 03/04/2002 15:31 in 05:10 on line [7] for RUDORPA Printed 03/04/2002 16:03 * Pg 13/17
03/04/2002 16:23 FAX 812 474 1129 CLARK THOMAS & WINTERS 013

**I. Fourth Claim for Relief**
**Implied Warranty of Fitness for Particular Purpose**

54. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

55. As further cause of action, all defendants, at the time of sale, had reason to know of the particular use of these products. The Plaintiff who purchased these non-prescription PPA products was relying on the sellers' skill or judgment to select and furnish suitable and safe products.

56. The defendants breached these implied warranties by providing unsafe products containing PPA and such breaches of the implied warranty of fitness for intended purpose was a proximate cause of Plaintiff's injuries as alleged herein.

**J. Fifth Claim for Relief**
**Negligent Misrepresentation**

57. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

58. Plaintiffs bring this cause of action for negligent misrepresentation against all defendants.

59. All defendants individually and through their agents, representatives, and/or employees, negligently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentations or omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such representations or omissions without exercising reasonable care to ascertain the accuracy of these representations.

60. The above misrepresentations or omissions were made to the public and Plaintiffs. Plaintiffs justifiably relied on defendants' misrepresentations or omissions; Defendants' misrepresentations were the proximate cause of Plaintiff's damages.

**K. Sixth Claim for Relief**
**Breach of Continuing Duty to Warn**

61. Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

62. All defendants are liable to Plaintiff for breaching their continuing duty to warn Plaintiffs of adverse health effects and complications associated with the products containing PPA.

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7203 # 14/ 17

Received 03/04/2002 15:51 In 05:10 on line [?] for [?] Printed 03/04/2002 16:03 * Pg 14/17
03/04/2002 15:54 FAX 512 474 1129 CLARK THOMAS & WINTERS 014

63. Each defendant was involved in the manufacturing, designing, testing, marketing, distributing, and/or selling of the subject products. Accordingly, each defendant was involved in creating the risks associated with the products.

64. Each defendant knew, should have known, or should have discovered risks associated with the subject products that were the result of their design, testing, and/or manufacturing.

65. Each defendant had a continuing duty to warn Plaintiffs. Each defendant breached this duty.

66. Defendants' breach of this duty was a proximate cause of Plaintiff's injuries as set forth below.

67. Accordingly, all defendants are jointly and severally liable for Plaintiffs' damages including punitive damages.

**L. Seventh Claim for Relief**
**Civil Conspiracy**

68. All of the allegations contained herein are re-alleged in this paragraph.

69. Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Plaintiff's injuries, disabilities, and/or illnesses by allowing Plaintiff to use harmful and dangerous products. Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products. Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Defendants' products.

70. Plaintiffs reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their products.

71. As a direct and proximate result of Plaintiff's reliance on Defendants' false and fraudulent representations, omissions and concealments, Plaintiff sustained damages including injuries, disabilities, and/or illnesses and has been deprived of the opportunity of informed free choice in connection with the use of Defendants' products.

**M. Eighth claim for relief**
**Malice**

72. All of the allegations contained herein are realleged in this paragraph.

73. The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of

5- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 15/ 17

Received 05/04/2002 15:51 in 03:10 on line [7] for KW00894 Printed 05/04/2002 16:03 * Pg 15/17
05/04/2002 15:54 FAX 812 474 1128 CLARK THOMAS & WINTERS 015

gross negligence, intentional wrongful conduct and/or malice resulting in damages and injuries to the Plaintiff. Defendants' conduct was specifically intended by Defendants to cause substantial injury to the Plaintiff, or was carried out by Defendants with a flagrant disregard for the rights of others and with actual awareness on the part of Defendants that the conduct would, in reasonable probability, result in human deaths and/or great bodily harm. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to the Plaintiff and should be held liable in punitive and exemplary damages to the Plaintiffs.

