29

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 8 2002

Michael N. Milby
Clerk of Court

FRANCISCO SANCHEZ                          §
                                           §
*Plaintiff*                                § CIVIL ACTION NO.
                                           §    B-02-066
V.                                         §
                                           §
                                           §
AMERICAN HOME PRODUCTS                     §
CORPORATION; *et al.*,                     §
                                           §
        *Defendants*                       §

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO REMAND AND DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs file this reply to Defendant's Response to Plaintiffs' Motion to Remand ("Response") and Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Remand ("Memorandum") and would respectfully show the Court that, in Plaintiff's Motion to Remand, Plaintiffs have adequately demonstrated that the non-diverse defendants were not fraudulently joined. Plaintiffs file this reply to address certain arguments raised in Defendant's Response and Memorandum. Plaintiff relies on the arguments set forth in Plaintiff's Motion for Remand as to issues not addressed in this Reply.

Recently, Judge Jack ruled on identical issues and remanded the plaintiff's claim in a PPA case. *Garcia v. American Home Prods.*, No. C-02-146 (S.D. Tex. 2002). Judge Jack determined that the threshold jurisdictional issue should be resolved and disposed of plaintiff's motion for remand notwithstanding a notification filed by the defendants with

the Judicial Panel on Multidistrict Litigation.  Order of Remand at n.2 attached as **Exhibit A** ("Order of Remand").

In its Response, Defendant noted that this case is subject to a Conditional Transfer Order issued by the Judicial Panel on Multidistrict Litigation and that the transfer will become final unless a party objects to the transfer.  Response at 4.  Plaintiff hereby informs the Court that the Plaintiff filed an objection to the transfer on June 3, 2002 and, therefore, this case has not been transferred to MDL-1407.  Notice of Opposition to Transfer attached as **Exhibit B**.  Consequently, pursuant to Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, a conditional transfer order does not affect or suspend orders and pretrial proceedings in this Court and does not in any way limit the pretrial jurisdiction of this Court.  Thus, despite the Conditional Transfer Order, this Court can consider and rule on Plaintiff's Motion for Remand.  Order of Remand at n.2 (citing *Faulk v. Owens-Corning Fiberglas,* 48 F. Supp. 2d 653 (E.D. Tex. 1999)).

In its Response and Memorandum, the Defendant provides the Court with incomplete statements of the standard for reviewing claims of fraudulent joinder by piecemealing carefully excised language from a few cases.  Response at 5; Memorandum at 8.  Defendant's discussion fails to elucidate the actual standard to be applied by the Court in considering Defendant's claim of fraudulent joinder.  The complete standard has previously been set forth in Plaintiff's Motion for Remand and, therefore, will not needlessly be repeated here.  Motion for Remand at 3-5.

In its Memorandum, Defendant notes that similar language is found in various petitions filed by Plaintiff's counsel in other suits alleging injuries associated with the

ingestion of PPA as if to suggest some air of impropriety on behalf of Plaintiff's counsel in pleading Plaintiff's causes of action. Memorandum at 1-2, n.1, 5-7. Defendant's suggestion is misguided. When the Defendants' products kill or permanently injure numerous individuals in a similar way, there is nothing improper with similarly pleading such claims. And of course the Defendants, whose products have indeed caused mass injury and death, have filed identical answers in many cases. Moreover, it is Defendants who seek transfer of this and other PPA cases to the MDL court in Seattle on the grounds that all of the cases raise the same issues. Plaintiffs are the ones who want prompt disposition of their own remand motion and remand to state court so that their case can be individually prosecuted.

Not surprisingly absent from the petitions in Exhibit A to Defendant's Memorandum and in Defendant's citation of other cases in which similar language has been used in pleading causes of action by Plaintiff's counsel on behalf of other similarly situated plaintiffs is *Garcia v. American Home Prods.*, No. C-02-146 (S.D. Tex. 2002), another case involving Plaintiff's counsel and the Defendants. Memorandum at 2. This is because, in *Garcia*, the plaintiff's cause was remanded and arguments similar to those now asserted in Plaintiff's Motion for Remand were raised and addressed by the court. *See* Garcia's Original Petition attached as **Exhibit C**; Garcia's Motion for Remand attached as **Exhibit D**; Order of Remand in Garcia attached as **Exhibit A**.

## I.    Plaintiffs Have Stated A Claim Against The Allegedly Fraudulently Joined Defendants.

While Plaintiff stands on the allegations in its state court petition, in evaluating a claim of fraudulent joinder the court may consider Plaintiff's petition and evidence outside of the pleadings such as affidavits. *Burden v. General Dynamics Corp.*, 60 F.3d

213, 217 (5th Cir. 1995). Defendant pleads with the Court to not consider Plaintiff's affidavit attached to Plaintiff's Motion for Remand. Response at 13-14; Memorandum at 12-13. The Defendant not only does not provide the Court a good reason to ignore Plaintiff's affidavit, the Defendant provides no reason.[1]

In *Garcia*, citing the plaintiff's affidavit attached to the motion for remand, Judge Jack held that if the allegedly fraudulently joined defendant had been a non-diverse defendant, the plaintiffs clarified in the motion for remand that the plaintiff purchased the harmful PPA products from the allegedly fraudulently joined defendant. Order of Remand at n.3. Judge Jack concluded that defendant's sole allegation in support of its claim that the non-diverse defendant was fraudulently joined (a claim that plaintiffs have shown no connection between the subject PPA products and any injuries) had been controverted by the plaintiffs. Order of Remand at n.3. Judge Jack ultimately remanded the case concluding that because the removing defendants did not obtain the consent of a diverse defendant, the removal was improper. Order of Remand at 8.

Defendant states that the statement in Plaintiff's affidavit as it relates to HEB "avails Plaintiff of nothing" arguing that a "*pharmacy* has no liability for failure to warn of the risks posed by *prescription medications.*" Memorandum at 13 (emphasis added); *see also* Response at 12-13. Inasmuch as Plaintiff's claims involve over-the-counter drugs and Plaintiff has not sued any Defendant as a pharmacy, Defendant's proposition is inapposite. Defendant's sole citation for this proposition is a case interpreting Louisiana law. The Defendant has the burden to prove that the Plaintiff has no cause of action

---

[1] Defendant states that affidavits can not be used to state a legal theory not alleged in a state court petition. Response at 13; Memorandum at 12. However, it is no surprise that Defendant does not point to a "legal theory" set forth in Plaintiff's affidavit as Plaintiff's affidavit simply contains facts.

against the allegedly fraudulently joined defendants. *Madison v. Vintage Petroleum, Inc.*, 114 F.3d 514, 516 (5th Cir. 1997).    Although the Defendant wants the "pharmacy/prescription medications" exception to apply to retailers selling over-the-counter drugs, Texas has never recognized this exception.  Plaintiff's Motion for Remand is replete with citations to Texas law demonstrating a cause of action against sellers, distributors and manufacturers of dangerous products.  Plaintiff's Motion to Remand at 6-12.  Defendant's desire that such a rule "should apply" with respect to over-the-counter drugs sold by retailers does not make it so, because that is simply not the law in Texas.  Moreover, it is not the place of a federal court sitting in diversity to pronounce exceptions in state law where no such exceptions exist.

In any event, in the "pharmacy/prescription medications" setting, a doctor has been involved with the patient through clinical observation and diagnosis and then by prescribing the medication appropriate in light of the patient's symptoms and medical history.  No such medical intervention exists when a retailer sells dangerous over-the-counter drugs to a patron.    Therefore, it does not make sense to expand the "pharmacy/prescription medications" exception to retailers selling over-the-counter drugs—and not surprisingly, the Defendant cannot cite a single Texas case that has recognized such an exception to the normal rules of product liability.

Defendant also asserts that Plaintiff has not alleged a cause of action against the Defendants based on a conspiracy theory because "Plaintiff's various theories of recovery sound in negligence or otherwise lack the element of intentional wrongdoing." Response at 12.    However, in addition to civil conspiracy, negligence, and negligent misrepresentation, Plaintiff has pled causes of action for breach of implied warranty of

merchantability, breach of implied warranty of fitness for a particular purpose, and breach of continuing duty to warn—none of which sound in negligence or lack an element of intentional wrongdoing. Liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Once a civil conspiracy is found, each co-conspirator is responsible for the action of any of the co-conspirators which is in furtherance of the unlawful combination. *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983).

The numerous articles attached to Plaintiff's Motion for Remand demonstrate that the manufacturers of PPA containing products knew or should have known as far back as 1969 that suberacnoid hemorrhages had been linked to the ingestion of PPA. Yet all the manufacturers of PPA products failed to warn physicians or the public of such risks as is evidenced by the lack of any such warnings in the year 2000 edition of the Physicians Desk Reference. If the manufacturers conspired to not disclose such information to physicians and/or the public, and based on such nondisclosure, the unwitting public, including the Plaintiff, purchased a drug containing PPA and suffered injury as a result of taking the drug, the manufacturers that conspired to not disclose such vital health information are liable for the underlying torts alleged by the Plaintiff in this suit. The causation element arises from the personal injury caused the Plaintiff due to the manufacturers concerted effort to withhold crucial information from the public, including the Plaintiff, regarding the known risks associated with taking drugs containing PPA.

In the context of a fraudulent joinder analysis, the Plaintiff does not have to prove the elements of the causes of action asserted. The Court must only determine, whether the

Defendant has proven with clear and convincing evidence that the Plaintiff does not have an arguable claim under state law. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Tenner v. Prudential Ins. Co.*, 872 F. Supp. 1571, 1574 (E.D. Tex. 1994); *Dollar v. General Motors Corp.*, 814 F. Supp. 538, 541 (E.D. Tex. 1993). If the plaintiff has a colorable claim against a Texas defendant, joinder was proper. *Tenner*, 872 F. Supp. at 1574. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Crowe*, 113 F.3d at 1538 (quotations omitted).

## II. Defendant Has Not Carried Its Burden to Prove Fraudulent Joinder.

Throughout Defendant's Memorandum, Defendant inappropriately attempts to shift the burden to the Plaintiff to prove various aspects of Plaintiff's case. Memorandum at 9-11. Plaintiff has no obligation to marshal its proof for trial to demonstrate that Defendant's claim of fraudulent joinder is erroneous. Quite the contrary, Defendant has the "heavy burden" of proving by "clear and convincing evidence" that there is "no possibility that the Plaintiff would be able to establish a cause of action" against the Defendant in state court. *Madison v. Vintage Petroleum, Inc.*, 114 F.3d 514, 516 (5th Cir. 1997); *Tenner*, 872 F. Supp. at 1572. Even a tenuous possibility of recovery with a modicum of sturdiness will defeat a claim of fraudulent joinder. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 43 (5th Cir. 1992). Defendant has failed to carry its burden.

