36

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 2 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| FRANCISCO SANCHEZ,<br>Plaintiff | § § § | |
| vs | § § | Civil Action No. B-02-066 |
| AMERICAN HOME PRODUCTS CORP.;<br>ADVOCARE INTERNATIONAL, LLC;<br>WHITEHALL-ROBBINS HEALTHCARE;<br>BAYER CORPORATION;<br>BLOCK DRUG CO., INC.;<br>BRISTOL MYERS SQUIBB CO.;<br>CHATTEM, INC.;<br>GLAXOSMITHKLINE, PLC.;<br>SMITHKLINE BEECHAM CORP.;<br>SMITHKLINE BEECHAM CONSUMER<br>HEALTHCARE, L.P.;<br>NOVARTIS PHARMACEUTICALS<br>CORP.; NOVARTIS CONSUMER<br>HEALTH, INC.; CIRCLE K STORES, INC.<br>d/b/a CIRCLE K (sued individually<br>and as successor in-interest to COASTAL<br>MART, INC. and MAVERICK<br>MARKET, INC.)<br>Defendants. | § § § § § § § § § § § § § § § § § § § | |

## JOINT REPORT OF MEETING AND
## JOINT DISCOVERY/CASE MANAGEMENT PLAN

Plaintiff and Defendants, through the undersigned counsel, submit the following

Joint Report of Meeting and Joint Discovery/Case Management Plan pursuant to this

Court's Order Setting Conference of April 5, 2002.

## INTRODUCTION

This is a product liability action involving phenylpropanolamine (PPA), which is a

substance formerly found in various nasal decongestants and appetite suppressant

medicines.

This case has been placed on a Conditional Transfer Order (CTO-16, attached hereto as Exhibit "A"), dated May 17, 2002. In response, Plaintiff filed a Notice of Opposition to Transfer on June 3, 2002 (attached hereto as Exhibit "B"). If transferred, jurisdiction of this case will be transferred to the Western District of Washington, and this case will be subject to the case management orders and other orders issued by Judge Barbara Rothstein. A Motion to Stay has also been filed seeking a stay of this action until the Panel acts on the disputed Transfer Order.

Plaintiffs have filed a motion to remand this case to the 197th Judicial District Court of Cameron County. If remanded, this case will return to the state court from which it was removed where discovery and pretrial proceedings will continue.

In view of the above, all parties to this case are in agreement that the management conference and compliance with the requirements of Rule 26 are unnecessary in this case. Given the current posture of the case, the case will either be transferred to the Western District of Washington or remanded to state court. While plaintiffs oppose the Motion to Stay that has been filed by Defendants, all parties are in agreement that a joint discovery/case management plan and scheduling order are not necessary at this time.

Subject to the above, the parties submit the following report:

**1.** **State where and when the meeting of the parties required by Rule 26 was held, and identify the counsel who attended for each party.**

<u>ANSWER:</u>  The parties, through their attorneys, conducted a Rule 26(f) conference on May 2, 2002 at the offices of Plaintiff's counsel, Waters & Kraus in Dallas, Texas. The following attorneys participated in the conference:

| | | |
|---|---|---|
| a. | | Peter Kraus |
| | | David Greenstone |
| | | Waters & Kraus |
| | | 3219 McKinney |
| | | Dallas, Texas |

(214) 357-6244
**Counsel for Plaintiff**

b.       Joe Bourbois
Fulbright & Jaworski
300 Convent Street, Suite 2200
San Antonio, Texas 78205
(210) 224-5575
**Counsel for Bayer Corporation**

c.       Kelly Kimbrough
Clark Thomas & Winters
300 West 6th, Suite 1500
Austin, Texas 78701
(512) 472-8800
**Counsel for Wyeth (formerly known as American Home Products Corporation), including its Unincorporated Division Wyeth Consumer Healthcare (formerly known as Whitehall-Robins Healthcare)**

d.       Mitchell C. Chaney
Rodriguez, Colvin & Chaney, LLP
1201 E. Van Buren
Post Office Box 2155
Brownsville, Texas 78522-2155
(956) 542-7441

Earl Austin
Baker Botts, L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6500
**Counsel for Novartis Consumer Health, Inc. and Novartis Pharmaceuticals Corporation**

e.       Frank Doyle
Johnson, Spalding, Doyle, West & Trent, LLP
910 Travis Street, Suite 1700
Houston, Texas 77002
(713) 222-2323
**Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline, SmithKline Beecham Consumer Healthcare, L.P., GlaxoSmithKline, plc, and Block Drug Company, Inc.**

f.       Alan Vickery
         Sedgwick, Deter, Moran & Arnold
         1717 Main Street, Suite 5400
         Dallas, Texas  75201
         (469) 227-8200
         **Counsel    for    Bristol-Myers    Squibb**
         **Corporation**

g.       Margaret T. Brenner
         Hays, McConn, Rice & Pickering
         400 Two Allen Center
         1200 Smith
         Houston, Texas 77002
         (713) 654-1111
         **Counsel for Chattem, Inc.**

h.       Brent Kugler
         Daniel, Sheehan & Associates, LLP
         2200 Ross Avenue, Suite 3060
         Dallas Texas 75201
         **Counsel for Advocare International, LLC**

i.       Kenneth C. Baker
         The Baker Law Firm
         12600 Featherwood, Suite 225
         Houston, Texas  77034
         (281) 481 – 0083
         **Counsel for Circle K Stores, Inc.**

2.    **List the cases related to this one that are pending in any state or federal court, with the case number and court.**

**ANSWER:**  MDL 1407, *In Re:  Phenylpropanolamine  (PPA)  Products  Liability Litigation,* pending in the United States District Court for the Western District of Washington.

3.    **Briefly Describe what this case is about.**

**ANSWER:**  This is a product liability action in which Plaintiff alleges that they suffered injuries as a result of the ingestion of PPA-containing medication.  Defendants have denied that any PPA-containing product manufactured or distributed by any of them caused any injury to the Plaintiff.

4.    **Specify the allegation of federal jurisdiction.**

**ANSWER:** Defendants allege that this court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the named plaintiffs and each of the properly joined defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    **Name the parties who disagree and the reasons.**

**ANSWER:** Plaintiff disagrees that federal jurisdiction exists because, in their view, Defendants Advocare International, LLC and Circle K. Stores, Inc. are properly joined defendants which defeat diversity jurisdiction.

6.    **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

**ANSWER:** At this time, since no discovery has been conducted, the parties cannot identify any additional parties that should be included in this case.   After initial discovery has been completed, the parties will be in a better position to identify any additional parties and to state a date by which they can be added.

7.    **List anticipated interventions.**

**ANSWER:** At this time, the parties do not anticipate any interventions.

8.    **Describe class-action issues.**

**ANSWER:** There are no class-action issues involved in this case.

9.    **State whether each party represents that it has made the initial disclosures required by Rule 26(a).  If not, describe the arrangements that have been made to complete the disclosures.**

**ANSWER:** If the Court grants Defendants' Motion for Stay and/or denies Plaintiffs' Motion for Remand, this case will be transferred to MDL 1407 in the Western District of Washington.  Judge Rothstein has entered a number of case management orders and

other orders pertaining to discovery to be conducted in the MDL, which include dates by which written discovery is to be answered and document productions are to be made, procedures for written and deposition discovery and procedures for designation of experts and expert discovery. Attached hereto are the following orders issued by Judge Rothstein:

| | | |
|---|---|---|
| Exhibit C | - | Case Management Order No. 1 (general order pertaining to fact discovery, including written discovery, depositions and document productions) |
| Exhibit D | - | Case Management Order No. 2 (pertaining to Protective Orders) |
| Exhibit E | - | Case Management Order No. 3 (pertaining to preservation of evidence) |
| Exhibit F | - | Case Management Order No. 6 (schedule and protocol for case – specific fact discovery) |
| Exhibit G | - | Order Re: Expert Discovery Schedule |

The parties agree that if this case becomes a part of the MDL 1407, the orders entered by Judge Rothstein will govern discovery in this case.

In the event Plaintiff's Motion for Remand is granted, this case will return to the 197th Judicial District of Cameron County. In that event, the parties anticipate being able to reach agreements with respect to discovery.

Therefore, given the above, the parties have agreed to not make initial disclosures required by F.R.C.P. 26(a).

10.    **Describe the proposed agreed discovery plan, including:**

    A.    **Responses to all the matters raised in Rule 26(f).**

    B.    **When and to whom the plaintiff anticipates it may send interrogatories.**

C.    When and to whom the defendant anticipates it may send interrogatories.

D.    Of whom and by when the plaintiff anticipates oral depositions.

E.    Of whom and by when the defendant anticipates taking oral depositions.

F.    When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.

G.    List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date.   See Rule 26(a)(2)(B) (expert report).

H.    List expert depositions the opposing party anticipates taking and their completion date. See Rule 26(a)(2)(B) (expert report).

**ANSWER:** If the Court grants Defendants' Motion for Stay and/or denies Plaintiffs' Motion for Remand, this case will be transferred to MDL 1407 in the Western District of Washington.  Judge Rothstein has entered a number of case management orders and other orders pertaining to discovery to be conducted in the MDL, which include dates by which written discovery is to be answered and document productions are to be made, procedures for written and deposition discovery and procedures for designation

of experts and expert discovery.  Attached hereto are the following orders issued by Judge Rothstein:

| | | |
|---|---|---|
| Exhibit C | - | Case Management Order No. 1 (general order pertaining to fact discovery, including written discovery, depositions and document productions) |
| Exhibit D | - | Case Management Order No. 2 (pertaining to Protective Orders) |
| Exhibit E | - | Case Management Order No. 3 (pertaining to preservation of evidence) |
| Exhibit F | - | Case Management Order No. 6 (schedule and protocol for case – specific fact discovery) |
| Exhibit G | - | Order Re:  Expert Discovery Schedule |

The parties agree that if this case becomes a part of the MDL 1407, the orders entered by Judge Rothstein will govern discovery in this case.

In the event Plaintiff's Motion for Remand is granted, this case will return to the 197th Judicial District of Cameron County.  In that event, the parties anticipate being able to reach agreements with respect to discovery.

Therefore, given the above, the parties have agreed not to propose a discovery plan.

**11.    If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

**ANSWER:**  Not applicable.

**12.    Specify the discovery beyond initial disclosures that has been undertaken to date.**

**ANSWER:**  The only discovery that has been undertaken to date is written discovery served by Plaintiff on each of the Defendants and written discovery served on Plaintiff

by some Defendants while this case was pending in state court. The parties have agreed that responses to this discovery are stayed until the issue of jurisdiction is resolved.

**13.    State the date the planned discovery can reasonably be completed.**

**ANSWER:**  The discovery will be completed in accordance with the Orders issued and to be issued by Judge Rothstein or the 197th District Court and/or the agreements of counsel.

**14.    Describe the possibilities for a prompt settlement or resolution of the case that was discussed in your Rule 26(f) meeting.**

**ANSWER:**  The parties agree that substantial discovery needs to be completed before a potential settlement or resolution of the case can be discussed in any meaningful way. The parties agree that a mediation proceeding prior to trial could be beneficial for possible resolution of the case prior to trial.

**15.    Describe what each party has done or agreed to do to bring about a prompt resolution.**

**ANSWER:**  Counsel at the conference have discussed this case with their respective clients and agree that a prompt settlement cannot be achieved prior to substantial discovery being conducted.

**16.    From the attorneys' discussions with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.**

**ANSWER:**  The parties agree that mediation would be a reasonably suitable ADR technique and that such could be effectively utilized approximately 30 days prior to trial.

**17.    Magistrate judges may hear jury and non-jury trials.  Indicate the parties' joint position on a trial before a magistrate judge.**

**ANSWER:** At this time, the parties are not in agreement for a Magistrate Judge to conduct the trial of this case.

18. **State whether a jury demand has been made and if it was made on time.**

**ANSWER:** A jury demand has been timely made in this case.

19. **Specify the number of hours it will take to present the evidence in this case.**

**ANSWER:** At this time, it is virtually impossible to anticipate how many hours it will take to present the evidence in this case. Given the complex medical and scientific issues, substantial fact and expert discovery will need to be completed. It is anticipated that a trial of this case could take several weeks, but that estimate could change depending upon the product(s) involved, the claims that are ultimately pursued and the particular Defendant(s) involved at trial.

20. **List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

**ANSWER:** The following motions are pending before the Court and are ripe for a ruling at or prior to the initial pretrial and scheduling conference:

1. Defendant Novartis Consumer Health, Inc.'s Motion for Stay;
2. Plaintiff's Motion for Remand

21. **List other pending motions.**

**ANSWER:** None.

22. **Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the Court at the conference.**

**ANSWER:** This case has been placed on CTO-16 (Exhibit "A"), entered May 17, 2002 by the Judicial Panel on Multidistrict Litigation.

23.    **Certify that all parties have filed Disclosures of Interested Parties as directed in the Order of Conference and Disclosure of Interested Parties, listing the date of filing for original and any amendments.**

**ANSWER:**   The parties have filed disclosures of interested parties, as follows:

| | |
|---|---|
| Plaintiff | April 23, 2002 |
| Advocare International, LLC | May 6, 2002 |
| Bayer Corporation | May 17, 2002 |
| Block Drug Company, Inc. | April 24, 2002 |
| Bristol-Myers Squibb Company | July 26, 2002 |
| Chattem, Inc. | April 29, 2002 |
| Circle K Stores, Inc. | July 26, 2002 |
| GlaxoSmithKline, plc | April 24, 2002 |
| Novartis Consumer Health, Inc. | April 19, 2002 |
| Novartis Pharmaceuticals Corporation | April 19, 2002 |
| SmithKline Beecham Consumer Healthcare, L.P. | April 24, 2002 |
| SmithKline Beecham Corporation | April 24, 2002 |
| Wyeth (American Home Products & Whitehall-Robbins Healthcare) | April 25, 2002 |

24.    **List the names, bar numbers, addresses, and telephone numbers of all counsel:**

**ANSWER:**            a.    Charles Siegel
                              State Bar No. 18341875
                              Federal Bar No. 15736
                              Peter Kraus
                              State Bar No. 11712980
                              David Greenstone
                              State Bar No. 24007271
                              Kirk Pittard
                              State Bar No. 24010313
                              Federal Bar No. 27165
                              Waters & Kraus
                              3219 McKinney
                              Dallas, Texas
                              (214) 357-6244
                              **Counsel for Plaintiff**

                        b.    Brynley James, III
                              State Bar No. 10554200
                              Federal Bar No. 3574
                              Joe Bourbois
                              State Bar No. 00790342
                              Federal Bar No. 23420

Fulbright & Jaworski
300 Convent Street, Suite 2200
San Antonio, Texas  78205
(210) 224-5575
**Counsel for Bayer Corporation**

c.      Kenneth J. Ferguson
State Bar No. 06918100
Federal Bar No. 13004
Clark Thomas & Winters
300 West 6th, Suite 1500
Austin, Texas  78701
(512) 472-8800
**Counsel for Wyeth (formerly known as American Home Products Corporation), including its Unincorporated Division Wyeth Consumer Healthcare (formerly known as Whitehall-Robbins Healthcare)**

d.      Mitchell C. Chaney
State Bar No. 04107500
Federal Bar No. 1918
Rodriguez, Colvin & Chaney, LLP
1201 E. Van Buren
Post Office Box 2155
Brownsville, Texas 78522-2155
(956) 542-7441

Earl Austin
State Bar No.  01437300
Federal Bar No. 02899
Baker Botts, LLP
2001 Ross Avenue
Dallas, Texas  75201
(214) 953-6500
**Counsel for Novartis Consumer Health, Inc. and Novartis Pharmaceuticals Corporation**

e.      Frank Doyle
State Bar No. 06091300
Federal Bar No. 12507
Johnson, Spalding, Doyle, West & Trent, LLP
910 Travis Street, Suite 1700
Houston, Texas 77002
(713) 222-2323

**Counsel for SmithKline Beecham Corporation d/b/a GlaxoSmithKline, , SmithKline Beecham Consumer Healthcare, L.P., GlaxoSmithKline, plc, and Block Drug Company, Inc.**

f.        Alan Vickery
State Bar No. 20571650
Federal Bar No. 11980
Sedgwick, Detert, Moran & Arnold
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 227-8200
**Counsel for Bristol-Myers Squibb Corporation**

g.        Margaret T. Brenner
State Bar No. 02958050
Federal I.D. No. 9044
Hays, McConn, Rice & Pickering, P.C.
400 Two Allen Center
1200 Smith Street
Houston, Texas 77002
(713) 654-1111
(713) 655-2912 (Facsimile)
**Counsel for Chattem, Inc.**

h.        Daniel J. Sheehan
State Bar No. 18174500
Mike Atchley
State Bar No. 01397600
Daniel, Sheehan & Associates, LLP
2200 Ross Avenue, Suite 3060
Dallas, Texas 75201
(214) 468-8899
(214) 468-8803 (Facsimile)
**Counsel for Advocare International, LLC**

i.        Kenneth C. Baker
State Bar No. 01584480
The Baker Law Firm
12600 Featherwood, Suite 225
Houston, Texas 77034
(281) 481-0083
(281) 481-1063 (Facsimile)
**Counsel for Circle K Stores, Inc.**