**IX. Damages**

74. As a result of the defective and unreasonably dangerous nature of the products containing PPA as designed, manufactured, tested, distributed, marketed, sold, and/or supplied by all defendants, and the negligence, carelessness, other wrongdoing, and action(s) of all defendants described herein, Plaintiffs have suffered, sustained, and incurred and will continue to suffer, sustain, and incur the following injuries and damages, among others:

A. Plaintiffs have sustained economic loss, including loss of time and earnings and impairment of earning capacity, in the past;

B. In reasonable medical probability, Plaintiffs will sustain loss of time and earnings and/or impairment of earning capacity in the future;

C. Plaintiffs have required reasonable and necessary hospital and medical care and have incurred hospital and medical expenses in the past;

D. In reasonable medical probability, Plaintiffs will be required to obtain hospital and medical services and will as a result thereof incur reasonable and necessary hospital and medical expenses in the future;

E. Plaintiffs have endured physical pain and suffering in the past;

F. In reasonable medical probability, Plaintiffs will suffer physical pain and suffering in the future;

G. Plaintiffs have sustained mental anguish in the past;

H. In reasonable medical probability, Plaintiffs will incur mental anguish damages in the future;

I. Plaintiffs have suffered from physical impairment in the past;

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 16/ 17

Received 03/04/2002 15:51 In 05:10 on line [?] for [?] Printed 03/04/2002 16:03 * Pg 16/17
03/04/2002 15:54 FAX 512 474 1129 CLARK THOMAS & WINTERS 016

J. In reasonable medical probability, Plaintiffs will sustain physical impairment in the future;

K. Plaintiffs have suffered from physical disfigurement in the past;

L. In reasonable medical probability, Plaintiffs will suffer physical disfigurement in the future;

M. Plaintiffs have suffered loss of household services and a loss of capacity to perform household services in the past, and will sustain, in reasonable probability, a loss of household services and a loss of capacity to perform household services in the future.

N. Plaintiffs have suffered loss of consortium in the past and will sustain, in reasonable probability, loss of consortium in the future;

O. Exemplary and/or punitive damages; and

P. Any and all other recoverable personal injury, survival and/or wrongful death damages to which Plaintiffs may be entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs file this, their Petition against the Defendants and demand judgment against Defendants, jointly and severally, for compensatory damages and exemplary damages in excess of the minimum jurisdictional limits of the Court to compensate Plaintiff for all of his injuries and damages, both past and present, and pre-judgment and post-judgment interest, together with all costs of this proceeding and for the relief to which Plaintiffs are entitled.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

3- 5-02;11:18AM;FULBRIGHT & JAWORSKI ;001 210 270 7205 # 17/ 17

Received 03/04/2002 15:51 in 03:10 on line [7] for KW00094 Printed 03/04/2002 16:03 * Pg 17/17
03/04/2002 15:54 FAX 812 474 1120 CLARK THOMAS & WINTERS 017

Respectfully submitted,

WATERS & KRAUS, L.L.P.

DAVID C. GREENSTONE
State Bar No. 24007271
NIELDA TALAMANTES
State Bar No. 24033252
PETER A. KRAUS
State Bar No. 11712980

3219 McKinney Avenue
Suite 3000
Dallas, Texas 75204
214/357-6244 (Telephone)
214/357-7252 (Facsimile)

ATTORNEYS FOR PLAINTIFFS

LEXSEE 2001 U.S.Dist.LEXIS 19343

JOHNNY ADAMS et al., Plaintiffs. v. WARNER-LAMBERT CO. et al., Defendants.