Respectfully submitted,
**WATERS & KRAUS, LLP**

*with permission of Charles Siegel*

CHARLES S. SIEGEL
Attorney-in-Charge
State Bar No. 18341875
Federal Bar No. 15736
KIRK L. PITTARD
Of Counsel
State Bar No. 24010313
Federal Bar No. 27165
3219 McKinney Ave., Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 357-7252 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded via facsimile to all counsel of record on this the *17* day of June, 2002.

Kirk L. Pittard

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

United States District Court
Southern District of Texas
ENTERED

**MAY 1 3 2002**

Michael N. Milby, Clerk of Court

49.

| | | |
|---|---|---|
| ELVIRA GARCIA and<br>EDWIGHE GARCIA | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. C-02-146 |
| | § | |
| AMERICAN HOME PRODUCTS<br>CORPORATION, ET. AL, | § | |
| | § | |
| Defendants. | § | |

## ORDER OF REMAND

On this day came on to be considered Plaintiffs Elvira Garcia and Edwighe Garcia's ("Plaintiffs") Motion to Remand the above-captioned cause of action. For reasons stated herein, the Court ORDERS that this action be REMANDED pursuant to 28 U.S.C. § 1447(c) to the 117th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 2002-01157-B.

## I.    JURISDICTION

Defendants Block Drug Company, Inc., SmithKline Beecham Consumer Healthcare, L.P., and SmithKline Beecham Corporation (the "Removing Defendants") removed this case from the 117th Judicial District Court of Nueces County, Texas on the basis of diversity jurisdiction under 28 U.S.C. § 1332, claiming that the only non-diverse Defendants are fraudulently joined.[1]  Plaintiffs contest

_____

[1]The Removing Defendants claim that both Advocare International, L.L.C. ("Advocare") and Wal-Mart Stores, Inc. ("Wal-Mart") are fraudulently joined to defeat diversity.  As is

1


TRUE COPY I CERTIFY.
ATTEST: May 14, 2002
MICHAEL N. MILBY, Clerk of Court
By _____ Deputy Clerk


PLAINTIFF'S
EXHIBIT
A

the removal, asserting that (1) Wal-Mart is not a non-diverse Defendant, and thus remand is required due to the Removing Defendants' failure to obtain Wal-Mart's consent to the removal; and (2) neither Wal-Mart nor Advocare, the two parties claimed to be non-diverse by the Removing Defendants, are fraudulently joined. Thus, Plaintiffs contend, jurisdiction over this matter does not exist in this Federal Court. The Court FINDS that it does not have jurisdiction over this action.

## II. FACTS AND PROCEEDINGS

The above-styled cause of action was originally filed on or about March 4, 2002, in the 117th Judicial District Court in Nueces County, Texas, as Cause No. 2002-01157-B against American Home Products Corporation; Advocare International, L.L.C.; Bayer Corporation; Block Drug Company, Inc.; Bristol Myers Squibb Company; Chattem, Inc.; Glaxo SmithKline, PLC; Novartis Consumer Health, Inc.; Novartis Pharmaceuticals Corporation; SmithKline Beecham Corporation; SmithKline Beecham Consumer Healthcare, L.P.; SmithKline Beecham Corporation; Whitehall-Robins Heatlthcare; and Wal-Mart Stores, Inc., d/b/a Wal-Mart Store ("Wal-Mart"). Bristol

---

indicated, *infra*, the fraudulent joinder argument as it pertains to Wal-Mart is nonsensical, as the Removing Defendants are incorrect regarding Wal-Mart's citizenship. Wal-Mart, because it is a Delaware corporation with its principal place of business in Arkansas, is a <u>diverse</u> party. Thus, inclusion of Wal-Mart as a defendant does not destroy diversity. The Removing Defendants are simply incorrect in stating that Wal-Mart's principal place of business is Texas.

2

Myers Squibb Company, Bayer Corp., and Advocare International, Inc. were served with Plaintiffs' Petition on March 18, 2002. (Notice of Removal ¶ 25.) These Defendants were the first to be served in the above-captioned action (Id.) On April 9, 2002, the Removing Defendants removed the above-captioned cause of action to this Court. All Defendants, save Advocare and Wal-Mart, consented to removal. The Removing Defendants contend that the consent of Advocare and Wal-Mart, the only non-diverse defendants, is unnecessary, as these Defendants are fraudulently joined to defeat diversity.

On May 9, 2002, Plaintiffs filed a timely Motion to Remand. Plaintiffs explicitly argued that (1) Wal-Mart, as a non-diverse Defendant, was required to consent to the removal, and lack of such consent renders the removal fatally defective; and (2) neither Wal-Mart nor Advocare are fraudulently joined. The Court now considers Plaintiffs' Motion to Remand.[2]

---

[2]As an initial matter, the Court notes that the Removing Defendants have filed a Motion to Stay the above-captioned cause of action. On August 28, 2001, the Judicial Panel on Multidistrict Litigation ("JPMDL") consolidated 14 Phenylpropanolamine (PPA) products liability litigation for pretrial proceedings in the Honorable Judge Barbara Jacobs Rothstein's Court in the Western District of Washington ("PPA MDL Court"). The Removing Defendants have indicated that the JPMDL has been notified of the pendency of this action and that they anticipate the issuance of a conditional order of transfer this case to the PPA MDL court. The Rules of Procedure of the Judicial Panel on Multidistrict Litigation, at Rule 1.5, provide that the "pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel ... does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending

## III. DISCUSSION

It is well-settled that the removing party bears the burden of showing that the removal was proper. _Willy v. Coastal Corp._, 855 F.2d 1160, 1164 (5th Cir. 1988). This burden extends to demonstrating the jurisdictional basis for removal. _Carpenter v. Wichita Falls Indep. Sch. Dist._, 44 F.3d 362, 365 (5th Cir. 1995); _Delgado v. Shell Oil Co._, 890 F.Supp. 1324, 1341 (S.D. Tex. 1995); _Albonetti v. GAF Corp. - Chem. Group_, 520 F.Supp. 825, 827 (S.D. Tex. 1981). The question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed. _See Pullman Co. v. Jenkins_, 305 U.S. 534, 537-38, 59 S.Ct. 347, 348-49 (1939); _Miranti v. Lee_, 3 F.3d 925, 928 (5th Cir. 1993); _Brown v. Southwestern Bell Tel. Co._, 901 F.2d 1250, 1254 (5th Cir. 1990). The removal statutes are to be strictly construed against removal; doubts as to removability are resolved in favor of remanding the case to state court. _Shamrock Oil & Gas Corp. v. Sheets_, 313 U.S. 100, 61 S.Ct. 868 (1941); _Leffall v. Dallas Indep. Sch. Dist._, 28 F.3d 521, 524 (5th Cir. 1994); _Butler v. Polk_, 592 F.2d 1293, 1296 (5th Cir. 1979); _Walters v. Grow Group, Inc._, 907 F.Supp. 1030, 1032 (S.D. Tex. 1995).

---

and does not in any way limit the pretrial jurisdiction of that court." Thus, even should a Conditional Transfer Order issue, this Court would retain jurisdiction over pretrial matters. _See Faulk v. Owens-Corning Fiberglass_, 48 F.Supp.2d 653 (E.D. Tex. 1999) (ruling on motion to remand in spite of existence of conditional transfer order). Thus, this Court DENIES the Motion to Stay and will consider Plaintiffs' Motion to Remand.

4

A defendant may remove a state-court action to federal court only if the action could have been originally filed in federal court. 28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 391-392, 107 S.Ct. 2425, 2429 (1987). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Even had Plaintiffs not filed their Motion to Remand, this Court is required to raise the issue of subject matter jurisdiction sua sponte to determine whether or not jurisdiction may be properly conferred. See F.D.I.C. v. Loyd, 955 F.2d 316, 322 (5th Cir. 1992). A district court should constantly examine the controversies before it in order to determine the presence of subject matter jurisdiction and, if such jurisdiction is found lacking, the district court must remand to state court if appropriate, or otherwise dismiss. See Coleman v. Alcolac, Inc., 888 F. Supp. 1388, 1394 (S.D. Tex. 1995).

A notice of removal must be filed "within thirty days after receipt by defendant, through service or otherwise, of a copy of the initial pleading...." 28 U.S.C. § 1446(a). The 30 day period starts to run when the defendant receives an initial pleading that affirmatively reveals on its face diversity or federal question jurisdiction. See Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994); Chapman v. Powermatic, Inc., 969 F.2d 160, 163 (5th Cir. 1992), cert. denied, 507 U.S. 967,

5

113 S. Ct. 1402 (1993). The statutory 30 day period to file a notice of removal is mandatory; the court cannot extend it nor may the parties extend by stipulation. Pace v. Chevron U.S.A., Inc., 1993 WL 262694, at * 1 (E.D. La. July 2, 1993); Albonetti v. GAF Corp. - Chem. Group, 520 F. Supp. 825, 827 (S.D. Tex. 1981). However, a plaintiff waives any objection to untimely removal by failing to file a motion to remand on this ground within 30 days of removal, since untimely removal is a procedural defect. See 28 U.S.C. § 1447(c); Barnes v. Westinghouse, 962 F.2d 513, 516 (5th Cir. 1992). In the Fifth Circuit, it is settled that in cases such as this one, with multiple defendants, all served defendants must join in the petition for removal no later than thirty (30) days from the day on which the first defendant was served. Getty Oil Corp. v. Insurance Co. of North Am., 841 F.2d 1254, 1262-63 (5th Cir. 1988). A joinder filed after expiration of the 30 day period for removal is not effective, even if the delay was caused by mistake. Doe v. Kerwood, 969 F.2d 165, 168 (5th Cir. 1992). Each defendant need not sign the original notice of removal, but there must be some timely written indication from each served defendant, or from some representative purporting to have authority to act on the defendant's behalf in this respect, that the defendant has actually consented to removal. Getty Oil, 841 F.2d at 1262 n. 11. Without this requirement there would be nothing in the record to bind the allegedly consenting defendant. Id.

6

Where all defendants do not sign the removal petition, the petition must set forth a reason for not including the defendants. Marshall v. Skydive Am. South, 903 F. Supp. 1067, 1070 (E.D. Tex. 1995). The Removing Defendants offered such a reason, claiming that the consent of Advocare and Wal-Mart was not necessary, arguing fraudulent joinder of these parties.