Respectfully submitted,

Charles Siegel*
State Bar No. 18341875
Federal Bar No. 15736
Peter Kraus
State Bar No. 11712980
David Greenstone
State Bar No. 24007271
Kirk Pittard
State Bar No. 24010313
Federal Bar No. 27165
Waters & Kraus
3219 McKinney
Dallas, Texas
(214) 357-6244
(214) 357-7252 (facsimile)
**ATTORNEY-IN-CHARGE FOR PLAINTIFF**

Brynley James, III*
State Bar No. 10554200
Federal Bar No. 3574
Joe Bourbois
State Bar No. 00790342
Federal Bar No. 23420
Fulbright & Jaworski
300 Convent Street, Suite 2200
San Antonio, Texas  78205
(210) 224-5575
(210) 270-7205 (Facsimile)
**ATTORNEY-IN-CHARGE    FOR    DEFENDANT**
**BAYER CORPORATION**

Kenneth J. Ferguson*
State Bar No. 06918100
Federal Bar No. 13004
Clark Thomas & Winters
300 West 6th, Suite 1500
Austin, Texas 78701
(512) 472-8800
(512) 474-1129 (Facsimile)
**ATTORNEY-IN-CHARGE FOR DEFENDANT
WYETH (FORMERLY KNOWN AS AMERICAN
HOME PRODUCTS CORPORATION),
INCLUDING ITS UNINCORPORATED DIVISION
WYETH CONSUMER HEALTHCARE
(FORMERLY KNOWN AS WHITEHALL-
ROBBINS HEALTHCARE)**

Mitchell C. Chaney
State Bar No. 04107500
Federal Bar No. 1918
Rodriguez, Colvin & Chaney, LLP
1201 E. Van Buren
Post Office Box 2155
Brownsville, Texas 78522-2155
(956) 542-7441
(956) 541-2170 (Facsimile)

Earl Austin
State Bar No. 01437300
Federal Bar No. 02899
Baker Botts, LLP
2001 Ross Avenue
Dallas, Texas 75201
(214) 953-6500
(214) 953-6503 (Facsimile)
**ATTORNEY-IN-CHARGE FOR DEFENDANTS
NOVARTIS CONSUMER HEALTH, INC. AND
NOVARTIS PHARMACEUTICALS
CORPORATION**

_Frank Doyle_

Frank Doyle*
State Bar No. 06091300
Federal Bar No. 12507
Johnson, Spalding, Doyle, West & Trent, L.L.P.
910 Travis Street, Suite 1700
Houston, Texas 77002
(713) 222-2323
(713) 222-2226 (Facsimile)
**ATTORNEY-IN-CHARGE FOR DEFENDANTS
SMITHKLINE BEECHAM CORPORATION
D/B/A GLAXOSMITHKLINE, , SMITHKLINE
BEECHAM CONSUMER HEALTHCARE, L.P.,
GLAXOSMITHKLINE, plc, and BLOCK DRUG
COMPANY, INC.**

_Alan Vickery_

Alan Vickery*
State Bar No. 20571650
Federal Bar No. 11980
Sedgwick, Detert, Moran & Arnold
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 227-8200
**ATTORNEY-IN-CHARGE FOR DEFENDANT
BRISTOL-MYERS SQUIBB COMPANY**

_Margaret T. Brenner_

Margaret T. Brenner*
State Bar No. 02958050
Federal I.D. No. 9044
Hays, McConn, Rice & Pickering, P.C.
400 Two Allen Center
1200 Smith Street
Houston, Texas 77002
(713) 654-1111
(713) 655-2912 (Facsimile)
**ATTORNEY-IN-CHARGE FOR CHATTEM, INC.**

_Daniel J. Sheehan_

Daniel J. Sheehan*
State Bar No. 18174500
Mike Atchley
State Bar No. 01397600
Daniel, Sheehan & Associates, LLP
2200 Ross Avenue, Suite 3060
Dallas, Texas 75201
(214) 468-8899
(214) 468-8803 (Facsimile)
**ATTORNEY-IN-CHARGE FOR DEFENDANT
ADVOCARE INTERNATIONAL, LLC**

_Kenneth C. Baker_

Kenneth C. Baker*
State Bar No. 01584480
The Baker Law Firm
12600 Featherwood, Suite 225
Houston, Texas 77034
(281) 481-0083
(281) 481-1063 (Facsimile)
**ATTORNEY-IN-CHARGE FOR DEFENDANT
CIRCLE K STORES, INC. D/B/A CIRCLE K
(SUED INDIVIDUALLY AND AS SUCCESSOR-IN-
INTEREST TO COASTAL MART, INC. AND
MAVERICK MARKET, INC.)**

*Signed with permission by
Mitchell C. Chaney, State Bar No. 04107500
Federal Bar No. 1918*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing documents has been forwarded to all counsel of record in accordance with the Federal Rules of Civil Procedure on this 29th day of July, 2002

_Mitchell C. Chaney_

Mitchell C. Chaney

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 17 2002

FILED
CLERK'S OFFICE

*DOCKET NO. 1407*

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

### (SEE ATTACHED SCHEDULE)

### CONDITIONAL TRANSFER ORDER (CTO-16)

On August 28, 2001, the Panel transferred eight civil actions to the United States District Court for the Western District of Washington for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Since that time, 461 additional actions have been transferred to the Western District of Washington. With the consent of that court, all such actions have been assigned to the Honorable Barbara Jacobs Rothstein.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the Western District of Washington and assigned to Judge Rothstein.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Western District of Washington for the reasons stated in the order of August 28, 2001, 173 F.Supp.2d 1377, (J.P.M.L. 2001), and, with the consent of that court, assigned to the Honorable Barbara Jacobs Rothstein.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Western District of Washington. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Michael J. Beck
Clerk of the Panel

## SCHEDULE CTO-16 - TAG ALONG CASES
## DOCKET NO. 1407
## IN RE PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION

DISTRICT  DIV. CIVIL ACTION#

**CONNECTICUT**
| CT | 3 | 02-628 | Linda King-Corbin, et al. v. SmithKline Beecham Corp. |

**GEORGIA NORTHERN**
| GAN | 1 | 02-833 | Sylvia Smith, etc. v. Novartis, AG, et al. |
| GAN | 1 | 02-882 | Mary Williams v. The Delaco Co. |

**LOUISIANA EASTERN**
| LAE | 2 | 02-957 | Willie Small v. Chattem, Inc., et al. |
| LAE | 2 | 02-998 | Donald Harris v. Whitehall-Robins Healthcare, et al |
| LAE | 2 | 02-1007 | Betty Lacey v. Bayer Corp., et al. |
| LAE | 2 | 02-1013 | Earl Register v. Bayer Corp., et al. |
| LAE | 2 | 02-1014 | Clara L. Earl v. GlaxoSmithKline PLC, et al. |
| LAE | 2 | 02-1015 | Wesley Magee v. GlaxoSmithKline PLC, et al. |
| LAE | 2 | 02-1039 | Willie Trask v. Schering-Plough Corp. |
| LAE | 2 | 02-1048 | Yvonne Buckley v. Bayer Corp., et al. |

**LOUISIANA MIDDLE**
| LAM | 3 | 02-323 | Vicky McCurley v. GlaxoSmithKline, et al. |
| LAM | 3 | 02-325 | Donna Ford v. Whitehall-Robins Healtcare., et al. |
| LAM | 3 | 02-329 | Billy Colvin v. GlaxoSmithKline, Inc., et al. |

**LOUISIANA WESTERN**
| LAW | 2 | 02-600 | Lawrence Van Dyke v. Bayer Corp., et al. |

**NEW JERSEY**
| NJ | 2 | 02-1388 | Rosalyn Metzger, et al. v. The Delaco Co., et al. |

**NEW YORK SOUTHERN**
| NYS | 1 | 02-884 | Juan A. Gutierrez v. Bayer Corp. |

**PENNSYLVANIA WESTERN**
| PAW | 2 | 02-377 | Dana L. Hughes, et al. v. Perrigo Co. |

**SOUTH CAROLINA**
| SC | 4 | 02-1103 | Diane Gore, et al. v. SmithKline & Beecham, et al. |

**TEXAS SOUTHERN**
| TXS | 1 | 02-66 | Francisco Sanchez v. American Home Products Corp., et al. |
| TXS | 2 | 02-141 | Rogelio Resendez, et al. v. American Home Products Corp., et al. |
| TXS | 2 | 02-146 | Elvira Garcia, et al v. American Home Products Corp., et al. |
| TXS | 4 | 02-1029 | Debra Hilton-Caine, et al. v. Whitehall-Robins Healthcare, et al. |
| TXS | 5 | 02-93 | Juan R. Lopez, et al. v. American Home Products Corp., et al. |
| TXS | 5 | 02-54 | Rogelio Morales, et al. v. American Home Products Corp., et al. |
| TXS | 7 | 02-139 | Carlota Bernal, et al. v. American Home Products Corp., et al. |

**TEXAS WESTERN**
| TXW | 3 | 02-137 | Miguel Valverde, et al. v. American Home Products Corp., et al. |
| TXW | 3 . | 02-140 | Evangelina Rubio, et al. v. American Home Products Corp., et al. |

**WISCONSIN WESTERN**
| WIW | 3 | 02-78 | Linda R. Grover v. SmithKline Beecham Consumer Healthcare, et al. |

BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| IN RE PHENYLPROPANOLAMINE | § | |
|---|---|---|
| PRODUCTS LIABILITY LITIGATION | § | DOCKET NO. 1407 |
| | § | |
| | § | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| FRANCISCO SANCHEZ | § | CIVIL ACTION |
|---|---|---|
| Plaintiff | § | NO. 1-02-66 |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| American Home Products Corp., et al. | § | |
| Defendants | § | |

NOTICE OF OPPOSITION TO TRANSFER

Come now Plaintiffs and file this Notice of Opposition to the Conditional Transfer Order

(CTO-16) entered by the Panel on May 17, 2002.

FRANCISCO SANCHEZ is a plaintiff in an action styled FRANCISCO SANCHEZ vs.

American Home Products Corp., et al.; No. 1-02-66, pending in the United States District Court

Southern District of Texas, Brownsville Division.  Pursuant to Panel Rule 7.4(c), the plaintiffs

1

file this notice of opposition to apprise the Panel of their opposition to transfer.

Pursuant to Panel Rule 7.4(d), plaintiffs shall file, within 15 days of the filing of this notice, their motion to vacate conditional transfer order and supporting brief.

Respectfully submitted,

Charles S. Siegel
Texas State Bar No. 18341875
Federal ID No. 15736
Waters & Kraus, LLP
3219 McKinney Avenue, Suite 3000
Dallas, Texas 75204
(214) 357-6244
(214) 871-2263 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Notice of Opposition has been served by facsimile on all counsel of record on this 3rd day of June, 2002.

Charles S. Siegel

2



.. Western District of Washington U.S.D.C.

# Case Management Orders

**Subject:**
**Case Management Order No. 1**

**Date of Order:**
**01/29/2002**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY
LITIGATION This document relates to all actions MDL Docket
No. 1407 CASE MANAGEMENT ORDER NO. 1

## I. INTRODUCTION

On November 16, 2001, an initial conference was held in order
to address issues dealing with the structure and purposes of
the leadership of plaintiffs and defendants in this multi-
district litigation. During the course of that conference,
various issues relating to discovery, experts, use of
technology, class actions, and federal-state coordination
were also discussed.

At the conclusion of the conference, the Court directed the
parties to submit an agreed upon Case Management Order No. 1,
to the extent possible, addressing a fact discovery schedule,
deposition and document production procedures, expert
disclosure and discovery, and any other matters felt
necessary to promote the efficient and timely progress of
this litigation.

By order dated November 21, 2001, this Court appointed Lead
and Liaison Counsel for plaintiffs and defendants. The Court
had previously indicated that Lead Counsel for each side,
because of their knowledge of the skills, experience and
compatibility of counsel involved in this litigation, should
propose for Court approval the names of counsel to serve on
various Committees. Those proposals have been made and the
Court has acted thereon. The Court also requested the
submission no later than December 14, 2001, of a Joint

Proposed Case Management Order No. 1, to address the issues
discussed during the initial conference, and any other
topics.
The parties have now submitted a proposed Case Management
Order No. 1, together with opposing submittals regarding
various aspects of CMO No. 1 about which the parties
disagree. After review and consideration of the parties'
submissions, the Court hereby orders as follows:

## II. STAY OF PROCEEDINGS IN CASES TRANSFERRED TO MDL 1407

All proceedings in any case transferred to MDL 1407, now or
in the future, are stayed except as to the specific
proceedings outlined in this Order, any pending motions to
remand presently before this Court, or in any subsequent
order of the Court. All prior written discovery to which
responses have not yet been served is deemed withdrawn. All
dates on which responsive pleadings are due are hereby stayed
until further notice, and all scheduling orders are hereby
vacated. Nothing herein shall extend or modify the time
permitted for removal of any case to federal court, nor shall
any portion of this Order be deemed to apply to any case or
matter now or hereafter pending in any state court unless
that state court so orders.

### III. STATUS CONFERENCES, MOTIONS, PLEADINGS AND SERVICE

**A. Status Conferences.** Status Conferences shall be regularly
scheduled by the Court to permit substantial advance notice
to all parties. Except as otherwise provided herein, and to
accommodate the schedules of the Court and parties, oral
argument or hearings on any motion will be scheduled to
coincide with calendared Status Conferences. Counsel may
attend and participate in Status Conferences, oral arguments
and hearings by telephone at the Court's discretion by prior
arrangement with the Court's chambers. Any hearing or oral
argument deemed necessary by the Court on motions that
require a ruling on an expedited basis will be scheduled to
permit notice of at least two (2) business days. If
circumstances warrant, the Court may shorten the notice
period.

**B. Motions.** Motion practice shall be governed by applicable
Federal and Local Rules except as otherwise provided herein
or in any subsequent Case Management Order. Absent an Order
of the Court, briefs in response to all motions shall be

filed twenty-one (21) days after the date of service. Reply
memoranda shall be filed within seven (7) days after service
of the response. Oral argument or hearing on a motion will be
scheduled to coincide with the first regularly scheduled
Status Conference occurring after seven (7) days from the
scheduled date, as extended by the Court, for the filing of
Reply memoranda.

**C. Notice to Parties by the Court.** Notice by the Court to
Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel
of any matter, ruling, order, schedule or court hearing
relating to all actions, shall be considered by the Court to
be Notice to all parties in MDL 1407. Notice by the Court of
any matter, ruling, order, schedule of court hearing relating
only to individual actions shall be given to counsel of
record for that action, Plaintiffs' Liaison Counsel and
Defendants' Liaison Counsel.

**D. Service of Pleadings, Motions and Other Documents.** Lead
Counsel and any party filing with the Court a pleading,
motion, or other document relating to all actions shall
provide one (1) copy to Plaintiffs' Liaison Counsel, one (1)
copy to Defendants' Liaison Counsel, and one (1) copy to
opposing Lead Counsel by overnight mail or hand delivery. In
addition, an electronic version of any document filed shall
be provided at the time of service to the respective Liaison
Counsel by electronic mail, on a floppy disk, or on CD-ROM in
either WordPerfect or Microsoft Word format. If any document
filed is comprised of or contains a paper copy of an
electronic image of said document, the electronic image of
said document(s) shall be similarly served. Service on
Plaintiffs' and Defendants' Liaison Counsel constitutes
service on all plaintiffs' counsel and all defendants'
counsel, respectively. Service and distribution by Liaison
Counsel to other attorneys of record may be made via U.S.
Mail and either e-mail, overnight courier service or
facsimile transmission, reserving to any counsel of record
the right to waive, in writing, all or any aspect of said
service.

**E. Communication with the Court.** All communications with the
Court should be through Lead or Liaison Counsel.
Correspondence from individual plaintiff or defense counsel
directly to the Court is strongly discouraged except when
requested or the circumstances require direct contact. In any
event, a copy of any such correspondence must be
simultaneously served on Liaison Counsel.

## IV. STATEMENT OF ISSUES

No later than 5 days prior to the next status conference,
Lead Counsel for Plaintiffs and Defendants shall submit
separate reports to the Court identifying and describing the
legal and factual issues they believe will need to be
addressed in these MDL proceedings. The reports by Lead
Counsel shall not exceed 24 pages in length.

## V. FACT DISCOVERY OF DEFENDANTS

Discovery as to defendants shall be governed by applicable
Federal Rules of Civil Procedure and Local Rules except as
otherwise provided herein or in any subsequent Case
Management Order. Fact discovery has begun against certain,
but not all defendants, in various state court proceedings.
This Court has taken into consideration the present status
and progress of discovery against various groups of
defendants in fashioning a discovery schedule that will aid
in fostering state and federal court coordination of PPA
cases, and completing the tasks undertaken in this MDL 1407
with reasonable dispatch in keeping with the needs and
expectations of litigants.