Civil Action No. 3:01-CV-1980-M

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

*2001 U.S. Dist. LEXIS 19343*

November 27, 2001, Decided

November 27, 2001, Filed, Entered

**DISPOSITION:**
[*1] Plaintiffs' motion to remand granted in part and denied in part.

**COUNSEL:**
For JOHNNY ADAMS, GLORIA BERTRAND, ANITA BLACKWELL, JOHN BOEN, LEE BOUTE, REFUGIO CARMONA, PURLIE CARTER, LINDA NMN COLLINS, MARILYN CRISLIP, JASON DIBBLES, JONNIE EPPERSON, MELVIN ERIKSON, ROY ESTERS, KOSTA FONTINOS, TERRY GARSEE, DELORES GOODLOW, WILLIE GRANGER, JANIE HENDRIK, BETTY HERNDON, DARLA JO HALE, SHEILA JEFFERSON, FRANKLIN JOHNSON, DOLORES JUAREGUI, ROBERT KLUTTZ, JEWELENE LAMBERT, JACKIE MCCORKLE, RODERT MCELROY, JR, WANDA MCKINNEY, IVA MCLIMMANS, EVA MENDOZA, SANDRA NMI MOORE, MAGGIE MOSLEY, GLORIA NAVARO, VIRGINIA PFAFFENBERGER, THEODORE PHENIX, LETTIE SHARP, MAXINE THOMAS, HENRY THOMAS, DIANA TRIMBLE, TOMMY VINE, FLORA WELCH, JACK WELCH, BRENDA WHITTEN, LEE ROY WILLIAMS, SHIRLEY YEAGER, plaintiffs: Zoe Brigitta Littlepage, Chetna Gosain, Joshua Brockman, Attorneys at Law, Littlepage & Associates, Houston, TX USA.

For WARNER-LAMBERT COMPANY, PARKE-DAVIS DIVISION OF WARNER-LAMBERT COMPANY, PFIZER INC, defendants: Jack E Urquhart, Attorney at Law, Beirne Maynard & Parsons, Houston, TX USA.

For HEB GROCERY COMPANY, defendant: Robert A Valadez, Attorney at Law, Shelton [*2] & Valadez, San Antonio, TX USA.

**JUDGES:**
BARBARA M.G. LYNN, UNITED STATES DISTRICT JUDGE, NORTHERN DISTRICT OF TEXAS.

**OPINIONBY:**
BARBARA M.G. LYNN

**OPINION:**

**ORDER**

On November 20, 2001, the Court held a hearing at which it considered Plaintiffs' Motion to Remand, filed on October 11, 2001. After hearing the parties' arguments, the Court concluded that it should GRANT in part and DENY in part Plaintiffs' Motion. The Court GRANTED the Motion by remanding Plaintiff Gloria Bertrand's claims against the Defendants to state court, as Ms. Bertrand alleged a cause of action for medical negligence against Dr. Joseph Finley, a Texas resident and therefore a non-diverse party. The Court DENIED the Motion by refusing to remand all other Plaintiffs' claims, however, as these Plaintiffs did not validly allege claims against a non-diverse party. In ruling on Plaintiffs' Motion, the Court did not consider the Texas citizenship of Defendant H.E.B. Grocery ("H.E.B."), as the Court found that Plaintiffs did not allege in their state court petition that any Plaintiff had purchased Rezulin from an H.E.B. pharmacy, rendering its citizenship irrelevant to the analysis.

EXHIBIT

Page 2

2001 U.S. Dist. LEXIS 19343, *

SO ORDERED.

DATED: November 27, 2001. [*3]

BARBARA M.G. LYNN

UNITED STATES DISTRICT JUDGE

NORTHERN DISTRICT OF TEXAS

FILED ENTERED
LODGED RECEIVED
FEB 28 2002 ZG
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL JOHNSON, Plaintiff, v. BAYER CORPORATION, et al., Defendants. | NO. C01-2014R ORDER DENYING PLAINTIFF'S MOTION FOR REMAND |

THIS MATTER comes before the court on the motion of plaintiff Michael Johnson to remand the case to state court in Louisiana. Having reviewed the papers filed in support of and in opposition to this motion, the court rules as follows:

## I. BACKGROUND

Plaintiff purchased the over-the-counter drugs Alka-Seltzer Plus Cold Medicine, Robitussin CF, and Dimetapp Cold & Cough from an unidentified Rite Aid drugstore in Caddo Parish, Louisiana. Plaintiff later consumed the medication. Sometime during the year 2000, plaintiff suffered a massive stroke. The medicines contained the ingredient Phenylpropanolamine ("PPA"). On August 24, 2001, plaintiff filed a complaint in Louisiana state court that links the PPA in the cold medicine with plaintiff's stroke.