Plaintiffs, in the Motion to Remand, note that Wal-Mart, contrary to the Removing Defendants' assertions, is not a Texas Corporation. Therefore, an argument that Wal-Mart is fraudulently joined to defeat diversity is inherently inaccurate, as the joinder of Wal-Mart does not, in fact, defeat diversity.[3] Wal-Mart filed an Answer, thus appearing in the state court, on April 8, 2002.[4] This was the day before the Removing Defendants removed the above-captioned cause of action. Wal-Mart, being a diverse Defendant,

---

[3] This is, of course, because the very doctrine of fraudulent joinder deals with the improper joinder of non-diverse defendants to defeat diversity. See, e.g., Burden v. General Dynamics Corp., 60 F.3d 213, 217 (5th Cir. 1995); Jernigan v. Ashland Oil Co., 989 F.2d 812, 815 (5th Cir. 1993); B., Inc. v. Miller Brewing Co., 663 F.2d 545 (5th Cir. 1981). Furthermore, the Court notes that even if Wal-Mart had been an entity capable of destroying diversity in the above-captioned cause of action, Plaintiffs clarified in the Motion to Remand that they purchased the harmful PPA products at Wal-Mart. (Pl.'s Mot. to Remand, Ex. A, Elvira Garcia Aff.) Thus, Defendants' sole allegation in support of their claim that Wal-Mart was fraudulently joined (a claim that Plaintiffs have shown no connection between the subject PPA products and any injuries) has been controverted by Plaintiffs.

[4] This Court need not determine if Wal-Mart was properly served, as Texas law provides: "[a]n answer shall constitute an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him." TEX. R. CIV. P. 121.

7

was not fraudulently joined to defeat diversity. Thus, Wal-Mart's consent was required for removal. Because the Removing Defendants did not obtain such consent, removal was improper.

IV. CONCLUSION

As indicated, infra, all doubts are resolved against removal. Because the Court determines that Removing Defendants failed to meet their burden of establishing this Court's jurisdiction, Plaintiffs' Motion to Remand is GRANTED, and the above-captioned cause of action is hereby REMANDED pursuant to 28 U.S.C. § 1447(c) to the 117th Judicial District Court of Nueces County, Texas, where it was originally filed and assigned Cause Number 2002-01157-B.

SIGNED and ENTERED this 13 day of May, 2002.

JANIS GRAHAM JACK
UNITED STATES DISTRICT JUDGE

8

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE PHENYLPROPANOLAMINE<br>PRODUCTS LIABILITY LITIGATION | §<br>§<br>§<br>§ | DOCKET NO. 1407 |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FRANCISCO SANCHEZ<br>    Plaintiff | §<br>§<br>§ | CIVIL ACTION<br>NO. 1-02-66 |
| VS. | §<br>§<br>§ | |
| American Home Products Corp., et al.<br>    Defendants | §<br>§ | |

## NOTICE OF OPPOSITION TO TRANSFER

Come now Plaintiffs and file this Notice of Opposition to the Conditional Transfer Order

(CTO-16) entered by the Panel on May 17, 2002.

FRANCISCO SANCHEZ is a plaintiff in an action styled FRANCISCO SANCHEZ vs.

American Home Products Corp., et al.; No. 1-02-66, pending in the United States District Court

Southern District of Texas, Brownsville Division.  Pursuant to Panel Rule 7.4(c), the plaintiffs

1


PLAINTIFF'S EXHIBIT

file this notice of opposition to apprise the Panel of their opposition to transfer.

Pursuant to Panel Rule 7.4(d), plaintiffs shall file, within 15 days of the filing of this notice, their motion to vacate conditional transfer order and supporting brief.

Respectfully submitted,

Charles S. Siegel
Texas State Bar No. 18341875
Federal ID No. 15736
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Opposition has been served by facsimile on all counsel of record on this 3rd day of June, 2002.

Charles S. Siegel

2

NO. 02-0157-B

| | |
|---|---|
| ELVIRA GARCIA and spouse EDWIGHE GARCIA, §<br>§<br>*Plaintiffs* §<br>§<br>V. §<br>§<br>AMERICAN HOME PRODUCTS §<br>CORPORATION; §<br>ADVOCARE INTERNATIONAL, LLC; §<br>BAYER CORPORATION; §<br>BLOCK DRUG COMPANY, INC.; §<br>BRISTOL-MYERS SQUIBB COMPANY; §<br>CHATTEM, INC.; §<br>GLAXOSMITHKLINE, PLC; §<br>NOVARTIS CONSUMER HEALTH, INC.; §<br>NOVARTIS PHARMACEUTICALS CORPORATION; §<br>SMITHKLINE BEECHAM CONSUMER §<br>HEALTHCARE, L.P.; §<br>SMITHKLINE BEECHAM CORPORATION; §<br>WHITEHALL-ROBINS HEALTHCARE; and §<br>WALMART STORES, INC. d/b/a WALMART STORE, §<br>§<br>*Defendants* § | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br><br><br>NUECES COUNTY, TEXAS<br><br><br><br><br>117 JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND JURY DEMAND SERVED WITH DISCOVERY

COME NOW, Plaintiffs Elvira Garcia and Edwighe Garcia and file this their Original Petition, complaining of American Home Products Corporation, Advocare International, LLC, Bayer Corporation, Block Drug Company, Inc., Bristol Myers Squibb Company, Chattem, Inc., GlaxoSmithKline, PLC, Novartis Consumer Health, Inc., Novartis Pharmaceuticals Corporation, SmithKline Beecham Consumer Healthcare, L.P., SmithKline Beecham Corporation, and Whitehall-Robins Healthcare, a division of American Home Products Corporation (collectively "PPA Defendants") and Walmart Stores, Inc. d/b/a Walmart Store ("Retailer Defendant") and for cause of action would show the Court as follows:

### A. Discovery Control Plan

1.      Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure, Plaintiffs resp[...]
be conducted pursuant to Level 3, and that a discovery control plan be entered to govern discovery in this case.

### B. Parties

2.      Plaintiffs are Texas residents, who reside at 1613 Triplet Crown, Corpus Christi, Texas 78417. Plaintiff[...]
suffered severe and debilitating permanent injures as a result of exposure to phenylpropanolamine (hereinafter

referred to PPA) through ingestion of PPA containing products designed, formulated, marketed, manufactured, distributed, and/or sold by defendants.

3.        Defendant **American Home Products Corporation** (hereinafter referred to as AHP) is a Delaware corporation with its principal place of business in New Jersey. American Home Products Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, AHP was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

4.        Defendant **Advocare International, LLC** (hereinafter referred to as Advocare) is incorporated in the State of Delaware with its corporate headquarters and principal place of business in Carrollton, Dallas County, Texas. Advocare International, LLC is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 N. St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Advocare was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

5.        Defendant **Bayer Corporation** is an Indiana corporation with its principal place of business in Pennsylvania. Defendant Bayer Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bayer Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

6.        Defendant **Block Drug Company, Inc.**, (hereinafter referred to as Block) is a New Jersey corporation with its principal place of business in New Jersey. Defendant Block Drug Company, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice Hall Corporation, 800 Brazos, Austin, Bexar County, Texas 78701. At all relevant times herein, Block was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at

2

all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

7.      Defendant Bristol Myers Squibb Company is a Delaware corporation. Defendant Bristol Myers Squibb Company is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Dallas County, Texas 75201. At all relevant times herein, Bristol Myers Squibb Company was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

8.      Defendant Chattem, Inc. is a Tennessee corporation with its principal place of business in Tennessee. Defendant Chattem, Inc. is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Hugh F. Sharber, 1000 Volunteer Bldg., 832 Georgia Ave., Chattanooga, TN 37409. At all relevant times herein, Chattem, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and sold, its products containing PPA in this state and throughout the United States.

9.      Defendant GlaxoSmithKline PLC (hereinafter referred to as Glaxo) is a foreign corporation with its United States principal place of business in Philadelphia, Pennsylvania. On December 27, 2000, a merger became effective between Glaxo Wellcome and SmithKline Beecham Corporation, also a defendant herein, creating GlaxoSmithKline PLC. Defendant GlaxoSmithKline PLC may be served by servings its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. The defendant does business in the State of Texas and at all relevant times hereto marketed, promoted, warranted and sold, its products containing phenylpropanolamine (hereinafter referred to as PPA) in this state and throughout the United States.

10.     Defendant Novartis Consumer Health, Inc. (hereinafter referred to Novartis Consumer), is a Delaware corporation with its principal place of business in New Jersey. Defendant Novartis Consumer has not designated or maintained a registered agent for service of process in the State of Texas. This Defendant may be served by serving its Delaware registered agent, Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808. At all relevant times herein, Novartis Consumer Health, Inc. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

3

11.    Defendant **Novartis Pharmaceuticals Corporation** (hereinafter referred to as Novartis Pharmaceuticals), is a Delaware corporation with its principal place of business in New Jersey. Novartis Pharmaceuticals Corporation is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Corporation Service Company, 800 Brazos, Austin, Bexar County, Texas 77801. At all relevant times herein, Novartis Pharmaceuticals Corporation was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

12.    Defendant **SmithKline Beecham Consumer Healthcare, L.P.** (hereinafter referred to as SmithKline Consumer) is a limited partnership in Delaware with its principal place of business in Pennsylvania. Defendant SmithKline Beecham Consumer Healthcare, L.P. may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein, SmithKline Consumer was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

13.    Defendant **SmithKline Beecham Corporation** (hereinafter referred to as SmithKline Corp.) is a Pennsylvania corporation with its principal place of business in Pennsylvania. This defendant may be served by serving its Pennsylvania registered agent Robert P. Bauman, 1 Franklin Plaza, 200, No. 16th St., Philadelphia, PA 19102. At all relevant times herein SmithKline Corp. was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.

14.    Defendant **Whitehall-Robins Healthcare**, is a division of American Home Products Corporation (hereinafter referred to as Whitehall). Whitehall-Robins Healthcare is a foreign corporation which is licensed to do business in the State of Texas and service of citation may be had by serving its registered agent, Prentice-Hall Corporation Systems, 800 Brazos, Austin, Travis County, Texas 78701. At all relevant times herein, Whitehall was in the business of promoting, manufacturing, and distributing products containing PPA in the State of Texas and at all relevant times hereto, marketed, promoted, warranted and, sold its products containing PPA in this state and throughout the United States.