**A. Completion of Fact Discovery.** Fact discovery of all
defendants, as divided into three distinct groups, shall be
completed as follows:

**(1) Group I Defendants.** Group I Defendants are American Home
Products Corporation, Novartis Consumer Health Inc., Bayer
Corporation, SmithKline Beecham, Perrigo, and Chattem, and
any related entities. Fact discovery as to Group I Defendants
shall be completed on or before December 31, 2002.

**(2) Group II Defendants.** Group II Defendants are those
defendants presently named in any case now docketed in this
MDL 1407 not designated as Group I Defendants, such as
Schering-Plough and Thompson/Delaco. Fact discovery as to
Group II Defendants shall be completed on or before February
28, 2003.

**(3) Group III Defendants.** Group III Defendants are those
defendants who are named in any action transferred to this
MDL 1407 after the date of this Order. Fact discovery as to
each such defendant shall be completed on or before 15 months
following the first day of the month following the docketing
of the first action naming said defendant in this MDL 1407.

**B. Discovery Disputes.** All disputes regarding the scope or
conduct of fact discovery shall be resolved pursuant to the
standards and procedures set forth in the Federal Rules of

Civil Procedure as augmented by the Local Rules of this
District, except as otherwise provided herein.

**C. Confidentiality of Produced Materials or Deposition
Testimony.** The Court has entered *Case Management Order No. 2
(Confidentiality of Material Produced and Testimony Relating
Thereto)* pursuant to the joint submittal of same by the
parties.

**D. Preservation of Documents**
The Court will enter *Case Management Order No. 3
(Preservation of Documents)* following the submittal of the
positions of the parties regarding the content thereof.

**E. Production of Documents**
**(1) Master Request For Production of Documents.** Document
production by most Group I Defendants is and has been ongoing
in several state and federal court cases, all in response to
virtually identical requests for production propounded by
many of the plaintiffs' counsel named as members of the
Plaintiffs' Steering Committee or Discovery Committee.
Attached at Tab A is the *Master Requests For Production of
Documents Addressed To All Defendants* ("Master Requests For
Production") which incorporates the requests previously made
and responded to by Group I Defendants and is hereby deemed
served on all defendants named in any action transferred to
this MDL 1407. In the absence of an agreement or further
order of the Court, no further document requests may be
propounded to the Defendants without leave of Court.

**(2) Prior Production and Responses to Requests to Produce.** To
the extent that any Group I Defendant has produced documents
in response to requests for production also contained in the
Master Requests for Production, that production is hereby
deemed to be production to the same requests contained in the
Master Requests for Production. Similarly, to the extent that
any Group I Defendant has responded to requests to produce
also contained in the Master Requests for Production, those
responses are hereby deemed to have been made to the same
requests contained in the Master Requests for Production. All
objections to production requests raised in a response made
by any Group I Defendant are preserved to the extent existing
as of the date hereof, and all rights held by plaintiff(s) to
contest any objections made are similarly preserved and
intact.

**(3) Document Production Deadlines.**

**(a) Group I Defendants.** Each Group I Defendant shall produce all documents maintained in hard copy responsive to the Master Requests for Production on or before February 28, 2002, except for those documents withheld pursuant to an assertion of privilege, work product or objection. Group I Defendants shall produce all documents maintained in electronic format responsive to the Master Requests for Production on or before March 30, 2002, except for those documents withheld pursuant to an assertion of privilege, work product or objection. The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved. The Court expects that document production will be completed by the deadlines above, and that no further extensions will be necessary.

**(b) Group II Defendants.** Each Group II Defendant shall respond to the Master Request for Documents no later than February 28, 2002 and produce all documents maintained in hard copy responsive to the Master Requests for Production no later than March 30, 2002, except for those documents withheld pursuant to an assertion of privilege, work product or objection . Group II Defendants shall produce all documents maintained in electronic format responsive to the Master Requests for Production on or before March 30, 2002, except for those documents withheld pursuant to an assertion of privilege, work product or objection. The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved. The Court expects that document production will be completed by the deadlines above, and that no further extensions will be necessary.

**(c) Group III Defendants.** Each Group III Defendant shall respond to the Master Request for Documents within sixty (60) days of the transfer to this MDL 1407 of the first action in which it is named and produce all documents responsive to the Master Requests For Production on a rolling basis within one hundred twenty (120) days thereafter, except for those documents withheld under an assertion of privilege or protection, or where an objection has been asserted. The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in

good faith be resolved.

**(4) Manner of Production.** With respect to all responsive
documents or materials kept or maintained in either tangible
form or in any electronic form, all defendants shall produce
those documents or materials in "hard" copy, with appropriate
identifying Bates numbering or labeling which shall include
an alpha prefix identifying the defendant producing same.
However, this provision shall not prohibit or otherwise
impact any subsequent motion by plaintiffs to seek the
production from any defendant of all responsive documents or
materials kept or maintained in electronic form in the same
format as they are kept or maintained. All defendants shall,
to the extent reasonably possible, produce on a "rolling"
basis, such that documents or materials should be made
available for production and produced at regular intervals
rather than accumulated with all other documents for
production at the end of the document production period
permitted herein. Each copy of a document shall convey the
exact information and appearance of the original document
unless redacted pursuant to a stated objection or privilege,
in which event the fact that a redaction has been made shall
be made apparent on the face of the document produced. If
color is material to appreciating or comprehending the
content of a document, parties shall honor reasonable
requests for either the production of an original document
for inspection and copying or production of a color image of
the document. Similarly, the parties shall comply with all
reasonable requests for inspection and copying of an original
document for all copies deemed unreadable or illegible, in
whole or in part. The reasonable reproduction costs incurred
by defendants of providing "hard" copies shall be borne by
plaintiffs pursuant to applicable Federal and Local Rules.

**(5) Document Images and Objective Databases.** If a defendant
chooses or has chosen to create electronic images of
documents or materials produced in "hard" copy, duplicates of
said images shall be produced to plaintiffs on CD-ROM disks
on or before that defendant's document production deadline.
The electronic images produced shall be in the same
electronic format as utilized by defendant in creating and
maintaining the electronic images. Provided, however, that
should a defendant choose to create electronic images of only
a select group of documents, such that the selection reflects
the work product of its attorneys in conjunction with this
litigation, then production shall not be required. The

reasonable reproduction costs incurred by defendants of
providing copies of CD-ROM disks containing images of
documents produced shall be borne by plaintiffs pursuant to
applicable Federal and Local Rules.

Any defendant that has created an objective database of
documents produced in response to production requests of
plaintiffs shall produce that database to plaintiffs.
Provided, however, that should a defendant choose to create
an objective database of only a select group of documents
produced, such that the selection reflects the work product
of its attorneys in conjunction with this litigation, then
production of that database shall not be required. Defendants
are permitted to redact database fields that contain
subjective work product material. If a defendant seeks to
withhold the database because it cannot redact the subjective
materials, the defendant must first show good cause to the
Court why it cannot segregate objective and subjective data.
The same procedure will apply to plaintiffs' databases if
sought by defendants during discovery. Plaintiffs will not be
assessed costs for producing databases that defendants have
prepared. However, if a defendant must incur additional costs
to remove subjective material from the database, plaintiffs
will bear the responsibility for those additional costs.

**(6) Document Depositories.** Lead Counsel for each side may
establish a document depository for purposes it deems
appropriate and necessary to accomplish their obligations to
their respective constituencies in this MDL 1407. Each side
shall administer and bear the costs of its own depository.

**(7) Authentication of Documents.** Pursuant to the stipulation
of the parties, it is hereby ordered that the copies of all
documents maintained in "hard" form produced by any defendant
are deemed to be a true and accurate copy of documents in the
possession and control of that defendant, except as otherwise
indicated on the face of the copy produced. It is further
ordered that the "hard" copies of all documents maintained in
electronic form produced by any defendant are deemed to be a
true and accurate representations of the data or other
information maintained in electronic format by that
defendant, except as otherwise indicated on the face of the
"hard" copy produced.

**(8) Assertion of Privilege in Response to Production
Requests.** Any party that withholds the production of
requested documents or materials, regardless of the manner in
which they are kept or maintained, on the ground of any

privilege or application of the work-product doctrine must specify in writing, as to each document or thing not produced, the specific privilege(s) or doctrine(s) it is relying upon to withhold each document ("Privilege Log"). Each Privilege Log shall describe each document or thing to which a privilege or work product doctrine is asserted in sufficient detail to reasonably permit the party seeking discovery to assess whether or not to dispute any such assertion of privilege or application of the work product doctrine. Each party so withholding shall provide the Court and opposing Liaison Counsel a copy of the party's Privilege Log on or before thirty (30) days after the deadline for the production of "hard" copies of responsive documents or materials kept or maintained in tangible form and, with respect to responsive documents kept or maintained in electronic format, within thirty (30) days after the production deadline for "hard" copies of those documents or materials.

**F. Interrogatories.** A First Set of Interrogatories has been propounded to and answered by many Group I Defendants in several state and federal court cases. The interrogatories served have been virtually identical, and counsel serving same are included among the plaintiffs' counsel hereby named as members of the Plaintiffs' Steering Committee or Discovery Committee. Attached at Tab B is the *Master First Set of Interrogatories Addressed To All Defendants* ("Master First Set of Interrogatories") which incorporates the interrogatories previously propounded and answered by many Group I Defendants, and is hereby deemed served on all defendants named in any action transferred to this MDL 1407.

**(1) Prior Answers to Interrogatories.** To the extent that any Group I Defendant has answered interrogatories also contained in the Master First Set of Interrogatories, those answers are hereby deemed to be responses to the same interrogatories contained in the Master First Set of Interrogatories. All objections to such interrogatories raised in a response made by any Group I Defendant are preserved to the extent existing as of the date hereof, and all rights held by plaintiff(s) to contest any objections made are similarly preserved and intact.

### (2) Interrogatory Answer Deadlines for Defendants.

(a) <u>Group I Defendants</u>. Each Group I Defendant shall respond to all interrogatories contained in the Master First Set of Interrogatories no later than January 15, 2002. The parties shall meet and confer as soon as practicable to resolve disputes concerning objections thereto. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

(b) <u>Group II Defendants</u>. Each Group II Defendant shall respond to all interrogatories contained in the Master First Set of Interrogatories no later than February 28, 2002. The parties shall meet and confer as soon as practicable to resolve disputes concerning objections thereto. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

(c) <u>Group III Defendants</u>. Each Group III Defendant shall respond to all interrogatories contained in the Master First Set of Interrogatories within sixty (60) days of the transfer to this MDL 1407 of the first action in which it is named. The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

**G. Fact Depositions**. All fact depositions shall be conducted pursuant to applicable Federal Rules of Civil Procedure and Local Rules, and as further specified below.

**(1) Deposition Notices**. In addition to the information required by applicable Rule, each deposition notice shall include the name, if known, of the primary examiner(s) designated by the party noticing the deposition, and the date, time and place of the deposition. In order for counsel to make arrangements for adequate deposition space, whenever feasible, counsel who intend to attend a deposition noticed in MDL 1407 should provide notice to the individual counsel signing the Notice of Deposition. Deposition notices shall state whether the deposition is to be videotaped and, if so, the name, firm and address of the videotape recorders.

**(2) Cross-Notices Between State Court Cases and These Proceedings**. In order to avoid duplicative discovery and to prevent the unnecessary expenditure of judicial resources and the resources of the parties, steps should be taken to encourage counsel in related state court proceedings to coordinate their depositions with MDL 1407 depositions. Plaintiffs' Liaison Counsel shall copy all known plaintiffs' state liaison counsel (by mail, courier, facsimile or

electronic mail) on all deposition notices filed by
plaintiffs in MDL 1407 and invite state court counsel to
cross-notice the deposition. Defendants' Liaison Counsel
shall provide Plaintiffs' Liaison Counsel and plaintiffs'
known state liaison counsel with at least thirty (30) days
notice of any cross-notice in these proceedings by defendants
of a deposition originally noticed in a state court. Any
motion to quash or stay any such cross-notice must be filed
more than ten (10) days prior to the scheduled date of the
cross-noticed deposition. The filing of any such motion will
not delay the cross-noticed deposition, unless otherwise
ordered by the Court. Absent grant of any such motion to
quash or stay, no party shall re-notice the deposition of any
witness already deposed under the terms of this Order unless
permitted by the Court for good cause shown. If a deposition
was originally noticed in this proceeding, whether or not
later cross-noticed in state court proceedings, MDL counsel
shall conduct the initial phase of the deposition. If a
deposition was originally noticed in a state court proceeding
and is later cross-noticed in this MDL proceedings, the state
court counsel shall conduct the initial phase of the
deposition. In either instance, questioning by state court
counsel will not be counted against the time permitted for
questioning pursuant to this MDL proceeding as described
below. Regardless of which counsel conducts the initial
examination of the deponent, subsequent questioning shall not
be redundant or repetitive, although clarification of prior
testimony may be sought if reasonably calculated to elicit
testimony that adds to the substance of prior testimony.
Nothing in this provision shall be construed as an injunctive
or equitable order affecting state court proceedings. Rather,
this provision is intended to reflect this Court's desire for
voluntary state-federal coordination.

**(3) Number of Depositions, Former Employees.** The defendants
shall make available all present employees requested by
plaintiffs for deposition, subject to the defendants' right
to object to the taking of any particular employee's
deposition for good cause shown. Plaintiffs shall in good
faith take only those depositions deemed reasonably necessary
under the circumstances of this case. Each defendant shall
take reasonable steps to make available requested former
employees, to the extent possible. If a defendant is unable,
despite its best good faith efforts, to produce former
employees, then the defendant shall provide upon request the

former employee's last known address and shall cooperate in
any effort to obtain this Court's, or another court's
assistance to compel the former employee's attendance at the
deposition. Plaintiffs shall not contact former employees
without permission of the former employer defendant. As to
each named defendant, plaintiffs shall be limited to a total
of twenty (20) depositions of identified individuals,
including former employees. In addition, plaintiffs may
notice up to five (5) depositions pursuant to Fed. R. Civ. P.
30(b)(6) as to each defendant regardless of the number of
deponents produced by said defendant in response to each such
deposition noticed, provided that the particular matters
identified in a notice on which examination is requested do
not duplicate any matters identified in connection with a
prior Rule 30(b)(6) deposition of that defendant, notice of
which was properly served on plaintiffs pursuant to the terms
of this Order. Absent agreement by the defendant, plaintiffs
may apply to the Court to conduct further depositions only
upon a showing of good cause and the specific identification
of the individual(s) sought to be deposed.

**(4) Scheduling.** Plaintiffs may begin depositions of fact
witnesses on January 20, 2002. If a deposition occurs before
document production is completed, and documents received
after the deposition raise additional questions for the
witness, plaintiffs may renew the deposition upon a showing
of good cause. To the extent practicable, counsel shall
consult with opposing counsel and, if ethically permitted,
potential deponents in an effort to schedule depositions at
mutually convenient times and locations. Counsel for
deponents who are employees of defendants are expected to
cooperate, to the extent reasonably possible, in the
scheduling of depositions requested by plaintiffs. The Court
will resolve any deposition scheduling issues that Lead
Counsel or their designees are unable to resolve.

**(5) Length of Direct Examination in Fact Depositions.** The
examination by the party noticing the deposition of a present
or former employee of a defendant shall be no more than seven
(7) hours of actual examination time absent agreement or
further order of this Court upon a showing of good cause. The
Court expects that if a deposition requires additional time
the parties will make a good faith effort to agree on an
extension before coming to the Court for resolution. Direct
examinations that are reasonably believed to require more
than seven hours to complete shall be scheduled, to the

extent possible consistent with the witness's schedule, for
sufficient consecutive days for completion.

**(6) Postponements.** Once a deposition has been scheduled, it
shall not be taken off calendar, postponed, rescheduled, or
relocated less than five (5) calendar days in advance of the
date it is scheduled to occur, except upon agreement of
counsel or by leave of Court for good cause shown. Given the
large number of attorneys involved in this litigation, the
unavailability of counsel shall not be grounds for postponing
a deposition if another attorney from the same firm who is
familiar with the case or one who represents a party with
similar interests is available to attend. If a motion is made
to permit the rescheduling of a deposition on the grounds of
unavailability of counsel, the moving party shall certify to
the Court that neither an attorney from the same firm who is
familiar with the case nor one who represents a party with
similar interests is able to attend the scheduled deposition.

**(7) Attendance.** Unless otherwise agreed to by the parties,
depositions may be attended only by one representative of
each party (other than counsel for the party), the deponent,
the deponent's attorney (if not counsel for a defendant),
attorneys of record in MDL 1407 or state PPA related cases,
court reporters, videographers, and any person who is
assisting in the litigation and whose presence is reasonably
required by counsel conducting or defending the deposition.
Upon application, and for good cause shown, the court may
permit attendance by a person who does not fall within any of
the categories set forth in the previous sentence. Attendees
at any deposition shall execute an acknowledgment that they
are bound by the provisions of Case Management Order No. 2.
If during the course of any deposition, the examination
involves information or documents which any defendant claims
to be confidential pursuant to Case Management Order No. 2
entered in this litigation, attendees at the deposition are
limited to those permitted access to information designated
confidential pursuant to that Order. Those portions of
depositions deemed confidential pursuant to said Order will
be treated and handled pursuant to the requirements of that
Order. Unnecessary attendance by counsel at depositions is
discouraged and may not be compensated in any fee application
to the Court.