The complaint alleges several causes of action against manufacturers and distributors of products that contain PPA. The complaint also names K & B Louisiana Corporation ("K&B") as a defendant in two of the causes of action, breach of warranty in redhibition and negligence. K&B operates Rite Aid drugstores throughout Louisiana that sell over-the-counter medications containing PPA.

Defendants removed the complaint to federal court on the basis that plaintiff fraudulently joined K&B as a defendant. Plaintiff then moved to remand to state court. After the parties briefed the motion, the case was transferred to this court as part of a multi-district litigation.

## II. ANALYSIS

A plaintiff cannot defeat federal jurisdiction by fraudulently joining a non-diverse party against whom "there is no reasonable basis for predicting that plaintiffs might establish liability . . . ." Badon v. RJR Nabisco, Inc., 224 F.3d 382, 292 (5th Cir. 2000). The court determines jurisdiction based on the claims as stated at the time of removal; arguments about what future discovery may reveal cannot justify remand. See Cavallini v. State Farm Mut. Auto. Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995). The court must view the facts in the light most favorable to the plaintiff; however, the court may pierce the pleadings and consider "summary judgment-type evidence." Id. at 263. A plaintiff also cannot defeat removal by relying on conclusory

allegations that fail to state a cause of action. See Jernigan v. Ashland Oil, Inc., 989 F.2d 812 (5th Cir. 1993); Addition v. Allstate Ins. Co., 58 F. Supp.2d 729, 733-34 (E.D. La. 1996).

Defendants allege that plaintiff fraudulently joined defendant K&B, while plaintiff claims that he has a legitimate contract cause of action against K&B for breach of warranty in redhibition, under La. Civ. Code art. 2520 et seq., and a cause of action against K&B in negligence. Plaintiff does not argue that any other causes of action in the complaint apply to K&B.

A. Breach of Warranty in Redhibition

Under Louisiana law, a seller "warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520. A redhibitory defect or vice involves a "physical imperfection or deformity, a lacking of a necessary competent or level of quality." Broggin v. Smith, 612 So.2d 739, 741 (La. Ct. App. 1992). The buyer of a product with a redhibitory defect must tender the product to the seller and seek rescission of the sale. La. Civ. Code art. 2520, 2530. A good faith seller is liable only for the cost of the product if it cannot repair the item. La. Civ. Code art. 2531. The buyer can hold a bad faith seller liable for consequential damages and attorney's fees as well. La. Civ. Code art. 2545.

1. Failure to Plead Elements of Redhibition

It is unclear from the motion to remand whether plaintiff is alleging a cause of action against K&B as a good faith seller under La. Civ. Code art. 2531 or as a bad faith seller under

article 2545. While a portion of the memorandum argues that K&B knew of the medications' alleged redhibitory effects, the same brief distinguishes bad faith cases and focuses on K&B's potential status as a good faith seller. Regardless, the complaint does not include sufficient facts to support a claim against K&B under either theory.

a. Article 2531

First, the complaint never alleges liability under article 2531. The only redhibition liability provision cited is article 2545, which applies to bad faith sellers who knew of the defect. In the damages portion of the complaint, plaintiff again cites article 2545 and fails to cite article 2531. By its own terms, the complaint does not allege a cause of action against K&B under article 2531.

Second, the allegations of the complaint fail to provide specific facts that would support a cause of action against K&B under article 2531 even if plaintiff had invoked that provision. As explained above, the court must assess the remand motion based on the facts as stated in the complaint, and the court may pierce the pleadings to assess conclusory allegations. The complaint does not allege that plaintiff sought rescission of the sale, nor does it allege that plaintiff provided K&B with notice of the alleged defect, nor does it provide details regarding where and when plaintiff purchased the products. Without such basic details, plaintiff is making only conclusory allegations that cannot support remand. See Jernigan, 989 F.2d 812; Addition,

58 F. Supp.2d at 733-34.

The complaint fails to allege that plaintiff sought rescission of the sale and return of the purchase price - a key element of redhibition. Cf. Mitchell v. Popiwchak, 677 So.2d 1050, 1054 (La. Ct. App. 1996) (request for purchase price satisfies tender requirement). Plaintiff argues that the complaint alleges rescission as a remedy, but there is no allegation that plaintiff sought rescission prior to filing the lawsuit as required.