15.    Defendant WalMart Stores, Inc. d/b/a WalMart Store (hereinafter referred to WalMart) is a Delaware corporation authorized to do business in the State of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Companies, 800 Brazos, San Antonio, Bexar County, Texas 78701. Defendant WalMart was involved in the sale and distribution of the subject PPA product(s).

### C. Jurisdiction and Venue

16.    Jurisdiction in this Court exists because the tort and breach of warranty claims and causes of action presented herein occurred in the State of Texas. Jurisdiction is also proper in this state because Plaintiffs assert only state law causes of action under Texas state law and expressly declines any assertion of federal claims, claims under any federal laws or statutes, claims involving any federal question, or claims involving any interpretation of any federal law or statute. Jurisdiction is also proper in this Court because one or more of the defendants are residents and citizens of the State of Texas.

17.    Venue is proper because all or a substantial part of the events or omissions giving rise to the claim occurred in this county. Therefore, venue properly lies in this county.

### D. Long Arm Jurisdiction and Service

18.    As to out of state defendants, personal jurisdiction is founded upon section Tex. Civ. Prac. and Rem. Code §17.041 et seq., the Long Arm Statute.

19.    The out of state defendants herein, as factually specified in this Petition, committed torts in whole or in part in the State of Texas and breached warranties of fitness and merchantability within this state. Additionally, or alternatively, Plaintiffs' causes of action arose out of defendants' contacts with this state and they are subject to specific personal jurisdiction. Additionally, or alternatively, their business contacts with this state are so continuous and systematic as to subject them to the general jurisdiction of this Honorable Court.

20.    Service upon such out of state defendants is made by delivery of process to the defendant's officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.

### E. Factual Allegations

21.     At all relevant times hereto, defendants were designers, manufacturers, marketers, advertisers, distributors, merchants, and sellers of non-prescription, over-the-counter pharmaceutical products, and/or prescription pharmaceutical products which contained Phenylpropanolamine (PPA) as an active ingredient.

22.     At all times pertinent to these causes of action, defendants acted by and through their agents and/or employees who were acting within the course, scope and authority, apparent or actual, of such agency and/or employment. Where it is alleged that defendants committed any act and/or omission or engaged in any conduct, it is meant that the defendants committed such act and/or omission or engaged in such conduct by and through their agents and/or employees, and that at the time of such act, omission or conduct, it occurred with the full authorization or ratification of the respective defendants and/or occurred in the normal and routine course and scope of the agency or employment of such agent or employee of defendants.

23.     Plaintiffs have purchased certain over-the-counter, non-prescription and/or prescription drugs containing PPA. Plaintiff and her family have purchased and/or ingested within all relevant times PPA products.

24.     Based upon defendants' promotions, marketing, advertisements, and other representations, Plaintiff purchased PPA products believing they were safe for her and her family members to ingest. However, unbeknownst to Plaintiff, defendants' PPA products identified herein were not safe as designed, manufactured, marketed, and distributed in that the products contained PPA as an active ingredient and failed to warn of the dangers associated with the ingestion of PPA.

25.     Plaintiff purchased and/or ingested the aforementioned drugs containing PPA in this county. Plaintiff suffered severe and debilitating permanent injuries in this county as a consequence of her exposure to PPA through ingestion of the PPA containing products, designed, formulated, marketed, manufactured, distributed and/or sold by defendants.

26.     The Non-Prescription Drug Manufacturers Association (hereinafter referred to a NDMA) and the industry of which the PPA defendants were part, reviewed medical and scientific literature regarding products containing active ingredients such as PPA and participated in discussions concerning the safety of PPA products, such as those manufactured, sold, and distributed by the defendants and the industry.

27.    The PPA defendants and other members of the NDMA, directly or indirectly, participated in the funding of purported studies on the safety of PPA, when they knew or should have known of the inaccuracies and inadequacies of said studies.

28.    Pharmaceutical companies and retailers of over-the-counter drugs, such as Retailer Defendants, have a professional and ethical duty to inform and warn the public, especially those purchasing their products, of known adverse and dangerous side effects associated with their products or active ingredients in their products.

29.    Life threatening adverse effects related to PPA leading to hospitalization and/or death have been well documented and known to pharmaceutical companies, including the Retailer Defendants, for decades.  These life threatening events have been documented through the Food and Drug Administration (hereinafter referred to as FDA) warning/sentinel events systems, showing a large number of such events related to PPA.  Several life threatening PPA injuries have been reported in Clin-Alert and other medical reports.

30.    The Retailer Defendants marketed PPA products as safe and effective.  However, defendants did not perform adequate testing of these PPA products to ensure their safety.  In fact, many reports indicated the active ingredient PPA was not safe.

31.    The defendants' PPA products are intended by the defendants to function as over-the-counter cold, flu, sinus, allergy and/or diet tablets, capsules, and liquid products and were designed, manufactured, marketed, advertised, distributed, and sold by defendants as such.  However, the PPA products were not sufficiently or properly tested prior to being marketed to the public or at any time while being marketed to the public.  Testing of the effects of the PPA products on the central nervous system or cardiovascular system were not performed over a reasonable period of time during the distribution and sale of the PPA products to the public.  Nevertheless, defendants represented the PPA products to be pharmaceutically tested and safe for consumption.

32.    The defendants, who are retailers or sellers of the PPA products consumed by the Plaintiff, negligently failed to inform their customers of the risk associated with these products and breached implied warranties of fitness and merchantability in the sale of these inherently dangerous products.

33.    Defendant manufacturers have concealed material facts, including the serious risks associated with ingesting PPA, from Plaintiff in product packaging, labeling, advertising, promotional campaigns and materials, among other ways, regarding the safety and use of products containing PPA, and thereby have breached both implied and express warranties.

7

34._    Many consumers who have suffered adverse side effects from ingesting defendants' PPA products, may not know or realize they suffer from such side effects[1]. Nonspecific symptomology from myocardial injury or undefined neurologic changes may be detected and diagnosed only through medical examination and/or diagnostic testing or studies.  To assist physicians in evaluation, diagnosis and treatment, they need to be armed with specific knowledge of the harmful effects of PPA and the fact that the patient has taken PPA.  The failure to properly inform the public of the dangers and potential adverse health effect of PPA, even after withdrawal of PPA products from the market, by both the manufacturer and retailers was both negligent and grossly negligent.  Such a disclosure was necessary for the unsuspecting public to identify potential health problems related to PPA and to seek proper medical treatment.

35.    The causal relationship of Plaintiff's injury to the products containing PPA was inherently undiscoverable by the Plaintiff until she was warned of the dangers by the defendants.  Consequently the Discovery Rule should apply to toll the statute of limitations until Plaintiffs knew or through reasonable care and diligence should have known of their claims against defendants.  Plaintiffs filed suit within two years of the date Plaintiff knew or should have known of the claims against defendants.  Therefore, Plaintiffs' suit was timely filed within the time period provided by the applicable statute of limitations.

36.    Furthermore, defendants fraudulently concealed their wrongful conduct and the dangerous propensities of products containing PPA from the Plaintiff and the public at large.  Therefore, the applicable statute of limitations should be tolled during the period of such concealment, which has continually existed in the past up until the present.

## F.  First Claim for Relief
### Strict Products Liability

37.    Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

38.    Plaintiffs claim that all defendants are liable to Plaintiffs under the theory of strict products liability.

---

[1] Defendants were aware of the significant <u>under reporting</u> of adverse events associated with OTC drugs in spontaneous safety surveillance systems such as that at the FDA regarding PPA and hemorrhagic strokes.  The FDA has estimated that as few as 1% of all PPA-associated adverse events have been reported.  Utilizing that learned estimate, the 44 FDA adverse reports between 1969 and 2000 which arose from cases of hemorrhagic stroke associated with PPA use would translate into <u>4400</u> such cases over the years in question.

39.     All defendants were engaged in the business of manufacturing, designing, testing, marketing, distributing, and/or selling the subject products containing PPA and/or their incorporated component ingredients.

40.     The subject products reached Plaintiff without substantial change.

41.     The subject products were "defective" and "unreasonably dangerous" when the products entered into the stream of commerce and received by the Plaintiff in one or more of the following respects:

A.     The subject products contained one or more manufacturing defects, in that they contained a dangerous chemical constituent known as PPA;

B.     The subject products were not reasonably safe as designed, taking into account that the foreseeable risks involved in their use at the time the products left the possession of all defendants outweighed the utility of products or therapeutic benefits;

C.     The subject products are not reasonably safe due to inadequate or defective warnings or instructions at the time the product left the possession of defendants. Specifically, although the defendants were well aware that PPA could potentially cause both hemorrhagic and certain types of ischemic strokes as well as coronary events and kidney failure, no warnings of such adverse health conditions were included on the packaging of these products. Likewise, the warnings of other contraindications or the need to consult a physician before taking, are so minimal as to be misleading; and

D.     The defendants are liable because at the time the products left the control of the defendants, the products were defective because they failed to contain adequate warnings or instructions, or, in the alternative, the products were defective because they were designed in a defective manner, or, in the alternative the products breached an expressed warranty or failed to conform to other expressed factual representations upon which the Plaintiff justify relied in electing to use the products. The subject products were in a defective condition, which rendered the products unreasonably dangerous to the Plaintiff, and the defective and unreasonably dangerous conditions of the products proximately caused the damages for which Plaintiffs seek recovery herein. The Plaintiff's damages were not caused by an inherit characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product

usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community. Moreover, the defendants' products were defective because they failed to contain adequate warnings or instructions and the defendants knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which Plaintiffs' seek recovery and a reasonable competent Plaintiff would not realize their dangerous condition. Additionally, defendants' products' warnings or instructions were not of a nature of what a reasonable prudent person in the same or similar circumstances would have provided with respect to the danger and there were not warnings or instructions which communicated sufficient information on the dangers and safe use of the product taking into account the characteristic of, and the ordinary knowledge common to an ordinary consumer who purchases the product, such as your Plaintiff. Additionally, defendants' products were defective because of their design and the defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care, should have known about the danger that caused the damages for which Plaintiffs seek recovery. Defendants' products failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm to Plaintiff without impairing the utility, usefulness, practicality, or desirability of the product to Plaintiff.

### G. Second Claim for Relief
### Negligence, Gross Negligence

42.    Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

43.    Plaintiffs assert claims under theories of negligence and gross negligence against all defendants.

44.    All defendants had a duty to exercise reasonable care in the designing, manufacturing, marketing, selling, testing, and/or distributing of the subject products containing PPA prior to placing these products into the stream of commerce.