**(8) Production of Documents.** Witnesses subpoenaed or noticed
to testify and to produce documents shall be noticed and
served with the subpoena or deposition notice and document

request at least thirty (30) days before the scheduled
deposition. Depending upon the quantity of documents to be
produced, some time may be needed for inspection of the
documents before the interrogation commences. Responsive
documents that are identical to those already produced to the
Plaintiffs' do not have to be produced by the deponent, but
the deponent bears the burden of demonstrating, if necessary,
prior production.

**(9) Potential Deposition Exhibits.** Parties will disclose to
the deponent's counsel at least ten (10) days before a
deposition the documents they expect to use during
examination. As with issues regarding the length of
depositions, the Court expects that if a party fails to
disclose documents, the parties will make a good faith effort
to agree how to proceed with the deposition before coming to
the Court for resolution.

**(10) Location of Depositions.** Unless otherwise agreed to, any
deposition of:
(a) plaintiff shall take place within the federal district in
which that plaintiff resides;
(b) current and former employees and officers will take place
in the federal district of such employees' or officers' place
of business. Defense counsel will make reasonable efforts to
obtain the agreement of former employees of defendants to
appear at the same location as current employees of the same
defendant. Absent such agreement, that deposition will take
place either within the federal district in which the former
employee resides or at a location mutually agreeable to the
former employee and the parties.

**H. Conduct of Depositions.**

**(1) Cooperation.** Counsel are expected to cooperate with, and
be courteous to, each other and deponents during the course
of any deposition. Counsel shall refrain from engaging in
colloquy during depositions. There shall be no smoking or use
of other tobacco products or eating in any room in which a
deposition is being conducted, including before, during or
after a deposition, or in the deposition room during
deposition recesses. Beverages will be permitted. Counsel
shall recess from time to time during the deposition for
meals and to permit periods of rest or refreshment reasonably
required by the deponent, stenographer(s) and/or counsel
conducting or defending the deposition.

**(2) Deposition Day.** Absent agreement of the parties to the

deposition, a deposition day shall be no longer than seven (7) hours of actual examination time.

**(3) Continuance of Deposition.** If a deposition is not completed by 1:00 p.m. on a Friday, the deposition will recommence on the next business day, subject to the availability of the witness. If the witness is not available for deposition on the next business day, the deposition will continue on a date to be agreed upon by counsel or, if agreement cannot be reached, a date specified in a notice of continued deposition. Where a notice of continued deposition is required, service of notice ten (10) or more days prior to the date specified for the continued deposition shall be deemed adequate notice:

**(4) Examination.** The party noticing a fact deposition shall designate no more than two attorneys to conduct the examination of the deponent. If two attorneys are designated, the examinations conducted shall not be redundant or repetitive, although clarification of prior testimony may be sought if reasonably calculated to elicit testimony that adds to the substance of prior testimony. No further examination by counsel for MDL 1407 plaintiffs shall be permitted except by agreement or good cause shown. Examination by other parties shall be permitted, but in no event shall it exceed the limitations regarding redundancy or repetition applicable to attorneys conducting the direct examination of the deponent, all as set forth above. Only one attorney may represent the deponent at any given time.

**(5) Objections and Directions Not to Answer.** Unless otherwise agreed by the parties, and noted on the record, the following stipulations shall apply to all depositions in this action:

(a) Unless otherwise specified by any defendant, an objection by a single defendant shall be deemed an objection by all defendants. However, unless otherwise specified, an instruction not to answer by one defendant should not be deemed an instruction not to answer by all defendants.

(b) All objections are reserved until trial or other use of the deposition, except those objections regarding the form of the question or the existence of a privilege. Objecting counsel shall say simply the word "objection", and no more, to preserve all objections as to form. Only if one of the examining counsel request clarification shall the basis of the objection be stated, and then only the short title of the rule (e.g., "lack of foundation" or "calls for speculation") shall be stated by objecting counsel. If the examining

attorney requests further clarification, at that attorney's
request the deponent shall leave the room while the detailed
nature of the objection is clarified and/or discussed.
(c) Counsel shall not direct or request that a witness refuse
to answer a question, unless that counsel has objected to the
question on the ground that the question seeks privileged
information, information that the Court has ordered may not
be discovered, or a deponent seeks to present a motion to the
Court for termination of the deposition on the grounds that
it is being conducted in bad faith or in such a manner as
unreasonably to annoy, embarrass, or harass the party or the
deponent. When a privilege is claimed, the witness shall
nevertheless answer questions relevant to the existence,
extent or waiver of the privilege, such as the date of a
communication, who made the statement, to whom and in whose
presence the statement was made, other persons to whom the
contents of the statement was made, any other person to whom
the contents of the statement has been disclosed, and the
general subject matter of the communication.

**(6) Objections to Documents.** All objections to the
admissibility of any documents used during the course of a
deposition are deemed reserved until the time of trial or use
in any dispositive motion. No objections to the use of any
document are necessary or shall be noted on the record.

**(7) Private Consultations.** Private consultations between
deponents and their attorneys during the course of
examination are improper except for the purpose of
determining whether a privilege should be asserted. Unless
prohibited by the Court for good cause shown, such
conferences may be held during normal recesses and
adjournments.

**(8) Disputes During Depositions.** Disputes arising during
depositions that cannot be resolved by agreement and that, if
not immediately resolved, will significantly disrupt the
discovery schedule or require rescheduling of the deposition,
or might result in the need to conduct a supplemental
deposition, shall be presented to the Court by telephone by
calling the Court's Chambers. In the event the Judge is not
available, the deposition shall continue as to matters not in
dispute with full reservation of rights to continue the
examination objected to pending a ruling at the earliest
possible time.
If the nature of the dispute would not require the
continuance of the deposition pending resolution thereof, the

parties may elect to either present the matter to the Court
by telephone at a time when the parties and the Court
are available, or to present the dispute to the Court in writing.
If the parties elect to present the dispute to the Court in
writing, each side must submit on one (1) page a summary of
its position and any authority relevant to the dispute. The
Court will issue a prompt ruling, as its schedule permits.
Nothing contained herein shall prohibit examining counsel
from continuing with the deposition, filing an appropriate
motion with the Court at the conclusion of thereof, and
appearing personally before the Court if argument is
permitted by the Court and counsel deems it necessary.
Disputes between the parties should be addressed to this
Court rather than to the District Court in which the
deposition is being conducted.

**(9) Copies of Exhibits.** A copy of any document about which
examining counsel expect to question the deponent should
ordinarily be provided to primary counsel for the parties and
the deponent at the time presented to the deponent and
his/her counsel.

**(10) Marking of Deposition Exhibits.** Any documents previously
produced by defendants or third parties used as exhibits in a
deposition shall be referred to by any Bates stamp number(s)
appearing on the face of the documents, and a copy thereof
shall be included with the original deposition transcript.
Documents that do not have Bates stamped number(s) shall be
separately marked with sequential exhibit numbers. For
example, if the deponent's name is "John Smith", the first
exhibit to his deposition that has no identifiable Bates
stamp number on its face shall be marked "Smith No. 1." The
same document presented as an exhibit at subsequent
depositions shall continue to be referred to as originally
marked, and counsel should avoid marking that document with a
different exhibit number at any subsequent deposition.

**(11) Depositions Pursuant to Rule 30(b)(6).** In those
instances when the Plaintiffs serve a deposition notice
pursuant to Fed. R. Civ. P. 30(b)(6), the following shall
apply (in addition to the foregoing general procedures
governing depositions):

(a) Depositions taken pursuant to F.R.C.P. 30(b)(6) will be
taken pursuant to the Federal Rules of Civil Procedure and
applicable case law.

(b) The party wishing to take the deposition will in good
faith describe with reasonable particularity the categories

on which the party is requesting examination. Within a reasonable period of time after receiving the notice, the party to be deposed will in good faith attempt to inform the discovering party if it believes that multiple witnesses will be necessary to respond to the requested categories of information and to which category each witness will be produced to respond.

**(12) Stenographic Recording.** A certified Court reporter shall stenographically record all deposition proceedings and testimony. The Court reporter shall administer the oath or affirmation to the deponent. A written transcript by the Court reporter, together with copies of all exhibits marked or referred to during the deposition, shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) (submission to the witness) and 30(f) (filing, exhibits). The transcript shall also contain the name of any attorney and any other person attending the deposition together with the name of his or her firm or organization, business address and, if applicable, the name of the person or organization he or she represents. The court reporter shall be requested to furnish the transcript in electronic form (floppy disks) in text-readable form and hard copy in Min-U-Script format to the representative of plaintiffs conducting the deposition and a designated representative of defendant attending or defending the deposition.

**(13) Videotaped Depositions.** Any deposition may be videotaped at the request of any party pursuant to notice under the following terms and conditions:

(a) All videotaped depositions shall be simultaneously stenographically recorded in accordance with this Order.

(b) The party requesting videotaping of the deposition shall bear the expense of both the videotaping and the stenographic recording. Requests for the taxation of these costs and expenses may be made at the conclusion of the litigation in accordance with applicable law.

(c) The operator(s) of the videotape recording equipment shall be subject to the provisions of Fed. R. Civ. p. 28(c). At the commencement of the deposition the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

(d) At the commencement of the deposition, each witness, attorney and any other person attending the deposition shall identify themselves on camera.

(e) No attorney or party shall direct instructions to the

video operator as to the method of operating the equipment. The video camera operation will be suspended during the deposition only upon stipulation by counsel and "off the record" discussions. The video operator shall record on camera the time of suspension and any subsequent reconvening of the deposition.

(f) The deposition will be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.

(g) If the party noticing the deposition does not intend to convert the videotape to digital form, the videotape operator shall use a counter on the recording equipment and after completion of the deposition shall prepare a log, cross-referenced to counter numbers, that identifies the depositions on the tape at which examination by different counsel begins and ends, at which objections are made and examination resumes, at which exhibits are identified, and at which any interruption of continuous tape-recording occurs, whether for recesses, "off-the-record" discussions, mechanical failure, or otherwise.

(h) After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic Court reporter, and file a true copy of the video tape, the transcript, and certificate with Liaison Counsel for whomever noticed the deposition.

(i) Technical data, such as recording speeds and other information needed to replay or copy the tape, shall be included on copies of the videotaped deposition.

During the videotaping of a deposition, the questioner may use a two-video camera system with monitors available for use by counsel.

**(14) Telephonic Depositions.** By indicating in its notice of

deposition that it wishes to conduct the deposition by
telephone, a party shall be deemed to have moved for such an
order under Fed.R.Civ.P. 30(b)(7). Unless an objection is
filed and served within ten calendar days after such notice
is received, the court shall be deemed to have granted the
motion. Other parties may examine the deponent telephonically
or in person. However, all persons present with the deponent
shall be identified in the deposition and shall not by word,
sign, or otherwise coach or suggest answers to the deponent.
**(15) Supplemental Depositions.** Each party who did not have
reasonable notice of a fact deposition and who was not
present or represented at the deposition (including parties
later added and parties in cases subsequently filed in,
removed to, or transferred to this Court) may, within thirty
(30) days after filing of the deposition (or, if later,
within sixty (60) days after becoming a party in any action
which is transferred to this Court), file a motion to conduct
a supplemental deposition of the deponent. Each party who
wishes to take a supplemental deposition must certify that
their attorney has read the prior deposition, and state
specifically the areas of inquiry not previously addressed
and sought to be pursued in the deposition sought. Within
fifteen (15) days of the filing of any such motion, any party
may file an opposition to the motion and seek a protective
order prohibiting the supplemental deposition on the grounds
that the MDL 1407 deposition fully covered the area or areas
sought to be explored in the supplemental deposition, that
the testimony is not relevant, or any other reason thought
valid.

(a) No further deposition by any party having received notice
of the original deposition will be permitted, except upon
order of this Court on good cause shown. A showing by the
moving party that a supplemental deposition is reasonably
calculated to lead to the discovery of admissible evidence
necessary to protect the interests of the moving party shall
constitute good cause.

(b) If a supplemental deposition is permitted by the Court or
unopposed, it shall be treated as the resumption of the
deposition originally noticed. During the resumed deposition,
the prohibitions regarding redundant or repetitive
examination contained herein are fully applicable. The
resumed deposition shall be taken at the same location as the
initial deposition unless otherwise agreed to by the parties
and the deponent.

**(16) Copies of Transcripts and Videotapes.** Subject to any restrictions contained within the Stipulated Confidentiality Order, any party may at its own expense obtain a copy of the videotape and the stenographic transcript by contacting counsel noticing the deposition or the court reporter.

**(17) Correction and Signing Depositions.** Unless waived by the deponent, the transcript of a deposition, or any portion thereof, shall be submitted to the deponent for correction and signature within thirty (30) days after the completion of the deposition or any portion thereof, unless the Court allows a supplemental deposition pursuant to this Order. If a supplemental deposition is allowed, the transcript thereof shall be submitted to the deponent as soon as it is available for distribution. A deposition transcript, or a transcript of a portion thereof, may be signed by the deponent before any notary within thirty (30) days after the transcript, or any portion thereof, is submitted to the deponent. If no corrections are made during this time, the transcript will be presumed accurate.

**(18) Use of Depositions.** Under the conditions prescribed in Fed. R. Civ. P. 32(a) (1) - (4) or as otherwise permitted by the Federal Rules of Evidence, depositions may be used against any party (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation) who:
(a) was present or represented at the deposition; or

(b) had reasonable notice thereof, or

(c) within ninety (90) days after the deposition is taken or within one hundred and twenty (120) days after becoming a party to MDL 1407 fails to show just cause why such deposition should not be used against such party.

**(19) Document Subpoenas to Non-Parties.** Commencing upon entry of this Order, any party may serve subpoenas on non-parties for the production of documents without testimony pursuant to Fed. R. Civ. P. 45.

**VI. FACT DISCOVERY OF PLAINTIFFS.**
Plaintiffs and Defendants, through their appointed Lead Counsel, are to confer regarding the nature and extent of discovery of plaintiffs in MDL 1407, as well as deadlines and proposed procedures for the conduct of same, and to report back to the Court at the earliest practical time as agreed by Lead Counsel, but no later than thirty (30) days from the

date of this Order or the next regularly scheduled Status
Conference, whichever first occurs. Plaintiffs, however,
shall produce copies of any medical records in their
possession referring or related to the injuries alleged in
their actions within 30 days of the entry of an Order
concerning discovery of plaintiffs or sixty (60) days from
the date of this Order, whichever first occurs.

**VII. EXPERT DISCOVERY**

To date, the parties have not agreed whether science and/or
expert witness issues involved in this litigation should be
resolved in this MDL and, if so, the nature, extent and
procedures of discovery regarding those issues and/or
experts. However, the parties have agreed to continue to
attempt to reach an agreement on these issues within the
proposed Joint Science Committee, all as proposed in the
Joint Submission of the parties dated November 30, 2001. The
Joint Science Committee shall meet and shall report to the
Court on or before January 11, 2002. At that time, the
committee shall provide the Court with a recommended expert
discovery schedule, including an expert cutoff date. If the
committee cannot reach an agreement, it shall report the
disagreement to the Court on January 11, 2002, and shall
submit separate proposals by January 18, 2002.

**VIII. FAILURE TO COMPLY WITH DISCOVERY REQUESTS.**

A party's failure to either produce a relevant document or
identify same as withheld pursuant to a privilege may be
viewed by the Court as an infraction of its orders,
justifying appropriate sanctions. Upon learning of any
relevant document(s) which have not been produced or
identified, a party is under an obligation to promptly make
known the existence of the documents, including the reason
for failing to produce same, and submit the document to
opposing Lead Counsel, or if withheld under a claim of
privilege or protection, identify the documents and the
corresponding privilege in the manner described above.

**IX. PRODUCTION OF DOCUMENTS FROM PRIOR LITIGATION.**

The parties shall meet and confer to resolve disputes over
the extent of discovery of documents from prior litigation
and shall provide the Court with an agreement by January 11,
2002. If the parties are unable to agree on the extent of
discovery, they shall submit separate proposals by January
18, 2002.

**X. CLASS ACTIONS.**

**A. Economic Injury Class Actions.** As of the date of this

Order, the Court lifts the stay imposed on potential class
certification proceedings. Plaintiffs in *Sims v. The Delaco
Company et al.* (C01-1705R) have agreed to voluntarily dismiss
their complaint.

**(1) Class Certification Discovery and Briefing Schedule.** The
defendants and plaintiffs shall meet and confer regarding
potential stipulations, a discovery plan, and a briefing
schedule for the economic injury class certification issue.
Counsel shall contact the Court on or before January 7, 2002,
to inform the Court of the agreed schedule or, if agreement
cannot be reached, to present separate proposals.