In addition, notice and tender are prerequisites to bringing a redhibition claim. See Lindy Inv., LP v. Shakertown Corp., 209 F.3d 802, 805-06 (5th Cir. 2000). Plaintiff does not allege that K&B received notice of the defect, much less allege that plaintiff tendered the product to K&B. Finally, plaintiff fails to allege any details regarding the store that sold the medication. Cf. Long v. Bruns, 727 So.2d 664 (La. Ct. App. 1999) (complaint dismissed for failure to plead proper seller). By failing to allege many of the basic elements of a cause of action under section 2531, plaintiff has no reasonable possibility of holding K&B liable.

b. Article 2545

Article 2545 applies to bad faith sellers who knew or should have know of the defect. La. Civ. Code art. 2545. Plaintiff alleges in the complaint that "all Defendants have actual knowledge" of the alleged defects. This statement lacks factual support, contradicts other portions of the complaint, and fails to warrant remand.

As explained above, a plaintiff cannot defeat federal jurisdiction by relying solely on conclusory allegations. Plaintiff provides no factual support for the broad allegation that the drugstore knew of potential dangers in the medications. On remand, the parties may pierce the pleadings with additional evidence to clarify such allegations. Defendants have supplied the court with requests for admission from K&B that refute plaintiff's assertion. K&B had no control over the pre-packaged, sealed medications and had no knowledge of any potential dangers. Def. Mem., Exhibit A. Plaintiff has not countered with any specific facts to support its broad allegation.

Moreover, plaintiff's own complaint acknowledges that K&B had no knowledge of alleged defects. For example, the complaint alleges that the medication did not change from the time it left the manufacturers to the time it reached the customer. It also alleges that the manufacturers had exclusive possession of information about potential hazards. In the negligence allegations, the complaint accuses the manufacturers of knowing about dangers but does not include K&B in those allegations. These statements contradict plaintiff's conclusory allegation that K&B knew or should have known about a potentially redhibitory effect. Plaintiff has failed to plead facts to state a cause of action under article 2545 and has no reasonable probability of success against K&B.

2. Plaintiff's Claims are De Minimis

Remanding this case also would prove inequitable. The only

relief from K&B to which plaintiff would be entitled, if the complaint properly pleaded the elements of a cause of action under article 2531, would be the purchase price of the medication. Such a tenuous cause of action based on de minimis recovery should not defeat federal jurisdiction. As the court in a class action involving other over-the-counter drugs sold by good faith Louisiana pharmacies stated, such claims are "improper at best and fraudulent at worst." In re Diet Drugs, 1998 WL 254976, at 4 (E.D. Pa. 1998). The court denied a motion to remand because the plaintiff had fraudulently joined the pharmacies. Id. Similarly, the alleged cause of action against K&B would accomplish minimal recovery, if any.

3. No Cause of Action in Redhibition Exists Against Pharmacies for Sale of Medication

Louisiana law prohibits liability against a pharmacy or drugstore that sells allegedly defective or dangerous medication. In re Rezulin Prod. Liab. Litig., 133 F. Supp.2d 272, 289 (S.D.N.Y. 2001) (describing law of Louisiana and similar rule in several other states). Pharmacists have no duty to warn of potential side effects from prescription drugs nor a duty to inspect the medication. See Gassen v. East Jefferson Gen. Hosp., 628 So.2d 256, 259 (La. 1993). The duty is limited to properly filling a prescription and warning of overdoses. See Guillory v. Doctor X, 679 So.2d 1004, 1010 (La. Ct. App. 1996).