45. All defendants failed to exercise ordinary care in the designing, manufacturing, marketing, selling, testing, and/or distributing the subject products into interstate commerce.

46. All defendants knew or should have known that the subject products created an unreasonable risk of bodily harm or death.

47. All defendants were negligent, grossly negligent, and breached duties owed to Plaintiff with respect to the subject products in the one or more of the following respects:

      A.    Failed to use due care in designing and manufacturing the products so as to avoid the use of PPA in such products;

      B.    Failed to accompany the products with adequate warnings and instructions regarding the adverse side effects associated with the use of the products containing PPA;

      C.    Failed to conduct adequate testing;

      D.    Failed to conduct adequate post-marketing surveillance to determine the safety of the products;

      E.    Failed to warn Plaintiff after the sale of the products containing PPA that the use of such products could result in stroke, heart attack, cardiac arrhythmia, kidney failure or even death;

      F.    As to the retailer defendants, failed to remove the products from their shelves after they knew or should have known of the adverse side effects of PPA; and

      G.    Were otherwise careless or negligent.

48. The negligence and, gross negligence of all defendants was a proximate cause of Plaintiff's harm and economic loss that Plaintiffs have suffered and will continue to suffer as previously described.

49. All defendants are jointly and severally liable to Plaintiffs for all damages claimed.

## H. Third Claim for Relief
## Implied Warranty of Merchantability

50. Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

51. All defendants breached the implied warranty of merchantability because the products sold were not fit for the ordinary purposes for which such goods are used. See UCC §2.314

52.    Defendants breached the implied warranty of merchantability in failing to adequately label the containers or packages containing the PPA products so as to adequately warn of the dangerous propensities of such products. See UCC §2.314. Further, PPA products sold by the defendants failed to conform to the promises or affirmations of facts made on the container or label as to the safety of use of such PPA products.

53.    Such breaches of the implied warranties of merchantability were a direct and proximate cause of damages and harm to the Plaintiff as alleged herein.

## I.  Fourth Claim for Relief
## Implied Warranty of Fitness for Particular Purpose

54.    Plaintiffs incorporate by reference all allegations made herein, as if set out word for word in this paragraph.

55.    As further cause of action, all defendants, at the time of sale, had reason to know of the particular use of these products. The Plaintiff who purchased these PPA products was relying on the sellers' skill or judgment to select and furnish suitable and safe products.

56.    The defendants breached these implied warranties by providing unsafe products containing PPA and such breaches of the implied warranty of fitness for intended purposes was a proximate cause of Plaintiff's injuries as alleged herein.

## J.  Fifth Claim for Relief
## Negligent Misrepresentation

57.    Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

58.    Plaintiffs bring this cause of action for negligent misrepresentation against all defendants.

59.    All defendants individually and through their agents, representatives, and/or employees, negligently misrepresented or omitted to state material facts about the dangers of the subject products containing PPA in that they made such misrepresentations or omissions when they knew or should have known of the falsity of such representations. Alternatively, all defendants made such representations or omissions without exercising reasonable care to ascertain the accuracy of these representations.

60.     The above misrepresentations or omissions were made to the public and Plaintiffs.  Plaintiffs justifiably relied on defendants' misrepresentations or omissions; Defendants' misrepresentations were the proximate cause of Plaintiff's damages.

## K.  Sixth Claim for Relief
## Breach of Continuing Duty to Warn

61.     Plaintiffs incorporate by reference all factual allegations made herein, as if set out word for word in this paragraph.

62.     All defendants are liable to Plaintiff for breaching their continuing duty to warn Plaintiffs of adverse health effects and complications associated with the products containing PPA.

63.     Each defendant was involved in the manufacturing, designing, testing, marketing, distributing, and/or selling of the subject products.  Accordingly, each defendant was involved in creating the risks associated with the products.

64.     Each defendant knew, should have known, or should have discovered risks associated with the subject products that were the result of their design, testing, and/or manufacturing.

65.     Each defendant had a continuing duty to warn Plaintiffs.  Each defendant breached this duty.

66.     Defendants' breach of this duty was a proximate cause of Plaintiff's injuries as set forth below.

67.     Accordingly, all defendants are jointly and severally liable for Plaintiffs' damages including punitive damages.

## L. Seventh Claim for Relief
## Civil Conspiracy

68.     All of the allegations contained herein are re-alleged in this paragraph.

69.     Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause Plaintiff's injuries, disabilities, and/or illnesses by allowing Plaintiff to use harmful and dangerous products.  Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products  Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Defendants' products.

70.    Plaintiffs reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by the Defendants regarding the nature of their products.

71.    As a direct and proximate result of Plaintiff's reliance on Defendants' false and fraudulent representations, omissions and concealments, Plaintiff sustained damages including injuries, disabilities, and/or illnesses and has been deprived of the opportunity of informed free choice in connection with the use of Defendants' products.

### M.  Eighth claim for relief
### Malice

72.    All of the allegations contained herein are realleged in this paragraph.

73.    The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of gross negligence, intentional wrongful conduct and/or malice resulting in damages and injuries to the Plaintiff. Defendants' conduct was specifically intended by Defendants to cause substantial injury to the Plaintiff, or was carried out by Defendants with a flagrant disregard for the rights of others and with actual awareness on the part of Defendants that the conduct would, in reasonable probability, result in human deaths and/or great bodily harm. More specifically, Defendants and their predecessors-in-interest, consciously and/or deliberately engaged in oppression, fraud, willfulness, wantonness and/or malice with regard to the Plaintiff and should be held liable in punitive and exemplary damages to the Plaintiffs.

### N.  Damages

74.    As a result of the defective and unreasonably dangerous nature of the products containing PPA as designed, manufactured, tested, distributed, marketed, sold, and/or supplied by all defendants, and the negligence, carelessness, other wrongdoing, and action(s) of all defendants described herein, Plaintiffs have suffered, sustained, and incurred and will continue to suffer, sustain, and incur the following injuries and damages, among others:

  A.    Plaintiffs have sustained economic loss, including loss of time and earnings and impairment of earning capacity, in the past;

  B.    In reasonable medical probability, Plaintiffs will sustain loss of time and earnings and/or impairment of earning capacity in the future;

  C.    Plaintiffs have required reasonable and necessary hospital and medical care and have incurred hospital and medical expenses in the past;

  D.    In reasonable medical probability, Plaintiffs will be required to obtain hospital and

14

medical services and will as a result thereof incur reasonable and necessary hospital and medical expenses in the future;

E.    Plaintiffs have endured physical pain and suffering in the past;

F.    In reasonable medical probability, Plaintiffs will suffer physical pain and suffering in the future;

G.    Plaintiffs have sustained mental anguish in the past;

H.    In reasonable medical probability, Plaintiffs will incur mental anguish damages in the future;

I.    Plaintiffs have suffered from physical impairment in the past;

J.    In reasonable medical probability, Plaintiffs will sustain physical impairment in the future;

K.    Plaintiffs have suffered from physical disfigurement in the past;

L.    In reasonable medical probability, Plaintiffs will suffer physical disfigurement in the future;

M.    Plaintiffs have suffered loss of household services and a loss of capacity to perform household services in the past, and will sustain, in reasonable probability, a loss of household services and a loss of capacity to perform household services in the future.

N.    Plaintiffs have suffered loss of consortium in the past and will sustain, in reasonable probability, loss of consortium in the future;

O.    Exemplary and/or punitive damages; and

P.    Any and all other recoverable personal injury, survival and/or wrongful death damages to which Plaintiffs may be entitled.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs file this, their Petition against the Defendants and demand judgment against Defendants, jointly and severally, for compensatory damages and exemplary damages in excess of the minimum jurisdictional limits of the Court to compensate Plaintiff for all of her injuries and damages, both past and present, and pre-judgment and post-judgment interest, together with all costs of this proceeding and for the relief to which Plaintiffs are entitled.

## JURY DEMAND

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,

WATERS & KRAUS, L.L.P.

DAVID C. GREENSTONE
State Bar No. 24007271
NELDA TALAMANTES
State Bar No. 24033252
PETER A. KRAUS
State Bar No. 11712980

3219 McKinney Avenue
Suite 3000
Dallas, Texas 75204
214/357-6244 (Telephone)
214/357-7252 (Facsimile)

ATTORNEYS FOR PLAINTIFFS



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ELVIRA GARCIA and spouse<br>EDWIGHE GARCIA, | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | |
| | § | |
| AMERICAN HOME PRODUCTS<br>CORPORATION;<br>ADVOCARE INTERNATIONAL, LLC;<br>BAYER CORPORATION;<br>BLOCK DRUG COMPANY, INC.;<br>BRISTOL-MYERS SQUIBB COMPANY;<br>CHATTEM, INC.;<br>GLAXOSMITHKLINE, PLC;<br>NOVARTIS CONSUMER HEALTH, INC.;<br>NOVARTIS PHARMACEUTICALS CORPORATION;<br>SMITHKLINE BEECHAM CONSUMER<br>HEALTHCARE, L.P.;<br>SMITHKLINE BEECHAM CORPORATION;<br>WHITEHALL-ROBINS HEALTHCARE; and<br>WALMART STORES, INC. d/b/a WALMART STORE, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>02-CV-146 |
| *Defendants* | § | |

## PLAINTIFFS' MOTION TO REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

ELVIRA GARCIA and EDWIGHE GARCIA, Plaintiffs, file this Motion to Remand under 28 U.S.C. § 1447(c) (1994), and in support thereof, would respectfully show this Court as follows:

### I. INTRODUCTION AND BACKGROUND

Plaintiff suffered a hemorrhagic stroke in October of 1998. A few days before plaintiff's stroke, plaintiff had taken Robitussin-CF purchased from Walmart in Corpus



Christi, Texas.  This medication was not prescribed by plaintiff's doctor.  Plaintiff received no warnings either from the product or Walmart indicating that this product could cause a stroke.  Plaintiff's affidavit attached as **Exhibit A**.

On March 4, 2002, plaintiffs filed suit in Texas state court for damages caused by the ingestion of certain drugs containing phenylpropanolamine ("PPA").  Plaintiffs assert claims for:  (1) strict products liability;  (2) negligence;  (3) breach of implied warranty of merchantability;  (4) breach of implied warranty of fitness for a particular purpose;  (5) negligent misrepresentation;  (6) breach of continuing duty to warn;  and  (7) civil conspiracy.  Plaintiff's petition, attached as **Exhibit B**.

Among others, plaintiff sued Advocare International, Inc. ("Advocare"), which is a Texas citizen for purposes of diversity jurisdiction.  Plaintiffs' Petition at section B.  Among others, plaintiffs also sued Walmart Stores, Inc. d/b/a Walmart Store ("Walmart") as a retailer defendant.  Nonetheless, on April 9, 2002, defendant removed this case asserting that the Texas defendant was fraudulently joined.  Defendant also asserted that Walmart was fraudulently joined and, therefore, defendant did not need to obtain their consent for the removal of this case.  Although, in its notice of removal, defendant alleges that Walmart's principal place of business is in Texas, this is incorrect, as Walmart's principal place of business is in Arkansas.

For the reasons set forth below, the Court should remand this case to state court, because not all of the defendants consented to the removal and because plaintiffs have valid causes of action against the resident defendant.

## II. ARGUMENT AND AUTHORITIES

### A. A fatal defect in the removal procedure requires remand.

The Court may remand a case on the basis of any defect identified in a motion for remand made within 30 days after the filing of the notice of removal under 28 U.S.C. § 1446(a). 28 U.S.C. § 1447(c). All defendants must consent to the removal within 30 days from the date the first defendant is served. *Getty Oil Corp. v. Insurance Co.*, 841 F.2d 1254, 1262-63 (5th Cir. 1988). If one of the defendants does not consent to the removal, the removal is procedurally defective, and the case should be remanded. *Doe v. Kerwood*, 969 F2d 165, 167-68 (5th Cir. 1992).

The first defendant served in this suit was Advocare International, LLC which was served on March 18, 2002. Affidavit of Service attached as **Exhibit C**. Defendant's notice of removal was filed on or about April 9, 2002. Walmart did not consent to Defendant's removal of this case within 30 days from the date the first defendant was served.

In its Notice of Removal, Defendant alleges that Walmart was fraudulently joined, and therefore, Walmart's consent to removal was not necessary. Notice of Removal at 7. However, as shown below in sections B and C, Walmart was not fraudulently joined. When a party whose consent would otherwise be necessary for removal is shown not to be fraudulently joined, that party's failure to consent to the removal renders the removal fatally defective and requires remand. *McKay v. Point Shipping Corp.*, 587 F. Supp. 41, 43 (S.D.N.Y. 1984).

**B.   This Court does not have Subject Matter Jurisdiction because there is not complete diversity between the parties.**

It must always be borne in mind that "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree . . . it is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted).  In a removed case, the removing party bears the burden of establishing a basis for jurisdiction. *Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000).  The removal statutes are to be strictly construed against removal and any doubts as to removability are to be resolved in favor of remanding the case to state court. *Drawhorn v. Qwest Comm. Int'l, Inc.*, 121 F. Supp. 2d 554, 559 (E.D. Tex. 2000).

**i.  Standard for reviewing allegations of fraudulent joinder.**

"Fraudulent joinder" is something of a misnomer because the intent or motive of the plaintiffs in joining the non-diverse defendant is immaterial. *Tenner v. Prudential Ins. Co.*, 872 F. Supp. 1571, 1574 (E.D. Tex. 1994); *Dollar v. General Motors Corp.*, 814 F. Supp. 538, 541 (E.D. Tex. 1993); *Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421 (1915).  "A claim for fraudulent joinder must be 'pleaded with particularity,' supported by 'clear and convincing' evidence, and proven with 'certainty.'" *Dollar*, 814 F. Supp. at 541; *see also Tenner*, 872 F. Supp. at 1572 ("Fraudulent joinder must be established by clear and convincing evidence.").

The removing party bears a heavy burden of proving fraudulent joinder. *Madison v. Vintage Petroleum, Inc.*, 114 F.3d 514, 516 (5th Cir. 1997). The removing party is required to demonstrate "'that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts.'" *Id.* (quoting *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)). Defendants do not allege fraud in plaintiff's pleading of jurisdictional facts, so defendants must show that the plaintiff could not establish a cause of action against any one of the named Texas defendants as a matter of law. *Miller Brewing*, 663 F.2d at 549 n.8; *Dollar*, 814 F. Supp. at 541 (if there is no allegation of fraud in the plaintiff's pleading of jurisdictional facts, "the Court looks only to see if the Defendants have proved that there is 'absolutely no possibility' that the Plaintiffs may recover in state court on their claims against [the local defendants].''). Even a tenuous possibility of recovery is sufficient to withstand a fraudulent joinder challenge. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 43 (5th Cir. 1992). The plaintiff's allegations need only have a "modicum of sturdiness for [the court] look[s] only for the possibility of recovery." *Id.*

Federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *Crowe v Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The sole issue for consideration is whether plaintiff has colorable claim against a Texas defendant. *Tenner*, 872 F. Supp. at 1574. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was

proper and remand the case to state court." *Crowe*, 113 F.3d at 1538 (quotations omitted).

In addition to considering the allegations in plaintiff's petition, the Court may consider evidence outside the pleadings, such as affidavits, in determining a fraudulent joinder claim. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995). The Court must initially evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).   Furthermore, the Court must resolve all ambiguities in the controlling state law in favor of the non-removing party. *Madison*, 114 F.3d at 516; *Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990); *see also Crowe*, 113 F.3d at 1538 ("any ambiguity or doubt about the substantive state law favors remand to the state court.").

### ii. Plaintiffs' allegations and causes of action under Texas law.

Defendant Walmart is defined in plaintiff's petition as a "retailer defendant." Plaintiffs' Petition at 1.   Advocare is defined generally as a PPA defendant.   Plaintiffs' Petition at 1.   Plaintiff alleged that Walmart was involved in the sale and distribution of the subject PPA products.   Plaintiffs' Petition at ¶ 15.   Plaintiff also alleged that Advocare promoted, manufactured, distributed, marketed, promoted, warranted, and sold products containing PPA in Texas and throughout the United States.   Plaintiffs' Petition at ¶ 4.

As to all defendants, plaintiffs alleged that defendants were designers, manufacturers, marketers, advertisers, distributors, merchants, and sellers of PPA

products; that due to the defendants' promotion, marketing, advertisements, and other representations, plaintiff purchased the products containing PPA believing that the products were safe; PPA products were not safe as designed, manufactured, marketed and distributed because of the failure to warn of the dangers associated with PPA; and that plaintiff suffered debilitating permanent injuries as a result of the ingestion of the PPA products designed, formulated, marketed, manufactured, distributed and/or sold by defendants. Plaintiffs' Petition at ¶¶ 21-25.

Below are the causes of action alleged by Plaintiff and the specific allegations related to the respective causes of action.

### a. Strict Products Liability.

In Texas, section 402A of the Restatement of Torts governs claims for strict products liability in tort. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996). Under section 402A, a plaintiff must prove: (1) that the defendant sold a product in a defective condition unreasonably dangerous to the user or consumer; (2) physical harm was caused to the ultimate user or consumer; (3) the seller is engaged in the business of selling such product; and (4) the product is expected and does reach the user or consumer without substantial change in the condition in which it is sold. *Id.*; RESTATEMENT (SECOND) OF TORTS § 402A (1965). Manufacturers, wholesalers, distributors, and retailers can be held strictly liable for injuries caused by a defective product. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 790 n. 3, 792 (Tex. 1967); RESTATEMENT (SECOND) OF TORTS § 402A cmt. f.

Plaintiffs have pleaded that all defendants are liable to plaintiffs under a theory of strict products liability. Plaintiffs' Petition at ¶ 38. Plaintiffs' strict products liability allegations are based on the defendants' failure to adequately warn or instruct plaintiffs regarding the PPA products. Plaintiffs' Petition at ¶ 41. Alternatively, plaintiffs have alleged strict products liability claims against defendants for breaching express warranties or by failing to conform to express factual representations upon which plaintiffs relied. Plaintiffs' Petition at ¶ 41. Plaintiffs further alleged that defendants' products failed to function as expected and that there was a feasible design alternative. Plaintiffs' Petition at ¶ 41.

### b. Negligence.

The elements for negligence are: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) the breach proximately caused the plaintiff's injuries. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). Under Texas law, manufacturers, and sellers of products have a duty to the public to warn of the dangers associated with products manufactured or sold. *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 591 (Tex. 1986) (manufactures); *Crocker v. Winthrop Labs*, 514 S.W.2d 429, 432 (Tex. 1974) (drug manufacturer); *Jaimes v. Fiesta Mart., Inc.*, 21 S.W.3d 301, 305 (Tex. App.--Houston [1st Dist.] 1999, pet. denied); *Sears, Roebuck & Co., v. Black*, 708 S.W.2d 925, 928 (Tex. App.--Eastland 1986, no writ) (sellers). Manufactures of products also owe a duty to the public to use ordinary care in the design of a product. *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871-72 (Tex. 1978). Under Texas law, there is also a duty to the public to use ordinary care in making representations and

in ascertaining the accuracy of information given to others. *Edco Prod. Inc. v. Hernandez*, 794 S.W.2d 69, 76-77 (Tex. App.--San Antonio 1990, writ denied).

Advocare and Walmart have known for decades about the life threatening adverse effects of PPA because such life threatening events have been documented for years. Plaintiffs Petition at 31. Therefore, plaintiffs alleged that Advocare, as a manufacturer, and Walmart, as a retailer, were negligent and grossly negligent in the failure to warn the public of the dangers and potential adverse effects of PPA. Plaintiffs' Petition at ¶¶ 32, 34. Plaintiffs also alleged that Walmart was both negligent and grossly negligent by failing to remove the PPA products from its shelves after it knew or should have known of the adverse side effects of PPA. Plaintiffs' Petition at ¶ 47.

Plaintiffs have further alleged that all defendants were negligent and grossly negligent by breaching their duty to exercise reasonable and ordinary care in the designing, manufacturing, marketing, selling, testing, and/or distributing the subject PPA products prior to placing the products in the stream of commerce. Plaintiffs' Petition at ¶¶ 43, 44, 45. Additionally, plaintiffs alleged that all defendants were negligent or grossly negligent regarding the designing, warning, testing, and post-market surveillance of the subject PPA products. Plaintiffs' Petition at ¶ 47.

### c. Breach of Implied Warranty of Merchantability.

To recover under a claim for breach of implied warranty of merchantability, a plaintiff must prove: (1) the product was unfit for its ordinary purpose for which such product is used; (2) the product was unfit due to a defect and (3) the unfit condition was a proximate cause of the plaintiff's injury. TEX. BUS. & COM. CODE ANN. § 2.314 (Vernon

1994); *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989); STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES, PJC 71.7 (2000 ed.).

Plaintiffs have alleged, that Advocare, as a manufacturer, concealed material facts, including the serious risks associated with ingestion of PPA, from plaintiffs in, among other ways, product packaging, labeling, advertising, promotional campaigns and materials, regarding the safety and use of the PPA products, thus, breaching both implied and expressed warranties. Plaintiffs' Petition at ¶ 33.

Plaintiffs also alleged that Walmart negligently failed to inform their customers of the risks associated with the products and breached implied warranties of fitness and merchantability in the sale of these inherently dangerous products. Plaintiffs' Petition at ¶ 32.

Plaintiffs further alleged that all defendants breached implied warranties of merchantability by failing to adequately label the containers or packages containing the PPA products with warnings and because the PPA products failed to conform to the promises or affirmations on the product's container or label as to the safety of the PPA products. Plaintiffs' Petition at Section H.

### d. Breach of Implied Warranty of Fitness for a Particular Purpose.

To prove a claim for breach of warranty of fitness for a particular purpose the Plaintiff must prove: (1) Plaintiff had a particular purpose for the goods; (2) the seller knew about that purpose; and (3) the buyer relied on the seller's skill or judgment to provide suitable goods. *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 364-65 (Tex. App.--Corpus Christi 1994, no writ).

Plaintiffs have alleged Advocare, as a manufacturer, concealed material facts, including the serious risks associated with ingestion of PPA, from plaintiffs in, among other ways, product packaging, labeling, advertising, promotional campaigns and materials, regarding the safety and the use of the PPA products, thus, breaching both implied and expressed warranties. Plaintiffs' Petition at ¶ 33. Plaintiffs also alleged that all defendants breached implied warranties of fitness for a particular purpose by providing unsafe products containing PPA. Plaintiffs' Petition at Section I. Plaintiffs further alleged that, at the time of sale, defendants had reason to know of the particular use of these products and that plaintiffs purchased the PPA products in reliance on the skill or judgment of defendants to select and furnish suitable and safe products. Plaintiffs' Petition at Section I.

### e. Negligent Misrepresentation.

A defendant can be held liable for negligent misrepresentation if the plaintiff proves that: (1) the defendant made a representation to the plaintiff in the course of the defendant's business or in a transaction in which the defendant had an interest; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relied on the representation; and (5) the defendant's negligent misrepresentation proximately caused the plaintiff's injury. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Plaintiffs have alleged that Advocare, as a manufacturer, and Walmart as a retailer, were both negligent and grossly negligent in the failure to warn the public of the

dangers and potential adverse effects of the products containing PPA. Plaintiffs' Petition at ¶¶ 32, 34.

Plaintiffs have also alleged that all defendants negligently misrepresented material facts about the dangers associated with the subject PPA products when the defendants knew or should have known about the falsity of such representations and without exercising reasonable care to ascertain the accuracy of the representations. Plaintiffs' Petition at Section J. Plaintiffs further alleged that due to the defendant's promotion, marketing, advertisements, and other representations, plaintiffs purchased the products containing PPA believing the products were safe. Plaintiffs' Petition at ¶ 24.

### *f. Breach of Continuing Duty to Warn.*

The duty to warn is embodied in a cause of action based on a marketing defect, the elements of which are: (1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; (2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; (3) the product must possess a marketing defect; (4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and (5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury. *USX Corp. v. Salinas*, 818 S.W.2d 473, 482-83 (Tex. App.--San Antonio 1991, writ denied).

Plaintiffs have alleged that all defendants, and particularly Advocare, as a manufacturer, and Walmart as a retailer, breached their continuing duty to warn plaintiffs of the dangers related to PPA products that defendants manufactured, designed, tested,

marketed, distributed, and/or sold despite the fact that defendants knew, should have known, or should have discovered the risks associated with their PPA products. Plaintiffs' Petition at ¶¶ 32, 34, Section K.

### g. Civil Conspiracy.

The elements for a claim of civil conspiracy are: (1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).

Plaintiffs have alleged a civil conspiracy between the defendants to harm plaintiffs by allowing plaintiffs to use their harmful and dangerous products. Plaintiffs' Petition at Section L. Plaintiffs have further alleged that defendants conspired to deprive plaintiff of the opportunity of informed choice regarding the use of defendants' PPA products through willful misrepresentations and by suppressing the truth regarding the dangers associated with their PPA products. Plaintiffs' Petition at Section L.

Despite the lack of discovery in this case, plaintiffs pled the conspiracy claim in good faith. Plaintiffs' conspiracy claim against Advocare and other defendants is based on the following discoveries by plaintiffs' counsel.

In as far back as 1969, and throughout the 1980s and 1990s, case reports began appearing in medical literature of individuals suffering from suberacnoid hemorrhages shortly after ingesting products containing PPA. For instance, in 1969 the BRITISH JOURNAL OF MEDICINE reported that a 36-year-old woman suffered from a

subarachnoid hemorrhage just hours after ingesting a nasal decongestant that contained 30mg of PPA. **Exhibit D**. Throughout the 1980s and 1990s, numerous articles and case reports were published indicating a link between PPA and hemorrhagic strokes. In 1982, the ANNALS OF EMERGENCY MEDICINE reported three cases of toxic reactions, including intracerebral hemorrhages following "relatively small doses of phenylpropanolamine." **Exhibit E**. In 1983, an additional report was published of a healthy twenty-five year old man who suffered from an subarachnoid hemorrhage thirty minutes after taking a liquid PPA diet product. **Exhibit F**. In addition, in 1983, the journal STROKE, published an article entitled "Cerebral Hemorrhage Associated With Phenylpropanolamine in Combination with Caffeine." **Exhibit G**. The first line of the summary of this article stated that "Phenylpropanolamine (PPA) is a drug that has been associated with serious side effects including stroke." **Exhibit G**. Again in 1983, a doctor from the Indiana School of Medicine published a letter to the editor indicating that PPA had potentially fatal side effects, including stroke, in previously healthy people. **Exhibit H**. Later that same year, the LANCET reported additional cases of cerebral hemorrhages associated with the use of PPA. **Exhibit I**.

In 1985, the journal STROKE published a study entitled "Intracranial Hemorrhages due to Phenylpropanolamine." **Exhibit J**. This article described two additional patients with intracranial hemorrhages after taking diet pills containing PPA in combination with caffeine. **Exhibit J**. Again in 1985, the WESTERN JOURNAL OF MEDICINE published three additional cases of otherwise healthy women who suffered cerebral hemorrhages shortly after taking products containing PPA. **Exhibit K**. And again in 1985, the JOURNAL OF EMERGENCY MEDICINE published an article

entitled "Fatal Intracranial Hemorrhage Associated with Phenylpropanolamine, Pentazocine, and Tripelennamine Overdose. **Exhibit L**. Also in 1985, the journal NEUROLOGY published an article entitled "Cerebral vasculitis and hemorrhage associated with phenylpropanolamine." **Exhibit M**. This article discussed a twenty year old woman who suffered from an intracerebral hemorrhage shortly after ingesting a diet aid preparation containing PPA. **Exhibit M**. In 1987, the journal NEUROLOGY published an article indicating that PPA had been linked to intracerebral hemorrhages. **Exhibit N**. This article indicated that two patients had developed intracerebral hemorrhages within hours from first time use of PPA containing products. **Exhibit N**. Again in 1987, the JOURNAL OF EMERGENCY MEDICINE published an article entitled "Cerebral Infarction with a Single Oral Dose of Phenylpropanolamine." **Exhibit O**. This article indicated that prolonged use of PPA has been associated with "seizures, intracerebral hemorrhages, neuropsychiatric symptoms, and nonhemorrhagic cerebral infarctions." **Exhibit O**. Also in 1987, the journal NEUROLOGY published another case report of intracranial hemorrhage that occurred in a thirty year old woman shortly after the ingestion of PPA. **Exhibit. P**. In December of 1987, the SOUTHERN MEDICAL JOURNAL reported that a twenty-seven year old man suffered from an inter-cerebral hemorrhage after taking nasal decongestant tablets containing PPA. **Exhibit Q**. Again in 1987, the journal NEUROSURGERY published an article entitled "Phenylpropanolamine: An Over-the-Counter Drug Causing Central Nervous System Vasculitis and Intracerebral Hemorrhage." **Exhibit R**. In 1988, the AMERICAN JOURNAL OF MEDICINE published an article entitled "A Double Dose of Phenylpropanolamine Causes Transient Hypertension". **Exhibit S**. The first paragraph

of this article indicated "Several cases of multiple cerebral hemorrhages associated with transient hypertension have recently been attributed to phenylpropanolamine in dosages equal to or less than that contained in two diet aids (i.e., 150 mg)." **Exhibit S.** The conclusion of this article stated "We suggest that requiring a physician's prescription or an additional stronger warning label on phenylpropanolamine containing products, may prevent substantial mortality and morbidity." **Exhibit S.** Again in 1989, the journal PEDIATRICS published an article entitled "Cerebral Vasculitis and Hemorrhage in an Adolescent Taking Diet Pills Containing Phenylpropanolamine: Case Report and Review of Literature." **Exhibit T.** The abstract of this article indicated "During the past 6 years, several cases have been reported of patients in whom intracerebral hemorrhage developed, with and without concomitant and angeographic evidence of vasculitis, after taking phenylpropanolamine." **Exhibit T.** Again in 1989, the AMERICAN JOURNAL OF MEDICINE published an another article indicating that PPA has been linked to intracranial hemorrhage. **Exhibit U.** The conclusion of this article indicated that "These results indicate that a 150 mg of PPA (the amount in two diet aids) substantially elevates BP [blood pressure]. Our findings may explain some of the recent case reports of nontraumatic intracranial hemorrhage in young, healthy persons ingesting PPA at recommended or minimally greater dosages." **Exhibit U.**

In 1990, the AMERICAN JOURNAL OF MEDICINE published an article entitled "Adverse Drug Effects Attributed to Phenylpropanolamine: A Review of 142 Case Reports." **Exhibit V.** This article reported that since 1965, 142 adverse drug reactions have been reported in 85 studies regarding PPA. **Exhibit V.** The first paragraph of this article indicated that "The most frequent side effects involved

symptoms compatible with acute hypertension, with severe headache the most common complaint. Twenty-four intracranial hemorrhages, eight seizures, and eight deaths (most due to stroke) were associated with PPA ingestion." **Exhibit V.**

As the articles indicate, between 1969 and 1990, there were literally hundreds of case reports of serious adverse reactions occurring in otherwise healthy people shortly after ingestion of products containing PPA. A substantial number of these reactions could be described as hemorrhagic strokes. In addition, during this period of time, at least ten different respected medical journals were publishing articles indicating a link between PPA and hemorrhagic strokes.[1]

Additionally, in 1992, in response to ongoing concern about PPA and the risk of hemorrhagic stroke, researchers from Yale University began an epidemiological study partially sponsored by the pharmaceutical industry regarding the link between PPA usage and hemorrhagic strokes. **Exhibit W.** The result of that study, published in 2000, indicated that use of PPA could cause hemorrhagic strokes. **Exhibit W at 3.**

Oddly, despite these reports, no manufacturer of over-the-counter products containing PPA provided any warnings regarding the possible link between PPA and hemorrhagic strokes as late as the year 2000. The Physicians Desk Reference ("PDR") for the year 2000 lists numerous over-the-counter products that contained PPA as well as the company that manufactured those products. Selected pages from the 2000 PDR attached as **Exhibit X.** As indicated in the PDR, such information had been prepared, edited, and approved by the professional staff of the manufacturers. **Exhibit X.** The

---

[1] The Journals referenced were The British Journal of Medicine, The Annals of Emergency Medicine, Stroke, the Lancet, Western Journal of Medicine, The Journal of Emergency Medicine, Neurology, The Southern Medical Journal, Neurosurgery, The American Journal of Medicine and Pediatrics. Affidavit of Greenstone at ¶8 n.1.

following companies with products that contained PPA are listed in the 2000 PDR: Bayer, Block Drug, Bristol-Myers, Novartis, Schering-Plough, Smithkline Beecham, Whitehall Robins, and Advocare. **Exhibit X**. None of these companies indicated in the PDR that PPA had been linked to strokes and/or fatalities, that an epidemiological study had been underway since 1994 studying the link between PPA and hemorrhagic strokes, or that numerous case reports since 1969 had linked PPA to serious adverse reactions including hemorrhagic stroke.

With respect to Advocare, the PPA product that they list in the PDR is a product called "Metabolic Nutrition System Gold." **Exhibit X** at 810. As indicated, this product is a "75 mg sustained release phenylpropanolamine caplet." **Exhibit X** at 810. This is one of the same types of products that the Yale researchers studied beginning in 1992.

Based merely on the above publications and case reports since 1969, the drug manufacturers, including Advocare, knew or should have known that PPA had been linked to hemorrhagic strokes and death. Furthermore, in light of the fact that none of the drug manufacturers, including Advocare, made any reference to the relationship between PPA and hemorrhagic stroke or death as late as the 2000 publication of the PDR despite the wealth of published information, there is a reasonable basis on which to believe that the manufacturers of PPA, including Advocare, made a concerted and unified effort to not warn the public about these particular adverse effects of PPA. Plaintiffs further contend that additional discovery will bear witness to plaintiffs' good faith claims of conspiracy.

### iii.   Plaintiffs have pled causes of action under Texas law against all defendants that were allegedly fraudulently joined.

As to all defendants, and particularly Walmart and Advocare, plaintiffs have pled viable causes of action under Texas law.   There is no doubt that Advocare, as a manufacturer of products containing PPA, and Walmart, as a seller of products containing PPA, had a duty to warn the plaintiffs, as well as the public, regarding the dangers associated with the ingestion of products containing PPA.   In light of the numerous publications related to the dangers associated with PPA, plaintiffs pled that the defendants knew or should have known about the dangers associated with PPA for many years.   Yet the manufacturer defendants, including Advocare, suppressed such information and failed to warn the public about such dangers as evidenced from the noticeable lack of information in the Physician's Desk Reference.   Moreover, all the defendants, including Advocare and Walmart failed to warn the public of the dangers associated with the PPA products they manufactured, distributed, and sold throughout Texas and the United States.   It is for these reasons that plaintiffs brought suit alleging causes of action for strict products liability, negligence, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligent misrepresentation, breach of duty to warn, and civil conspiracy—all of which are valid causes of action under Texas law against manufacturers, retailers, distributors, and sellers, of dangerous over-the-counter drugs.

Defendant cites 2 orders by the judge presiding over the PPA MDL, Judge Rothstein, in support of its removal of this case.  *Johnson v. Bayer Corp.*, No. C01-2014R (W.D. Wa. Feb 26, 2002) (attached as **Exhibit Y**); *Jones v. Bayer Corp.*, C01-

2018R (W.D. Wa. Feb. 26, 2002) (attached as **Exhibit Z**). However, Judge Rothstein's orders are inapposite to the present case. Both of Judge Rothstein's orders involve the same claims under the same law. The wording of both orders is virtually identical. The only difference in the orders is reflected in the style of the case. Therefore, for purposes of simplicity, all references to Judge Rothstein's orders will be in reference to the order in the *Johnson* case.

In *Johnson*, plaintiffs brought suit under Louisiana law alleging causes of action for breach or warranty in redhibition and negligence. **Exhibit Y** at 1. However, plaintiff's pleading did not clearly allege under which redhibition statute plaintiff's claims were brought (good faith seller statute or bad faith seller statute). **Exhibit Y** at 3. Plaintiff's pleading further failed to allege that certain necessary prerequisites to bringing a claim for redhibition had been satisfied (i.e. rescission of sale, notice of defect). **Exhibit Y** at 5. Plaintiff also offered no evidence in its pleadings or otherwise regarding where and when plaintiff purchased the product. **Exhibit Y** at 5. Because the plaintiff failed "to allege *many of the basic elements* of a cause of action" under the redhibition statute, Judge Rothstein concluded that the plaintiff had no reasonable possibility of holding the subject defendant liable. **Exhibit Y** at 5 (emphasis added). Plaintiff further failed to offer any evidence in its pleadings or otherwise of factual support for its allegations that the defendants had actual knowledge of the alleged defects. **Exhibit Y** at 5-6. Furthermore, plaintiff's pleadings wholly failed to implicate the subject defendant in its allegations regarding negligence. **Exhibit Y** at 6, 9. As such, Judge Rothstein concluded that plaintiff failed to plead facts to state a cause of action against the subject defendant under the redhibition statute. **Exhibit Y** at 6.

Judge Rothstein further concluded that any recovery from the subject defendant would be de minimis (the purchase price of the medication). **Exhibit Y** at 7. Due to the de minimis nature of any potential recovery against the subject defendant under Louisiana law, Judge Rothstein concluded that plaintiff's de minimis claims supported defendants' allegations of fraudulent joinder. **Exhibit Y** at 7.

Additionally, the subject defendant was a pharmacy. **Exhibit Y** at 9. Louisiana law prohibits liability against a pharmacy or drugstore that sells allegedly defective or dangerous medications and over-the-counter medications. **Exhibit Y** at 7-8. Consequently, Judge Rothstein concluded that plaintiff's claims against the subject defendant had no reasonable probability of success whether couched in tort or redhibition. **Exhibit Y** at 9.

In contrast to *Johnson*, plaintiffs have pled numerous viable causes of action against the Texas defendant and the other defendants allegedly fraudulently joined. There are no conditions precedent which would prevent Plaintiffs from prosecuting the causes of action against these defendants. Plaintiffs have pled sufficient facts and have supplemented the petition with supporting affidavits and exhibits to support the causes of action against these specific defendants. There is no issue or claim concerning de minimis recovery as there was under the Louisiana redhibition statute. Finally, the prohibition under Louisiana law which prohibits liability against a pharmacy or drugstore that sells defective or dangerous over-the-counter medications is not at issue in this case as there is no such prohibition under Texas law related to the retailer defendants plaintiffs have sued.

Therefore, while Judge Rothstein's order sheds light on the Louisiana redhibition statute and the pleadings in those particular cases, the order is wholly inapplicable to the present case.

## C. Defendant has not carried its burden to prove Advocare and Walmart were fraudulently joined.

In evaluating all of the factual allegations in the petition in the light most favorable to the plaintiffs, resolving all contested issues of substantive fact in favor of the plaintiffs, *Green*, 707 F.2d at 205, and resolving all ambiguities in the controlling state law in plaintiffs' favor, *Madison*, 114 F.3d at 516; *Carriere*, 893 F.2d at 100; *Crowe*, 113 F.3d at 1538, defendant has not carried its heavy burden of proving fraudulent joinder. *Madison*, 114 F.3d at 516. Moreover, defendant has failed to support its arguments of fraudulent joinder with clear and convincing evidence. *Tenner*, 872 F. Supp. at 1572; *Dollar*, 814 F. Supp. at 541. Far from defendant proving that there is *no possibility* that plaintiff will establish a cause of action against the allegedly fraudulent joined defendants, plaintiffs have shown that the causes of action asserted demonstrate a viable and real possibility of recovery against these defendants.

Because plaintiffs have an arguable claim under state law and there is a possibility that a state court would find that the petition states a cause of action against Walmart, its consent was required for removal. *McKay*, 587 F. Supp. at 43. Because defendant removed this case without obtaining Walmart's consent, the removal is fatally defective and the Court should, therefore, remand this case to the state court. *Id.*

Furthermore, because plaintiffs have an arguable claim under state law and there is a possibility that a state court would find that the petition states a cause of action



against the Advocare, joinder of this Texas defendant is proper and this Court must remand this cause to the state court for lack of subject matter jurisdiction. *Crowe*, 113 F.3d at 1538.

## III.  CONCLUSION

For the foregoing reasons, plaintiffs ask the Court to remand this cause to the state court from whence it was removed.

Respectfully submitted,

WATERS & KRAUS, LLP

*w. The Permission of Charles Siegel*

CHARLES S. SIEGEL
Attorney-in-Charge
State Bar No. 18341875
Federal Bar No. 15736
KIRK L. PITTARD
Of Counsel
State Bar No. 24010313
Federal Bar No. 27165
3219 McKinney Ave., Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 357-7252 Fax

## CERTIFICATE OF CONFERENCE

On May 2, 2002, I spoke with Brian Johnson and Ilene Wilson counsel for Block

Drug Company, Inc, SmithKline Beecham Consumer Healthcare, L.L.P., and SmithKline

Beecham Corporation.  Mr. Johnson and Ms. Wilson stated that they are opposed to the

filing of this motion for remand.

Kirk L. Pittard


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded via
U.S. Mail to all counsel of record on this the *8th* day of May, 2002.

Kirk L. Pittard