**(2) Merits Discovery and Other Deadlines.** Non-expert merits
discovery shall end on December 31, 2002. Merits discovery in
the class actions shall be coordinated with merits discovery
in the personal injury actions, so that no duplicative
discovery shall be taken and so that discovery taken in non-
MDL cases shall be applicable in the class actions to the
same extent that it is applicable in the MDL personal injury
actions. To the extent that relevant merits discovery
commences in the personal injury actions before the Court
rules on the class certification issue in the economic injury
class actions, the parties in the economic injury class
actions can and shall participate so as to avoid duplicative
discovery.

A schedule for expert discovery, <u>Daubert</u> motions, summary
judgment motions and remaining dates applicable in the class
action cases shall be set at a later date.

**B. Personal Injury Class Actions.** Defendants shall file a
motion to strike class allegations on or before January 25,
2002. If plaintiffs contend discovery is necessary before
they can respond to defendants' motion, plaintiffs shall file
their motion for discovery by February 1, 2002. The motion
should include the specific areas of discovery required and
the reason discovery is needed, as well as proposed dates for
discovery. Defendants may file a response to the discovery
motion by February 8, 2002. No reply will be filed.

If the Court denies the motion for discovery, plaintiffs
shall file their opposition to defendants' motion to strike
class allegations within seven (7) days of receiving the
Court's decision. The defendants' reply shall be filed within
fourteen (14) days of receiving the opposition, and any sur-
reply by the plaintiffs shall be due fourteen (14) days after
receiving the reply. If the Court grants the motion for
discovery, the parties shall follow the briefing schedule

provided by the Court in that order.

If the plaintiffs do not bring a motion for discovery,
plaintiffs shall file their opposition to the motion to
strike class allegations on February 28, 2002. Defendants
shall file their reply on March 15, 2002, and plaintiff shall
file any sur-reply by March 29, 2002.

## XI. OTHER PROVISIONS

**A. Individual Appointment of Plaintiff Counsel.** The Court has
appointed specific plaintiffs counsel to various positions on
the expectation of their personal contribution to the work of
the Plaintiffs' Lead Counsel, Steering Committee ("PSC") and
other Committees and to the furtherance of the completion of
the MDL portion of PPA litigation. For this reason, the Court
will look to the Lead Counsel and the individual members of
the Plaintiffs' various committees to satisfy the goals that
the Court expects the PSC and the various Committees to
achieve. The Court will likewise consider the contribution of
each member of the PSC and its Committee members when the
Court is called upon to determine appropriate compensation
for service on the PSC and its Committees. While the Court
recognizes that each of the above members will require the
assistance of partners, colleagues, paralegals, support staff
and others in the fulfillment of their committee assignments,
the Court will expect the individual members to be
responsible for the ultimate outcome of the activities
performed by the PSC and its Committees.

**B. Time and Expense Keeping.** Counsel who anticipate seeking
an award of attorney's fees and reimbursement of expenditures
shall comply with the directives contained in the Manual for
Complex Litigation, Third, §41.32 regarding the maintenance
of contemporaneous records reflecting the services performed
and the expenses incurred. The Court will address, in a
future CMO, the extent to which an assessment will be ordered
in this matter.

**C. Privileges Preserved.** No communication by and between the
respective parties' Lead Counsel, their Liaison Counsel
and/or members of their respective Committees shall
constitute a waiver of any privilege or protection to which
it would otherwise be entitled.

## XII. NEXT STATUS CONFERENCE.

The next status conference is scheduled for _____.
At the next and all future status conferences, the parties
are to provide to the Court within five (5) business days
before each status conference an agreed upon agenda for the

conference, and shall provide a brief (1-2 paragraph) summary
of the party positions as to any disputed issues.

**XIII. PERSONS BOUND BY THIS ORDER.**

This Order shall be binding on all persons with

cases docketed in MDL 1407.

/s/
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

---

**File for Download is available on WebPacer**



🏠 WAWD Home | ⏪ Back to List | 🏛 MDL Home

Western District of Washington U.S.D.C.

# Case Management Orders

**Subject:**
**Case Management Order No. 2**

**Date of Order:**
**01/29/2002**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION This document relates to all actions MDL Docket No. 1407 CASE MANAGEMENT ORDER NO. 2 (Protective Order Regarding Confidential Documents) WHEREAS, Rule 26(c) of the Federal Rules of Civil Procedure provides for the issuance of protective orders limiting the disclosure of discovered information in appropriate circumstances.
NOW, THEREFORE, IS HEREBY ORDERED THAT:
1. This Order applies to all documents and other products of discovery, all information derived therefrom and including, but not limited to, all copies, excerpts or summaries thereof, obtained by the plaintiffs or defendants pursuant to the requirements of any court order, the requirements of self-executing discovery, requests under Rule 34 of the Federal Rules of Civil Procedure, answers to requests for admissions under Rule 36 of the Federal Rules of Civil Procedure, answers to interrogatories under Rule 33 of the Federal Rules of Civil Procedure, documents subpoenaed under Rule 45 of the Federal Rules of Civil Procedure, and transcripts of depositions under Rule 30 or Rule 31 of the Federal Rules of Civil Procedure (hereafter "Discovery Material").
2. The parties have agreed that Discovery Material hereof will be used only for the litigation of actions under IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, MDL Docket No. 1407 ("Litigation"), including any appeals of this Litigation, and for any other PPA action pending in a state or federal court so long as the parties have agreed to be governed by the terms of this Order. Discovery Material will not be disclosed except in accordance with paragraph 7.
a. Prior to giving access to any person falling within subparagraphs 7 (a) (vi) or 7 (a) (viii) to Discovery Material designated as confidential pursuant to paragraph 3 of this Order, counsel for the party intending to disclose such confidential Discovery Material shall furnish a copy of this Order to the person being given access. Any person falling within subparagraphs 7(a) (vi) or 7(a) (viii)

being given access to Discovery Material shall execute a copy of this Agreed Protective Order in the space provided on Exhibit A. Counsel retaining a testifying expert shall furnish a copy of this Agreed Protective Order executed by the testifying expert to counsel who produced the confidential Discovery Material at the time the confidential Discovery Material is provided to the testifying expert, or at the time the party's expert designation is served, whichever is later. For purely consulting experts, the party retaining the expert shall furnish to the party who designated the Discovery Material a copy of the Agreed Protective Order executed by the consulting expert at the conclusion of this lawsuit as to the party designating the confidential Discovery Material.

3. Persons producing Discovery Material may designate as confidential Discovery Material containing trade secrets, or other confidential or proprietary research, development, manufacturing or commercial or business information ("Confidential Discovery Material"). Without prejudice to the right of the producing party to object to the production of the following information or of the requesting party to seek production, the information subject to such designation shall include the producing party's:

> a. Customer names;
> b. Proprietary licensing, distribution, marketing, design, development, research and manufacturing information regarding products and medicines, whether previously or currently marketed or under development;
> c. Clinical studies;
> d. Information concerning competitors;
> e. Production information;
> f. Personnel records and information;
> g. Financial information not publicly filed with any federal or state regulatory authorities; and
> h. Information submitted to the FDA or other governmental agency, that under applicable regulations is exempt from disclosure under the Freedom of Information Act.

4. Confidential Discovery Material, if a writing, shall have the following language stamped on the face of the writing, or shall otherwise have such language clearly marked:

**CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER**
Such stamping or marking will take place prior to production by the producing person, or subsequent to selection by the receiving party for copying but prior to the actual copying if done expeditiously. The stamp shall be affixed in such manner as not to obliterate or

obscure any written matter. In the case of deposition testimony, confidentiality designations shall be made within thirty (30) days after the transcript has been received by counsel making the designation, and shall specify the testimony being designated confidential by page and line number(s). Until the expiration of such 30 day period, the entire text of the deposition, including all testimony therein and exhibits thereto, shall be treated as confidential under this Protective Order. In the event that the producing person inadvertently fails to designate Discovery Material as confidential in this or any other litigation, it may make such a designation subsequently by notifying all parties to whom such Discovery Material was produced, in writing as soon as practicable. After receipt of such notification, the parties to whom production has been made shall treat the designated Discovery Material as confidential, subject to their right to dispute such designation in accordance with paragraph 8 hereof.

5. In the event that any question is asked at a deposition which a party or nonparty asserts calls for confidential information, such question shall nonetheless be answered by the witness fully and completely, to the extent required by law. Counsel for the deponent shall, either at the deposition or within thirty (30) days after receipt of the transcript thereof by said counsel, notify all counsel on the record or in writing, that the information provided in such answer is confidential.

6. Confidential Discovery Material shall be used solely for the purposes of this Litigation and for no other purpose without prior written approval from the Court or the prior written consent of the producing person. All persons receiving or given access to Confidential Discovery Material in accordance with the terms of this Protective Order consent to the continuing jurisdiction of the Court for the purposes of enforcing this Protective Order and remedying any violations thereof.

7. Confidential Discovery Material shall not be disclosed to anyone other than the following categories of persons:

a. The Court (and any appellate court), including court personnel, jurors, and alternate jurors only in the manner provided in paragraph 10 below.

b. With respect to Confidential Discovery Material produced by plaintiffs, defendants' in-house counsel, in-house paralegals and outside counsel, including any attorneys employed by or retained by defendants' outside counsel who are assisting in connection within this Litigation, and the paralegal, clerical, secretarial, and other staff employed or retained by such outside counsel or retained by the attorneys employed by or retained by defendants' outside counsel.

c. With respect to Confidential Discovery Material produced by defendants, plaintiffs' attorneys in this Litigation, including the paralegal, clerical, secretarial, and other staff employed or retained by such counsel, as well as plaintiffs' attorneys in other filed litigation involving PPA, including their paralegal, clerical, secretarial and other staff employed or retained by such counsel,

provided that such counsel has agreed to be governed by the terms of
this Order.

d. With respect to Confidential Discovery Material produced by any
Defendant, outside counsel for any other Defendant, including any
attorneys employed by or retained by any other Defendant's outside
counsel who are assisting in connection with the this Litigation, and
the paralegal, clerical, secretarial, and other staff employed or
retained by such outside counsel.

e. Court reporters (including persons operating video recording
equipment at depositions) and persons preparing transcripts of
testimony to the extent necessary to prepare such transcripts.

f. Retained experts, advisors and consultants (including persons
directly employed by such experts, advisors and consultants), but
only to the extent necessary to perform their work in connection with
this Litigation.

> i. If plaintiffs or their counsel wish to disclose
> Confidential Discovery Material to an expert, advisor, or
> consultant who is an employee, officer, director, agent,
> contractor, subcontractor or consultant of any entity that is
> or potentially may be engaged in the research, development,
> manufacture or sale of any product for the treatment of
> cough, cold or allergy symptoms, or for the assistance in
> weight loss, or in any other way is or may be a potential
> competitor of any Defendant, plaintiff(s) or his/her/their
> counsel shall promptly so notify the disclosing party's
> counsel, including with such notification a copy of the
> expert's curriculum vitae prior to disclosing any
> Confidential Discovery Material to that expert advisor or
> consultant. Within five (5) business days of receiving such
> notification and curriculum vitae, the disclosing party's
> counsel shall notify plaintiff's counsel whether the
> disclosing party objects to the disclosure of Confidential
> Discovery Material to the proposed expert. Any such objection
> shall be made in good faith and on reasonable grounds. If an
> objection is made and not resolved by the parties, the party
> objecting to disclosure shall file a motion (or letter to the
> Court) in support of that objection within seven (7) business
> days of the objection. Under no circumstances shall
> Confidential Discovery Material be disclosed to an expert,
> advisor, or consultant who is an employee, officer, director,
> agent, contractor, subcontractor or consultant of any entity
> that is or potentially may be engaged in the research,
> development, manufacture or sale of any product for the
> treatment of cough, cold or allergy symptoms, or for the
> assistance of weight loss, in any other way is or may be a
> potential competitor of any Defendant, unless and until the
> parties resolve the matter, the objection is withdrawn, the
> Court permits disclosure, or defendants fail to object to
> such disclosure or file a motion in support of their

objection within the times specified herein (or other schedule agreed among the parties).

ii. If counsel for any Defendant wishes to disclose Confidential Discovery Material to an expert, advisor, or consultant who is an employee, officer, director, agent, contractor, subcontractor or consultant of any entity that is or potentially may be engaged in the research, development, manufacture or sale of any product for the treatment of cough, cold or allergy symptoms, or for the assistance in weight loss, or in any other way is or may be a potential competitor of any Defendant, the Defendant wishing to make such disclosure or its counsel shall promptly so notify counsel for any Defendant who is a competitor or potential competitor of said entity, including with such notification a copy of the expert's curriculum vitae prior to disclosing any Confidential Discovery Material to that expert advisor or consultant. Within five (5) business days of receiving such notification and curriculum vitae, counsel for the Defendant (s) who is a competitor or potential competitor of said entity shall notify the counsel for the Defendant who wishes to make the disclosure whether they object to the disclosure of Confidential Discovery Material to the proposed expert. Any such objection shall be made in good faith and on reasonable grounds. If an objection is made and not resolved by the parties, the party making the objection shall file a motion (or letter to the Court) in support of that objection within seven (7) business days of the objection. Under no circumstances shall Confidential Discovery Material be disclosed to an expert, advisor, or consultant who is an employee, officer, director, agent, contractor, subcontractor or consultant of any entity that is or potentially may be engaged in the research, development, manufacture or sale of any product for the treatment of cough, cold or allergy symptoms, or for assistance in weight loss, or in any other way is or may be a potential competitor of any Defendant, unless and until the parties resolve the matter, the objection is withdrawn, the Court permits disclosure, or the parties who oppose the disclosure fail to object to such disclosure or file a motion in support of their objection within the times specified herein (or other schedule agreed among the parties).

g. The author or recipient of the Confidential Discovery Material.
h. Such persons as the undersigned counsel shall consent to in writing before the proposed disclosure.
8. All outside counsel, in-house counsel, plaintiff's counsel, in-house paralegals and the employees and assistants of all counsel receiving discovery shall take all steps reasonably necessary to prevent the disclosure of Confidential Discovery Material other than in accordance with the terms of this Order.

9. Disclosure of Confidential Discovery Material other than in accordance with the terms of this Protective Order may subject the disclosing person to such sanctions and remedies as the Court may deem appropriate.

10. a. If at any time a party wishes for any reason to dispute a designation of Discovery Material as confidential hereunder, such party shall notify the designating party of such dispute in writing, specifying the Discovery Material in dispute and the nature of the dispute. If the parties are unable amicably to resolve the dispute, the disputing party may apply by motion to the Court for a ruling as to whether the designated Discovery Material may properly be treated as confidential. The designating party shall have the burden of proof on such motion to establish the propriety of its confidentiality designation.

b. All Discovery Material designated as confidential under this Order, whether or not such designation is in dispute pursuant to subparagraph 8(a) above, shall retain that designation and be treated as confidential in accordance with the terms hereof unless and until:

i. The producing party agrees in writing that the material is no longer confidential and subject to the terms of this Order; or

ii. This Court enters an Order that the matter shall not be entitled to confidential status and that Order is not subject to an appellate stay within twenty (20) days after it is issued.

c. The parties shall negotiate in good faith before filing any motion relating to this Order.

11. Any non-party may subscribe to the terms and protections of this Protective Order by designating Discovery Materials that the non-party is producing (whether written documents, deposition testimony, or other) as set forth in paragraph 4.

12. Any Confidential Discovery Material that is filed with the Court, and any pleading, motion or other paper filed with the Court containing or disclosing any such Confidential Discovery Material shall be filed under seal and shall bear the legend:

> "THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION COVERED BY A PROTECTIVE ORDER OF THE COURT AND IS SUBMITTED UNDER SEAL PURSUANT TO THAT PROTECTIVE ORDER. THE CONFIDENTIAL CONTENTS OF THIS DOCUMENT MAY NOT BE DISCLOSED WITHOUT EXPRESS ORDER OF THE COURT."

Said Confidential Discovery Material and/or other papers shall be kept under seal until further order of the Court; however, said Confidential Discovery Material and other papers filed under seal shall be available to the Court and counsel of record, and to all other persons entitled to receive the confidential information contained therein under the terms of this Order.

13. a. Nothing in this Order shall prevent or restrict counsel for any party in any way from inspecting, reviewing, using or disclosing

any Discovery Material produced or provided by that party, including Discovery Material designated as confidential.

b. Nothing shall prevent disclosure beyond that required under this Order if the producing party consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders such disclosure and that Order is not subject to an appellate stay within twenty (20) days after it is issued.

c. No disclosure pursuant to this paragraph 11 shall waive any rights or privileges of any party granted by this Order.

14. This Protective Order shall not enlarge or affect the proper scope of discovery in this or any other litigation, nor shall this Protective Order imply that Discovery Material designated as confidential under the terms of this Protective Order is properly discoverable, relevant or admissible in this or any other litigation.

15. The entry of this Protective Order shall be without prejudice to the rights of the parties, or any one of them, or of any non-party to assert or apply for additional or different protection at their discretion.

16. All counsel of record in this litigation shall make a good faith effort to comply with the provisions of this Protective Order and to ensure that their clients do so. In the event of a change in counsel, retiring counsel shall fully instruct new counsel of their responsibilities under this Order.

17. The terms of this Order shall survive and remain in effect after the termination of this Litigation. The parties shall take such measures as are necessary and appropriate to prevent the public disclosure of Confidential Discovery Material, through inadvertence or otherwise, after the conclusion of this Litigation.

18. Within fifteen (15) days of the termination of this Litigation as to the producing party, including all appeals, the parties shall return to counsel for the producing party the Confidential Discovery Material produced by the other party and all copies thereof, or the parties may agree upon appropriate methods of destruction.

19. If Confidential Material in the possession of a receiving party is subpoenaed by any court, administrative or legislative body, or any other person or organization purporting to have authority to subpoena such data or information, the party to whom the subpoena is directed shall not, to the extent permitted by applicable law, provide or otherwise disclose such documents or information without waiting ten (10) business days after first notifying counsel for the producing party in writing of: (1) the information and documentation which is requested for production in the subpoena; (2) the date on which compliance with the subpoena is requested; (3) the location at which compliance with the subpoena is requested; (4) the identity of the party serving the subpoena; and (5) the case name, jurisdiction and index, docket, complaint, charge, civil action or other identification number or other designation identifying the litigation, administrative proceeding or other proceeding in which the subpoena has been issued.

20. Inadvertent production of documents subject to work-product

immunity, the attorney-client privilege or other legal privilege
protecting information from discovery shall not constitute a waiver
of the immunity or privilege, provided that the producing party shall
promptly notify the receiving party in writing of such inadvertent
production. If reasonably prompt notification is made, such
inadvertently produced documents and all copies thereof, as well as
all notes or other work product reflecting the contents of such
materials, shall be returned to the producing party or destroyed,
upon request, and such returned or destroyed material shall be
deleted from any litigation-support or other database. No use shall
be made of such documents during deposition or at trial, nor shall
they be shown to anyone who was not given access to them prior to the
request to return or destroy them. The party returning such material
then may move the Court for an order compelling production of the
material, but such motion shall not assert as a ground for entering
such an order the fact or circumstances of the inadvertent
production.
21. This Order does not restrict or limit the use of Confidential
Discovery Material at any hearing or trial. Nothing in this Order,
however, shall prevent any party from seeking an appropriate
protective order to govern such use of Confidential Discovery
Material at a hearing or trial.
22. This Order shall not prevent any persons bound hereby from making
use of information or documents without the restrictions of this
Order if the information or documents are lawfully in their
possession and/or lawfully obtained through discovery in this
litigation or in any related state court litigation in which such
information was not designated as "confidential" or subject to a
protective order or court order as "confidential" or subject to
confidential treatment, or where there has been a final judgment
(including any appeal therefrom) declaring that such information or
documents are not confidential.
**IT IS SO ORDERED.**


/s/
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

### EXHIBIT A
### EXPERT WITNESS ENDORSEMENT OF AGREED PROTECTIVE ORDER

I hereby attest to my understanding that information or documents
designated confidential are provided to me subject to the Agreed
Protective Order for the Protection of Confidential Information dated
_____, _____ (the "Protective Order"), in the above-
captioned litigation; that I have been given a copy of and have read
the Agreed Protective Order, and that I agree to be bound by its
terms. I also understand that my execution of this Agreed Protective
Order, indicating my agreement to be bound by the Agreed Protective
Order is a prerequisite to my review of any information or documents

designated as confidential pursuant to the Agreed Protective Order. I further agree that I shall not disclose to others, except in accord with the Agreed Protective Order, any Confidential Discovery Material, in any form whatsoever, and that such Confidential Discovery Material, in any form whatsoever, and that such Confidential Discovery Material and the information contained therein may be used only for the purposes authorized by the Agreed Protective Order.

I further agree and attest to my understanding that my obligation to honor the confidentiality of such Discovery Material and information will continue even after this litigation concludes.

I further agree and attest to my understanding that, if I fail to abide by the terms of the Protective Order, I may be subject to sanctions, including contempt of court, for such failure. I agree to be subject to the jurisdiction of the United States District Court, Western District of Washington, for the purposes of any proceedings relating to enforcement of the Protective Order.

I further agree to be bound by and to comply with the terms of the Agreed Protective Order as soon as I sign this Agreement, whether or not the Agreed Protective Order has yet been entered as an Order of the Court.

**File for Download is available on WebPacer**



Western District of Washington U.S.D.C.

# Case Management Orders

**Subject:**
**Case Management Order No. 3**

**Date of Order:**
**01/29/2002**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION This document relates to all actions MDL Docket No. 1407 CASE MANAGEMENT ORDER NO. 3 (Preservation of Documents)

This Order governs the preservation of evidence in this case and shall remain in effect for each party while it is a party to these proceedings or until another order of this Court supersedes this Order. This Order supercedes any order previously entered in any individual action (to the extent that such individual order imposes obligations in addition to the obligations set forth herein, this Order shall be given nunc pro tunc effect to the date the order in the individual action was entered).

1. Scope

This Order pertains to documents or tangible items that may pertain or relate to phenylpropanolamine ("PPA") and otherwise relates to the claims in the above-captioned proceedings. This Order pertains only to preservation and nothing in this Order shall be construed to affect the discoverability or admissibility of any document or tangible item. All objections to discoverability or admissibility are maintained and may be asserted at any time.

For purposes of this Order, "tangible items" includes, but is not limited to, product bottles, containers, packaging, or unused product in the possession of any plaintiff or within his or her control and any exemplar bottles, containers or packaging in the possession of any Defendant.

For purposes of this Order, "document" means documents and data existing in any form, including any writing (in the broadest sense consistent with Federal Rule of Evidence 1001), drawing, film, videotape, chart, photograph, phonograph record, tape record, mechanical or electronic sound recording or transcript thereof, retrievable data (whether carded, taped coded, electrostatically or electromagnetically recorded, or otherwise), or other data compilation from which information can be obtained, databases, document images, photographs, microfilm, microfiche, backup tapes (or other backup media), including (but not limited to) notices, memoranda, emails, diaries, minutes, purchase records or receipts, purchase invoices, market data, correspondence, computer storage tapes, computer storage cards or disks, books, journals, ledgers, statements, reports, invoices, bills, vouchers, worksheets, jottings, notes, letters, abstracts, audits, charts, checks, diagrams, drafts, recordings, instructions, lists, logs, orders, recitals, telegram messages, telephone bills and logs, resumes, summaries, compilations, computations, any form of medical record, and other formal and informal writings or tangible preservations of information.

2. Preservation

While this Order remains in effect, each of the parties herein and their respective officers, agents, servants, employees, and attorneys and all persons in active concert or participation with them, who

receive actual notice of this order by personal service or otherwise, are restrained and enjoined from altering, destroying, permitting the destruction of, or in any other fashion changing any document or tangible item in the actual or constructive care, custody, or control of such person, wherever such document or tangible item is physically located. This Order imposes no duty on any party to notify any agents or third parties regarding this Order and parties have no responsibility for actions taken by agents or third parties unless taken at the direction of a party. Plaintiffs and defendants shall take steps to ensure that the documents or tangible items within the scope of this Order shall not be moved from their original location except as in the ordinary course of business or practice, or to facilitate compilation, review or production (as by filing in a document depository).

The parties are directed to meet and confer as to any issues relating to the parties' need to change the location of any document outside of the ordinary course of business or to facilitate compilation, review or production. If the parties are unable to agree, any party may apply to the Court for relief from this Order upon reasonable notice.

3. Limitation for Newly Created Documents

The obligation to preserve documents (including but not limited to electronic data and email) created subsequent to the effective date of this Order ("newly created documents") is limited to only those company employees who during the regular course of their employment would be responsible for or directly oversee others responsible for any of the following subjects and is limited to documents relating to any of the following subjects:

> 1) The regulatory status of PPA as an ingredient in either over-the-counter or prescription drug;
> 2) The risk or occurrence of strokes with the use of PPA;
> 3) The collection and/or reporting of adverse reactions occurring with the use of PPA; and
> 4) The number and identity of individuals asserting claims against the Defendants for injuries sustained while using a PPA product.

The duty to preserve newly created documents shall not extend to (a) documents that are protected by the attorney client privilege or work product doctrine, including, but not limited to, briefs, motions, legal or factual memoranda, notes, communications or other similar materials created in anticipation of or during the course of any litigation concerning PPA by or for any attorney representing any party to the proceedings coordinated in this Court, or in any other legal proceedings involving PPA; (b) documents consisting of temporary compilation of information, such as dictation, drafts, and interim versions of documents, if such temporary compilations of information would not have been preserved in the ordinary course of business; and (c) multiple identical copies of a document, including photocopies and electronically-stored data so long as the original document, or an identical copy thereof, remain in possession, custody or control of a party The retention of full back-up of any server or other computer on a monthly basis shall relieve the party of any obligation to maintain any incremental or interim back-ups of such server or other computer. Nothing in this Order shall require any party to implement any procedure relating to the backing-up of electronic data that such party does not already have in place.

4. Superceding Orders

The scope and manner of each party's document and data preservation obligations as set forth within this Order shall be superceded automatically by any subsequent order applicable to said party issued by this Court, or any state court in PPA related litigation, which acts to alter the obligations of said party set forth herein.

5. Miscellaneous

The preservation obligations of this Order are not intended to displace, lessen, or heighten any parties' preservation obligations pursuant to law.

**IT IS SO ORDERED.**

/s/
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

**File for Download is available on WebPacer**



Western District of Washington U.S.D.C.

# Case Management Orders

Subject:                                                          Date of Order:
**Case Management Order No. 6 And Plaintiff's Fact Sheet** 03/21/2002
THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, | MDL NO. 1407 CASE MANAGEMENT ORDER NO. 6 (CASE SPECIFIC FACT DISCOVERY PROCEDURES AND PLAN) |
|---|---|
| This document relates to all actions. | |

## I. INTRODUCTION.

The parties having submitted a proposed Case Management Order No. 6, setting forth the proposed schedule and protocol for conducting all case-specific fact discovery within MDL 1407 for all cases transferred to this Court, and after review and consideration of the parties' submission, the Court hereby orders as follows:

## II. SOLE AND EXCLUSIVE FORUM FOR CONDUCTING CASE-SPECIFIC FACT DISCOVERY.

All case-specific fact discovery in cases transferred to this Court for purposes of the coordination of discovery and other common pretrial proceedings shall occur under the express limitations set forth below and during the time period permitted herein. Upon remand to transferor courts, there shall be no case-specific fact discovery conducted by any party, except upon a showing of good cause to the transferor judge.

## III. CASE-SPECIFIC FACT DISCOVERY CONDUCTED BY DEFENDANTS.

Case-specific fact discovery by defendants shall be governed by applicable Federal Rules of Civil Procedure and Local Rules except as otherwise provided herein or in any subsequent Case Management Order.

The following protocol and limitations shall apply in all cases transferred to this Court:

A. Fact Sheet. Plaintiff(s) in each case transferred to this Court shall complete a **Plaintiff's Fact Sheet** ("Fact Sheet"), a copy of which is attached hereto at Tab A. Within five (5) business days after the entry of this CMO No. 6, Liaison Counsel for Plaintiffs shall forward (electronically or otherwise) to each plaintiff's counsel a copy of this CMO No. 6 and Fact Sheet, and certify that fact to Liaison Counsel for Defendants. Plaintiffs in all cases currently docketed in this Court as of the date of entry of this CMO No. 6, shall complete the Fact Sheet and serve same upon Defendants' Liaison Counsel and counsel of record in the applicable case no later than 45 days after transmission of the Fact Sheet. Plaintiffs in all

cases transferred and docketed to this Court after the date of entry of this CMO No. 6, shall be served with a copy of this CMO No. 6 and Fact Sheet by Defendants' Liaison Counsel upon the docketing of this case in the MDL in the Western District of Washington, and shall complete the Fact Sheet and serve same upon Defendants' Liaison Counsel and counsel of record in the applicable case no later than 45 days after service of the Fact Sheet.

Should any plaintiff fail to serve a Fact Sheet within the time allowed, Defendants' Liaison Counsel shall send a warning letter to that plaintiff's attorney of record, with a copy to the Plaintiffs' Liaison Counsel. Should a plaintiff fail to provide complete responses within 30 days of the sending of the warning letter, defendants may move the Court for appropriate relief. The parties shall meet and confer as soon as practicable to resolve disputes concerning answers to Fact Sheets. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

B. <u>Interrogatories</u>. At any time during the period allowed for case-specific fact discovery, defendants may propound no more than ten (10) interrogatories, including discrete subparts pursuant to Fed. R. Civ. P. 33, directly to the counsel of record for plaintiff(s) in each respective case. These interrogatories may not duplicate any request contained in the *Plaintiff's Fact Sheet*. Answers to interrogatories shall be served by plaintiffs directly to counsel of record for each defendant, no later than forty-five (45) days after receipt of same.

The parties shall meet and confer as soon as practicable to resolve disputes concerning the responses to any interrogatories. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

C. <u>Rule 34 Document Requests</u>. At any time during the period allowed for case-specific fact discovery, each defendant may serve no more than ten (10) case-specific Rule 34 document requests directly to plaintiff(s) of each case. Defendants may not duplicate any request for documents contained in the *Plaintiff's Fact Sheet*. Absent agreement by the plaintiff, defendants may apply to the Court to serve additional document requests only upon a showing of good cause and the specific identification of the additional request(s) sought to be served. Responses to any such Rule 34 request shall be served directly to counsel of record for defendants in the individual case filed by the responding plaintiff, no later than forty-five (45) days after receipt of same.

The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

D. <u>Depositions</u>. Defendants shall be entitled to conduct a total of ten (10) depositions as part of their case-specific fact discovery in each case transferred to this Court. For purposes of this order, treating physicians shall be considered "fact" witnesses. Absent agreement by the plaintiff, defendants may apply to the Court to conduct further depositions only upon a showing of good cause and the specific identification of the individuals(s) sought to be deposed. The deposition of each plaintiff shall be limited to seven (7) hours of actual deposition time, absent agreement or further order of this Court upon a showing a good cause. Depositions of all other case-specific fact witnesses shall be limited to four (4) hours of actual deposition time, unless defendants can show a need for additional time to conduct a particular non-party deposition.

Case-specific fact depositions in any particular case may commence no earlier than one hundred and twenty (120) days after the plaintiff serves a completed Fact Sheet on defendants, except as provided in paragraph IV.C of this CMO No. 6, otherwise agreed to by the parties, or upon further order of this court. Defendants may not depose any case-specific witness, including plaintiffs, more than once, without a showing of good cause and necessity. Counsel shall attempt in good faith to cooperate in the scheduling of depositions permitted in this section considering the demands on the time and schedules of both the parties and their respective counsel. Counsel shall meet and confer as soon as practicable to resolve any scheduling dispute(s). Motions to compel or for protective orders shall only be filed on those issues that cannot in good faith be resolved. In all other respects, depositions conducted by defendants pursuant to this order shall comply with the applicable deposition procedures and protocols established in CMO No. 1.

**IV. CASE-SPECIFIC FACT DISCOVERY CONDUCTED BY PLAINTIFFS.**

Plaintiffs shall be permitted to conduct limited case-specific fact discovery as to defendants as set forth below, which shall be governed by applicable Federal Rules of Civil Procedure and Local Rules except as otherwise provided herein or in any subsequent Case Management Order.

The following protocol and limitations apply in all cases transferred to this Court:

A. Interrogatories. At any time during the period allowed for case-specific fact discovery, each plaintiff may propound no more than ten (10) case-specific interrogatories, including discrete subparts pursuant to Fed. R. Civ. P. 33, directly to the counsel of record for defendant(s) in each respective case. By case-specific, the Court means interrogatories addressing issues specific to the case such as product identification, product lot number, product distribution information as to the plaintiff's pharmacy or retail store at issue and other similar matters. Individual plaintiffs may not duplicate any interrogatory contained in the *Master First Set of Interrogatories Propounded to Each Defendant* referenced in CMO No. 1. Answers to case-specific interrogatories shall be served by defendants directly to counsel of record for each plaintiff, no later than forty-five (45) days after receipt of same.

The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

B. Rule 34 Document Requests. At any time during the period allowed for case-specific fact discovery, each plaintiff may serve no more than ten (10) case-specific Rule 34 document requests directly to the defendant(s) of record in the respective case. By case-specific, the Court means interrogatories addressing issues specific to the case such as product identification, product lot number, product distribution information as to the plaintiff's pharmacy or retail store at issue and other similar matters. Individual plaintiffs may not duplicate any request contained in the *Master First Request for Production of Documents to Each Defendant* referenced in CMO No. 1. Absent agreement by the defendant(s), plaintiffs may apply to the Court to serve additional document requests only upon a showing of good cause and the specific identification of the additional request(s) sought to be served. Rule 34 responses shall be served directly to counsel of record for each plaintiff, no later than forty-five (45) days after receipt of same.

The parties shall meet and confer as soon as practicable to resolve disputes concerning withheld documents. Motions to compel should only be filed on those issues that cannot in good faith be resolved.

C. Case-Specific Depositions Conducted by Plaintiffs. Except as provided below, case-specific fact depositions in any particular case may commence no earlier than one hundred and twenty (120) days after the plaintiff serves a completed Fact Sheet on defendants, unless otherwise agreed to by the parties or upon further order of this court. Counsel shall attempt in good faith to cooperate in the scheduling of depositions permitted in this section considering the demands on the time and schedules of both the parties and their respective counsel. Counsel shall meet and confer as soon as practicable to resolve any scheduling dispute(s). Motions to compel or for protective orders shall only be filed on those issues that cannot in good faith be resolved. If there is an imminent risk that the plaintiff may become incapacitated or perish at any time prior to the expiration of the 120 day period discussed above, plaintiff's counsel may take a preservation deposition of the plaintiff after providing reasonable notice pursuant to the terms of CMO No. 1 given the circumstances of the plaintiff's health. Defendants are entitled to take a discovery deposition of the plaintiff prior to the taking of a preservation deposition. Any time used by Plaintiffs in conducting a deposition pursuant to the terms of this section shall not reduce the Defendants' permitted time to conduct that deposition as set forth in paragraph III.D. herein. In all other respects, depositions conducted by plaintiffs pursuant to this order shall comply with the applicable deposition procedures and protocols established in CMO No. 1.

**V. DOCUMENT SUBPOENAS TO NON-PARTIES.**
Commencing upon entry of this Order, any party may serve case-specific subpoenas on non-parties for the production of documents without testimony pursuant to Fed. R. Civ. P. 45.

**VI. COMPLETION DEADLINE FOR ALL CASE-SPECIFIC FACT DISCOVERY AND REMAND.**
Except as to cases where an extension of time has been permitted under Section III above: (a) case-specific discovery for cases transferred and docketed in this Court as of February 12, 2002 shall be

completed no later than February 28, 2003; and (b) case-specific discovery for cases transferred and docketed in this Court after February 28, 2002 shall be completed no later than twelve (12) months after the date of docketing in this Court. Absent mutual consent of the parties thereto or further order of the court, no case shall be subject to remand to its transferor court prior to the completion deadline for case-specific fact discovery applicable to it.

DATED this 18th day of March, 2002.

_____/s/_____

HONORABLE BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

**IN RE Phenylpropanolamine (PPA)**
**Products Liability Litigation MDL No. 1407**

## PLAINTIFF'S FACT SHEET

Please provide the following information for each individual on whose behalf a claim is being made. In filling out this form, please use the following definitions: (1) "health care provider" means any hospital, clinic, center, physician's office, infirmary, medical or diagnostic laboratory, or other facility that provides medical, dietary, psychiatric, mental, emotional or psychological care or advice, and any pharmacy, weight loss center, counselor, dentist, x-ray department, laboratory, physical therapist or physical therapy department, rehabilitation specialist, physician, psychiatrist, osteopath, homeopath, chiropractor, psychologist, therapist, nurse, herbalist, nutritionist, dietician, or other persons or entities involved in the evaluation, diagnosis, care and/or treatment of you; (2) "document" means any writing or record of every type that is in your possession or the possession of your counsel, including but not limited to written documents, e-mails, cassettes, videotapes, photographs, charts, computer discs or tapes, and x-rays, drawings, graphs, phono-records, nonidentical copies and other data compilations from which information can be obtained and translated, if necessary, by the respondent through electronic devices into reasonably usable form. You may attach as many sheets of paper as necessary to fully answer these questions. If you have any documents (as defined above), including, but not limited to, packaging, instructions, PPA-containing product or other materials or items that you are requested to produce as part of answering this fact sheet or that relate to PPA, any PPA-containing product or medication you allegedly took, or the incident, injuries, claims or damages that are the subject of your complaint, you must NOT dispose of, alter or modify these documents or materials in any way. You are also required to give all of these documents and materials to your attorney as soon as possible. If you are unclear about these obligations please contact your attorney.

I. CASE INFORMATION

        A. Please state the following for the civil action which you filed:

                1. Case Caption:

                2. Civil Action No. in Western District of Washington:

                3. Transferor Court and Civil Action No. in that court

                4. Please state name, address, telephone number, fax number and e-mail address of principal attorney representing you.

                Attorney Name

Firm

Street Address

City, State and Zip Code

Telephone number Fax Number

e-mail address

B. If you are completing this questionnaire in a representative capacity (e.g., on behalf of the estate of a deceased person or a minor), please complete the following:

1.

Your Name

2.

Street Address

3.

City, State and Zip Code

4. In what capacity are you representing the individual

5. If you were appointed by a court, state the:

Court Date of Appointment

6. Your relationship to deceased or represented person:

7. If you represent a decedent's estate, state the date of death of the decedent.

[If you are completing this questionnaire in a representative capacity, please respond to the remaining questions with respect to the person who used PPA-containing medications or products. Those questions using the term "You" refer to the person who used the PPA-containing medications or products. If the individual is deceased, please respond as of the time immediately prior to his or her death unless a different time period is specified.]

C. Claim Information

Do you claim that any physical, psychiatric, psychological or emotional injuries, illnesses and/or conditions have resulted from your use of PPA-containing medications and/or products?

Yes_No

If the answer to the foregoing question is yes, state the nature of the injuries, illnesses or conditions.

D. Identify by complete brand name and/or trade name the PPA-containing medications and/or products you claim caused your injuries, including the specific type or version of the medication or product, and the date on which you ingested each such product or medication.

II. PERSONAL INFORMATION

A. Last Name:

First Name:

Middle Name or Initial:

B. Maiden or other names used or by which you have been known, and the dates during which you were known by such names:

C. Present Street Address:

D. Current or last employer

Name

Street Address, City, State and Zip Code

Dates of Employment

Occupation

E. Social Security Number:

F. Driver's License Number:

G. Date and Place of Birth:

H. Sex: Male_Female

I. Racial and Ethnic Background:

J. Have you ever served in any branch of the military?
Yes_No

    1. Branch and dates of service:

    2. Were you discharged for any reason relating to your medical, physical, psychiatric or emotional condition?

    Yes_No

If yes, state what that condition was.

    3. Have you ever served overseas?
Yes_No

If yes, state location and dates.

K. Have you ever been rejected from military service for any reason relating to your health or physical condition?
Yes_No

L. Have you ever filed a worker's compensation claim?
Yes_No
If yes, please state:

    1. Year claim was filed:

    2. Where claim was filed:

    3. Claim/docket number, if applicable

    4. Nature of disability:

    5. Period of disability:

    [Attach additional sheets as necessary to describe more than one claim.]

M. Have you ever filed a social security disability claim?
Yes_No

If yes, please state:

    1. Year claim was filed:

    2. Where claim was filed:

    3. Nature of disability:

4. Period of disability:

[Attach additional sheets as necessary to describe more than one claim.]
N. Have you ever filed any other form of disability claim?
                    Yes_No

If yes, please state:

1. Year claim was filed:

2. Where claim was filed:

3. Name of insurer/employer or other party to whom
claim was made:

4. Nature of disability:

5. Period of disability:

O. Have you ever been denied life insurance for reasons relating to your medical, physical, psychiatric or
emotional condition?
                    Yes_No

If yes, please state when, the name of the company and the company's stated reason for denial.

P. Have you ever filed a lawsuit or made a claim, other than in the present suit, seeking damages?
                    Yes_No

If yes, state the court in which such claim was filed, the caption, case name and/or names of
adverse parties, and the civil action or docket number assigned to each such claim, action or
suit, and a brief description of the claims asserted.

Q. Have you been convicted of a felony within the last 10 years?
                    Yes_No

R. Identify each address at which you have resided during the last ten (10) years, including time periods of
residence

S. Has any insurance or other company provided medical coverage to you (either directly or through a group
including any employer of yours) or paid medical bills on your behalf at any time, beginning ten (10) years
before your alleged PPA injury through the present?

Yes ____ No ____

If "yes," then as to each such Company, separately state:
(i) Name of company;
(ii) Address of company;
(iii) The account/policy number or designation;
(iv) Dates of coverage; and
(v) When claim was made.

T. Have you ever been out of work for more than thirty (30) days for reasons related to your health?
Yes_No

If yes, please state the dates, employer and health condition:

_____

_____

_____

_____


## III. EDUCATIONAL HISTORY

Identify each school, college, university or other educational institution you have attended, the dates of attendance, courses of study pursued and diplomas or degrees awarded:


## IV. FAMILY INFORMATION

A. Have you ever been married?
Yes_No

B. If yes, for each spouse/former spouse state:

1. Spouse's name:

2. Dates of marriage:

3. Spouse's date of birth:

4. Spouse's occupation:

5. Spouse's address:

6. Nature of termination of marriage:

7. Date of dissolution of marriage:

C. Has your spouse filed a loss of consortium claim?

Yes No

D. Please provide the following information for your grandparents, parents, siblings and children:

Date of
Death

Name Relationship Date of Birth (if applicable) Occupation

## V. CURRENT MEDICAL CONDITION

A. Do you currently suffer from any physical injuries, illnesses or disabilities?

Yes No

1. Identify the injury, illness, or disability, symptoms and date(s) of onset:

Injury, illness or disability

Symptoms

Date(s) of onset

Date(s) of diagnoses

2. By whom first diagnosed:

Physician's Name Specialty

Address (if not otherwise provided)

## VI. MEDICAL BACKGROUND

A. Height:

B. Current Weight:

C. Lowest and highest weight since age 18:

D. To the best of your knowledge, have you used any of the following medications or substances from 10 years prior to the date of your injury through the present?

Date First Taken
Date Last Taken

1. Oral contraceptives

Yes No
    2. Monamine Oxidase ("MAO") inhibitors

Yes No
    3. Anticoagulants

Yes No
    4. Antidepressants

Yes No
    5. Heart medications

Yes No
    6. Blood pressure medication

Yes No
    7. Thyroid medications

Yes No
    8. Diuretics/water pills

Yes No
    9. Hormones

Yes No

    10. Psychiatric medications

Yes No
    11. Asthma/breathing medications

Yes No
    12. Nasal sprays

Yes No
    13. Attention deficit medications

Yes No
    14. Cocaine/crack cocaine

Yes No
    15. Heroin or methadone

Yes No
    16. Marijuana or hashish

Yes No
    17. LSD, Ecstasy, ICE, PCP, MDMA

Yes No
    18. Amphetamines

Yes_No
    19. Inhaled nonprescription substances (e.g., inhalation of glue or toluene)

Yes_No
    20. Methysergide (Sansert)

Yes_No
    21. Ergotamine preparations (e.g. Cafergot)

Yes_No
    22. L-tryptophan

Yes_No
    23. Any medication for migraine headaches

Yes_No
    24. Caffeine-containing stimulants (e.g. No-Doz, Vivarin)

Yes_No
    25. Over-the-Counter appetite suppressants

Yes_No
    26. Prescription diet medications

Yes_No
    27. Any other prescription medicines regularly taken in the last 10 years

Yes_No
    28. Dietary Supplements, vitamins

Yes_No
    29. Herbal Products

Yes_No
    30. Steroids Yes_No

E. Smoking history (check wherever appropriate)

1. Have you ever smoked cigarettes? Yes_No

    If no, skip to E.4.

    2. Do you currently smoke cigarettes? Yes_No

    If yes, state amount smoked: _____ packs per day for _____ years
    If no, state date on which smoking ceased and state amount smoked: _____ packs per day for
    _____ years

    3. At the time that you sustained the injuries alleged in the Complaint, were you a smoker of
    cigarettes? Yes_No

    If yes, state amount smoked: _____ packs per day for _____ years

    4. Have you ever smoked cigars or pipe tobacco? Yes_No

    If no, skip to F.

5. Do you currently smoke cigars or pipe tobacco? Yes_No

If yes, state amount smoked: ___ cigars/pipes per day for ____ years

If no, state date on which smoking ceased _____ and state amount smoked: _____ cigars/pipes per day for _____ years

6. At the time that you sustained the injuries alleged in the Complaint, were you a smoker of cigars or pipe tobacco?
Yes_No

If yes, state amount smoked: _____ packs per day for _____ years

F. Drinking History
    1. Do you currently drink alcohol (beer, wine, whiskey, etc.)?
        Yes_No
                    If yes, check which represents your current alcohol consumption.
                    1-5 drinks per week
                    6-10 drinks per week
                    11-14 drinks per week
                    15 or more drinks per week
                    Other (Describe -_____)

    2. Have you ever drunk alcohol (beer, wine, whiskey, etc.)?
                    Yes_No
                    If yes, please check which represents your greatest alcohol consumption over an
                    extended (six (6) months or greater) period within the last 10 Years?
                    1-5 drinks per week
                    6-10 drinks per week
                    11-14 drinks per week
                    15 or more drinks per week
                    Other (Describe-_____)

                    When was this period? __/__/__ -- __/__/__

    3. Check which represents your weekly alcohol consumption for the month prior to the time
    that you sustained the injuries alleged in the Complaint?
                    0 drinks per week
                    1-5 drinks per week
                    6-10 drinks per week
                    11-14 drinks per week
                    15 or more drinks per week
                    Other (Describe-_____)

G. Caffeine history

    1. Do you currently drink caffeinated beverages (coffee, tea, sodas, etc.)?

        Yes_No

        If yes, check which represents your current caffeine consumption

        1-3 drinks per day
        3-5 drinks per day
        6 or more drinks per day

    2. Have you ever drunk caffeinated beverages (coffee, tea, sodas, etc.)?

Yes No

If yes, check which represents your greatest caffeine consumption over an extended period.

1-3 drinks per day
3-5 drinks per day
6 or more drinks per day

When was this period? __/__/__ -- __/__/__

3. Check which represents your daily caffeine consumption for the month prior to the time that you sustained the injuries alleged in the Complaint?

0 drinks per day
1-3 drinks per day
3-5 drinks per day
6 or more drinks per day

H. Have you ever experienced or been diagnosed or treated for any of the following:

1. Hypertension or high blood pressure Yes No
2. Aneurysm Yes No
3. Obesity Yes No
4. Eating disorders (e.g. anorexia, bulimia) Yes No
5. Arteriovenous malformation ("AVM") Yes No
6. Abnormality of blood vessels or circulatory system Yes No
7. Blood clots or thrombosis Yes No
8. Blood disorders or dyscrasias (abnormal blood cells) Yes No
9. Autoimmune disease or condition Yes No
10. Rheumatological condition Yes No
11. Coagulopathy Yes No
12. Any clotting disorder Yes No
13. Hepatic (liver) disease or dysfunction Yes No
14. Kidney disease Yes No
15. Prostate enlargement Yes No
16. Stroke of any type (e.g., hemorrhagic stroke,
ischemic stroke, intracranial hemorrhage,
intracerebral hemorrhage, subarachnoid hemorrhage) Yes No
17. Transient ischemic attack Yes No
18. Cardiovascular disease or condition Yes No
19. Heart or heart valve disease Yes No
20. Heart attack Yes No
21. Brain tumors Yes No
22. Seizure disorder or epilepsy Yes No
23. Lupus Yes No
24. Diabetes Yes No
25. Atherosclerosis Yes No
26. Vasculitis Yes No
27. Neurological disease or condition Yes No
28. High cholesterol Yes No
29. High triglycerides Yes No
30. Irregular heart beat, arrythmia, heart
palpitations, tachycardia and bradycardia Yes No
31. Angina, chest pain Yes No
32. Bleeding disorder Yes No
33. Fainting, dizziness or lightheadedness Yes No
34. Head pounding Yes No
35. Migraine headaches Yes No

36. Memory Loss Yes_No
37. Arthritis or joint pain Yes_No
38. Shortness of breath Yes_No
39. Alcoholism Yes_No

I. If you responded yes to any of the above, please identify the condition, the date of onset and state the name of the physician or other person (and, if not provided in the accompanying list, the address of the physician or the other person) who made the diagnosis or informed you of the condition.

1. Condition:

    Onset:

    Name and address of diagnosing physician or other person:

    Generic name, brand name, strength and daily dose of any medication prescribed:

2. Condition:

    Onset:

    Name and address of diagnosing physician or other person:

    Generic name, brand name, strength and daily dose of any medication prescribed:

3. Condition:

    Onset:

    Name and address of diagnosing physician or other person:

    Generic name, brand name, strength and daily dose of any medication prescribed:

4. Condition:

    Onset:

    Name and address of diagnosing physician or other person:

    Generic name, brand name, strength and daily dose of any medication prescribed:

J. To the best of your knowledge, have your parents, siblings or grandparents or children experienced, been diagnosed with or treated for any of the following:

1. Hypertension or high blood pressure Yes___ No___ Unknown____
2. Aneurysm Yes___ No___ Unknown____
3. Obesity Yes_No_Unknown____
4. Eating disorders (e.g., anorexia, bulimia) Yes_No_Unknown____
5. Arteriovenous malformation ("AVM") Yes_No_Unknown____
6. Abnormality of blood vessels or circulatory system Yes_No_Unknown____
7. Blood clots or thrombosis Yes_No_Unknown____
8. Blood disorders or dyscrasias (abnormal blood cells) Yes_No_Unknown____
9. Autoimmune disease or condition Yes_No_Unknown____
10. Rheumatological condition Yes_No_Unknown____
11. Coagulopathy Yes_No_Unknown____
12. Any clotting disorder Yes_No_Unknown____
13. Hepatic (liver) disease or dysfunction Yes_No_Unknown____
14. Kidney disease Yes_No_Unknown____
15. Prostate enlargement Yes_No_Unknown____
16. Stroke of any type (e.g., hemorrhagic stroke, ischemic
stroke, intracranial hemorrhage, intracerebral
hemorrhage, subarachnoid hemorrhage) Yes_No_Unknown____
17. Transient ischemic attack Yes_No_Unknown____
18. Cardiovascular disease or condition Yes_No_Unknown____
19. Heart or heart valve disease Yes_No_Unknown____
20. Heart attack Yes_No_Unknown____
21. Brain tumors Yes_No_Unknown____
22. Seizure disorder or epilepsy Yes_No_Unknown____
23. Lupus Yes_No_Unknown____
24. Diabetes Yes_No_Unknown____
25. Atherosclerosis Yes_No_Unknown____
26. Vasculitis Yes_No_Unknown____
27. Neurological disease or condition Yes_No_Unknown____
28. High cholesterol Yes_No_Unknown____
29. High triglycerides Yes_No_Unknown____
30. Irregular heart beat, arrythmia, for heart, palpitations,
tachycardia and bradycardia Yes_No_Unknown____
31. Angina, chest pain Yes_No_Unknown____
32. Bleeding disorder Yes_No_Unknown____
33. Fainting, dizziness or lightheadedness Yes_No_Unknown____
34. Head pounding Yes_No_Unknown____
35. Migraine headaches Yes_No_Unknown____
36. Memory Loss Yes_No_Unknown____
37. Arthritis or joint pain Yes_No_Unknown____
38. Shortness of Breath Yes_No_Unknown____
39. Injury to any part of the body Yes_No_Unknown____
40. Alcoholism Yes_No_Unknown____

K. If you answered yes to any of the preceding, please identify the person who experienced, was diagnosed with or was treated for that condition:

1. Person

Relationship

Condition

Date of onset

Name of any medication prescribed:

2. Person

Relationship

Condition

Date of onset

      Name of any medication prescribed:

3. Person

Relationship

Condition

Date of onset

      Name of any medication prescribed:

4. Person

Relationship

Condition

Date of onset

      Name of any medication prescribed:

L. If you claim psychological, cognitive or emotional injury as a consequence of using any PPA-containing medications, state whether you have experienced or been treated for any psychological, psychiatric (including depression) or emotional problem prior to the use of the PPA-containing medications at issue.

      Yes No

If yes, please state:

1. Name and address of each person who treated you:

      a.
      Name

      Street Address (if not otherwise provided)

      b.
      Name

      Street Address (if not otherwise provided)

c.
Name

Street Address (if not otherwise provided)

2. Condition for which treated

3. When treated

M. Please indicate whether you have received any of the following procedures or surgeries:

1. Heart, lung or other chest surgery Yes_No

For what condition?

When?

Treating physician:

2. Treatment for heart attack or angina Yes_No

For what condition?

When?

Treating physician:

3. Pacemaker Yes_No

For what condition?

When?

Treating physician:

4. By-pass surgery Yes_No

For what condition?

When?

Treating physician:

5. Cranial (brain) surgery Yes No

For what condition?

When?

Treating physician:


6. Vascular surgery Yes No

For what condition?

When?

Treating physician:


7. Any other surgery Yes No

For what condition?

When?

Treating physician:


N. Have you ever received any traumatic injury to your
head, neck or chest? Yes No

If yes, please state when and describe the injury.


When Injury

Name of doctor or hospital providing treatment:


Medications taken:

O. To the best of your knowledge, state whether any of the following tests were administered BEFORE your
use of the PPA-containing medications at issue in this lawsuit.

1. Echocardiogram Yes No
2. Electrocardiogram Yes No
3. Electroencephalogram Yes No
4. Arterial or cranial angiogram Yes No
5. MRI, cat-scan or x-ray of the head, neck or brain Yes No
6. MRA (magnetic resonance angiography) Yes No

7. Other diagnostic test or imaging of the brain Yes No

P. For each test for which you answered yes, please identify the treating physician and approximate date of the test.

Test Treating Physician Approximate date

Test Treating Physician Approximate date

Test Treating Physician Approximate date

Q. To the best of your knowledge, state which of the following tests was administered AFTER your use of the PPA-containing medications at issue in this lawsuit.

1. Echocardiogram Yes No
2. Electrocardiogram Yes No
3. Electroencephalogram Yes No
4. Arterial or cranial angiogram Yes No
5. MRI, cat-scan or x-ray of the head, neck or brain Yes No
6. MRA (magnetic resonance angiography) Yes No
7. Other diagnostic test or imaging of the brain Yes No

R. For each test for which you answered yes, please identify the treating physician and approximate date of the test.

Test Treating Physician Approximate date

Test Treating Physician Approximate date

Test Treating Physician Approximate date

VII. USE OF COUGH AND COLD MEDICATIONS

Please complete the following chart with respect to each cough and cold medication and product you have taken during the 10 years before your alleged PPA injury through the present.

A. Prescription Medications or Products

Generic Brand Physical Description Single 24 Hour First & Prescribed Location Condition Or
Name Name Description of Dosage Dosage Last By Where Symptoms

Including Packaging Taken Taken Dates Purchased/ Being

Shape and Of Use Obtained Treated
Color

(For
Example-

round blue
tablets)

B. Over-The-Counter Products Or Medications

Specific Manufac- Physical Descrip- Single 24 Hour First and Taken on Location Condition
Name of turer, If Descrip- tion of Dosage Dosage Last Dates Whose Where Or
Product Known tion Packaging Taken Taken Of Use Advice or Purchased Symptoms
Including Suggestion Or obtained Being
Shape and Treated
Color (For
Example-
round blue
tablets)

VIII. USE OF WEIGHT LOSS, DIET OR APPETITE SUPPRESSANT PRODUCTS OR MEDICATIONS

If you have used weight loss, diet or appetite suppressant products or medications during the 10 years before
your alleged PPA injury through the present, please complete the following chart with respect to each such
medication or product you have taken within that time.

A. Prescription Medications

Specific Manufac- Physical Descrip- Single 24 Hour First and Taken on Location Condition
Name of turer, If Descrip- tion of Dosage Dosage Last Dates Whose Where Or
Product Known tion Packaging Taken Taken Of Use Advice or Purchased Symptoms
Including Suggestion Or obtained Being
Shape and Treated
Color (For
Example-
round blue
tablets)

B. Over-The-Counter Products Or Medications

Specific Manufac- Physical Descrip- Single 24 Hour First and Taken on Location Condition
Name of turer, If Descrip- tion of Dosage Dosage Last Dates Whose Where Or
Product Known tion Packaging Taken Taken Of Use Advice or Purchased Symptoms
Including Suggestion Or obtained Being
Shape and Treated
Color (For
Example-
round blue
tablets)

IX. THE INJURY

A. On what date and time did you first experience any symptoms you believe are related to the injury alleged in your Complaint?

B. In what city and state were you when you experienced those symptoms?

C. Were there any witnesses to the symptoms identified above? If so, state their names, addresses, phone numbers and relationship to you.

D. When did you first contact a doctor or healthcare professional concerning this injury?

E. Who was the first such contact?

F. If you were taken to a doctor or health care facility for the injury alleged in the complaint, state the name

and address of the persons, police department, fire department, emergency medical workers, or ambulance company who took you to the doctor or health care facility.

G. When did you obtain the PPA-containing medication which you claim caused your injuries?

H. State the name and address of the retailer from whom the PPA-containing medication which you claim caused your injuries was obtained?

I. Was there any expiration date on that medicine? If so, what?

J. Describe how the medicine was packaged, including the size and color of the packaging and/or box.

K. If that packaging contained a "seal," was the seal broken when you obtained the medicine?

L. Who has possession of the packaging, inserts and labeling of all PPA-containing products which you claim caused your injuries?

M. State any lot number or other identification numbers on the medicine or its packaging.

N. State the form of the medicine (liquid, pill, capsule).

O. For each medication (prescription or over the counter), drug (licit or illicit), chemical, dietary supplement, appetite suppressant or herbal remedy you recall taking at any time during the thirty (30) days preceding your injury, complete the following table.

Trade                Prescribed by
Name of              Name, Date and Amount Or on Whose    Reason for
Substance            If Any    Time Taken    Taken    Advice    Taking It

P. For each caffeine-containing substance you recall taking during the 72 hours preceding the incident (including coffee, tea, colas, etc.), complete the following table.

Trade                     Amount Consumed
Name of    Name, Date and    Amount Within 6 Hours of
Substance  If Any  Time Taken  Taken  The Incident

Q. Have you had discussions with any physician(s) about whether your condition is related to the use of PPA-containing medications?
                              Yes No

If yes, please identify:
                    Name of doctor:

                    Address:

                    Specialty:

                    Date of discussion:

and, check one of the following:

1. I was told my condition is related to the use of PPA-containing medications.

2. I was told my condition is not related to the use of PPA-containing medications.

3. I was told my condition may be related to the use of PPA-containing medications.
4. I was told by the doctor that he does not know whether my condition is related to the use of PPA-containing medications.

5. I don't recall what I was told.

If discussed with more than one doctor, please copy and complete Part A for each.

X. DAMAGE CLAIMS

A. If you claim or expect to claim that you lost earnings or suffered impairment of earnings capacity as a result of any condition which you believe was caused by your PPA-containing medication:

1. Complete the following information with respect to your employment for ten years prior to your alleged PPA injury to the present.

| Employers | Address | Type of Business/Position | Dates of Employment | Salary | Overtime | Bonus |
|-----------|---------|---------------------------|---------------------|--------|----------|-------|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

2. State the total amount of time which you have lost from work as a result of any condition which you claim or believe was caused by your use of PPA-containing medications and the amount of income which you lost.

B. Have you paid or incurred any medical expenses, including amounts billed or paid by insurers and other third party payors, which are related to any condition which you claim or believe was caused by your use of PPA-containing medications for which you seek recovery in the action which you have filed?

                                        Yes No

            If yes, please state the total amount of such expenses at this time. $

C. Please identify all persons who you believe possess information concerning your injury and/or your current medical conditions and for each, state their name, address, telephone number and a description of the information you believe they possess.

## XI. DOCUMENTS

Please attach the following documents to this declaration, to the extent that such documents are currently in your possession or in the possession of your lawyers.

A. TEN ORIGINAL SIGNED authorizations for the release of records in the form appended hereto.
B. A copy of all medical records from any physician, diet center, hospital or health care provider, who treated you for any disease, condition or symptom referred to in any or your responses to the questions above.

C. A copy of all medical records from any physician, diet center, hospital or health care provider, who treated you at any time for any neurological or cardiovascular disease, condition or symptom referred to in your response to the questions above.

D. To the extent not included in the foregoing, all records relating to any examination by a physician or other health care provider, conducted for any purpose, other than psychiatric or psychological evaluation, in the

period beginning five (5) years prior to the date upon which you used the PPA-containing medications you claim caused your injury to date.

E. If you have been the claimant or subject of any worker's compensation, Social Security or other disability proceeding, all documents relating to such proceeding.

F. All diagnostic tests or test results including reports of echocardiograms, angiograms, cat-scans, MRIs, MRAs or electroencephalograms taken within the last ten (10) years.

G. All diagnostic tests or test results including reports of echocardiograms, angiograms, cat-scans, MRIs, MRAs or electroencephalograms relating to any neurological or cardiovascular condition done at any time.

H. Copies of all documents from physicians, healthcare providers or others relating to the use of PPA-containing medications, or to any condition you claim is related to the use of PPA-containing medications.

I. All documents constituting, concerning or relating to product use instructions, product warnings, package inserts, height and weight charts, pharmacy handouts or other materials distributed with or provided to you in connection with your use of PPA-containing medications.

J. Copies of advertisements or promotions for PPA-containing medications.

K. The entire packaging, including the bottle, box and label for the PPA-containing medication you allege caused you injury and any remaining medication.

L. All documents relating to your purchase of PPA-containing medications, including, but not limited to, receipts, prescriptions or records of purchase.

M. All documents relating to PPA or any alleged health risks or hazards related to PPA in your possession at or before the time of the injury alleged in your Complaint.

N. All documents you (and not your lawyer) obtained directly or indirectly from any defendant.

O. All photographs, drawings, journals, slides or videos relating to your alleged injury after the incident, including "day-in-the-life" videotapes.

P. Copies of all documents you (and not your attorneys) obtained from any source related to PPA or to the alleged effects of ingesting PPA-containing products or medications.

Q. If you claim you have suffered a loss of earnings or earning capacity, your federal tax returns for each of the years from ten (10) years prior to your injury to the present.

R. If you claim any loss from medical expenses, copies of all bills from any physician, hospital, pharmacy or other health care provider.

S. Copies of letters testamentary or letters of administration relating to your status as plaintiff.

T. Decedent's death certificate (if applicable).

## DECLARATION

I declare under penalty of perjury that all of the information provided in this Plaintiff's Fact Sheet is true and correct to the best of my knowledge, information and belief, that I have completed the List of Medical Providers and Other Sources of Information appended hereto, which is true and correct to the best of my knowledge, information and belief, that I have supplied all the documents requested in Part XI of this declaration, to the extent that such documents are in my possession or in the possession of my lawyers, and that I have supplied the authorizations attached to this declaration.

Signature Date

IN RE: PHENYLPROPANOLAMINE ("PPA") PRODUCTS LIABILITY LITIGATION
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE
MDL NO. 1407

LIST OF MEDICAL PROVIDERS
AND OTHER SOURCES OF INFORMATION

EACH PLAINTIFF WHO IS REQUIRED TO COMPLETE A DECLARATION MUST FULLY AND ACCURATELY
COMPLETE THIS FORM LISTING MEDICAL CARE PROVIDERS AND OTHER SOURCES OF INFORMATION AS
REQUESTED.

List the name and address of each of the following:

A. Your current primary care physician(s):

Name

Street Address

City, State, Zip Code

B. To the best of your ability, identify each of your primary care physicians for the 10 years prior to your PPA injury through
the present:

1.
Name Approximate dates

Last known address

City, State, Zip Code

2.
Name Approximate dates

Last known address

City, State, Zip Code

3.
Name Approximate dates

Last known address

City, State, Zip Code

4.
Name Approximate dates

Last known address

City, State, Zip Code

C. Each cardiologist or neurologist who has ever seen or treated you:

1.
Name

Specialty

Street Address

City, State, Zip Code

2.
Name

Specialty

Street Address

City, State, Zip Code

3.
Name

Specialty

Street Address

City, State, Zip Code

4.
Name

Specialty

Street Address

City, State, Zip Code

D. Each nutritionist/dietician or other weight loss counselor who has ever seen or treated you.

1.
Name

Specialty

Street Address

City, State, Zip Code

2.
Name

Specialty

Street Address

City, State, Zip Code

3.
Name

Specialty

Street Address

City, State, Zip Code

4.
Name

Specialty

Street Address

City, State, Zip Code

E. Each hospital where you have received inpatient treatment during the 10 years prior to your PPA injury through the present:

1.
Name


Specialty


Street Address


City, State, Zip Code

2.
Name


Specialty



Western District of Washington U.S.D.C.

# Recent Orders & Decisions

Subject:                                          Date of Order:
**Order Re: Expert Discovery Schedule**           **03/22/2002**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, | MDL NO. 1407 ORDER RE: EXPERT DISCOVERY SCHEDULE |
|---|---|
| This document relates to all actions | |

Having reviewed and considered the memoranda filed by both parties in
support of their proposed expert discovery schedules, the court finds
the following dates to afford an equitable apportionment of time
between the parties to conduct expert discovery:

**EXPERT DISCOVERY SCHEDULE**

Plaintiffs' Rule 26 disclosures on or before: 10/01/02
Defendants' Rule 26 disclosures on or before: 1/03/03
Depositions of Plaintiffs' experts complete by: 12/02/02
Depositions of Defendants' experts complete by: 3/03/03
Defendants' Daubert and other motions filed by: 2/03/03
Plaintiffs' Daubert and other motions filed by: 4/30/03
Oppositions to Defendants' motions filed by: 3/05/03
Oppositions to Plaintiffs' motions filed by: 5/30/03
Reply briefs to Defendants' motions filed by: 3/20/03
Reply briefs to Plaintiffs' motions filed by: 6/16/03
Daubert hearings to be scheduled after: 6/16/03

The parties are hereby ORDERED to abide by the above expert discovery
schedule.

DATED at Seattle, Washington this 21st day of March, 2002.

/s/
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

Order Re: Expert Discovery Schedule

**File for Download is available on <u>WebPacer</u>**