Louisiana courts recently have confirmed that this limit on liability for prescriptions applies to contract theories as well

as tort causes of action. They have held that plaintiffs cannot sue pharmacists for redhibition or breach of warranty. See McKinney v. Warner Lambert, No. 01-1103 (E.D. La. May 15, 2001); Williams v. Warner-Lambert Co., No. 01-0690 (W.D. La. July 27, 2001). For example, the Williams court denied remand and stated that plaintiff had no possibility of recovery, because the pharmacy submitted an affidavit confirming that the pharmacy had no knowledge of the prescription's potential side effects. Williams, No. 01-0690 (W.D. La. July 27, 2001). These decisions are consistent with the uniform rule described above that a pharmacy has no duty to warn.

The limitation on liability for pharmacies logically extends to over-the-counter medications, for which pharmacies have even less direct responsibility. For example, the court in Strickland v. Brown Morris Pharmacy, 1996 WL 537738 (E.D. La. 1996), denied remand in a suit against a pharmacy for the sale of Primatine Mist, a non-prescription medication. The court cited La. Civ. Code art. 2545, the redhibition statute regarding bad faith sellers, and held that the plaintiff had no cause of action against a pharmacy that sold the product in good faith. See also Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 715 (La. Ct. App. 1992) (upholding dismissal of redhibition claim against good faith pharmacist who sold nonprescription aspirin); see also In re Diet Drugs, 1998 WL 254978 (E.D. Pa. 1998) (denying remand motion and finding fraudulent joinder of Louisiana pharmacies accused of breach of warranty for good faith sales of nonpre-

scription diet drugs). Just as in these cases, K&B had no knowledge of potential dangers in the nonprescription medications it sold, and plaintiff cannot pursue a cause of action against the pharmacy.

Plaintiff argues that the over-the-counter cases sounded in tort or alleged knowledge by the pharmacists. However, as explained above, Louisiana courts have applied the limitation on liability to contract claims in the prescription drug context. The reasoning applies with even greater force for nonprescription medication sold by innocent pharmacists, because the pharmacist does not even have a duty to measure a nonprescription drug or warn of possible overdose. As a result, plaintiff's cause of action against K&B has no reasonable probability of success whether couched as tort or redhibition.[1]

B. Negligence

Plaintiff argues remand is necessary because the complaint states a claim for negligence against K&B. To the contrary, as explained above, K&B's status as a pharmacy prevents plaintiff from alleging a tort cause of action based on defective medication. Even if K&B were not a pharmacist, plaintiff's complaint

[1] Plaintiff also relies on Badon v. RJR Nabisco, Inc., 236 F.3d 282 (5th Cir. 2000), in which the court granted remand in a redhibition lawsuit that joined Louisiana pharmacies. Badon provides little guidance, however, because it involved the distribution of cigarettes rather than medication - prescription or otherwise. The liability limitations for pharmacies selling medications never became an issue. As described above, courts since Badon have continued to limit the liability of pharmacies.

still would fail. Any non-manufacturer seller of a product is liable in tort "only if he knew or should have known that the product sold was defective and failed to declare it." Leblan v. Homelite Div. of Textron, Inc., 509 So.2d 563, 565 (La. Ct. App. 1987). No cause of action can exist against K&B as a good faith seller.

Plaintiff points to language in the complaint that alleges "all" the defendants knew or should of known of the dangers from PPA. However, in the negligence section of the complaint, plaintiff alleges only that the manufacturer defendants had knowledge. Plaintiff separately alleges that K&B was negligent only because it "failed to exercise reasonable care." Moreover, K&B's responses to requests for admission refute plaintiff's broad, unsupported assertion that K&B knew of dangers. Plaintiff has not alleged facts supporting its allegation that K&B knew or should have known of the dangers and cannot bring a cause of action in negligence against K&B.

III. CONCLUSION

The court DENIES the plaintiff's motion to remand the case to the state courts of Louisiana.

DATED at Seattle, Washington this 26th day of February, 2002.

Barbara J. Rothstein

BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE